No. 23-9608

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

———————————

ELIZABETH WRIGHT-SMITH,

Petitioner,

v.

FEDERAL AVIATION ADMINISTRATION,

Respondent.

———————————

On Petition for Review of an Order of the Federal Aviation Administration

———————————

## ADMINISTRATIVE RECORD

———————————

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

ABBY C. WRIGHT
MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-0211*

# INDEX

## Procedural Documents

| Doc. | Date | Description | AR Pages |
|---|---|---|---|
| 1 | 07/07/23 | FAA Hotline Complaint #AAE-IHL-20230707-597-AFX-426 | 1 |
| 2 | 07/12/23–07/20/23 | FAA Designee Management System Suspend Designation Records | 2–8 |
| 3 | 09/07/23 | Memorandum from John M. Wensel to Andrea R. Babic re Aviation Safety Hotline #AAE-IHL-20230707-597-AFX-426 | 9–13 |
| 4 | 09/07/23 | FAA DMS Termination for Cause Notification | 14–19 |
| 5 | 09/20/23 | Appeal Submitted by Elizabeth Wright-Smith | 20–60 |
| 6 | 10/28/23 | Appeal Panel Decision | 61 |
| 7 | 12/21/23 | Petition for Review | 62–65 |

## Applicable FAA Orders

| Doc. | Date | Description | AR Pages |
|---|---|---|---|
| 8 | 04/12/22 | FAA Order 8000.95B, Designee Management Policy, Front Material and Volume 1 | 66–106 |
| 9 | 04/12/22 | FAA Order 8000.95B, Designee Management Policy, Volume 3 | 107–164 |
| 10 | 11/14/22 | FAA Order 1070.1A, FAA Hotline Program (as amended) | 165–176 |
| 11 | 09/21/23 | FAA Order 8000.95C, Designee Management Policy, Front Material and Volume 1 | 177–217 |
| 12 | 09/21/23 | FAA Order 8000.95C, Designee Management Policy, Volume 3 | 218–275 |

**AAE-IHL-20230707-597-AFX-426**

**Open Date**: 07/07/2023    **Assign Date:** 7/11/2023    **Due Date:** 7/28/2023

**SUMMARY**
Balloon operator threatened local repair stations not to fix or inspect the balloons of her competitor.

**Confidentiality:** Anonymous

**NARRATIVE**

Word on the street is there are some juicy details floating around the Albuquerque NM hot air balloon scene. So, FAA Beth Wright-smith, who's supposed to test private and commercial hot air balloon pilots for the FAA a designated pilot examiner Dpe for Albuquerque Fsdo at the FAA, paid a visit to our local Albuquerque, NM hot air balloon FAA repair center, AERCO run by David and Jared. And get this, she straight-up threatened them-to not to fix or inspect the balloons of her competitor and arch-rival ▮▮▮▮▮▮▮▮▮▮▮▮ a pilot trainer and commercial pilot in the balloon community and anyone else who she hates-if AERCO knows what is good for there business. Talk about a major threat to AERCO ▮▮▮▮▮▮▮▮▮ and the other ABQ balloon owners and pilots! Not being able to buy proper balloon maintenance and yearly inspections seriously messes with aviation safety, FAA! - The BIG thing is, Beth Wright-smith has some serious clout in the ABQ balloon scene. She's got this special FAA status, she's in the spotlight, and she's a big shot in AAAA ballooning and ABQ Balloon Fiesta. The FAA should freak out that one of their representatives is making them and the whole balloon world look bad and unsafe. They might wanna consider giving her the boot and slapping her with a hefty fine! FAA, do the write thing and investigate this mess. We've got some rotten apples in our balloon world here in ABQ, and it's time to sort it out! Can't we all just get along and stop with these pathetic pissant feuds? Thanks for your time, and let's hope for some resolution.

**CONTACTS**

| Full Name | Role | Company | Phone |
|---|---|---|---|
| Beth Wright-Smith | Subject | Airborne Heat Ballooning | ▮▮▮▮▮▮▮ |

Babic, Andrea R-INT (FAA), AFB-410 Staff Specialist

**AR 1**

## Designee Information —

| | |
|---|---|
| Designee Name | **Elizabeth Christine Wrightsmith** |
| Designee # | ████████ |
| Type | **DPE** |
| Designation Status | **Terminated** |
| Expiration Date | 11/30/2023 |
| Personnel Performing | **Gary Medina** |

## Suspension Information —

| | |
|---|---|
| Suspension initiation Date | 7/12/2023 |
| Select a Suspension Reason from the following list * | Under Inve...  ⌄ |
| Justification * | On July 11, 2023, the ABQ FSDO received an FAA Hotline Complaint AAE-IHL-20230707-597-AFX-426 identifying you as an FAA Designated Pilot Examiner (DPE). FAA Order 8000.95B, Chapter 10 pages 1-29 through 1-30, requires the FAA to suspend your Designation and Privileges in the Designee Management System (DMS) while under investigation. Guidance can be found in Chapter 10, Section 3, Paragraphs (d) and (f). |
| Required Corrective Action * | Upon completion of the FAA Hotline Complaint Investigation, the FAA will follow the guidance in FAA Order 8000.95B and any other applicable FAA guidance. |
| Attachments: | **Attachments** —<br><br>○ FAA 8000.95B-Excerpt.pdf |

## Designation Suspension Removal Request —

| | |
|---|---|
| Suspension release request date | 7/18/2023 |

Justification *

me that my designation as a Designated Pilot Examiner had been suspended pending an investigation. I met with Gary Medina and Ray Romero of the ABQ FSDO on July 13, 2023. During that meeting, I was informed that a complaint against me was posted on the FAA Hotline stating I had instructed a local repair station to stop doing business with a local pilot. I deny the allegation and provide the following information in my defense. I spoke with the owner of a local repair station when I took my equipment to the repair station for repair. During that visit, I was informed that the local pilot filed a complaint against a Colorado pilot when she was informed the Colorado pilot's balloon was being repaired because it had been torn on a light pole. The repairman also stated to me that the balloon was torn during inflation and did not fly. My comment to the repair station owner later (in private) was that he should be careful about what he told the local pilot. I have been a hot air balloon pilot since 1978 and a DPE since 2013. I have always been fair to all applicants and been professional in my dealings with applicants and their instructors. There have been no complaints about any of my examinations or flying ability. Because of my suspension, three (3) applicants' check rides have been cancelled so far. I've been informed by the ABQ FSDO that the check rides have been rescheduled with other DPEs but at least one of those applicants has informed me that he has not re-scheduled because he can't afford to pay the travel expenses associated with an "out-of- town" DPE. One is awaiting information on costs to determine if she can afford it the extra expenses. I acknowledge that as a Designated Pilot Examiner, I am held to a higher standard that other pilots. However, making such a comment to a friend, in confidence, should not be considered a reason to suspend my designation. The FAA's position has always been to re-educate or provide counseling rather than punish. This situation has certainly shown me that I need to be much more careful in my conversations with repair stations, other pilots and friends. To date I have had no further information from the FSDO regarding the suspension and so I cannot provide information of corrective action since nothing has been communicated to me. Even though the message in DMS states that a suspension during investigation is required, I disagree. Rule 8900.95B 1-29 Chapter 10 states that the FAA may suspend a designation during the investigation. In this situation, it has been described as an extreme measure. There is no allegation that I have performed any unsafe flight operation or that any of my examinations have been anything but professional and fair. I have learned the effect of my conversations and will not make any such comments in the future.

Supporting Evidences

**Attachments** —

AR 3

**Suspension Removal Decision**



| | |
|---|---|
| Suspension decision date | 7/20/2023 |
| | Deny Suspension Removal Request, deficiency has not been correct |
| Corrective Action * | The Suspension Removal Request is denied. The FAA Hotline complaint is still under review; the ABQ FSDO per FAA Order 8000.95B choses to suspend the Designee during this review process. The DPE will be notified of any status changes. |
| Attachments | **Attachments** — |

## Chapter 10.  Suspension of a Designation

**1.  Purpose.** This chapter describes the common policy associated with the suspension of a designation. This chapter and the corresponding designation type-specific volumes constitute the policy for suspension of a designation.

**2.  General.** Suspension is a management process that allows the FAA to temporarily remove a designee's privileges without terminating the delegation. If an individual holds multiple designations, suspension of one designation may or may not impact other designations held. The impact of the suspension on other designations, if held, is determined by the respective managing specialist.

   **a.  DMS Actions.** During the suspension process, DMS will change the designee's status to "suspended." In suspended status, DMS:

      (1) Notifies the designee of suspension and denies access to initiate new work for the designation being suspended;

      (2) Cancels all previously approved activities, as applicable; and

      (3) Allows the designee to submit post-activity entries for up to 7 calendar-days after the date of suspension.

   **b.  Designee Action While Suspended.** The designee must immediately stop exercising authorized duties for the designation being suspended.

   **c.  Suspension Release.** If suspended designees think that they have met all of the requirements to be reinstated, they may submit a suspension release request in DMS.

   **d.  Length of Suspension.** Designees will remain in a suspended status until they have corrected the deficiency or until the designation expires. If the deficiency has not been corrected within 180 calendar-days, DMS will notify the managing specialist to remove the suspension and initiate termination.

**3.  FAA-Initiated Suspension.** The FAA may suspend a designation for the following reasons:

   **a.  Lapse in Minimum Qualifications.** The designee no longer meets the minimum qualifications.

      (1) Deadline Passes for Required Training. The designee fails to successfully complete required training within the specified timeframe.

      (2) Failed Test for Required Training. The designee fails a test that is part of required training, regardless of the due date of that training.

   **b.  Failure to Attend a Required Meeting.** The designee fails to attend a required meeting.

**AR 5**

**c.  Poor Performance.** The designee demonstrates an unsatisfactory level of performance for the designation.

**d.  Under Investigation.** The FAA investigates allegations or findings that the designee has been acting contrary to regulations or policy. This may include investigations not related to designee activity.

**e.  Failure to Maintain Currency With Training Requirements.** If a designee fails to maintain their currency with training requirements, they should be moved to suspended status until they complete their training.

**f.  Other.** Any other reason that the FAA Administrator considers appropriate.

**4.  Followup Actions.** The FAA may require the designee to complete followup actions to remove the suspension. FAA followup actions may include additional training, counseling, and requalification. The managing specialist should follow up with the designee to ensure that any requirements are completed. Based on the results of the followup actions, the managing specialist will remove the suspension or initiate termination. The managing specialist should consider the following scenarios as possible followup actions for different suspension reasons:

**a.  Lapse of Minimum Qualification.** The designee should propose a corrective action plan and timeline to meet the minimum qualifications that is acceptable to the managing specialist.

**b.  Deadline Passes for Required Training.** The designee must provide the managing specialist with a plan of action for attending training to meet requirements. If training lapses are a recurring event and without good cause, such as medical inability to attend, the managing specialist may consider termination of the designee.

**c.  Failed Test for Required Training.** Each failed test is reviewed for accuracy and fairness. Validated test failures will result in the managing office making a determination to either terminate the designation for failure to meet training requirements or require the designee to retake the training. The designee will remain in suspension until the training is completed. In the case of a non-valid test (e.g., power failure or accidental submission before completion), the designee will be allowed to retake the test.

**d.  Poor Performance.** The designee should propose a plan of action that is acceptable to the managing specialist as well as a corrective action plan to improve poor performance.

AR 6

**Designee Authorization Suspended for Elizabeth Christine Wrightsmith**

**July 12, 2023 11:12 AM**

| From: | **System Administrator** |
| To: | **Elizabeth Christine Wrightsmith;** |



Dear Elizabeth Christine Wrightsmith
Your Managing Specialist has submitted suspension. You must cease all designee activity corresponding to this authorization.
Please contact your managing specialist for additional information.


**Designee Management System (DMS), Administration**

**Attachments** —



**AR 7**

**Request for Suspension Release Denied**

**July 20, 2023 11:08 AM**

From:          **System Administrator**
To:            **Elizabeth Christine Wrightsmith;**

← Back

Dear Elizabeth Christine Wrightsmith
Your request for suspension release has been denied. Please contact your Managing Specialist for additional information.

**Designee Management System (DMS), Administration**

**Attachments**                                                     —

← Back

**AR 8**



**Federal Aviation Administration**

# Memorandum

| | |
|---|---|
| Date: | September 7, 2023 |
| To: | Andrea R. Babic, Staff Specialist, Quality Control & Investigations Branch, AFB-410 |
| From: | John M. Wensel, Manager, Albuquerque Flight Standards District Office, AFG-800-SW-01   JOHN M WENSEL   *Digitally signed by JOHN M WENSEL Date: 2023.09.07 10:19:26 -06'00'* |
| Through: | Tamara L. Bell, Front Line Manager, Albuquerque Flight Standards District Office, AFG-800-SW-01 |
| Prepared by: | Gary L. Medina, Aviation Safety Inspector, Albuquerque Flight Standards District Office, AFG-800-SW-01, (505) 764-1256 |
| Subject: | Aviation Safety Hotline # AAE-IHL-20230707-597-AFX-426 |

**Allegations as stated in the Hotline Complaint:**

The FAA Hotline complainant makes the following claims and alleges the following safety concerns:

*"Word on the street is there are some juicy details floating around the Albuquerque NM hot air balloon scene. So, FAA Beth Wright-smith, who's supposed to test private and commercial hot air balloon pilots for the FAA a designated pilot examiner Dpe for Albuquerque Fsdo at the FAA, paid a visit to our local Albuquerque, NM hot air balloon FAA repair center, AERCO run by David and Jared. And get this, she straight-up threatened them-to not to fix or inspect the balloons of her competitor and arch-rival ▓▓▓▓▓ a pilot trainer and commercial pilot in the balloon community and anyone else who she hates-if AERCO knows what is good for there business. Talk about a major threat to AERCO ▓▓▓▓▓ and the other ABQ balloon owners and pilots! Not being able to buy proper balloon maintenance and yearly inspections*

**AR 9**

*seriously messes with aviation safety, FAA! - The BIG thing is, Beth Wright-smith has some serious clout in the ABQ balloon scene. She's got this special FAA status, she's in the spotlight, and she's a big shot in AAAA ballooning and ABQ Balloon Fiesta. The FAA should freak out that one of their representatives is making them and the whole balloon world look bad and unsafe. They might wanna consider giving her the boot and slapping her with a hefty fine! FAA, do the write thing and investigate this mess. We've got some rotten apples in our balloon world here in ABQ, and it's time to sort it out! Can't we all just get along and stop with these pathetic pissant feuds? Thanks for your time, and let's hope for some resolution."*

**<u>Background:</u>**

On July 11, 2023, the Albuquerque Flight Standards District Office (ABQ FSDO) received FAA Safety Hotline Complaint # AAE-IHL-20230707-597-AFX-426.

This memo details the findings of the investigation conducted in response to allegations in this FAA Safety Hotline Complaint against Elizabeth Christine Wright-Smith, a Designated Pilot Examiner (DPE) for the Albuquerque, NM (ABQ) FAA FSDO.  The allegations state Ms. Wright-Smith engaged in "threatening behavior" towards a local Albuquerque, NM, an FAA Part 145 Balloon Repair Station, with the intent to influence their business decisions and to obstruct the maintenance and inspection services for one of her competitors, a Commercial LTA-Balloon Pilot, who lives within the geographic boundaries of the ABQ FSDO.

**<u>Investigators:</u>**

Gary L. Medina, Aviation Safety Inspector/GA-Operations, Albuquerque Flight Standards District Office, (505) 764-1256, *gary.medina@faa.gov*.

Raymond Romero, Aviation Safety Inspector/GA-Airworthiness, Albuquerque Flight Standards District Office, (505) 764-1216, *raymond.romero@faa.gov*.

**<u>Complainant:</u>**

Anonymous as listed in the FAA Hotline Complaint as forwarded to the ABQ FSDO for investigation.

**<u>Investigation:</u>**

The investigation was performed in accordance with FAA Order 1070.1A FAA Hotline Program, FAA Order 8900.552, and FAA Order 8900.1, Volume 7, Chapter 5, Section 1. This investigation was documented in HLSW012023009, which includes SAS Task T-SW01-FY23-0655 and the related SAS Activity SW01202301812.

**AR 10**

On July 12, 2023, Inspector Medina, as the DPE's FAA Managing Specialist, took action to suspend the DPE in the FAA Designee Management System (DMS) in accordance with FAA Order 8000.95B. The following DMS notification was provided to the DPE: "On July 11, 2023, the ABQ FSDO received an FAA Hotline Complaint AAE-IHL-20230707-597-AFX-426 identifying you as an FAA Designated Pilot Examiner (DPE). FAA Order 8000.95B, Chapter 10 pages 1-29 through 1-30, requires the FAA to suspend your Designation and Privileges in the Designee Management System (DMS) while under investigation.  Guidance can be found in Chapter 10, Section 3, Paragraphs (d) and (f)," and, "Upon completion of the FAA Hotline Complaint Investigation, the FAA will follow the guidance in FAA Order 8000.95B and any other applicable FAA guidance."

On July 13, 2023, Inspector Medina and Inspector Romero conducted an interview with the Repairman at the Repair Station.  The interview began around 0930 MDT.  Initially, the Repairman was extremely reluctant to discuss the allegations outlined in the Hotline Complaint.  However, after Inspector Romero emphasized the seriousness of the investigation, the Repairman admitted that the DPE did visit the Repair Station and made statements as alleged in the Hotline Complaint.  He expressed grave concern about the potential ramifications of his interview statements reaching the DPE, which may have contributed to his initial reluctance to speak.  Additionally, the Repairman confirmed that he later had a personal conversation with the Commercial Pilot, a long-term friend of his, following his interaction with the DPE.  He stated he provided the Commercial Pilot with details about the comments made by the DPE during her visit to the Repair Station.  In this conversation, the Repairman assured the Commercial Pilot that the Repair Station would continue to provide services for her balloons, regardless of the DPE's request. Inspector Romero requested the Repairman provide a written statement regarding this Hotline Complaint, to which the Repairman agreed.  The Repairman assured him that he would prepare a written and signed statement within the next couple of days.

On July 13, 2023, Inspector Medina and Inspector Romero conducted an interview with the Owner at the Repair Station.  Reluctantly, the Owner admitted that the DPE did visit the Repair Station and made statements as alleged in the Hotline Complaint in front of a group of people at the Repair Station.  He stated that these statements "went in one ear and out of the other", and he "really doesn't pay attention" to the "negative comments" made by his various customers on occasion, including the DPE.  The Owner also stated that he was aware of the animosity between the DPE and the Commercial Pilot.  In this conversation, the Owner assured Inspector Medina and Inspector Romero that the Repair Station would continue to provide services to all balloon owners and operators, regardless of the DPE's demands.  Inspector Romero requested the Owner provide a written statement regarding this Hotline Complaint, to which he agreed.  The Owner stated he would prepare a written and signed statement "once he got around to it" and after discussing the matter in more detail with the Repairman.

**AR 11**

On July 13, 2023, Inspector Medina and Inspector Romero conducted an interview with the Commercial Pilot at the ABQ FAA FSDO, starting at approximately 1100 hours. During the interview, the Commercial Pilot disclosed having a thorough personal discussion at the Repair Station with the Repairman, a close long-term friend. This conversation occurred after the Repair Station's interaction with the DPE. According to the Commercial Pilot, the Repairman shared all the details of the DPE's comments during the DPE's visit to the Repair Station, where the DPE spoke negatively about the Commercial Pilot. In their discussion, the Repairman provided reassurance to the Commercial Pilot that the Repair Station would fulfill all her balloon service requests without considering any recommendations from the DPE.

On July 13, 2023, Inspector Medina and Inspector Romero conducted an official face-to-face interview with the Designated Pilot Examiner (DPE) at the ABQ FSDO beginning around 1300. Inspector Medina confirmed for the DPE the reason behind her suspension as an FAA DPE was an FAA Hotline Complaint alleging that she prompted the Repair Station to cease doing business with the Commercial Pilot. Initially, the DPE denied these allegations and stated that she had never spoken negatively about the Commercial Pilot with the Repair Station or anyone else in the balloon community. However, during the interview, the DPE expressed strong negative sentiments about the Commercial Pilot, referring to her as an "evil bitch, lying, conniving" person "who did not belong in ballooning". Additionally, she made detailed statements indicating the Commercial Pilot was "disliked and even hated" by the "entire balloon community". The DPE then mentioned having a *"private conversation"* at the Repair Station where "the Commercial Pilot was part of the discussion". She acknowledged being aware of the higher standard expected of her as a Designated Pilot Examiner but believed that "her comments made '*in private*' should not be grounds for suspension." This "*private conversation"* was held in the public premises of the Repair Station with other customers or bystanders present. Inspectors Medina and Romero asked for the identities of these people to interview. The Repair Station owner stated, he could go back to the video to see who was around, the premises are videotaped for security, but the video overrides every 48 hours and the event occurred approximately six weeks prior to the Repair Station interviews. Finally, Inspector Medina asked the DPE if she had ever made any negative remarks about the Commercial Pilot elsewhere in the balloon community, to which the DPE responded with a simple "NO/NEVER." (It's worth noting that Inspector Medina received recent verbal feedback concerning the DPE from an FAA Test Pilot at the FAA Aircraft Certification Office (ACO), who was recently in Albuquerque, NM, receiving training for his Commercial Pilot LTA-Balloon Certificate at a Part 141 Pilot School owned and operated by the DPE and with an FAA training contract. The feedback indicated the DPE and her personnel routinely disparaged the Commercial Pilot). At the end of the interview, Inspector Medina informed the DPE that she could provide any additional information or feedback regarding her suspension through FAA DMS.

**List of Persons Interviewed, Dates and Times:**

- Jared Steven Scutt, **Repairman**, AERCO, FAA Repair Station, July 13, 2023, 0930 MDT
- David Joseph Eichhorn, **Owner,** AERCO, FAA Repair Station, July 13, 2023, 1000 MDT
- ████████████████, **Commercial Pilot**, July 13, 2023, 1100 MDT
- Elizabeth Christine Wright-Smith, FAA Designated Pilot Examiner (**DPE**), July 13, 2023, 1300 MDT

**Investigator's Conclusions:**

The complaint was substantiated during the in-person investigation at the FAA Repair Station, but when asked for a written statement, the written statement did not support what was said in person. Further, the DPE also acknowledged during her interview with Inspectors Medina and Romero that she had a private conversation with the owner of the Repair Station and admits she discussed the Commercial Pilot. Additionally, during the interview with Inspectors Medina and Romero the DPE used very strong language as she referred to the Commercial Pilot which would tend to support the allegation in this complaint. As to the DPE's statement that her conversation was private between her and the Repair Station owner, apparently it wasn't because it was overheard by other customers in the Repair Station. This private conversation was held in the public premises of the Repair Station with other customers or bystanders present.

These actions were seen as an abuse of DPE Wright-Smith's authority as an FAA representative and ABQ FSDO DPE. It is evident that her behavior was clearly inappropriate and has the potential to compromise aviation safety and the FAA's overall reputation within in the ballooning community.

Throughout the investigation, all witnesses, directly or indirectly, to the DPE's actions have provided consistent verbal accounts to FAA Personnel, confirming that the DPE did, indeed, make inappropriate statements at the Repair Station in front of multiple individuals. The DPE did explicitly caution Repair Station personnel against servicing any balloons belonging the Commercial Pilot and her associates, insinuating potential consequences if the Repair Station failed to comply.

**Action Taken:**

The ABQ FSDO has determined that DPE Elizabeth Christine Wright-Smith will be terminated for cause.

## Designee Information

| | | | |
|---|---|---|---|
| Designee Name: | **Elizabeth Christine Wrightsmith** | Designee Number: | ▮▮▮▮▮▮ |
| Designee Type: | **DPE** | Designation Status: | **Terminated** |
| Expiration Date: | **11/30/2023** | | |
| Personnel Performing: | **Gary Medina** | | |

### View Termination Recommendation  —

#### Termination Recommendation  —

Have you coordinated this termination action with your management?  *

◉ Yes  ◯ No

Please select a termination type:  *

◉ Termination for Cause  ◯ Termination Not for Cause

Please select a Termination for Cause Reason (select all that apply):*

☐ Performance deficiencies found during oversight activities or identified by other sources

☑ Lack of integrity (for example, making false statements, misrepresenting information, failing to disclose pertinent information, etc)

☑ Misconduct (for example, purposefully not following prescribed procedures for gain; etc)

☑ Inability to work constructively with FAA or public (for example, failure to return phone calls, follow guidance, exhibit a cooperative attitude, etc.)

☐ Improper representation of the FAA (for example, using designee number for inappropriate purposes, etc)

☐ Result of Investigation.

Is this termination for cause the result of an investigation?  *

◯ Yes  ◯ No

Select Investigation  *

| -Select-                          ⌄ |
|--------------------------------------|

**AR 14**

Justification (These comments will be sent to the designee for termination)  *

During July 2023, the Albuquerque FSDO received and investigated an FAA Safety Hotline Complaint against the DPE, and based on the comprehensive FAA investigation, the allegations were substantiated.

Internal FAA Comments (Optional)

The ABQ FSDO, SW-01, received an FAA Hotline Complaint against DPE Elizabeth "Beth" Wright-Smith. The FAA Hotline Complaint, #AAE-IHL-20230707-597-AFX-426, alleged the DPE tried to coerce a Part 145 Balloon Repair Station to not fix, repair, inspect the balloons and equipment of her competitor in the balloon industry.

On Thursday July 13, 2023, Albuquerque FSDO began an investigation of the FAA Safety Hotline Complaint, and based on the thorough investigation, completed on September 06, 2023, the allegations were substantiated.

The DPE is terminated for cause.

**Attachments** —

**AR 15**

**Designee Authorization Suspended for Elizabeth Christine Wrightsmith**

September 6, 2023 03:49 PM

From: **System Administrator**

To: **Elizabeth Christine Wrightsmith;**



← Back

Elizabeth Christine Wrightsmith
Your Managing Specialist has initiated a Termination for Cause.
You must cease all designee activity corresponding to this authorization.

**Designee Management System (DMS) Administration**

**Attachments**                                                        —

← Back

**AR 16**

**Termination For Cause (able to appeal)**

**September 7, 2023 03:58 PM**

| From: | **System Administrator** |
|---|---|
| To: | **Elizabeth Christine Wrightsmith;** |

← Back

Designee Name: Elizabeth Christine Wrightsmith
Designee E-mail: beth@airborneheat.com
Designee Number: 

Elizabeth Christine Wrightsmith
This letter is to inform you that your Federal Aviation Administration (FAA) designation as a(n) DPE is
terminated pursuant to 14 CFR part 183.15(b) and 49 U.S.C. 44702(d).
You must immediately cease exercising the privileges of your designation.
Your designation is being terminated for the following reason:
  • Lack of integrity (for example, making false statements, misrepresenting information, failing to
    disclose pertinent information, etc)
  • Misconduct (for example, purposefully not following prescribed procedures for gain; etc)
  • Inability to work constructively with FAA or public (for example, failure to return phone calls,
    follow guidance, exhibit a cooperative attitude, etc.)
Justification: During July 2023, the Albuquerque FSDO received and investigated an FAA Safety
Hotline Complaint against the DPE, and based on the comprehensive FAA investigation, the
allegations were substantiated.
You may submit a request for appeal by completing the Appeal Request Form, accessible below, no

**Attachments** —

← Back

**AR 17**



**Termination For Cause (able to appeal)**

September 7, 2023 03:58 PM

| From: | **System Administrator** |
| --- | --- |
| To: | **Elizabeth Christine Wrightsmith;** |

← Back

Date: 9/7/2023
Designee Name: Elizabeth Christine Wrightsmith
Designee E-mail: beth@airborneheat.com
Designee Number: ▉▉▉▉

Elizabeth Christine Wrightsmith
This letter is to inform you that your Federal Aviation Administration (FAA) designation as a(n) DPE is terminated pursuant to 14 CFR part 183.15(b) and 49 U.S.C. 44702(d).
You must immediately cease exercising the privileges of your designation.
Your designation is being terminated for the following reason:
 • Lack of integrity (for example, making false statements, misrepresenting information, failing to disclose pertinent information, etc)
 • Misconduct (for example, purposefully not following prescribed procedures for gain; etc)
 • Inability to work constructively with FAA or public (for example, failure to return phone calls, follow guidance, exhibit a cooperative attitude, etc.)
Justification: During July 2023, the Albuquerque FSDO received and investigated an FAA Safety Hotline Complaint against the DPE, and based on the comprehensive FAA investigation, the allegations were substantiated.
You may submit a request for appeal by completing the Appeal Request Form, accessible below, no later than 15 calendar days from the date of receipt of this notification. At that time, you should include any and all evidence or statements that you wish to have considered concerning this matter. You will be notified of the outcome of the appeal process within 60 calendar days after our receipt of your written request for appeal.
If you possess any controlled materials provided to you by the FAA, they must be returned immediately. If you have any questions regarding this requirement, please contact your managing specialist.

**Attachments**                                                                                           —

← Back

U.S. Department of Transportation
Federal Aviation Administration
800 Independence Avenue
Washington DC 20591
1-866-TELL-FAA (1-866-835-5322)

**Readers & Viewers**

**Web Policies**
Web Policies & Notices
Privacy Policy

**Government Sites**
DOT.gov
USA.gov
Plainlanguage.gov
Regulations.gov
Data.gov

**Contact Us**
Contact FAA
OIG Hotline
FOIA

**FAA Help Desk**
helpdesk@faa.gov
1-844-FAA-MyIT ((844) 322-6948)

Version 6.9

AR 18



FAA-Designee Management Sy...

designee.faa.gov/message/view/2451668/true/1842080

Managed bookmarks ★ Bookmarks ◆ Designee Managem... ◆ FAA-Designee Man... 🔌 E2 Solutions - 6.27.22 📑 Mail - 9-AFS-650-D... ◆ FAA-Designee Man... ◆ Dynamic Regulatory... ◆ DMS ◆ US Bank CC 🛠 Home - Enhanced Fl... 🗀 All Bookmarks

**Termination For Cause (able to appeal)**

September 7, 2023 03:58 PM

From:　　**System Administrator**

To:　　　**Elizabeth Christine Wrightsmith;**

← Back

Designee E-mail: beth@airborneheat.com
Designee Number: ▮▮▮▮▮▮

Elizabeth Christine Wrightsmith
This letter is to inform you that your Federal Aviation Administration (FAA) designation as a(n) DPE is terminated pursuant to 14 CFR part 183.15(b) and 49 U.S.C. 44702(d).
You must immediately cease exercising the privileges of your designation.
Your designation is being terminated for the following reason:
　　• Lack of integrity (for example, making false statements, misrepresenting information, failing to disclose pertinent information, etc)
　　• Misconduct (for example, purposefully not following prescribed procedures for gain; etc)
　　• Inability to work constructively with FAA or public (for example, failure to return phone calls, follow guidance, exhibit a cooperative attitude, etc.)
Justification: During July 2023, the Albuquerque FSDO received and investigated an FAA Safety Hotline Complaint against the DPE, and based on the comprehensive FAA investigation, the allegations were substantiated.
You may submit a request for appeal by completing the Appeal Request Form, accessible below, no later than 15 calendar days from the date of receipt of this notification. At that time, you should include any and all evidence or statements that you wish to have considered concerning this matter. You will be notified of the outcome of the appeal process within 60 calendar days after our receipt of your written request for appeal.
If you possess any controlled materials provided to you by the FAA, they must be returned immediately. If you have any questions regarding this requirement, please contact your managing specialist.

**Designee Management System (DMS) Administration**

**Attachments**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　—

← Back

**U.S. Department of Transportation**
Federal Aviation Administration
800 Independence Avenue
Washington DC 20591
1-866-TELL-FAA (1-866-835-5322)

**Readers & Viewers**

**Web Policies**
Web Policies & Notices
Privacy Policy

**Government Sites**
DOT.gov
USA.gov
Plainlanguage.gov
Regulations.gov
Data.gov

**Contact Us**
Contact FAA
OIG Hotline
FOIA

**FAA Help Desk**
helpdesk@faa.gov
1-844-FAA-MyIT ((844) 322-6948)

Version 6.9

**AR 19**

**Appealing Termination Request for Elizabeth Christine Wrightsmith**

**September 20, 2023 04:56 PM**

| | |
|---|---|
| From: | **System Administrator** |
| To: | **John Wensel;** |
| CC: | Gary Medina;Elizabeth Christine Wrightsmith; |



Elizabeth Christine Wrightsmith has submitted an Appeal Request for a termination for cause that requires your review and assignment of an appeal panel.

The 45 day deadline for the panel to complete the appeal is set for 11/4/2023.

**Designee Management System (DMS), Administration**

**Attachments** —



## Designee Information

| | | | |
|---|---|---|---|
| Designee Name: | **Elizabeth Christine Wrightsmith** | Designee Number: | ▇▇▇▇▇▇ |
| Designee Type: | **DPE** | Designation Status: | **Terminated** |
| Expiration Date: | **11/30/2023** | | |
| Personnel Performing: | | | |

## View Designee Termination Response    —

### Termination For Cause Response

Please respond to this termination for cause action by providing the information below. You should include any and all evidence or statements that you wish to have considered concerning this matter. You must provide all of the information you would like considered at the time of this submission. Additional information will not be considered after you submit your response.

1. Response to Termination For Cause  \* :-N/A-
2. Supporting Evidence  \* :-N/A-

#### Attachments    —

- Exhibit B.pdf
- Exhbit D.pdf
- Exhibit C.pdf
- Exhbit G.pdf
- Memo in Support Wright-Smith Appeal.pdf
- Exhibit E.pdf
- Exhibit A.pdf
- Exhibit F.pdf

**AR 21**

## MEMORANDUM OF LAW IN SUPPORT OF APPEAL

I, Sarah L. Shore, on behalf of Elizabeth Wright-Smith (Wright-Smith), Designee No. 999995312, submit this memorandum in support of Wright-Smith's appeal of the termination of her designation as a Designated Pilot Examiner (DPE). Wright-Smith's designation should be reinstated because (1) the Complaint which purportedly justifies her termination is demonstrably false, and the only credible evidence about Wright-Smith's conduct and reputation as a DPE is precisely to the contrary; and (2) the Flight Standards Safety Office (FSDO) failed to notify Wright-Smith of the factual basis for her termination, or to investigate the Complaint thoroughly and objectively, rendering the termination unreliable and unfair.

The anonymous, gossip-filled, and openly spiteful Complaint about Wright-Smith's purported threats to a local balloon repair station are directly contradicted by the sworn statements of the repair station owners themselves (*see* Exhibits B, C & D), and by Wright-Smith's own statements to the FSDO and in the attached affidavit (*see* Exhibit A). Wright-Smith never threatened anyone—and her performance as a DPE makes such an accusation utterly implausible.

Prior to the Complaint, Wright-Smith served as a DPE for more than ten years without a single complaint or incident requiring discipline or further training; indeed, Wright-Smith's former managing supervisors recount her exemplary performance as a DPE and representative of the FAA, as reflected in the attached letters. *See* Exhibit E. Other letters from leaders in aviation and Wright-Smith's students/trainees and mentees only reinforce Wright-Smith's unimpeachable character, excellent reputation as a DPE and flight and safety instructor, and the esteem in which she is held by the ballooning community in the United States and around the world. *See* Exhibit F. Indeed, it would be difficult to find an instructor as widely and thoroughly well-respected as Wright-Smith is. Oversight of DPEs (and, presumably, investigations into complaints concerning them) should

**AR 22**

not consider alleged "isolated event[s]" but the total oversight record of the designee "to provide a high-level perspective of a designee's performance over time." FAA Order 8000.95(B) (4/12/2022), Ch. 6, §2(a)(2) (p. 1-15). Wright-Smith's performance over time is, quite simply, outstanding.

Accordingly, the "reasons" for termination given in the notification Wright-Smith received through the Designee Management System (DMS) on September 7, 2023—"lack of integrity," "misconduct," and "inability to work constructively with the FAA or public"—are false. It is telling that the "justification" for these characterizations is *not disclosed*; the notification merely states that "[d]uring July 2023, the Albuquerque FSDO received and investigated an FAA Safety Hotline Complaint against the DPE, and based on a comprehensive investigation, the allegations were substantiated." Surely the "specific reason(s) for the termination," required by FAA policy are something more than a mere recitation of categorical examples given in the policy. FAA Order 8000.95(B), Ch. 9, §4(a)(1), (b)(1), (c)(1) (pp. 1-26, 1-27). Wright-Smith has received *no other information* justifying her termination. Moreover, the investigation of the Complaint was not comprehensive—it was inadequate and unobjective. Wright-Smith was interviewed once, without being provided the Complaint or any related information, and the investigating FAA officer—Wright-Smith's managing specialist, Gary Medina—did not even speak with other pertinent witnesses and was unreasonable and unprofessional in his interactions with Wright-Smith and others during the investigation. One purpose of administrative appeal is to review "the termination for cause process." FAA Order 8000.95(B), Ch. 11, §2(b) (p. 1-31). The process here was manifestly defective and unreliable, violated basic principles of due process, and failed to meet the notice and hearing requirements for termination of licenses or certifications. *See*, *e.g.*, *Vitarelli v. Seaton*, 359 U.S. 535, 540 (1959) (an administrative agency must follow its own termination

procedures); *White v. Franklin*, 637 F.Supp. 601, 609-610 (N.D. Miss.1986) (holding that, under the Administrative Procedures Act (APA), 5 U.S.C. §§551-559, a flight examiner's "certificate of authority" constitutes a "license," since it is a form of permission, entitling the plaintiff to a due process hearing prior to the termination of his designation); *cf. Burdue v. F.A.A.*, 732 F.3d 1076, (6th Cir. 2014 (holding that the federal district court was empowered to review plaintiff's constitutional due process challenges to the FAA's procedures and policies in terminating his designation as an Airworthiness Representative-Maintenance (DAR-T)).

## I.     The Anonymous Complaint Is False And Furnishes No Basis For Termination.

Wright-Smith's DPE designation was purportedly terminated because the contents of an anonymous Complaint, received by the FAA's Safety Hotline, were "substantiated." Wright-Smith never received a copy of this Complaint, but eventually it was read aloud to her. *See* Ex. A. The Complaint is blatant hearsay, using language like "word on the street is there are some juicy details floating around the Albuquerque, New Mexico hot air balloon scene," and then delivering the accusation that Wright-Smith "flat out threatened" a local repair station to "not fix or inspect the balloons" of ███████████, … and anyone who she (Wright-Smith) hates if they know what's good for their business." *See id.* This accusation has no basis in fact, as should be apparent from the tone of the Complaint.

There are only two balloon repair stations in the Albuquerque area—Aerco and Highland Balloon Repair—and the owners of both of them have sworn under oath that Wright-Smith never threatened their businesses, nor did she tell them not to do business with a person. *See* Exs. B-D. Wright-Smith also denies the Complaint's allegations. *See* Ex. A. Wright-Smith made a recent visit to Aerco for inflator fan repairs, and spoke with owner Jared Scutt, a friend and former crew-member. *Id.* Wright-Smith and Scutt had a conversation—alone, outside the Aerco building—in

which Wright-Smith advised Scutt to be careful what he says to ███████. Wright-Smith explained that █████ had reportedly accused two of Aerco's other customers of flying dangerously and damaging their balloon during a flight, and that ██████ based that accusation on an out-of-context statement of Scutt's. *Id.* The Denver FSDO determined that the accusation was unfounded. *Id.* In short, Wright-Smith cautioned Scutt about his words being taken out of context by a customer (███████████)—she did not caution Scutt about his business. *Id.* Scutt's understanding of this conversation accords with Wright-Smith's. *Id.*; Ex. C. Why the Albuquerque FSDO has credited the anonymous Complaint over Wright-Smith's and Scutt's accounts of what actually happened during their interaction is a mystery.

An even greater mystery is how the Complaint could furnish a basis to conclude that Wright-Smith lacks integrity, has engaged in misconduct, or has demonstrated an inability to work with the FAA or the public. The termination notice quotes as examples of lack of integrity "making false statements," "misrepresenting information" or "failing to disclose information." *See also* Ch. 9, §4(c)(1) (p. 1-27). But the Complaint does not (to Wright-Smith's knowledge) allege any false statement. And even if the Albuquerque FSDO concluded that Wright-Smith's caution to Scutt was somehow inappropriate, nothing about Wright-Smith's communication was to her knowledge false, nor was it relevant to balloon safety or the work of a DPE. Most importantly, as detailed in Wright-Smith's affidavit and the many letters in support of her, Wright-Smith is *known* for her integrity. *See* Exs. A, E, F. Her reputation for integrity has been built over 40 years as a balloon pilot, instructor, and educator, which is why organizations such as the Balloon Federation of America, the only national ballooning organization in the USA, recently sent out a call to action to support Wright-Smith. *See* Ex. F. Wright-Smith has received over 200 letters of support from

**AR 25**

her peers, students, and mentees, a sampling of which are attached here, affirming her integrity. *See* Ex. F. The "finding" that Wright-Smith lacks integrity is false.

Nor has Wright-Smith engaged in "misconduct," defined in the termination notice as "purposefully not following prescribed procedures for gain," or similar conduct. Wright-Smith has never knowingly failed to follow any procedure for gain, and the Complaint does not allege otherwise. Ex. A. Wright-Smith's conduct and work on behalf of the FAA have been exemplary. There can be no credible evidence to the contrary.

Finally, the termination notice's statement that Wright-Smith has demonstrated an inability to work constructively with the FAA or the public is bewildering. First, the Complaint alleges an issue with a single individual—not an issue with the public. As noted, Wright-Smith has been a DPE for more than 10 years. She has also been a FAAST/Aviation Safety Counselor member from 1992 to 2023, operated the World Balloon 141 school from 1988 through 2002; operated the Airborne Heat 141 school from the last quarter of 2006 through the present; conducted and participated in more than 60 ground schools for the local balloon club (AAAA); presented talks at innumerable safety seminars in NM and around the country; instructed Albuquerque International Balloon Fiesta pilots about flying at more than 5,000' MSL and flying around more than 500 other balloons. Ex. A. She served as Chair of the Community Relations Committee for AAAA and interacted with the public in that capacity well after she was no longer the chair, but VP of AAAA. *Id.* Wright-Smith's ability to work with the FAA and the public is unrivaled.

Wright-Smith has always worked effectively with her FAA managing specialists. She received no negative comments from any supervisor until Medina—with whom Wright-Smith had worked effectively for five years—called her to the FSDO regarding the Complaint. Wright-Smith's former supervisors describe her as a highly effective, knowledgeable, competent, and

scrupulously honest and direct instructor and examiner. *See* Ex E. They cite no problems with her level of cooperation or willingness to follow guidance. *Id.* Moreover, even when the ballooning public have been critical of FAA personnel, such as managing specialist Gary Medina, Wright-Smith has defended the FAA's actions and decisions.

The FAA has a stated policy of counseling and re-educating pilots, not punishing them. In July 2023, Wright-Smith offered to take training or engage in counseling if the Albuquerque FSDO believes she would benefit from these things, but she never received a response, nor did Medina have any follow-up conversations with her about the Complaint. Ex. A. Instead, Wright-Smith's suspension continued. *Id.* Accordingly, Wright-Smith is at a loss as to how she could have worked more constructively with the FAA.

To the extent the reference to Wright-Smith's ability to work with the FAA is directed at her interactions with Medina in connection with his supervision of Wright-Smith's Part 141 flight school, Medina has seemingly set out to provoke Wright-Smith into being "uncooperative," and has done so in an utterly unprofessional manner. *See* Ex. A. First, on August 11, 2023, Medina told Wright-Smith that he intended to give her flight school a bad evaluation, despite the fact that he had not yet even scheduled a visit to the school. *Id.* Medina also stated to Wright-Smith that everyone should leave aviation at age 65, since airlines have that requirement. Wright-Smith is over 65. *Id.* On one of Medina's annual recurrency flight debriefs shortly thereafter, Medina spent hours giving Wright-Smith only negative feedback concerning flight school issues that Medina had never raised in the past. When he visited the school in September of 2023, he began directing Wright-Smith about the content of her teaching, although this is not the purpose of flight-school inspections, and despite the fact that Wright-Smith has successfully taught pilots to fly for over 35 years. *Id.* Furthermore, Medina flew with an instructor-pilot in Wright-Smith's school and

**AR 27**

complained about Wright-Smith to the pilot. The pilot's description of this interaction—in which Medina also burned a balloon and endangered a crew-member—is appended here. *See* Exhibit G. In sum, to the extent the termination notice relies on Wright-Smith's alleged lack of cooperation with Medina, it is Medina—not Wright-Smith—who has exhibited a lack of professionalism and an inability to work effectively with others in the FAA.[1]

## II.    The Termination Failed To Follow FAA, APA, And Due Process Requirements.

Wright-Smith's termination process was defective and unreliable, violated basic principles of due process, and failed to meet the notice and hearing requirements for termination of designees. With respect to the FAA's own procedures for termination, where an agency is entrusted with significant discretion to terminate employees or licensees, it is particularly important that an agency's internal procedural requirements be followed. *Vitarelli*, 359 U.S. at 540; *Lopez v. Fed. Aviation Admin.*, 318 F.3d 242, 248 (D.C. Cir. 2003) (noting that certain FAA orders provided "procedural safeguards that are the only available protection for DERs whose designation can otherwise be terminated by the FAA for 'any reason considered appropriate by the Administrator.'"), *as amended* (Feb. 11, 2003). This includes rules requiring notice to an employee or licensee/certificate-holder of the basis for the charges or complaint asserted by the agency in support of termination, and rules governing discovery and presentation of evidence. *See Vitarelli*, 359 U.S. at 540-41.

Here, Wright-Smith was not given a copy of the Complaint against her, nor was she given even a summary of the Albuquerque FSDO's investigation of the Complaint or the specific findings underlying her termination. The termination notification merely states that "[d]uring July

---

[1] Interestingly, Wright-Smith is the only woman on the 160-person DPE list for the Albuquerque FSDO. *See* "FAA Designee Results by FSDO," available at:
https://av-info.faa.gov/DesigneeResultsByFSDO.asp?DsgnType=IA&Region=SW&District=01&Page=1

2023, the Albuquerque FSDO received and investigated an FAA Safety Hotline Complaint against the DPE, and based on a comprehensive investigation, the allegations were substantiated," and then lists categorical examples of reasons why Wright-Smith was terminated (e.g., "[l]ack of integrity"), without actually stating how the investigation substantiated such reasons. The FAA's policy requires formal *determination and documentation* regarding the "specific reason(s) for the termination." FAA Order 8000.95(B), Ch. 9, §4(a)(1), (b)(1), (c)(1) (pp. 1-26, 1-27). Wright-Smith's termination notice obviously falls short of this requirement. *Vitarelli*, 359 U.S. at 540-41.

Moreover, the "comprehensive investigation" conducted by the Albuquerque FSDO was—though not described in the notice of termination—incomplete, unobjective, and unreliable. First, the termination fails to account for the information contained in the affidavits of the balloon repair station owners; indeed, no one from the FAA even *spoke* to the owner of Highland Balloon Repair, and Wright-Smith was interviewed only once, without being provided a copy of the Complaint or any other information, and without being given the opportunity to present information or to comply with any coaching or training deemed necessary by the FAA. Exs. B-D. Second, Medina's inappropriate and unprofessional comments to Wright-Smith and her flight school staff, discussed above, strongly indicate that Medina was not an objective investigator of the Complaint. FAA policy requires *systematic* oversight of designees, defined to include a "high-level perspective of a designee's performance over time," and a focus on objective performance measures. Order 8000.95B, Ch. 6. The process for terminating Wright-Smith's designation was not objective or systematic, violates clear FAA policy, and renders the termination decision unreliable and unfair. These significant shortcomings require reversal of the termination action and reinstatement of Wright-Smith's designation. FAA Order 8000.95(B), Ch. 11, §2(b) (p. 1-31) (purpose of appeal is to review the termination process).

**AR 29**

Apart from FAA policies, both the APA and due process principles also require notice and an opportunity to be heard *prior* to termination of a license or certification. 5 U.S.C. §558(c) (before agency action to revoke or terminate a license or permission, there should be "(1) notice by the agency in writing of the facts or conduct which may warrant the action; and (2) opportunity to demonstrate or achieve compliance with all lawful requirements."); *White*, 637 F.Supp. at 609-610 (N.D. Miss.1986) (a flight examiner's "certificate of authority" constitutes a "license" under the APA, since it is a form of permission, entitling the plaintiff to a due process hearing as required under 5 U.S.C. §558(c) prior to the termination of his designation); *cf. Burdue v. F.A.A.*, 732 F.3d 1076, (6th Cir. 2014) (designee could bring constitutional due process challenges to the FAA's procedures and policies in terminating his designation as an Airworthiness Representative-Maintenance (DAR-T)).[2] Here, as discussed above, Wright-Smith's single interview with Medina, without the benefit of a copy of the Complaint or an opportunity to present evidence and witnesses in her defense at any time before the termination, fails to meet APA and due process requirements.

Wright-Smith therefore asks for reinstatement of her designation, and/or the opportunity to present evidence and witnesses regarding the Complaint against her. Wright-Smith notes that she has made a Freedom of Information Act (FOIA) request to the FAA for her records, including those relating to her DPE designation and her Part 141 School, and she respectfully submits that she should be given the opportunity to present information from these records, in addition to the information attached to this appeal, in support of her continued designation as a DPE.

---

[2] While there is some contrary authority in other Circuits, *see*, *e.g.*, *Bradshaw v. Fed. Aviation Admin.*, 8 F.4th 1215, (11th Cir. 2021); *Fried v. Hinson*, 78 F.3d 688, 692 (D.C. Cir. 1996); the Tenth Circuit Court of Appeals has not yet decided whether a DPE certificate of authority is a license, the termination of which must meet the due process guarantees of the Fifth Amendment to the United States Constitution, and Wright-Smith respectfully submits that the authorities cited above are persuasive and likely to be adopted by the Tenth Circuit—particularly under circumstances such as those presented here. Furthermore, even contrary authorities acknowledge that the FAA must meet its own procedural standards. *See*, *e.g.*, *Bradshaw*, 8 F.4th at 1223.

**AR 30**

### III. CONCLUSION

For all the reasons set forth in this appeal, Wright-Smith respectfully requests that the FAA overturn the termination decision and reinstate Wright-Smith's DPE designation. In the alternative, Wright-Smith requests that the FAA defer its termination decision until Wright-Smith receives proper notice an opportunity to present evidence and witnesses regarding the Complaint against her. To that end, Wright-Smith requests a copy of the Complaint and the evidence gathered in the investigation thereof by the Albuquerque FSDO, and time to obtain the information sought in her pending FOIA request.

Dated: September 20, 2023

Respectfully submitted,

BUTT THORNTON & BAEHR PC

/s/ *Sarah Shore*
Sarah L. Shore
*Attorneys for Elizabeth Wright-Smith*
P.O. Box 3170
Albuquerque, NM  87190
(505) 884-0777
sshore@btblaw.com

**AR 31**

## AFFIDAVIT OF ELIZABETH WRIGHT-SMITH

**STATE OF NEW MEXICO**  )
                               )
**COUNTY OF BERNALILLO )**

I, ELIZABETH WRIGHT-SMITH, being first duly sworn upon my oath, swear and affirm as follows:

It is difficult to defend myself when the details of an accusation are withheld from me. I have been informed that my designation as a Designated Pilot Examiner has been terminated. Despite one verbal and two written requests for information about that decision, the only information I've received is a verbal reading of a hotline complaint against me. The only allegations in the "anonymous" complaint are blatant gossip, saying that "word on the street is there are some juicy details floating around the Albuquerque New Mexico hot air balloon scene" and then warning that I

> "…flat out threatened them (a local repair station) to not fix or inspect the balloons of …
> ▮▮▮▮▮▮▮▮▮▮▮ … and anyone else who she (Wright-Smith) hates if they know what's good for their business."

I did not make such a threat nor tell any repair station to stop doing business with anyone and have attached affidavits from the owners of both repair stations in the Albuquerque area that support my denial.

Nevertheless, I received notice in DMS that the charges against me were "substantiated." The notice of termination stated, for the first time, that the termination was based on my "lack of integrity," "misconduct," and my "inability to work constructively with FAA or public." These "reasons" are simply copied from the list of grounds for termination in FAA Order 8000.95B. However, Order 8000.95B also states that the reasons for termination must include the "specific reason." To date, I have been given no specific reasons for my termination.

*Lack of Integrity*
This allegation in the DMS posting is the only time in my career that my integrity has been questioned. Merriam-Webster Dictionary defines integrity as "firm adherence to a code of especially moral or artistic values: incorruptibility." There is no allegation of a lack of integrity in the Hotline complaint. Nevertheless, during my 40+ years as a balloon pilot, instructor, educator and DPE I have built a reputation among other pilots, students and colleagues as having great integrity. Accompanying this document are some of well over 200 letters that have been sent to me as testament to my integrity. The rest are available for inspection. In addition, the Balloon Federation of America, the only national ballooning organization in the USA, sent out a call to action to support me in an email BLAST to all members as well as a notice on their Facebook page. The complaint, even if it were true, would not establish a lack of integrity. Again, the operators of both local repair stations have stated under oath that the statement alleged in the complaint did not occur.

Exhibit A

**AR 32**

### Misconduct

The language listed in the DMS notice gives the following description of misconduct- "purposefully not following prescribed procedures for gain." I have never knowingly violated any prescribed procedures for gain and the hotline complaint doesn't allege that I did. Nor has anything I have done reflected poorly on the FAA; to the contrary, my conduct and work on behalf of the FAA have been exemplary. I have even explained and defended the actions of my Managing Specialist, Gary Medina, that have upset the local ballooning community over the past several years.

### Inability to work constructively with FAA or public

I have no idea how this statement was derived or how I allegedly exhibited such inability. The hotline complaint (even if it were true, which it isn't) alleges an issue with one person. There is no allegation of inability to work with the FAA or the public. However, to address the issue of my ability to work with the FAA and public, please note I have been a DPE for more than ten (10) years and operated a 141 school for over 20 years. I have worked effectively with my FAA managing specialists during that time and received no negative comments from them until my current managing specialist, with whom I have worked effectively for 5 years, called me to the FSDO regarding the Hotline complaint. In fact, two of my former managing specialists have signed letters of support and they are attached to this document in DMS.

I have worked effectively with the public for more than 40 years as a balloon pilot, trainer, educator and safety counselor. I have been a FAAST/Aviation Safety Counselor member from 1992 to 2023; operated the World Balloon 141 school from 1988 through 2002; operated the Airborne Heat 141 school from the last quarter of 2006 through the current time; conducted and participated in more than 60 ground schools for the local balloon club (AAAA); presented talks at innumerable safety seminars in NM and around the country and been selected by the Albuquerque International Balloon Fiesta to instruct their pilots about flying at more than 5,000' MSL and flying around more than 500 other balloons. I served as the Chair of the Community Relations Committee for AAAA and interacted with the public in that capacity well after I was no longer the chair, but VP of AAAA.

My ability to work with the FAA and the public is unrivaled.

I deny threatening a local repair station to cease doing work with any other pilot. During a visit to Aerco for inflator fan repairs, I spoke with Jared Scutt who is a friend and former crew member of mine. That conversation was conducted with only Scutt and me present, outside the Aerco building. I stated he should be careful what he says to ⬛⬛⬛⬛ because I had been told that, based solely on a statement by Scutt taken out of context, she accused two of Aerco's other customers of flying dangerously and damaging their balloon during a flight. (In a conversation later with one of the accused pilots, those accusations were determined to be unfounded, as investigated by the Denver FSDO).

I conveyed this information to my Managing Specialist/Principal Operations Inspector, Gary Medina, in the *single* conversation he had with me in conjunction with his investigation of the Hotline complaint. I offered in DMS, about a week after my suspension on July 12, 2023, to take

**AR 33**

training or counseling if the FAA determined any part of my private conversation with Scutt was inappropriate. It is the stated purpose of the FAA to counsel/re-educate pilots rather than punish them. However, I have received no response to my offer, other than that my suspension stood, and did so for 8 weeks!

As stated above, I have received no negative comments from any of my FAA supervisors until the time of the Hotline complaint. Since that time, in what seems to me to be an attempt to establish a claim that I cannot work with the FAA, Gary Medina has been attacking my 141 school. On August 11, 2023, before he had even set up a time to inspect the school, he told me that he was going to give me a bad evaluation. He also told me that people should retire from aviation at age 65, just as the airlines require. I am over 65. Shortly thereafter, during a debrief after one of his annual recurrency flights, Gary spent 2 solid hours in one sitting berating me for doing NOTHING correctly, and not following his direction as to what to teach and how to teach it. It is suspicious that he has been supervising the school for 5 years and none of these issues have been mentioned previously. Since the Hotline complaint he has repeatedly attacked my school and my teaching, in spite of my 45 years of experience in ballooning versus his 5 years. He continued these attacks through my last school inspection with him on September 5, 2023, even though I have been successfully teaching pilots to fly for over 35 years. I have documentation of those interactions and have attached a letter from one of the pilots that also flew with him in August and September documenting this and other inappropriate interactions.

I have found nothing in the FAA guidance to show that my POI has the authority to dictate the content used in a Part 141 school.

As previously stated, I have only attached some of the more than 200 letters of support I have received but the rest are available for inspection should the FAA desire. Also, to verify my good standing with the FAA, I have submitted a FOIA request and a request to Airman Certification for all of my records, including those related to my part 141schools (RD1S448K and 1ABS874K) and serving as a DPE. However, that information has not yet arrived but will also be available to this panel when I receive it. I wish to continue to serve the FAA and the ballooning community as a DPE, so I respectfully request the decision to terminate my designation as a DPE be changed and my designation be reinstated. After 10+ years demonstrating excellence as a DPE, it's surprising to me that a single, anonymous and gossip-laden complaint would be relied upon to terminate my designation.

Alternatively, I request a hearing to present my evidence on these issues.

Further, Affiant sayeth naught.

*Elizabeth Wright-Smith*

SUBSCRIBED AND SWORN to before me this 20 th day of September, 2023, by Elizabeth Wright-Smith.

STATE OF NEW MEXICO
NOTARY PUBLIC
Cheryl Peifer
Commission Number 1088964
My Commission Expires  October 22, 2023

*Cheryl Peifer, Notary Public*

**AR 34**

### **AFFIDAVIT OF DAVID EICHHORN**

STATE OF NEW MEXICO    )
                       ) ss.
COUNTY OF BERNALILLO  )

      I, DAVID EICHHORN, being first duly sworn upon my oath, swear and affirm to the following:

      1.    I am an owner of Aerco, a balloon repair stations certified by the Federal Aviation Administration (FAA).

      2.    On or about July 11, 2023, two FAA officials came to Aerco and spoke with me about Elizabeth Wright-Smith. Specifically, they asked if she threatened Aerco's business if we continued to do business with █████████, a local hot air balloon pilot. I told them Wright-Smith did not make any such comment to me and has never suggested we not do business with any individual or company.

      Further, Affiant sayeth naught.

                           _____
                           DAVE EICHHORN

      SUBSCRIBED AND SWORN to before me this 19 day of September 2023, by Dave Eichhorn.

                           _____
                           Notary Public

My Commission Expires:

NA
_____

```
TAYLOR DUFFNEY
Notarial Officer
State of New Mexico
State Bar Number 159139
```

```
...OR DUFFNEY
....rial Officer
of New Mexico
: Number 159139
```

**AR 36**

Exhibit B

## AFFIDAVIT OF JARED SCUTT

STATE OF NEW MEXICO    )
                               )ss.
COUNTY OF BERNALILLO   )

       I, JARED SCUTT, being first duly sworn upon my oath, swear and affirm to the following:

       1.     I am an owner of Aerco, a balloon repair stations certified by the Federal Aviation Administration (FAA).

       2.     On or about July 11, 2023, two FAA officials came to Aerco and spoke with me about Elizabeth Wright-Smith. Specifically, they asked if she threatened Aerco's business if we continued to do business with ████████████, a local hot air balloon pilot. I told them Wright-Smith did not make any such comment to me and has never suggested we not do business with any individual or company.

       Further, Affiant sayeth naught.

                                       _____
                                       JARED SCUTT

       SUBSCRIBED AND SWORN to before me this 19th day of September 2023, by Jared Scutt.

                                       _____
                                       Notary Public

My Commission Expires:
NA

> TAYLOR DUFFNEY
> Notarial Officer
> State of New Mexico
> State Bar Number 159139

              Exhibit C

## AFFIDAVIT OF MATTHEW GROTE

STATE OF NEW MEXICO  )
                      )ss.
COUNTY OF ~~BERNALILLO~~ Sandoval )

    I, MATTHEW GROTE, being first duly sworn upon my oath, swear and affirm to the following:

    1.    I am an owner and the sole New Mexico operator of Highland Balloon Repair, a balloon repair stations certified by the Federal Aviation Administration (FAA).

    2.    Elizabeth Wright-Smith is a customer and we have spoken many times. Wright-Smith has never threatened my business if I did business with any individual or business.

    3.    I have never been contacted by any FAA official concerning Elizabeth Wright-Smith.

    Further, Affiant sayeth naught.

_____
MATTHEW GROTE

    SUBSCRIBED AND SWORN to before me this 18th day of September 2023, by Matthew Grote

_____
Notary Public

My Commission Expires:
June 24, 2025

> STATE OF NEW MEXICO
> NOTARY PUBLIC
> SHANNON MARTINEZ
> COMMISSION #1093772
> COMMISSION EXPIRES 06/24/2025

Exhibit D

AR 37

**TO: Whom it May Concern:**

My name is Jeffrey Donald Huss; I was employed as an Aviation Safety Inspector at the Albuquerque FSDO (SW01) from September 1989 until I retired in January 2016. I first met Ms. Elizabeth C. "Beth" Wheeler (now Mrs. Elizabeth C. Wright-Smith) at the 1989 Albuquerque International Balloon Fiesta (AIBF) where she was flying paying passengers as an employee of Sid Cutter's World Balloon, Inc. and the FOX FOTO corporate balloon. In 1993 the FSDO Manager Richard W. Blondefield arranged for me to take LTA-Balloon training with World Balloon, Inc. (a Part 141 Pilot School) in Albuquerque. At that time, Sid Cutter was the Chief Flight Instructor and Beth Wheeler the Assistant Chief Flight Instructor for the school. Although I eventually flew with every instructor at World Balloon, my primary instructor was Beth Wheeler. I obtained my Commercial Privileges LTA-Balloon (limited to Airborne Heater) 9/28/1993. Because I held ratings in Airplanes, Rotorcraft-Helicopter, and LTA-Balloon, I was assigned the additional duty of DPE Coordinator for most of my employment.

World Balloon was awarded the FAA contract for LTA-Balloon training for Operations Inspectors in the 1980's and would remain the primary training facility until 2002 when the contract went to THE Balloon Flight School in Albuquerque. Sid Cutter retired in 1997, making Beth Wright-Smith the Pilot School's Chief Flight Instructor until she left the company in 2006 to form her own company, Airborne Heat, a Part 141 Pilot School where she regained the FAA training contract, which she maintains to this day. I'm certain any FAA Inspector who was trained and tested by her can vouch for her professionalism. As the district's other Balloon Examiners retired or relocated, I encouraged her to apply for a designation which she received in 2013. She has a reputation of conducting a thorough and fair practical test – no trick questions and no weird flight maneuvers. I made a good choice in recommending her then and I stand by that recommendation today.

As the LTA resource in the FSDO I did much of my quarterly proficiency flying with Beth and was the Principal Operations Inspector for World Balloon and Airborne Heat until I was appointed the FAASTeam Program Manager. In my observations/oversight of her as a Chief Flight Instructor, Flight Instructor, Pilot, and Designated Pilot Examiner over a period of more than 20 years I did not witness her display any of the traits/accusations mentioned in the reasons for the termination of her designation. She has exhibited excellent knowledge of the requirements of each of those positions and discharged her duties in a professional manner. Since the 1991 inception of the Albuquerque Aerostat Ascension Association's (AAAA) Private and Commercial Ground Schools, the Balloon Federation of America (BFA), and AIBF annual FIESTA Safety Seminars she has made numerous presentations pertaining to LTA operations and safety. She provides platform instruction at the three annual AAAA Private & Commercial Ground Schools, the Albuquerque Aviation Academy, and the annual spring AERCO Safety Seminar.

Exhibit E

AR 38

Like many of us, Beth is not a politician; if she believes something needs to be addressed she makes her opinion known without belittling anyone or anything. If she needed clarification on something she would call me and we would discuss the item. I find the three "reasons" for termination to be ludicrous at best as I never witnessed any of these actions or attitudes as an Inspector or in our interactions since my retirement. I have advised her to request a FOIA report from the Designee Management System (DMS) and Safety Assurance System (SAS) files as I'm confident the lack of contents/comments will not support her termination.

I am aware of the time limits on appeals. However, I am of the opinion that any final decision should be delayed until the FOIA reports are published. I have remained active in the aviation community in my retirement, teaching at the three annual AAAA Ground Schools, the NM Pilot's Association Mountain Flying Clinic, EAA Chapter 179, Albuquerque Soaring Club, and volunteer Safety Official at the Balloon Fiesta. Should this appeal go to a court hearing, I will make myself available for testimony if requested. I can be contacted at ████████ (no cell phone) or ██████████████████

Respectfully submitted,

J. D. Huss

**AR 39**

Kenneth D. Hand



September 12, 2023

To whom it may concern,
I have known Elizabeth "Beth" Wright-Smith for over twenty years. I have always known her to be a person of ethics and integrity.

Professionally, I acted as her Designee Managing Specialist for the Albuquerque Flight Standards District Office. In this capacity, I observed her administer several balloon check rides. I noted her consistent and professional demeanor. She always followed a checklist to ensure that she complied with all Practical Test Standards (PTS). Her examinations were administered fairly, and all aspects concerning aviation were thoroughly covered.

Ms. Wright-Smith's applicants were often interviewed after their testing. Each one of them reported that she conducted a thorough and fair exam. It was a pleasure working with Beth. She was very prompt and professional about responding to all correspondence or telephone communications.

Ms. Wright-Smith directs a successful and highly regarded LTA balloon school, Airborne Heat, LLC. Established in 1985, this flight school has been training pilots including FAA inspectors as one of the few nationally recognized 14 CFR 141 balloon flight schools. Beth participates in many safety seminars and is held in high esteem throughout the ballooning community.

I believe that her dismissal as a Designated Pilot Examiner is detrimental to the ballooning community. I believe that this dismissal will denigrate the already poor relations between local balloonists and the Albuquerque FSDO. I urgently request that this decision be reviewed and reversed.

Sincerely,

Kenneth D. Hand
FAA Principal Operations Inspector (retired)

**AR 40**

Cleatus McDonel



To whom it may concern

I am writing in support of Elizabeth (Beth) Write-Smith.

It has come to my attention that Beth has been terminated as a DPE for the following reasons:
1 Integrity
2 Failure to follow procedures.
3 Not working constructively with the FAA.

Having known Beth for several years, worked close with her and having been trained at her school, I find those allegations to be nothing short of ridiculous.

My name is Cleatus McDonel.  I am a retired Untied States Marine Corps Officer and pilot.  I am currently serving as a Captain with Federal Express.  I have held a Pilot Certificate since I was 18 and have accumulated over 30,000 hours of flight time.  I hold certificates and ratings in just about everything that leaves the ground.

As a Marine, I know about integrity, and I know about following procedures.  As a pilot for 45 years, I know about working constructively with the FAA.  **I also know Beth.**  Beth has been the face and voice of LTA training, safety and the promotion of ballooning for decades.  She has conducted and participated in countless safety seminars, making better, safer pilots and promoting the FAA. Beth has held FAA contracts for instructing and written FAA publications. Beth is the person the Ballooning Community seeks out when they have questions or concerns, and Beth is the person that has brought these concerns to the FAA in the spirit of full cooperation.

When I looked for an instructor to give the best LTA training, one name, and only one name, kept coming up, BETH WRIGHT-SMITH.  I sought out Beth, took two months off work and came from Memphis, TN to be taught by the best.  I was not disappointed.

What I found was one of the most professional people I have ever had the pleasure of working with, PERIOD.  She respectfully put my ego in place and showed me I still had things to learn. Ballooning required a whole new skillset.  There was no corner-cutting, no baby-sitting, no sugar-coating.  It was the best and most logical training experience I had ever had.  I THOUGHT I knew everything there was to know about rules and regs, the AIM and FARs.  I didn't.  I sat through hours upon hours of ground school with Beth and learned that airline pilots know only what they must in order function in a total IFR world.  It taught me that 90% of our airline pilots couldn't pass a private pilot's written exam if they had to.  Beth made me a better pilot.

**AR 41**



Cleatus McDonel



Beth's school taught me how to safely assemble a balloon, handle my crew, inflate and stand up my balloon without putting myself or my crew in danger. Her school taught me how to recognize dangers my crew may get me into and how to make sure I took corrective action, if and when they did. She taught me the dangers of dealing with propane. She made sure I understood if I was incompetent or unsafe for even a second, I could seriously damage the balloon or worse, hurt someone. Beth taught me how to master my craft and my crew. Most of all she taught me the old FAA saying, "The Pilot in Command is responsible for everything that happens or fails to happen". PERIOD.

INTEGRITY? I'm afraid Beth isn't who you need to be looking at if you are looking for someone lacking integrity. Beth's is solid.

FAILURE TO FOLLOW PROCEDURES? Beth eats, drinks and breaths procedures. I studied procedures for days before she gave me my check ride and made me an LTA pilot. I did that because I knew if I didn't have them down cold, my check ride could end before it began.

NOT WORKING CONSTRUCTIVELY WITH THE FAA? So sad anyone could even question this. Beth has been hand-in-hand with the FAA for decades. She had to be. The FAA makes it work and Beth knows that. The evidence is there and it's clear. Beth's fingerprints are all over the rules and regulations that govern the ballooning events across the nation and specifically those that have shaped LTA in the ballooning capital of the world.

I recently spoke with the FAA Safety Inspector who trained with Beth, at the same time I did. In his words, "Beth is in the top 30 DPEs in the nation."

One final thought. It appears there have been an abnormally high number of Albuquerque DPEs terminated in the past few years. There must be a common thread causing this. I feel finding that common thread would answer a lot of questions and serve to unite the Albuquerque LTA community and the FAA.

Thank you for your time.

Cleatus McDonel
Captain, FedEx

**AR 42**

To whom it may Concern:

9/8/2023

I was disheartened and frightened to hear that Beth Wright Smith was removed as a designated pilot examiner for the FAA. Disheartened because not only has Beth set precedence that in order for her to approve your license that you must be at the top of your skillset, but she always has time to educate and teach. During my check ride not only was I scared and intimidated to be around the infamous pilot, but I knew she would only accept the best of what I could give. I couldn't fly level after take off, and I had to ask her to give me a moment (to which she did).  She asked me questions during my flight, assessed my knowledge base and upon landing reminded me that as a pilot its ok to ask our passengers to give us a moment to settle in.

I have heard that her integrity is in question. Let me just say that in no way shape or form has there ever been any question as to her integrity. Beth has always been kind, and more forthright and honest than any person I have ever met. One of her most prominent virtues is that she is an expert not only in ballooning, but in exhibiting kindness but firmness. If you are a pilot that is making a choice that is not in the best interest of ANYONE, Beth will be the first person to discuss your choice with you….for example:

My very own brother in law was attempting to take an afternoon flight when it was not the right conditions. I called her to ask her if it was my incorrect understanding (I was a beginning student) or if I was indeed correct that he should not be flying at 2pm in September. She asked me for my daughters number so that she could tell her directly that she should NOT get in the basket. She drove to the location and had a conversation with my brother in law and explained to him why he should NOT be in the air. You should be aware that Beth WAS NOT the DPE that signed off on his license. Andy Richardson was.

Beth Wright Smith is a woman of intelligence, integrity and morality. Losing her in our community would be such a significant loss that we as a community would never be able to recover.

Should you have any questions or concerns, please feel free to reach out to me.


Donnette Ford █████████

████████████

17 September, 2023

To the members of the FAA Appeals Board.

I am writing on behalf of Beth Wright Smith, requesting you immediately reinstate her as Designated Pilot Examiner for the Albuquerque area.

The news of Beth's termination as DPE came as a complete shock to me.  Claims against her of lacking integrity, failing to follow procedures and not working constructively with the FAA, seem simply unbelievable.  None of these alleged actions align with the person with whom I've come to know, work and serve.

I have known Beth since moving to Albuquerque in 1990.  She was an instant and vast resource for how to safely and properly fly balloons in Albuquerque.  Beth's experience and professionalism immediately drew me to make her a key go-to person when in need of LTA answers.  Additionally impressive, was her willing instinct to guide me to another source, should there be someone with greater knowledge.

Only two weeks ago, I reviewed Beth's annual technical skills video, offered not only for Balloon Fiesta attendees, but for year 'round Albuquerque fliers.  It reminded me of the many times I would look to her before making my own go/no-go decisions locally and at area balloon rallies. It was only July 4th, 2023, when Beth saw I was about to take a first flight as PIC in a special shape balloon, in which she had logged many hours.  She made it a special point to share sage advice on the unique landing characteristics of the aircraft.  Her wisdom greatly influenced my decision making and approach to landing in somewhat challenging conditions.  This is the Beth I know.

Beth's service work and years of training successful LTA applicants is extraordinary, as the record will show.  Personally, I have served with her as a mayoral appointee to Anderson Abruzzo International Balloon Museum, where she always maintained focus on the educational opportunities for attendees, over simply the historical and cultural attraction.

I have only known Beth Wright Smith to have the highest of standards, professional and courteous conduct and character above reproach.

Please consider what I have experienced and add my name to a Lighter than Air community asking you to reexamine the claims and the facts, and reinstate Beth to her role as DPE.

Regards,

Craig H. Kennedy
Commercial Pilot, LTA, Free Balloon

AR 44

 Gmail

**Beth Wright-Smith**

---

## Letter of Support
1 message

Fri, Sep 15, 2023 at 4:53 PM

To:

To whom it may concern,

Beth Wright Smith has been a member of the ballooning community in Albuquerque New Mexico for many years. As a result of her involvement with AAAA and the education department, many airman can point to Beth as being responsible for their initial and recurrent balloon training.

Beth is dedicated to not just the training and subsequent certification of students who come from around the world to her training school, she regularly speaks at safety seminars, conventions and club meetings on the topic of ballooning safety.

Through the years that I have known Beth, I can say that she has been a great ambassador for the ballooning industry and community at large.

Removing Beth as a Designated Pilot Examiner defies logic and whomever made the decision to take that action should be investigated by their superiors to determine if unfair biases are prevalent within the FAA.

Respectfully,

Sam Parks

Executive Director

Albuquerque International Balloon Fiesta. Inc.





Powered by



**AR 45**

| | |
|---|---|
| **From:** | Beth Wright-Smith |
| **To:** | Sarah Shore |
| **Subject:** | Fwd: Letter of support |
| **Date:** | Wednesday, September 20, 2023 11:26:33 AM |

---------- Forwarded message ---------
From: ████████████████
Date: Sun, Sep 17, 2023 at 7:59 PM
Subject: Letter of support
To: Beth Wright-Smith ████████████████

To whom it may concern;

I got to know Elizabeth Wright-Smith, aka Beth, in the late 1980's, when my younger brother was working at the original World Balloon in Albuquerque, owned by "THE SID CUTTER". She did a lot of my brothers flight training And they shared a balloon together, as a partner only.

She did a lot of my former brother-in laws ground training as well, when he bought his first balloon, (he's on #3 now.)

Her ethics and training methods were impeccable. I saw that first hand when my brother in law went on to compete in nationals his 2nd year flying and came in 3rd place!

   When I finally decided to start my balloon flight training in 2001,

I chose Beth, and the original World Balloon, as my team.

I started my weekly ground school, one on one with Beth, in 2001. She was and still is a stickler for knowing the info!

I went on to buy a used balloon, with her expertise and advice, finally finished my flight training in 2002 .

EVERY SINGLE TIME I have had a concern or question surrounding ballooning…Beth is our go to person, no matter what it is..

She started getting me involved in helping with our local balloon clubs education committee. With her inspiration, I became very involved with the education side of ballooning, and joined our balloon clubs ( one of the largest in the country) Education committee.

I decided to buy and order a brand new balloon in 2016. Beth was there every step of the way, answering questions and concerns. When the new balloon arrived, she flew with me the first time to get acquainted with a slightly larger balloon..

With a new balloon and a desire to help our committee, I embarked on a commercial journey, to get involved on the teaching side, as Beth has done, inspiring and teaching folks around the globe!

**AR 46**

When I thought I was getting close to taking my check ride, I asked Beth if we could do a "practice oral" so I could gage where I stood, she said, ok.

On that day, she treated it pretty close to the real deal, about half way through I looked at her and asked..

"I'm not ready am I?"

She looked at me and said "NO you're not".

I've known her at that point for close to 25 years, we are friends and colleagues, and she tells me I'm not ready!!

THAT"S INTEGRITY, and honesty!! To turn down her long time friend and mentee.

It took me another 6 months to study and try again, I then passed.

I now help her do some flight training. I've sat in on many debriefs, she is straight forward, to the point with the students, and instructors, tells them what is needed, direct and professional. She also tells them what needs to be worked on.

Beth devotes countless hours volunteering to teach classes, safety seminars, help with licenses, aircraft registrations,

working with the FAA, Balloon Fiesta, Repair stations, balloon manufactures, balloon education books & materials, research, students, and teachers, and teaches at all the safety seminars!!!

You name it, she does it!                    7 days a week!!

Beth knows all things ballooning .


Elizabeth Wright-Smith is an icon for ballooning.


Deborah ( Debi) Ellis-Ostgulen

CPLTA# ███████

███████████████

█████████████████████

████████████

**AR 47**

September 18, 2023

Margaret S. (Peg) Billson

████████████████████

Federal Aviation Administration

Subject:  Beth Wright -Smith, Designated Pilot Examiner Status

**To whom it might concern,**

There is nobody in the Lighter-than-Air (LTA) ballooning community that has been more stalwart in their support and representation of the FAA, both as an institution and as individuals than Beth Wright-Smith.  Hence, I am writing this letter in support of Beth Wright-Smith continuing as a FAA Designated Pilot Examiner (DPE).  I understand that she has been suspended and possibly terminated as a DPE due to 'integrity issues.'  I have known Ms. Wright-Smith for seven years in her capacity as a leader in the Lighter-than-Air Ballooning Community and I have never witnessed any behavior in public or private that would bring into question her integrity.

Ms. Wright-Smith consistently is the person to factually represent that FAA's position on a subject and has always been quick to defend FAA individuals that others in the community might be vilifying.  She always speaks up in public and private forums to explain the logic of the position the FAA might be taking and emphasize how safety will be enhanced.  In addition, she works tirelessly as a pilot, instructor, DPE and FAAST member, AAAA Education Committee member to be the person others can come to with questions and help in becoming better pilots themselves.

After decades of work, Beth Wright-Smith has earned the reputation of being the most respected person in the ballooning community.  To remove her as a DPE and/or FAAST member and potentially close her part 141 Training School will be an injustice the likes of which I have never seen and will do nothing to enhance safety.  After witnessing the treatment of such a respected member of the community will prevent other qualified people to volunteer to represent the FAA.  Her shoes cannot be filled.

Respectfully submitted,
Margaret S. (Peg) Billson
FAA Commercial Pilot with Instrument Private Pilot, Single and Multi-engine and Lighter-than-Air ratings

████████████████████

████████████

9/18/2023

Albuquerque Aerostat Ascension Association (AAAA)
Board of Directors

Federal Aviation Administration
Subject: Letter of Support for Beth Wright-Smith continuing as a Designated Pilot Examiner

**To whom it might concern,**

The Albuquerque Aerostat Ascension Association, also known as Quad A or AAAA, is the largest hot air ballooning club in the world.  On behalf of our over 300 members, we collectively voice our full support of Beth Wright-Smith as a most respected advocate of safety in our community. She has continuously and consistently represented the FAA's position in our monthly General Meetings, Private and Commercial Ground Schools and private conversations.  She is the first to volunteer to give a safety message that needs to be reinforced, council individuals and lead a change that might be warranted.

As a representative of the FAA as a DPE and FAAST member, Beth works tirelessly to ensure that Federal Aviation Regulations in word and spirit are communicated and enforced.  This has been particularly important during the previous years when FAA individuals themselves have not been available to attend meetings or participate in forums.  It is difficult to imagine how removing Beth's status as a representative of the FAA will in anyway enhance safety.

We respectfully request that those responsible reinstate Beth Wright-Smith's status as a DPE and FAAST member by considering holistically her decades of contributions to the ballooning community.

Albuquerque Aerostat Ascension Association (AAAA)
Blair Kaufmann, President
Board of Directors

**AR 49**

**From:** Beth Wright-Smith
**To:** Sarah Shore
**Subject:** Fwd: Support
**Date:** Wednesday, September 20, 2023 11:31:08 AM

---------- Forwarded message ---------
From: **Jacques Soukup** ███████████████████
Date: Sun, Sep 17, 2023 at 2:33 PM
Subject: Support
To: ████████████████████

Dear Beth,
I am writing to strongly support you and your reputation as probably the finest instructor and most excellent  examiner I've encountered in my 45 years in hot air, gas, Rosiere balloons and airships. Like me you were an early pioneer in flying Special Shape Balloons. A unique and sometimes difficult flying experience.
As a past President of the World' Aerostatique Association elected by over 41 countries for nearly five years (Commission Internationale Associations, headquartered in Lausanne Switzerland), I've seen very many balloonists, instructors, and repair station owners. You by far are the finest.
As a Past President of the BFA, your contributions to our sport is exemplary and your knowledge of the FAR's second to none. And your teaching and examinations led to many of my friends accident free decades of flying.
We need well rounded instructors and examiners like you now as never before.
I would gladly send any family member to your school knowing they will be thoroughly trained to carry on my passion of 4000 hours of accident and incident free flying.
My warm regards and I fervently hope this will all be resolved quickly by any and all authorities.
Sincerely
Jacques W Soukup
Lifetime BFA Member

Sent from my iPhone

**AR 50**

| | |
|---|---|
| **From:** | Beth Wright-Smith |
| **To:** | Sarah Shore |
| **Subject:** | Fwd: Letter of Support |
| **Date:** | Wednesday, September 20, 2023 11:37:13 AM |

---------- Forwarded message ---------
From: **James Ahern** ███████████████
Date: Sun, Sep 17, 2023 at 1:05 PM
Subject: Letter of Support
To: ████████████████████████████

To Whom It May Concern:

I am writing in response to allegations made against Beth Wright-Smith of Albuquerque NM.

I have known and worked with Beth in her professional capacity for more than 35 years. In that time, she has mentored countless student pilots to obtain their LTA certification and has established a highly respected Part 141 school that  has attracted students from around the world.  In addition to being a Designated Pilot Examiner, she is also a highly experienced corporate pilot and the recipient of numerous awards and industry certifications. These national corporations, who have the resources to select any pilot in the country, have repeatedly chosen her to represent them and their products/services, undoubtedly due to her reputation, vast experience, and unblemished safety record.
The FAA itself has repeatedly contracted with her to train their own personnel.
Her integrity, character, work ethic and professionalism are above reproach.

Respectfully

James Ahern
Commercial Pilot
Certificate # ██████

To Whom It May Concern at the FAA:

My name is Dale Pattyn and I wish to add my name to the list of those already writing in support of Beth Wright-Smith. I am a retired USAF Command Pilot with over 5,000 cumulative hours in T-37s, T-38s, and various models of C-130s. Since retiring from the USAF, I have worked for Lockheed Martin as a pilot instructor in the HC/MC-130P/Ns, chief instructor pilot in the MC/C-130Js, and now as a Production and Training pilot in all versions of the C-130J; and I've attained over 400 PIC hours flying hot air balloons.

I have always found Beth to be a consummate professional pilot, instructor, evaluator, and mentor. We first met in 2008 after I had retired from the USAF and my family and I remained in the Albuquerque area. I was still new to ballooning and was introduced to her at one of my first Albuquerque Aerostat Ascension Associations (AAAA) meetings.

In 2009, I decided to try my hand at getting my LTA rating as a hot air balloon pilot. As an ATP rated airplane pilot, my requirements in accordance with the FARs were minimal; however, after talking with my instructor (another retired USAF pilot), he recommended I discuss the process with Beth and develop a plan for moving forward. Beth advised me that even though I had a lot of aviation experience, it would be beneficial to attend a AAAA ground school. This was probably some of the best advice I have received in my flying career. At the ground school, Beth and the other instructors introduced me to another world of flying. Beth's coverage of the FARs and Airspace were among the best lessons I had received in my more than 20 years of aviation experience. She covered the topics thoroughly and in such a way that the material was valuable and engaging for both those new to aviation (most of the class) and to this crusty old USAF pilot. Beth's passion for ensuring that all students, not just those at her Part 141 school, received accurate, engaging instruction in the governing regulations and the safe operation of the aircraft reinvigorated my passion for continuing education in aviation: both as an operator and as an instructor.

Since then, I have served with Beth as a member of the AAAA Education Foundation where she helped guide us in our annual development and updating of required ground school topics for the initial Private Pilot and Commercial Pilot courses as well as continuing education in the form of Commercial Pilot Refresher courses and Safety Seminars (both for AAAA and the Albuquerque International Balloon Fiesta (AIBF)). Beth would present at each of these as well as field questions from the attendees. Her level of knowledge was beyond impressive.

I also worked for Beth as an instructor pilot in her Part 141 ballooning school where she always stressed the application of the FARs during flight instruction. She also conducted our annual FAA flight reviews including a thorough ground and flight session.

Additionally, Beth has provided a yearly "Flying in Albuquerque" briefing available to all participants in AIBF. The course is an invaluable tool to help visiting pilots understand the FAA requirements for flying in the KABQ, KAEG airspace during the fiesta and the significant impact Albuquerque's high elevation has on aircraft performance and how to help mitigate these factors.

Beth is a long-time FAASTeam member and was one of the first to bring attention to the actions some of the rogue pilots in the Albuquerque area and the importance of us to self-police our community when we see violations occur.

In all my interactions with Beth over the years, I have found her integrity and professionalism to be above reproach. She has been, and continues to be, an example of the highest standards in ballooning instruction and operations; one of the most respected in the international ballooning community and a mentor to all who are lucky enough to know her.

Dale Pattyn
ATP, CFII, Multiengine Land, Commercial Lighter-Than-Air Balloon

**AR 52**

September 19, 2023

Federal Aviation Administration
Albuquerque FSDO
1601 Randolph Rd. SE
Albuquerque, NM 87106

To Whom it concerns:

I am writing this letter to the appeal board concerning Ms. Beth Wright-Smith and her termination as a Designated Pilot Examiner for cause. I have known Beth and have observed the products of both her DPE activities and her approved LTA school for over 30 years. I have always considered her one of the cornerstones of the LTA community and she has consistently proven to me and others that she possesses all of the knowledge, skills and abilities necessary to not only do the job as prescribed by the 8900.95B, but to excel in them. Not once have I ever known anyone who has dealt with her as an applicant or student graduating from her flight academy, to say one bad word about either her commitment to the designation or her professionalism in the accomplishment of her responsibilities as a Designee.

Beth, in not only my eyes, but in the eyes of almost every other LTA pilot examiner, is a go-to person for information and techniques used during the examination of LTA pilots and she has done more than most. Beth regularly meets with the other examiner to discuss the process and to update on policy and technique. She is the consummate professional and is recognized as such by her peers. In my opinion, her integrity, and long-standing work as an examiner, is unquestionable and I find it hard to believe that she, all of a sudden, has an integrity issue.

Her 30 plus years as a FAAST member, previously the APC program, her 141 Approved LTA training program, her active participation in safety seminars and teaching activities show her commitment to participation and cooperation with the FAA. It has become a part of her operation to interface with both the FAA and the public. I know one of her two previous ASIs, now Managing Specialists and he had no issues with Beth over many years of managing her designation. There is no reason to believe that she is not completely respected by those that she deals with publicly. This includes many of whom she has trained, that see her as not only the consummate professional, but as residing at the top of her area of expertise. One great quality that Beth possesses is her ability to speak her mind. While this may not always make her the most popular person in the room, you must respect that one of the traits of a good FAAST team member is to see things that are not right and to provide counsel, or in the end expose a safety issue. You may not always agree with her, but you respect her experience enough to know that her opinion is worth giving credence to. This is not a violation of working constructively with the FAA, but a positive trait attached to great instruction, situational awareness and positive decision making. All are traits recognized and promoted by the FAA.

As a DPE for more than 50 years, and a FAAST team Lead Rep, I am surprised that such a well known and respected DPE, one that has mentored not hundreds, but possibly thousands of pilots over her career, is being terminated for reasons that on the surface, appear to be more to an agenda than a true evaluation of her duty to responsibility. I am concerned about the process of her appeal and sincerely hope that at least one of the participants on the appeals board is someone completely neutral and without attachment to the terminating office and its immediate chain of command.

It is a proven fact that Beth has not only been cooperative with the FAA, but has sacrificed much to be sure that she is in compliance. To question her integrity is highly questionable and has the appearance of being made without any real consideration of her long history of cooperation with

**AR 53**

both the agency and the public. Persons that she has interfaced with over the years consider her a pilar of the ballooning community and she is respected by all. As this termination was based on an FAA hotline complaint, then I believe that the appeal board should take a very hard look at the motivation and agenda behind that complaint.

Lastly, this action against Beth will do much to build a wall between the ballooning community and the FAA, not just in ABQ, but nationwide. It has the appearance of being retaliatory. In my years as a DPE and FAAST team member, I have volunteered years of work to foster and encourage the LTA community to trust the FAA and that there is much to benefit from by having an open and respectful relationship with their local FAA. I have taken that quest to FAA Headquarters more than once with great results. This action will do more damage to years of work than can be imagined. In my position, I am in contact with pilots from all parts of the U.S. and those in other countries. Word of this termination has already had a chilling impact on the community as a whole. I sincerely hope, for the sake of not only Beth, but for ballooning as a whole, that a fair and unbiased appeals process will reinstate her designation without prejudice.

Sincerely;

Pat Cannon
President BFA



9 September 2023

Albuquerque Flight Standard District Office
1601 Randolph Rd
SE # 200N
Albuquerque, NM 87106

Subject: Ms. Elizabeth Wright-Smith/Action to Withdraw DPE designation

Dear Sir:

This correspondence concerns the actions of the Albuquerque Flight Standards District Office to
terminate the Designated Pilot Examiner designation of Ms. Elizabeth Wright-Smith.

In the summer of 1998 Ms. Smith was the owner of World Balloons. She also had, at that time,
the FAA's contract for training FAA Safety Inspectors to fly hot air balloons and obtain their
LTA Commercial Pilot's Certificate. I first met Ms. Smith that summer while attending the
FAA's LTA certification training at World Balloons.

During my training I had the opportunity to fly several times with Ms. Smith as my instructor.
Her teaching techniques and abilities, and piloting skills made learning a true pleasure! While in
training I often flew with other instructors and ground/chase crews. All of the World Balloon
personnel were exceptional in training me on the ground and flight operations of hot air
ballooning. I discovered that every individual, once hired, had been trained by Ms. Smith in
their specific duties. Each employee with whom I had contact was a true professional and I
never questioned their integrity!

As a result of my training at World Balloons and efforts of Inspector JD Huss I was able to
attend the Albuquerque International Balloon Fiesta annually for 12 years. I was designated by
the ABQ FSDO Managers as the "Inspector-in-Charge" of all the "visiting Inspectors"
supporting the Fiesta. During those years I had the opportunity to visit with hundreds of
ballooning pilots during Fiesta. Most of them knew or had interacted with Ms. Smith. During
those visits Ms. Smith's professionalism and integrity were never an issue. Had there been it
would have been my responsibility to perform my duties as an FAA Safety Inspector!

I have known Ms. Smith for over 25 years. Her teaching and management skills and abilities
have not faltered. As an FAA Safety Inspector her integrity and professionalism were never in
doubt and are without reproach. I still maintain occasional contact with Ms. Smith. She still
holds me to "her standard" of ballooning. I have never, nor will I ever, question her integrity as
a pilot, friend or professional.

Respectfully,

Harry M. Steinfeldt
FAA Safety Inspector (Retired)

**AR 55**

To whom it may concern:

I would like to publicly acknowledge Elizabeth Wright-Smith as one of the United States' preeminent female pilots, instructors, evaluators, and leaders in aviation.  I first met Ms. Wright-Smith at an Albuquerque International Balloon Fiesta  (AIBF) Safety Seminar where she, as a leader of the event, took the time to patiently answer my not-yet-student-pilot questions.  In the three years since our first interaction, I have come to know Ms. Wright-Smith in multiple capacities including: 1) learning from her instruction at Albuquerque Aerostat Ascension Association (AAAA) ground school for private and commercial pilot training, 2) working with her on the AAAA Education Committee, organizing and presenting training and safety curriculum, 3) learning from her (AIBF) safety video before piloting this event, 4) observing her active education of  student pilots as a volunteer crew member, 5) direct learning as a her student pilot on a training flight, and 6) perhaps most importantly, direct observation of her designated pilot examiner (DPE) role in my private pilot and commercial pilot oral exams and check flights. I have never met a more professional, thorough, competent, fastidious, and capable educator. In every interaction I have had with Ms. Wright-Smith she has always had promotion of safe lighter-than-air aviation as her primary objective.  Throughout my experiences her professionalism, integrity, and probity have never wavered.  Personally, I have been more inspired in my short aviation career by Ms. Wright-Smith than Amelia Earhart, as she is not only a pioneer in the sport, but also tirelessly committed to passing on all that she has learned to other pilots.  Ms. Wright-Smith is a unique asset to the sport of ballooning, and it would be a tragedy to limit her impact on future pilots and aviation safety.  Simply stated, I progressed from a student pilot to a world-ranked national competitor in three short years because of the inspiration, education, and thorough examinations that she provided.  Ms. Wright-Smith's signatures in my logbook signify that I have passed this nation's highest regulatory scrutiny. Please do not limit other pilots from the same unparalleled opportunity.  Ms. Wright-Smith is irreplicable.  Please accept this letter of my unwavering support of maintaining Ms. Wright-Smith as a lighter-than-air designated pilot examiner.   Please feel free to contact me should you need any further information regarding this matter.

-Natasha Stanke, DVM, DACVS-SA
Commercial Light-Than-Air Pilot
BFA US Nationals Rookie of the Year 2023
BFA US Women's Nationals Second Place Finisher 2023

**AR 56**

**From:**     Beth Wright-Smith
**To:**     Sarah Shore
**Subject:**     Fwd: FAA
**Date:**     Wednesday, September 20, 2023 11:21:46 AM

---------- Forwarded message ---------
From: **TJ Lawler** ▮▮▮▮▮▮▮▮▮
Date: Mon, Sep 18, 2023 at 8:26 PM
Subject: FAA
To: ▮▮▮▮▮▮▮▮▮▮▮▮▮

In regards to the FAA and the accusation of Beth having an integrity issue.

I have had the privilege to know Beth for a few short years as I just got into ballooning a few years ago.  I want to express my deep disappointment when I was told that this hearing was happening.  I have no clue why this would be happening as I see Beth as one of the people in this community with the most integrity.  As it should be she has been around the sport longer than I have been alive.  What she has accomplished I would only dream of accomplishing.  She has never wavered on rules or regulations.  Beth was not my flight Instructor but she was my DPE.  For me she was feared for being the person that had the control over my passing or failing my oral exam and my practical exam.  She is the person that knew everything I could not just flub my way through an answer or scenario. You either knew it or did not but she would not let you know either way or help in any way to make you get the answer.  You either knew it or knew how to find the answer for her question that she asked,  I strive to have the years of knowledge and experience that she has and probably will never have.  The one thing I noticed about Beth right away is she is blunt and straight to the point.  That to me is actually a great thing to have in this sport/hobbie whatever you want to call it.  The one thing that I have learned over my years of crewing for different balloons that had now a pilot myself is that bluntness is the only way you can be.  You cannot be afraid of a correction made especially during training or your flight exam.  You are defying gravity and your life and others are in your hands and minds.  So being blunt is the only way that things need to be and I am sorry that it might offend someone or hurt someone's feelings but when lives are at stake you can't be any other way.

Thomas Lawler
▮▮▮▮▮▮▮▮▮

**AR 57**



19 September, 2023

RE: Beth Wright-Smith

To Whom it May Concern,

I have known Beth Wright-Smith since 1989 when she was a corporate pilot for World Balloon Corporation, in Albuquerque, NM.

Since joining Cameron Balloons US in 1994, I have the pleasure of working with Beth in a variety of aviation subjects:

Operating Procedures for balloons (e.g. normal and emergency procedures, including flight manual documentation and interpretation)
Training protocols and procedures regarding Cameron Balloons
Safety Seminars
FAAST Team issues
Safety protocols and best practices
Regulatory Issues
Special Shape operations
Technical Issues
Maintenance procedures

In every instance and for each subject area I have found Beth to be keenly focused on safety by developing and promoting best practices through initial instruction and continuing education. I have always found her to be knowledgeable, analytical, reasonable, constructive, communicative, and highly professional.

Even when we do not agree, Beth has always been professional, and our conversations have been cordial, intellectually challenging, and constructive.

I have directed many students to attend her 141 school over the years, and not only have I NEVER had any student complain of the training they received, I have received countless glowing reports of Beth's skill, dedication, and demeanor. I continue to recommend her to anyone looking to receive excellent instruction.

Feel free to contact me if you would like to discuss.

Sincerely,

CAMERON BALLOONS US

Andrew K. Baird
President

Page 1 of 1

**AR 58**

Appellate Case: 23-9608    Document: 01011022062    Date Filed: 03/26/2024    Page: 61

## August 19

After Beth Wright-Smith had flown with him 5 flights for his annual recurrency, I was scheduled to fly with him to complete it. Gary deferred to me on where to launch and we went to the Rainbow launch field where there were other balloonists getting ready to launch. He requested that we move away from them for our launch.

Beth had already informed me that he demanded changes to the way we normally did things. The crew set up the balloon without participation from the 2 of us. He did the burner check per the usual routine. However, he criticized the way Beth had taught us to tighten the carabiners. He tightened them all the way down so that they tend to be difficult to get off after flight. He stated that we had been instructed "wrong" by the company "owner". I have since confirmed that his criticisms were not correct.

He would not let me be involved in the set-up or cold inflation as I usually am. He stated that instead we were to sit in the truck and go over the plan for the flight. He said that students should not be involved either. He said Andy Richardson taught him to do it that way and he demanded and it be done that way. This is another change from our usual training flights.

He did check on the attachment of Velcro in the crown. As he walked back, the wind had begun to pick up but not to the point we had to cancel the flight. He got ready to hot inflate as the balloon was rolling. He did not aim the burners properly into the center opening of the balloon. He had the burners aim toward the right side of the balloon and the crew member holding that side. He lit the burners and blasted both of them into the fabric, burning the envelope. All the while he was yelling at the crew to move the envelope, when they could not. He then stopped watching the flame to put the striker in his pocket when he was supposed to watch what he was doing. I shouted, along with the crew, to stop burning. He eventually did but bumped the Whisper burner on. Eventually he shut the system down.

He got out of the basket and said, "Well, the FAA will take care of this." He repeated it several times. Beth has recently told me that the costs have not been covered yet.

The crew packed the balloon and he would not let me help pack up as I usually do. He wanted to talk to me about how I should "work with Beth" to follow his demand for more crew people and not having students or instructors set up the equipment. He told me this even though I am not an owner or the Chief Instructor, I am a contract pilot. He repeated this several times during our debrief. He also said I, "had to work with Beth to correct all of her lessons/lesson plans" and to "get it through her head to have more crew". He repeated this over and over during our hour long debrief.

Next he called Beth on speaker phone knowing she was flying with someone else that morning and repeated the same things to her, including that instructors and students should not be "hands-on the system".

He wanted to fly only with me and we agreed to fly the next weekend. (We were not able to fly then, so we went out the following weekend.)

Exhibit G

AR 59

<u>September 1</u>

When we met for the second time, Gary brought his assistant, Aaron. Gary deferred to me on where to launch again. Since knew I would be unable to assemble and preflight the balloon, I had another pilot come out to do that while Gary and I, with Aaron, stayed in the truck to go over the flight.

Beth and I had talked about the lessons needed after the damage to the balloon. She wrote out very detailed lesson plans. When I presented them to him, I did not tell him that Beth wrote them. I didn't want to hear how bad they were, based on his previous negative comments about Beth. He told me, "Beth needs all of her lessons to look this way" and "you need to work with her on them".

While giving him instruction on aiming the burners, he commented that Beth had not tightened the Whisper Burner handle. I have not seen anything wrong with it. He also again said, "The carabiners have to be tightened down all the way". He complained about a bolt in the frame that was a tiny bit loose. He again would not use the tie-off that Beth normally uses, saying, "The way Beth does it is not the best way". I stood up to him and told him I don't like the metal hanging down from the frame with the other quick release since it can hurt someone. He asked what tie-off I use and I told him mine was the same as Beth's.

He inflated without issue and after I was onboard, he struggled to release the quick release that he insisted on using. He climbed fast, instead of the slow ascent and ground tracking he had planned.

Throughout the flight he criticized Beth:

"Beth doesn't like short burns. She only wants to use long burns." (Beth is the pilot that taught me how to use the short burns.) "Beth needs to get the Whisper tightened." "You need to get it through her head to get more crew." "You need to get it through her head to debrief right away and not hours later or at breakfast." "Her lessons need to be more detailed, not an outline" "When you give a student a lesson you can't change it last minute."

He also shared with me "complaints" from another student who works for the FAA. During the entire flight he found fault with everything Beth does and with her school. The exception was the instruction I had done with the latest FAA employee. However, all my lessons and training were directed by Beth.

During the debrief he told me, "Tell Beth to close this out." (meaning the paperwork for his recurrency) He again repeated many times, "You need to work with Beth on more crew" even though I have nothing to do with scheduling pilots or crew. He told me I got an A+ for my lesson plans (that were written by Beth) and for all the in-flight instruction.

Overall, the whole time he berated Beth, her equipment and her school while praising me, even for the things she had done without his knowledge.

Respectfully submitted,

*Myia M. Hackett*

Myia M. Hackett
Commercial LTA Pilot

**AR 60**



U.S. Department
of Transportation

**Federal Aviation
Administration**

Flight Standards District Office
1601 Randolph Road, S.E., Suite 200N
Albuquerque, New Mexico 87106
(505) 764-1200, FAX (505) 764-1233

October 25, 2023

Elizabeth Wright-Smith
5001 Crownpoint Court, N.W.
Albuquerque, New Mexico 87120

Based on a review of your termination for cause, the appeal panel was unable to find any justification to overturn the termination of your designation. Therefore, the appeal panel has upheld the original decision to terminate your designation.

Please be advised that this decision is final and exhausts all appeal rights associated with the termination of your designation.

Federal Aviation Administration

**AR 61**

# United States Court of Appeals

for the

TENTH CIRCUIT

| | |
|---|---|
| Elizabeth Wright-Smith, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| Federal Aviation Administration, | ) |
| | ) |
| Respondent. | ) |

## PETITION FOR REVIEW

Pursuant to 49 U.S.C. Section 46110(a), Elizabeth Wright-Smith, a resident of Albuquerque, New Mexico, hereby petitions the court for review of the final order of the Federal Aviation Administration, terminating Ms. Wright-Smith's designation as a pilot examiner, entered on October 25, 2023, and attached hereto as "Exhibit A."

Date: December 21, 2023

BUTT THORNTON & BAEHR PC

/s/ *Sarah L. Shore*
Sarah L. Shore
*Attorneys for Elizabeth Wright-Smith*
P.O. Box 3170
Albuquerque, NM 87190
(505) 884-0777
sshore@btblaw.com

**AR 62**

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that the foregoing was electronically filed through the CM/ECF system on this 21st day of December, 2023, AND I FURTHER CERTIFY that on such date I served a copy of this Petition on the Office of the Chief Counsel of the FAA via FedEx shipping service.

                                          */s/ Sarah L. Shore*

                                          Sarah L. Shore

**AR 63**



U.S. Department
of Transportation
**Federal Aviation
Administration**

Flight Standards District Office
1601 Randolph Road, S.E., Suite 200N
Albuquerque, New Mexico 87106
(505) 764-1200, FAX (505) 764-1233

October 25, 2023

Elizabeth Wright-Smith
5001 Crownpoint Court, N.W.
Albuquerque, New Mexico 87120

Based on a review of your termination for cause, the appeal panel was unable to find any
justification to overturn the termination of your designation. Therefore, the appeal panel has
upheld the original decision to terminate your designation.

Please be advised that this decision is final and exhausts all appeal rights associated with the
termination of your designation.

Federal Aviation Administration

**AR 64**

designee.faa.gov/#/message/view/2451668/false/1842080   

**Termination For Cause (able to appeal)**

**September 7, 2023 03:58 PM**

From:      **System Administrator**

To:      **Elizabeth Christine Wrightsmith;**

← Back

Designee Number: 999995312

Elizabeth Christine Wrightsmith
This letter is to inform you that your Federal Aviation Administration (FAA) designation as a(n) DPE is terminated pursuant to 14 CFR part 183.15(b) and 49 U.S.C. 44702(d).
You must immediately cease exercising the privileges of your designation.
Your designation is being terminated for the following reason:
     • Lack of integrity (for example, making false statements, misrepresenting information, failing to disclose pertinent information, etc)
     • Misconduct (for example, purposefully not following prescribed procedures for gain; etc)
     • Inability to work constructively with FAA or public (for example, failure to return phone calls, follow guidance, exhibit a cooperative attitude, etc.)
Justification: During July 2023, the Albuquerque FSDO received and investigated an FAA Safety Hotline Complaint against the DPE, and based on the comprehensive FAA investigation, the allegations were substantiated.
You may submit a request for appeal by completing the Appeal Request Form, accessible below, no later than 15 calendar days from the date of receipt of this notification. At that time, you should include any and all evidence or statements that you wish to have considered concerning this matter. You will be notified of the outcome of the appeal process within 60 calendar days after our receipt of your written request for appeal.
If you possess any controlled materials provided to you by the FAA, they must be returned immediately. If you have any questions regarding this requirement, please contact your managing specialist.

**Designee Management System (DMS) Administration**

Appeal Request Form



**U.S. DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION
National Policy



**ORDER
8000.95B**

Effective Date:
4/12/22

**SUBJ:** Designee Management Policy

This order is a comprehensive publication establishing policy and procedures for managing all aspects of certain representatives of the Administrator including selection, appointment, orientation, training, oversight, suspension, and termination. This order represents a consolidation of existing policies across Aviation Safety (AVS) Services and Offices: Aircraft Certification Service (AIR), Flight Standards Service (FS), and the Office of Aerospace Medicine (AAM); and new policies within the Air Traffic Safety Oversight Service (AOV). This order also establishes the Designee Management System (DMS), which is a web-based tool designed to standardize the management of designees.

Chris Rocheleau
Acting Associate Administrator for Aviation Safety

**AR 66**

# Table of Contents

*Chapter*                                                                                            *Page*

Volume 1. Common Designee Policy.................................................................................. 1-1
   Chapter 1. General Information ................................................................................. 1-1
   Chapter 2. Application Process.................................................................................. 1-7
   Chapter 3. Selection and Evaluation of a Designee Applicant ........................................... 1-10
   Chapter 4. Designee Appointment............................................................................ 1-12
   Chapter 5. Responsibilities and Obligations of a Designee................................................ 1-13
   Chapter 6. Oversight and Management of a Designee ..................................................... 1-15
   Chapter 7. Training ............................................................................................. 1-22
   Chapter 8. Annual Request for Extension of a Designee's Designation ................................. 1-23
   Chapter 9. Termination of a Designation ................................................................... 1-25
   Chapter 10. Suspension of a Designation ................................................................... 1-29
   Chapter 11. Appealing a Termination for Cause ........................................................... 1-31
   Chapter 12. Other Designee Management Functions ...................................................... 1-33
   Chapter 13. Administrative Information..................................................................... 1-35

Volume 2. AME Designee Policy..................................................................................... 2-1
   Chapter 1. Introduction ........................................................................................ 2-1
   Chapter 2. Application Process................................................................................. 2-2
   Chapter 3. Selection and Evaluation of a Designee Applicant ........................................... 2-5
   Chapter 4. Designee Appointment............................................................................ 2-7
   Chapter 5. Responsibilities and Obligations of a Designee................................................ 2-10
   Chapter 6. Oversight and Management of a Designee ..................................................... 2-13
   Chapter 7. Training ............................................................................................. 2-19
   Chapter 8. Annual Request for Extension of a Designee's Designation ................................. 2-22
   Chapter 9. Termination of a Designation ................................................................... 2-23
   Chapter 10. Suspension of a Designation ................................................................... 2-26
   Chapter 11. Appealing a Termination for Cause ........................................................... 2-27
   Chapter 12. Other Designee Management Functions ...................................................... 2-28

Volume 3. DPE, Admin PE, and SAE Designee Policy ........................................................... 3-1
   Chapter 1. General Information ............................................................................... 3-1
   Chapter 2. Application Process................................................................................. 3-11
   Chapter 3. Selection and Evaluation of a Designee Applicant ........................................... 3-22
   Chapter 4. Designee Appointment............................................................................ 3-26
   Chapter 5. Responsibilities and Obligations of a Designee................................................ 3-28
   Chapter 6. Oversight and Management of a Designee ..................................................... 3-34
   Chapter 7. Training ............................................................................................. 3-50
   Chapter 8. Annual Request for Extension of a Designee's Designation ................................. 3-54
   Chapter 9. Termination of a Designation ................................................................... 3-55
   Chapter 10. Suspension of a Designation ................................................................... 3-56
   Chapter 11. Appealing a Termination for Cause ........................................................... 3-57
   Chapter 12. Other Designee Management Functions ...................................................... 3-58

Volume 4. DADE Designee Policy ................................................................... 4-1
    Chapter 1. General Information ................................................................. 4-1
    Chapter 2. Application Process .................................................................. 4-5
    Chapter 3. Selection and Evaluation of a Designee Applicant ................ 4-8
    Chapter 4. Designee Appointment ........................................................... 4-14
    Chapter 5. Responsibilities and Obligations of a Designee .................... 4-16
    Chapter 6. Oversight and Management of a Designee ............................. 4-22
    Chapter 7. Training .................................................................................. 4-34
    Chapter 8. Annual Request for Extension of a Designee's Designation ........................... 4-39
    Chapter 9. Termination of a Designation ................................................. 4-40
    Chapter 10. Suspension of a Designation ................................................ 4-41
    Chapter 11. Appealing a Termination for Cause ..................................... 4-42
    Chapter 12. Other Designee Management Functions ............................... 4-43

Volume 5. DME, DPRE, and DAR-T Designee Policy ................................ 5-1
    Chapter 1. General Information ................................................................. 5-1
    Chapter 2. Application Process .................................................................. 5-12
    Chapter 3. Selection and Evaluation of a Designee Applicant ................ 5-22
    Chapter 4. Designee Appointment ........................................................... 5-26
    Chapter 5. Responsibilities and Obligations of a Designee .................... 5-29
    Chapter 6. Oversight and Management of a Designee ............................. 5-36
    Chapter 7. Training .................................................................................. 5-54
    Chapter 8. Annual Request for Extension of a Designee's Designation ........................... 5-57
    Chapter 9. Termination of a Designation ................................................. 5-58
    Chapter 10. Suspension of a Designation ................................................ 5-59
    Chapter 11. Appealing a Termination for Cause ..................................... 5-60
    Chapter 12. Other Designee Management Functions ............................... 5-61

Volume 6. APD Designee Policy ................................................................... 6-1
    Chapter 1. General Information ................................................................. 6-1
    Chapter 2. Application Process .................................................................. 6-7
    Chapter 3. Selection and Evaluation of a Designee Applicant ................ 6-9
    Chapter 4. Designee Appointment ........................................................... 6-13
    Chapter 5. Responsibilities and Obligations of a Designee .................... 6-15
    Chapter 6. Oversight and Management of a Designee ............................. 6-19
    Chapter 7. Training .................................................................................. 6-28
    Chapter 8. Annual Request for Extension of a Designee's Designation ........................... 6-31
    Chapter 9. Termination of a Designation ................................................. 6-32
    Chapter 10. Suspension of a Designation ................................................ 6-33
    Chapter 11. Appealing a Termination for Cause ..................................... 6-34
    Chapter 12. Other Designee Management Functions ............................... 6-35

Volume 7. TCE Designee Policy .................................................................... 7-1
    Chapter 1. General Information ................................................................. 7-1
    Chapter 2. Application Process .................................................................. 7-8
    Chapter 3. Selection and Evaluation of a Designee Applicant ................ 7-13
    Chapter 4. Designee Appointment ........................................................... 7-18

Chapter 5. Responsibilities and Obligations of a Designee ................................................. 7-20
Chapter 6. Oversight and Management of a Designee ...................................................... 7-26
Chapter 7. Training ........................................................................................................... 7-38
Chapter 8. Annual Request for Extension of a Designee's Designation ............................ 7-43
Chapter 9. Termination of a Designation .......................................................................... 7-44
Chapter 10. Suspension of a Designation ......................................................................... 7-45
Chapter 11. Appealing a Termination for Cause ............................................................... 7-46
Chapter 12. Other Designee Management Functions ........................................................ 7-47

Volume 8. DMIR and DAR-F Designee Policy ...................................................................... 8-1
Chapter 1. General Information ........................................................................................... 8-1
Chapter 2. Application Process .......................................................................................... 8-2
Chapter 3. Selection and Evaluation of a Designee Applicant ......................................... 8-14
Chapter 4. Designee Appointment ................................................................................... 8-17
Chapter 5. Responsibilities and Obligations of a Designee ............................................. 8-21
Chapter 6. Oversight and Management of a Designee ...................................................... 8-23
Chapter 7. Training ........................................................................................................... 8-32
Chapter 8. Annual Request for Extension of a Designation .............................................. 8-34
Chapter 9. Termination of a Designation .......................................................................... 8-35
Chapter 10. Suspension of a Designation ......................................................................... 8-39
Chapter 11. Appealing a Termination for Cause ............................................................... 8-41
Chapter 12. Other Designee Management Functions ........................................................ 8-42

Volume 9. DER Designee Policy ......................................................................................... 9-1
Chapter 1. General Information ........................................................................................... 9-1
Chapter 2. Application Process .......................................................................................... 9-5
Chapter 3. Selection and Evaluation of a Designee Applicant ......................................... 9-17
Chapter 4. Designee Appointment ................................................................................... 9-20
Chapter 5. Responsibilities and Obligations of a Designee ............................................. 9-23
Chapter 6. Oversight and Management of a Designee ...................................................... 9-24
Chapter 7. Training ........................................................................................................... 9-31
Chapter 8. Annual Request for Extension of a Designee's Designation. ........................... 9-33
Chapter 9. Termination of a Designation .......................................................................... 9-34
Chapter 10. Suspension of a Designation ......................................................................... 9-35
Chapter 11. Appealing a Termination for Cause ............................................................... 9-36
Chapter 12. Other Designee Management Functions ........................................................ 9-37

Volume 10. DCTO-E Designee Policy ............................................................................... 10-1
Chapter 1. General Information ......................................................................................... 10-1
Chapter 2. Application Process ........................................................................................ 10-2
Chapter 3. Selection and Evaluation of a Designee Applicant ......................................... 10-4
Chapter 4. Designee Appointment ................................................................................... 10-6
Chapter 5. Responsibilities and Obligations of a Designee ............................................. 10-8
Chapter 6. Oversight and Management of a Designee .................................................... 10-10
Chapter 7. Training ......................................................................................................... 10-17
Chapter 8. Renewal of Designee Appointment ............................................................... 10-20
Chapter 10. Suspension of a Designation ....................................................................... 10-22

**AR 69**

Chapter 11. Appealing a Termination for Cause ............................................... 10-23
Chapter 12. Other Designee Management Functions ........................................ 10-24

Appendix A. Definitions .................................................................................... A-1
Appendix B. Acronym List ................................................................................. B-1

## List of Tables

*Table*                                                                    *Page*

Table 1-1. Offices Responsible for Designee Policy ........................................... 1-2
Table 1-2. Overall Performance Result ............................................................... 1-18
Table 3-1. Types of Designees ............................................................................ 3-2
Table 3-2. Certificate Level Testing/Checking Authorizations ........................... 3-3
Table 3-3. Aircraft Category/Class/Privileges Testing/Checking Authorizations.... 3-5
Table 3-4. Administrative Authorizations ........................................................... 3-7
Table 3-5. Specific Eligibility Requirements for Designation as a PE and/or a CE.............. 3-15
Table 3-6. Specific Eligibility Requirements for Designation as an LAE, a CIRE,
    an ATPE, a PPE, and/or a Type Rating Examiner............................... 3-16
Table 3-7. Specific Eligibility Requirements for Designation as an SPE............. 3-17
Table 3-8. Specific Eligibility Requirements for Designation as a VAE, VFEE, and EAE... 3-19
Table 3-9. PIC Experience Requirements ............................................................ 3-31
Table 5-1. Standard Airworthiness Certification Function Codes ....................... 5-2
Table 5-2. Standard Airworthiness Certification Function Codes—Primary and
    Restricted Categories .......................................................................... 5-3
Table 5-3. Limited Category Function Codes ...................................................... 5-4
Table 5-4. Experimental Category for the Purposes of Market Survey, R&D, or Crew
    Training  Function Codes..................................................................... 5-4
Table 5-5. Experimental Category for the Purposes of Exhibition and/or Air Racing
    Function Codes ................................................................................... 5-5
Table 5-6. Experimental Category for the Purposes of Operating Amateur-Built Aircraft
    Function Codes ................................................................................... 5-6
Table 5-7. Light-Sport Category and Experimental Category for the Purpose of Operating
    Light-Sport Aircraft Function Codes ................................................... 5-7
Table 5-8. Export Approvals Function Codes ..................................................... 5-8
Table 5-9. Domestic Approval of Engines, Propellers, and Articles Function Codes.............. 5-8
Table 5-10. Other Authorizations Function Codes .............................................. 5-9
Table 6-1. Certificate Level Testing Authorizations ........................................... 6-2
Table 6-2. Aircraft Category and Class Authorizations....................................... 6-2
Table 6-3. Administrative Authorizations ........................................................... 6-3
Table 6-4. Special Authorizations....................................................................... 6-3
Table 6-5. FAA-Conducted Training and Meeting Requirements ...................... 6-29
Table 7-1. Certificate Level Testing and Checking Authorizations .................... 7-2
Table 7-2. Aircraft Category and Class Authorizations....................................... 7-3
Table 7-3. Administrative Authorizations ........................................................... 7-4
Table 7-4. Special Authorizations....................................................................... 7-5
Table 7-5. TCE Training Requirements................................................................ 7-39

Table 7-6. FAA-Conducted Training and Meeting Requirements ............................................ 7-41
Table 8-1. Minimum Qualification Requirements ................................................................... 8-6
Table 10-1. FAA-Conducted Training and Meeting Requirements .................................... 10-18
Table A-1. Designee Management Definitions—Common ....................................................... A-1
Table A-2. Designee Management Definitions—AME ............................................................. A-3
Table A-3. Designee Management Definitions—DPE, Admin PE, and SAE ......................... A-4
Table A-4. Designee Management Definitions—DADE ............................................................ A-6
Table A-5. Designee Management Definitions—DME, DPRE, and DAR-T ......................... A-6
Table A-6. Designee Management Definitions—APD .............................................................. A-8
Table A-7. Designee Management Definitions—TCE .............................................................. A-8
Table A-8. Designee Management Definitions—DMIR and DAR-F ...................................... A-9
Table A-9. Designee Management Definitions—DER ............................................................ A-12

## List of Figures

*Figure*                                                                                          *Page*

Figure 3-1. High-Level Selection Process Flow .................................................................... 3-22
Figure 3-2. High-Level Appointment Process Flow .............................................................. 3-26
Figure 4-1. High-Level Selection Process Flow ...................................................................... 4-8
Figure 4-2. High-Level Appointment Process Flow .............................................................. 4-14
Figure 4-3. DADE Checklist ................................................................................................... 4-20
Figure 4-4. Sample Designated Aircraft Dispatcher Examiner Surveillance Checklist ......... 4-33
Figure 4-5. Sample Annual Meeting—Combined Safety Standardization Meeting,
      FAA Briefing, and Recurrent Training Agenda .................................................. 4-37
Figure 5-1. High-Level Selection Process Flow .................................................................... 5-22
Figure 5-2. High-Level Appointment Process Flow .............................................................. 5-26
Figure 5-3. Designee Post-Activity Attachments .................................................................. 5-53
Figure 6-1. High-Level Selection Process Flow ...................................................................... 6-9
Figure 6-2. High-Level Appointment Process Flow .............................................................. 6-13
Figure 7-1. High-Level Selection Process Flow .................................................................... 7-13
Figure 7-2. High-Level Appointment Process Flow .............................................................. 7-18
Figure 8-1. High-Level Selection Process Flow .................................................................... 8-14
Figure 8-2. High-Level Appointment Process Flow .............................................................. 8-17
Figure 8-3. Performance Measures and Oversight Activity Results ...................................... 8-26
Figure 10-1. High-Level Selection Process Flow .................................................................. 10-4
Figure 10-2. High-Level Appointment Process Flow ............................................................ 10-6
Figure 10-3. Performance Measures and Oversight Activity Results .................................... 10-14

## VOLUME 1.  COMMON DESIGNEE POLICY

## Chapter 1.  General Information

## Section 1.  Introduction

**1.   Purpose of This Order.** This order establishes policy for integrated designee management across the Office of Aerospace Medicine (AAM), Aircraft Certification Service (AIR), Flight Standards Service (FS), and Air Traffic Safety Oversight Service (AOV) as well as the use of the Designee Management System (DMS), which is a web-based tool designed to standardize the management of designees.

 **a.**   This order consolidates orders across Aviation Safety (AVS) Services and Offices and establishes a common policy section for all designees and provides respective volumes for the specific designee types. These policy changes are global in nature and, therefore, are not listed individually.

 **b.**   All users of this order must familiarize themselves with its contents and comply with the instructions and guidance contained herein. Many of the procedural functions are not included in the order since they are now incorporated into the functionality of DMS.

**2.   Audience.** The primary audience for this order is AVS designees, Federal Aviation Administration (FAA) managing specialists, and FAA personnel who may interact with designees or designee programs, including FAA management, operational, and administrative employees as appropriate. The secondary audience is persons seeking to become designees.

**3.   Where You Can Find This Order.** You can find this order on the MyFAA employee website at https://employees.faa.gov/tools_resources/orders_notices, the Flight Standards Information Management System (FSIMS) at https://fsims.avs.faa.gov, and the Dynamic Regulatory System (DRS) at https://drs.faa.gov. Operators and the public can find this order on the FAA's website at https://www.faa.gov/regulations_policies/orders_notices, FSIMS at https://fsims.faa.gov, and the DRS.

**4.   What This Order Cancels.** This order cancels FAA Order 8000.95A, Designee Management Policy, dated December 7, 2020.

**5.   How This Order Is Organized.** This order contains ten volumes. Volume 1 contains common policy applicable to all AVS designee types. Volumes 2 through 10 contain policy applicable to specific designee types. Together, these volumes represent the designee management policy for AVS designees, excluding holders of Organization Designation Authorization (ODA).

**6.   Implementation.** Compliance with this order will be phased in by designee type(s) and achieved in accordance with the implementation plans established by each Service/Office for their respective designee types. Implementation will involve transition from existing management and information systems and designee management policies to the DMS policy and automation. Affected employees and designees will be notified through directive/memo or other means of communication when each implementation will begin and end, as well as when full

**AR 72**

compliance with this policy is required. FAA employee access and designee login credentials and instructions will be provided at the beginning of each implementation. Timing for release and completion of each implementation plan will depend upon:

    **a.** Availability of the DMS policy and automation for the respective designee type.

    **b.** Completion of transition training in the electronic Learning Management System (eLMS) by the managing specialist and their respective management officials, if required.

**7. Authority to Change This Order.** AAM, AIR, FS, and AOV have the authority to revise material in this order. Depending on the change, the appropriate office (AAM, AIR, FS, or AOV) will initiate the change and coordinate with the other organizations to ensure consistency with DMS policy. Requests to deviate from this order will be sent to the responsible AVS Service/Office for evaluation and approval/disapproval. Deviation requests affecting more than one organization or that may require changes to the automation will be coordinated across the affected organizations and with the DMS program office.

**8. Responsible Offices for Designee Policy.**

### Table 1-1. Offices Responsible for Designee Policy

| Designee Type | Office |
|---|---|
| Aviation Medical Examiner (AME) | AAM-400 |
| Aircrew Program Designee (APD) | AFS-600 |
| Designated Aircraft Dispatcher Examiner (DADE) | AFS-600 |
| Training Center Evaluator (TCE) | AFS-600 |
| Designated Mechanic Examiner (DME), Designated Parachute Rigger Examiner (DPRE), and Designated Airworthiness Representative—Maintenance (DAR-T) | AFS-600 |
| Designated Pilot Examiner (DPE), Administrative Pilot Examiner (Admin PE), and Specialty Aircraft Examiner (SAE) | AFS-600 |
| Designated Engineering Representatives (DER) | AIR-600 |
| Designated Airworthiness Representative—Manufacturing (DAR-F) and Designated Manufacturing Inspection Representative (DMIR) | AIR-600 |
| Designated Control Tower Operator Examiner (DCTO-E) | AOV-200 |

**9. Directive and Guidance Information.**

    **a. Directive Information.**

       (1) This type of information is directive in nature and contains terms such as "shall," "will," or "must." These words indicate that the actions are mandatory. "Shall not" prohibits the action.

       (2) The use of these terms does not allow for flexibility.

**AR 73**

**b. Guidance Information.**

(1) This type of information is considered guidance and contains terms such as "should," "can," or "may."

(2) These terms indicate actions that may not be mandatory; however, they are strongly encouraged, permissive, and allow flexibility.

**10. Designation of a Designee Authorization.**

**a. Power to Delegate.** Title 49 of the United States Code (49 U.S.C.) § 44702 empowers the Administrator to "...delegate to a qualified private person, or to an employee under the supervision of that person, a matter related to the examination, testing, and inspection necessary to issue a certificate under this chapter; and issuing the certificate."

**b. Designation Authority.** Title 14 of the Code of Federal Regulations (14 CFR) Part 183, Representatives of the Administrator, prescribes the requirements for designating a private person or an organization to act as a representative of the Administrator.

**11. Employee Status.** A designee is not considered an employee of the U.S. Government and is not federally protected for the work performed or the decisions made as a designee.

**12. Role of DMS.** DMS will collect, store and process data and information associated with designees and the designee management processes in accordance with FAA recordkeeping requirements. DMS may utilize information from other FAA systems where appropriate and other FAA systems may utilize information from DMS where appropriate.

**13. Technical Support.** For questions regarding the operation of DMS, contact the AVS National IT Service Desk at 844-322-6948 or via email at helpdesk@faa.gov. For non-system-related questions, please visit the DMS web page to find the email addresses for various designee types.

## Section 2.  Designee Overview

**1.  Legal Authority.** Title 49 U.S.C. § 44702(d) is the statutory authority to delegate private persons to perform certain authorized functions on behalf of the FAA. These persons are called designees. The designee's function is vital to enhancing the FAA's public service role and improving overall safety in the National Airspace System (NAS). The FAA appoints designees to provide airman and aircraft certifications and other services to the public in accordance with FAA policy, guidance, and regulations.

**2.  Vision of Delegation Management Programs.** The FAA delegation programs leverage agency resources; respond to changes in workloads and aviation industry needs; demand the highest technical and ethical standards from designees; and ensure public, governmental, and industry confidence in aviation safety through strict compliance with certification policies and regulations.

**AR 74**

**3. Designation Principles.** The FAA bases the designation programs on the following principles, which are implicit in the day-to-day management of these programs:

**a. Privilege.** Designation is a privilege, not a right. The FAA may rescind a designation at any time for any reason the Administrator considers appropriate.

**b. Knowledgeable.** Designees must be knowledgeable, qualified, and competent.

**c. Risk-Based Approach.** Management of designation programs must employ a risk-based approach.

**d. Essential.** Designation programs are essential.

**e. Need and Ability.** A need for and ability to manage a designee must exist for all designees.

**4. Designee Types Covered by This Order.** Specific designee types covered by this order include:

**a. Office of Aerospace Medicine (AAM).**

(1) Aviation Medical Examiner (AME).

(a) Civilian.

(b) Military.

(c) Federal.

(d) Official.

**b. Flight Standards Service (FS).**

(1) Air Transportation Designee.

(a) Aircrew Program Designee (APD).[1]

(b) Designated Aircraft Dispatcher Examiner (DADE).

(c) Training Center Evaluator (TCE).

(2) Administrative Pilot Examiners (Admin PE).

(a) Airman Certification Representative (ACR) for a 14 CFR Part 141 Pilot School with Examining Authority (ACR-141).

---

[1] For purposes of this order, the term "Aircrew Program Designee" encompasses "aircrew designated examiners" in 14 CFR part 121.

**AR 75**

(b) ACR for a Flight Instructor Refresher Course (ACR-FIRC).

(3) Designated Pilot Examiner (DPE).

(a) Private Pilot Examiner (PE).

(b) Commercial Pilot Examiner (CE).

(c) Commercial and Instrument Rating Examiner (CIRE).

(d) Flight Instructor Examiner (FIE).

(e) Pilot Proficiency Examiner (PPE).[2]

(4) Specialty Aircraft Examiners (SAE).

(a) Sport Pilot Examiner (SPE).

(b) Sport Pilot Flight Instructor Examiner (SPFIE).

(c) Experimental Aircraft Examiner (EAE).

(d) Vintage Flight Engineer Examiner (VFEE).

(e) Vintage Aircraft Examiner (VAE).

(f) Limited Aircraft Examiner (LAE).

(5) Designated Airworthiness Representative (DAR)—Maintenance (DAR-T).

(6) Designated Mechanic Examiner (DME).

(7) Designated Parachute Rigger Examiner (DPRE).

c. **Aircraft Certification Service (AIR).**

(1) Designated Engineering Representatives (DER).

(a) Company (DER-Y).

(b) Consultant (DER-T).

(2) Airworthiness Designee.

(a) DAR—Manufacturing (DAR-F).

---

[2] The FAA uses the DMS to authorize individuals to conduct pilot proficiency checks under 14 CFR part 61, § 61.58(d)(1).

**AR 76**

(b) Designated Manufacturing Inspection Representative (DMIR).

**d. Air Traffic Safety Oversight Service (AOV).** Designated Control Tower Operator Examiner (DCTO-E).

**5. Risk-Based Principles.**

**a. Risk-Based Management.** Risk-based management is a continuous process of identifying, analyzing, evaluating, controlling, and monitoring risks that exist with the designee program. DMS captures and manages the data, including the substantiation and documentation of the decisions.

**b. Risk Management Strategy (RMS).** RMS provides the managing specialist with a methodology for managing hazards and the associated risks related to designee performance. DMS provides the managing specialist with a means to document and track the performance of a designee utilizing the oversight module. The oversight module allows the managing specialist to review and evaluate the disposition of any risks associated with discrepancy findings. This methodology may include the following:

(1) Identifying the discrepancy and determining the hazard;

(2) Analyzing and assessing the risk;

(3) Making a decision;

(4) Implementing the decision; and

(5) Monitoring the effectiveness of the decision.

**6. Performance.** Throughout the oversight process for each designee, there are both automated and manually initiated determinations that are documented that may trigger specific actions by the managing specialist. Using risk-based principles provides a comprehensive method of managing designees.

## Section 3.  Minimum Qualifications Overview

**1. Minimum Qualifications of Managing Specialists.** The minimum qualifications for managing specialists are established by the responsible offices for designee policy. See Chapter 1, General Information, of each volume of the designee type-specific volumes for details.

## Chapter 2.  Application Process

**1.  Purpose.** This chapter describes the designee application process. This chapter and the corresponding designation type-specific volumes constitute the application process policy.

**2.  General.**

**a.  Application Information.** To learn about the designee management program and/or initiate the designee application process, qualified individuals should access the FAA Designee website at https://www.faa.gov/other_visit/aviation_industry/designees_delegations/dms/.

**b.  Eligibility.** Anyone may apply to be a designee; however, DMS will not accept applications from the following:

(1) Current FAA employees.

(2) Former designees who have been terminated for cause.

**c.  Multiple Designee Types.**

(1) The FAA may appoint an individual to more than one type of designation. Once appointed, any designee holding multiple designations will have only one designee number.

(2) Designee applicants must complete a separate application for each designation type sought. Each designation is a separate appointment.

**d.  References.** The applicant may provide the following:

(1) Three verifiable character references to substantiate that the applicant possesses integrity and sound judgment.

(2) Three verifiable technical references to substantiate that the applicant possesses the required technical expertise for the designation sought. These references may be the same individuals used as character references.

**3.  Qualifications.** In addition to the requirements in subparagraph 2b above, applicants may also have additional eligibility requirements which can be found in the appropriate designation type-specific volumes of this order.

**a.  Minimum Qualifications.** The designee applicant must:

(1) Meet FAA English language standards as described in Advisory Circular (AC) 60-28, FAA English Language Standard for an FAA Certificate Issued Under 14 CFR Parts 61, 63, 65, and 107; and

(2) Be at least 23 years of age.

**b.   Character.** At all times, the designee applicant must:

(1) Have a high degree of integrity, even when not exercising their delegated authority;

(2) Have a cooperative attitude;

(3) Be able to exercise sound judgment;

(4) Be engaged in the aviation industry;

(5) Have a reputation for dependability and professionalism; and

(6) Be able to maintain the highest degree of objectivity while performing authorized functions.

**c.   Technical Experience.** The applicant must have up-to-date extensive knowledge and experience that is pertinent to the designation being sought.

**d.   FAA Interaction.** Any previous working relationship the applicant had with the FAA must have been positive.

**4.   Disqualifiers.** Applicants will be disqualified for any of the following reasons:

**a.   Terminated for Cause.** See Chapter 9, Termination of a Designation, for details.

**b.   Convictions and Felonies.** Having, within the past 7 years:

(1) Been convicted of any violation of any local, state, or Federal law pertaining to drugs or alcohol.

(2) Been convicted of any felony offenses. A felony offense is considered a conviction where the punishment could have been greater than 1 year regardless of the sentence.

(3) Been imprisoned, been on probation, or is on parole because of a felony conviction (including civilian or military felonies, firearms, or explosive violations).

(4) Been other than "honorably" discharged from the military.

(5) Had an airman certificate (other than medical), rating, or authorization (or foreign equivalent) suspended, revoked, or paid a civil penalty as a result of a violation of any FAA or other Civil Aviation Authority (CAA) regulations (foreign or domestic).

**c.   Current Disqualifiers.** Is currently under investigation, charged indictments, or has a pending action for the items described in subparagraph 4b of this chapter.

**5.   Privilege, Not a Right.** Successfully meeting the minimum qualifications does not guarantee appointment as a designee. During the application process in DMS, the designee applicant will be required to acknowledge the following in DMS:

**AR 79**

    **a.**  Designation is a privilege, not a right.

    **b.**  The FAA can terminate any designation at any time, for any reason the Administrator considers appropriate.

**6.  Post-Application.**

    **a.  Retention of Application Data.** DMS saves all application data in accordance with FAA Order 1350.14, Records Management.

    **b.  Notification.** DMS will automatically notify designee applicants regarding the status of their application by sending a generic email to check the DMS message center. This email is sent to the email address provided during the registration/application process.

    **c.  Updating Applications.** Applicants must update their applications whenever information changes and they must validate and verify the application data at least every 12 calendar-months. Failure to maintain up-to-date information may affect selection eligibility and appointment as a designee. An application that is updated will remain active in DMS until the applicant is selected or cancels the application.

    **d.  Cancellation.** A designee applicant may cancel an application at any time, for any reason, in DMS.

**AR 80**

## Chapter 3.  Selection and Evaluation of a Designee Applicant

**1.  Purpose.** This chapter describes the common policy related to the selection and evaluation of a designee applicant. Selection refers to the identification and evaluation of qualified designee applicants that best meet the FAA's needs. This chapter and the corresponding designation type-specific volumes constitute the policy for the selection and evaluation of a designee applicant.

**2.  General.**

    **a.  Qualified Applicants.** DMS will provide a list of qualified applicants that meet the needs identified by the requesting FAA office.

    **b.  Selection Timeframe.** Once DMS presents a list of qualified applicants, the selecting official should complete the selection action within 30 calendar-days.

**3.  Need and Ability to Manage.** The FAA must show need for specific functions to be delegated and, subsequently, the ability to manage a designee performing those functions before a designee can be appointed. The managing FAA office, within its sole discretion, determines the need for and ability to manage a designee. The selecting official at the managing FAA office must validate the need and ability to manage an additional designee by answering a series of questions during the selection process in DMS.

    **a.  Considerations for Determining Specific Need.**

        (1) The FAA cannot support the certification work and need with existing designees.

        (2) The activity in the office has increased or is forecasted to increase and cannot be supported with existing designees.

        (3) The FAA has lost an employee or designee resource.

        (4) The need for a new designee is driven by the needs of the public and not by the impact on other existing designees or entities.

    **b.  Considerations for Determining Ability to Manage.**

        (1) The managing office staff has the technical skills and knowledge to manage the designee.

        (2) The existing and/or projected office workload allows the office to effectively manage the designee.

        (3) Adequate funds (e.g., travel allocation) exist to oversee the additional or existing designee.

**4. Requesting Qualified Applicants.**

   **a. List of Qualified Applicants.** Once the FAA establishes the need and ability to manage a designee, the selecting official can request a list of qualified applicants from DMS. DMS will search active applicants to identify applicants that most closely match the specified criteria.

   **b. Deviation from Minimum Qualifications.** If no qualified candidates are available within DMS, an appointing official may request a deviation from the minimum qualification requirements if:

      (1) The FAA demonstrates a significant need for the appointment, and

      (2) The applicant meets an equivalent qualification. (See the appropriate designee type-specific volume for more information.)

**5. Evaluation.** The following tasks are part of the evaluation process:

   **a. Evaluating Search Returns.** Once DMS has generated a list of applicant(s) based on the search criteria, the selecting official may choose to review the applications prior to assigning personnel to evaluate the applicant's qualifications. Determining which applicants will be evaluated for appointment is at the sole discretion of the selecting official.

   **b. Assigning Evaluation Panel Lead.** Once the selecting official determines which applicants will be evaluated for appointment, DMS will prompt the selecting official to assign personnel to conduct an evaluation of the applicant based on designee type-specific policies.

   **c. Reviewing Application for Minimum Qualifications.** For each applicant, the personnel assigned to evaluate the application will review the application for completeness to ensure that all minimum qualifications have been met.

   **d. Completing Evaluation Checklist.** The evaluation panel lead, depending on the designee type-specific policies, completes an evaluation checklist in DMS for each applicant being evaluated. See Chapter 3 in each designee-specific volume for more information.

## Chapter 4.  Designee Appointment

**1.  Purpose.** This chapter describes the common policy associated with the appointment of a selected qualified applicant. This chapter and the corresponding designation type-specific volumes constitute the policy for designee appointment.

**2.  General.**

    **a.  Designee Number.** During the application process, DMS assigns a unique nine-digit identification number known as the designee number. However, this number is not known to applicants and only visible to the designee once appointed. This designee number is used in documentation to identify the work and certifications completed by the designee when authorized by the Administrator.

    **b.  Certificate Letter of Authority (CLOA).** For each appointment, DMS generates and stores a CLOA that serves as the certificate of authority, certificate of designation, and the identification card (ID cards are issued to AMEs only) as required by part 183. The CLOA provides a detailed description of the designee's authorities, limitations, and associated expiration as contained within DMS. A CLOA is available to the designee for each type of designation held and serves as the record of the designee's authority. Authorized users can view a designee's authority in DMS. A designee may print a copy of the CLOA but it is not required.

**3.  Appointment Duration.** Appointment duration is 1 year from the appointment date. See Volume 1, Chapter 8, Annual Request for Extension of a Designee's Designation, and the designee type-specific policy for considerations to extend the designation beyond the expiration date.

**AR 83**

## Chapter 5.  Responsibilities and Obligations of a Designee

**1.  Purpose.** This chapter describes the common policy associated with the responsibilities and obligations of a designee. This chapter and the corresponding designation type-specific volumes constitute responsibilities and obligations of a designee.

**2.  Responsibilities.** A designee must:

**a.  Represent the Administrator.** Each designee must represent the Administrator in a manner that reflects positively on the FAA at all times.

**b.  Conduct Approved Activities.** Each designee must conduct only those activities approved in DMS.

**c.  Follow Policy.** Designees must follow all requirements found in regulations, orders, and other policies related to the functions they perform.

**d.  Maintain Skills and Knowledge.** Designees must maintain technical skill and knowledge of subject matter specific to the designation held.

**e.  Exhibit Sound Judgment.** Designees must display sound judgment at all times.

**f.  Exhibit Integrity.** Designees must show a high degree of integrity, responsibility, and professionalism at all times.

**3.  Ongoing Requirements.** In addition to maintaining minimum qualifications as specified in this and the designee type-specific volumes, all designees must continue to meet the following requirements:

**a.  Use DMS.** Designees must use DMS as directed in this order. Designees have the responsibility to read and respond to DMS messages and provide requested information within DMS, as directed, in a timely manner.

**b.  Maintain Contact Information.** Designees must update their DMS profile when changes occur and review their profile at least annually.

**c.  Access to Internet.** Designees must have access to DMS and email through the internet.

(1) The designee is responsible for accessing DMS and checking DMS messages, notifications, and email on a regular and recurring basis.

(2) The designee is responsible for scanning and uploading documents required for designation.

**d.  Attend Required Training.** Designees must comply with minimum training requirements.

    **e.  Attend Required Meetings.** Designees must comply with meeting requirements.

**4.  Other.** Designees must maintain other requirements deemed necessary by the appointing office.

## Chapter 6.  Oversight and Management of a Designee

**1.  Purpose.** This chapter describes the common policy associated with the oversight and management of a designee. This chapter and the corresponding designation type-specific volumes constitute the policy for oversight and management of a designee.

**2.  General.**

    **a.  Oversight Principles.**

        (1) Promote Safety. A primary responsibility of the FAA is to promote safety through systematic oversight of industry stakeholders, including designees. Information generated from oversight programs permits the FAA to identify safety hazards, mitigate risk, and enhance aviation safety. In order for oversight programs to be effective, they must be carefully planned and executed during the conduct of specific inspection activities.

        (2) Evaluate Performance. The objective of an oversight program is to ensure that the designee performs to the standards and expectations set forth by the FAA in its policies and regulations. Oversight is not merely an isolated event or series of activities. Oversight results should be considered in total to provide a high-level perspective of a designee's performance over time.

    **b.  Managing Office and Managing Specialist.**

        (1) Designation Type. Designees have a managing office and managing specialist for each designation type. If the designee holds more than one type of designation, a designee may have more than one managing office and more than one managing specialist.

        (2) Area of Responsibility. The FAA expects designees to perform the majority of their functions within the bounds of that managing office's area of responsibility unless otherwise noted in the designee specific-type volume.

        (3) Regulatory Oversight Responsibility. Managing specialists have regulatory oversight responsibility of designees and must monitor them to ensure that they continue to meet the requirements of their designations. A comprehensive oversight plan enables managing specialists to:

            (a) Determine the designee's compliance with regulatory requirements, guidance, policy, and safe operating practices;

            (b) Validate the corrective actions;

            (c) Detect changes as they occur in the operational environment; and

            (d) Detect the need for regulatory, managerial, and operational changes.

**c.  Oversight and DMS.** The FAA uses DMS to record the outcomes of oversight activities for a designee which may vary depending on the designee type. By documenting oversight activity in DMS, the FAA can make an overall assessment of the designee's performance.

(1) Oversight Characteristics. In DMS, oversight activities have the following characteristics:

(a) A definite beginning and a definite end;

(b) Defined procedures;

(c) Specific objectives; and

(d) A required report of findings.

(2) DMS Oversight Activities. The following oversight activities are available in DMS for most designee types:

(a) Direct observation;

(b) Document completed work review;

(c) Document results of investigation or inquiry;

(d) Document designee interaction;

(e) Document designee training;

(f) Document applicant interview results; and

(g) Create overall performance evaluation (OPE).

(3) DMS Management Tools. The following management tools are available in DMS dependent on the designee type:

(a) Create planned activity;

(b) Record feedback;

(c) Send note to designee; and

(d) Document annual meeting.

**d.  Performance Measures.** For many of the oversight activities, the managing specialist should use the following performance measures to determine designee performance:

(1) Technical. The designee demonstrates sufficient knowledge, skill, and ability to conduct authorized tasks within established guidance and standards. The designee possesses an

**AR 87**

expert level of knowledge and skill, understands and uses appropriate terminology, uses the correct equipment, applies appropriate standards, and accurately interprets results.

(2) Procedural. The designee demonstrates the ability to complete administrative functions correctly. The designee accurately completes and issues appropriate documentation, submits required data, follows established procedures, and complies with all regulations, orders, and directives.

(3) Professional. The designee conducts activities in an ethical, courteous, and conscientious manner reflecting highly on the Administrator. The designee presents a cooperative attitude and demonstrates integrity, tact, and diplomacy when dealing with industry and the FAA. The designee communicates effectively in a manner that reflects positively on the FAA, both orally and written.

**3. Oversight Actions.** Managing specialists may use DMS to plan but must use DMS to document the outcome of oversight activities.

**a. Planning an Oversight Activity.** DMS allows managing specialists to schedule an oversight activity.

(1) Managing specialists should use risk management principles when planning oversight.

(2) Managing specialists should review the designee's previous oversight outcomes as well as current activities, records, and policy as part of the planning.

**b. Oversight Activity.** For a list and explanation of oversight activities applicable to a specific designee type, see Chapter 6, Oversight and Management of a Designee, in the respective designee type-specific volume.

**c. Outcomes of Oversight Activities.**

(1) For some oversight activities, the managing specialist must select from three general categories in DMS for the overall ranking of the oversight activity: Satisfactory, Needs Improvement, and Unsatisfactory. If the designee's oversight outcome results in "Needs Improvement" or "Unsatisfactory," the managing specialist must enter descriptive text in the appropriate performance measure category(ies).

(2) Additionally, if the designee's oversight outcome results in "Needs Improvement" or "Unsatisfactory," the managing specialist must also determine and record appropriate followup action(s). For more detail on followup actions, see Table 1-2, Overall Performance Result, and Paragraph 4, Followup Actions, in this chapter, as well as the performance evaluation information in Chapter 6 of each designee type-specific volume.

**AR 88**

d. **Performance Evaluation.**

(1) At the end of the performance period, the managing specialist conducts a consolidated review of the designee's documented oversight activity and other data available and recorded in DMS.

(2) Based on an analysis of the information above and considering risk-based elements, the managing specialist selects an overall performance rating (Satisfactory, Unsatisfactory, or Needs Improvement) and any followup actions, if required. See Table 1-2 below.

(3) If the performance evaluation rating is "Needs Improvement" or "Unsatisfactory," the next performance evaluation must be completed within 6 calendar-months from the previous performance evaluation date. If the performance evaluation result is "Satisfactory," the due date for the next performance evaluation is between 12 and 36 calendar-months. See Chapter 6 in the respective designee type-specific volumes for more information.

(4) If the OPE rating requires a 6-month followup, the next performance evaluation of the designee must be a "Satisfactory" rating or the designee will be terminated.

### Table 1-2. Overall Performance Result

| Overall Performance Result | | | |
|---|---|---|---|
| The managing specialist will choose the overall rating that best represents the overall performance result of the designee during the performance period: | | | |
| **Overall Rating** | **Required Action Against Designee Authority** | **Followup Actions** | **Performance Evaluation Required w/in 6 Months?*** |
| **Satisfactory** | None | None | No |
| **Needs Improvement** | See designee type-specific volume, as applicable | Plan and execute an oversight activity | Yes |
| **Unsatisfactory** | Suspend* | Plan and execute a corrective action activity | Yes |
| | Reduce/Restrict Authority | Change authority, plan and execute oversight activity | Yes |
| | Terminate | Terminate | N/A |

\* Requires description of planned followup activity.

**4. Followup Actions.** Depending on the issues involved, additional followup or oversight may be needed to ensure that the deficiency has been corrected. The intent of the followup action is to correct the deficiency using the most appropriate method. The following options are available to provide support for designee management:

> **Note:** If suspension or termination is required, please see the designee type-specific "Suspension of a Designation" and "Termination of a Designation" chapters for more information. For "Reduce Authority" decisions, see subparagraph 5b below.

**a. Counseling.** Managing specialists may use counseling as a type of corrective action to follow up from a specific event, an oversight activity, or to address specific performance issues. The managing specialist must record the results of the counseling session in DMS.

**b. Additional Training.**

(1) Managing specialists may prescribe additional training to correct a deficiency related to a specific event, an oversight activity, or to address specific performance issues.

(2) If the deficiency is such that the designee is unable to perform authorized functions correctly, the managing specialist may initiate the suspension process to suspend the designation or specific authority until the designee completes the training.

**5. Designee Management Functions.** Since the designee is performing duties on behalf of the FAA, the managing specialist should ensure that the designee has the ability and authority to perform authorized functions. If the managing specialist or the designee determines that the authorized functions are inconsistent with the work the designee will perform, DMS provides the ability to expand or reduce authorities and change limitations.

**a. Request for Additional Authorizations or Limitations.**

(1) Authorities can be expanded and limitations changed on an existing designation only.

(2) When designees believe that they are qualified to perform additional authorized tasks within their designee type, other than those that the FAA currently authorizes, they may request the change through DMS.

> **Note:** In some cases, the managing specialist may also initiate this process in DMS.

(3) The selecting official will review the request and determine if the added authority is needed and, if so, make a recommendation to the appointing official.

(4) The appointing official must approve all requests for additional authorizations or limitations in DMS. In order for the appointing official to approve the request, the designee must meet all requirements, and the FAA must have the need and ability to manage the designee. In some cases, an evaluation panel will be convened to review the designee's qualifications for the additional authorizations. Refer to the designee-specific volume for specific instructions.

**AR 90**

(5) If approved, DMS will automatically update the authority and CLOA as appropriate, notifying both the designee and the managing specialist. A designee shall not exercise any expanded authority until the request has been approved and official notification has been made.

**b.  Reduce Authority.** A managing specialist may initiate a reduction in a designee's authority for a specific designation through DMS, or a designee can request a reduction of authority through the managing specialist.

(1) DMS requires the managing specialist to enter a justification for reducing a designee's authority.

(2) In order for the request to be approved, the FAA must consider whether the need and ability to manage the designation still exists given the reduction in authority. If there is no longer a need or ability to manage the designee with reduced authority, the managing specialist will initiate the termination (not for cause) process.

(3) An appointing official must approve all requests to reduce authority in DMS. If approved, DMS will automatically update the designee's authorities and CLOA, as appropriate.

**c.  Record Note.** Managing specialists can create a personal note or reminder in DMS. This note is the digital equivalent of a sticky note; it is not part of the designee's official record, and only the author can view the note. Managing specialists should not use this feature to record performance-related issues or other oversight-related information.

**d.  Send Message to Designee.**

(1) Managing specialists can use DMS to send a message to one or more of their assigned designees.

(2) DMS will store the message and record the date the message is sent, along with the date the message is opened by the designee.

(3) DMS users can view these messages. Designees are required to monitor DMS for new messages.

**e.  Record Feedback or an Interaction Regarding a Designee.**

(1) Interaction can be verbal and/or written communication between the designee, FAA, and industry.

(2) Feedback should be provided promptly following the activity to which it references. While the managing specialist has management responsibility for the designee, any FAA employee working with a designee or designee's work product has the responsibility to provide feedback regarding the designee's performance or activity. Any FAA employee with access to DMS can enter feedback on a designee. If the user providing the feedback is not the managing specialist, DMS will send a notification to the managing specialist.

**AR 91**

(3) Types of feedback or interactions that should be recorded in DMS include, but are not limited to, the following:

(a) Corrective—intended to correct an error;

(b) Evaluative—intended to detail specific positive feedback;

(c) Instructional—intended to provide information about the quality of performance; and

(d) Compliments, critiques, and suggestions.

# Chapter 7.  Training

**1.  Purpose.** This chapter describes the common policy associated with training of designee applicants, designees, and FAA personnel. This chapter and the corresponding designation type-specific volumes constitute the policy for training.

**2.  General.** Designees and FAA personnel must develop and maintain the technical skills, knowledge, ability, and proficiency to effectively perform their duties and roles.

**3.  Designee Training Requirements.**

    **a.  Initial Training.** Prior to the FAA appointing an individual as a designee, the individual must participate in and successfully complete the initial training program.

    **b.  Recurrent Training.** A designee must regularly attend and successfully complete recurrent training.

    **c.  Specialized Training.** Specialized training covers specific authority not held by the majority of designees of a particular type, or covers new concepts, processes, and delegation authority. These topics are not normally covered in the initial or recurrent training for those designee types and are therefore addressed outside of this normal training environment. Specialized training is typically web-based and addresses those areas where specialized experience and authority is required. Where applicable, a designee must complete any specialized training that is required for the specific authority requested or held. This specialized training must be completed prior to appointment or adding the special authority and in some cases must be repeated at the interval specified.

**4.  FAA Managing Specialist Training Requirements.** Managing specialists should complete relevant initial training prior to being assigned as a managing specialist. If an individual cannot complete the relevant initial training prior to being assigned as a managing specialist, they should enroll in a training course that takes place within 6 calendar-months of assignment and another managing specialist (either in the managing office or another office) should be identified by the managing office.

**5.  Other FAA Employee Training Requirements.** Managers of DMS users who have assigned DMS roles should complete AVS training associated with designee management within 6 calendar-months of being assigned that role.

**AR 93**

## Chapter 8.  Annual Request for Extension of a Designee's Designation

**1.   Purpose.** This chapter describes the common policy associated with the FAA's extension of a designee's designation from the current expiration date. This chapter and the corresponding designation type-specific volumes constitute the policy for extending the expiration date on an existing designee in good standing.

**2.   General.** Extension of the designee's designation is the responsibility of the designee. Since designee oversight requirements have defined intervals, extension of their designation is not contingent upon a particular oversight activity. As long as a designee is in good standing and continues to meet the qualification requirements for their designation, the designee will be given a 1-year extension on their designation once they complete the annual request to extend expiration date.

**3.   Annual Request to Extend Expiration Date.**

    **a.   Timeframe.** Designees are required to request an extension of their expiration date annually. They will receive an action to complete this task 60 calendar-days prior to the due date. The workflow asks the designee a series of questions and, upon completion, the designee submits the request.

    **b.   Additional Information.** When a specific location is not required, the designee will update the designation location that will be published in the designee locator. The designee will also update any information required to maintain the specific designation and answer the common questions required to maintain basic designee eligibility. Extending a designee's designation is predicated on the active designee:

- Remaining in good standing;
- Having no violation history;
- Being current on all required training;
- Having no arrests or convictions; and
- Having not had an airman certificate (other than medical), rating, or authorization (or foreign equivalent) suspended or revoked; or having not had to pay a civil penalty as a result of a violation of any FAA or other CAA regulations (foreign or domestic).

**4.   New Expiration Date.** Once the annual request to extend expiration date has been successfully submitted, DMS will set a new expiration date on the CLOA, extending a designee's designation for 1 year from the date the action is completed. All new expiration dates will be set for the last day of the month even if it exceeds 1 year.

    **Note:**  During the request to extend expiration date, designees in a suspended status may qualify for the 12 calendar-month extension of the expiration date, but they must be in an active status by the time the profile update is submitted. This along with policy in the designee specific volumes constitute the requirements for the annual request for extension of a designee's designation requirements.

**5.   Termination—Nonsubmittal.** If the designee does not submit the required profile update action in DMS before the designation expires, DMS changes the designee's status to "expired." In an expired status, the designee is no longer authorized to perform any duties related to the expired designation and will have limited access to DMS. The designee can be removed from the expired status by updating their profile information. If a designee does not perform the required update, the FAA will initiate the termination process. See Chapter 9 for additional information. Designees terminated for nonsubmittal of a profile update are considered terminated "not for cause" and may reapply at any time or be reinstated where designee specific policy allows.

**6.   Reminders.** The designee is responsible for accessing DMS and checking DMS message center notifications and action required items on a regular and recurring basis. The designee has the sole responsibility to update their profile when they receive the action on their DMS homepage and the email notification.

**7.   Duration.** Successful submission of the Update Profile action extends the designee's expiration date for one additional year with a date of the last day of the month.

**8.   Surrender.** A designee who does not intend to extend a designation is encouraged to voluntarily surrender the designation in DMS prior to expiration.

**9.   Expansion of Authority.** The designee may not seek an expansion of authority using the profile update process. (See Chapter 6, Subparagraph 5a, Request for Additional Authorizations and Limitations.)

**10. Privilege, Not a Right.** Successfully meeting the minimum qualifications does not guarantee an extension as a designee. During the annual update, a designee applicant must also acknowledge in DMS that a designation is a privilege, not a right. Negative behavior exhibited at any time (during or outside delegated activities) could affect their designation. During the annual update, the designee must also acknowledge in DMS that the FAA Administrator can terminate any designation at any time, for any reason.

**11. Disqualifiers.** See the list in Volume 1, Chapter 2, Application Process.

**AR 95**

## Chapter 9.  Termination of a Designation

**1.  Purpose.** This chapter describes the common policy associated with the termination of a designation. This chapter and the corresponding designation type-specific volumes constitute the policy for termination of a designation.

**2.  General.** There are two methods used to terminate a designation: voluntary surrender and FAA-initiated termination.

**3.  Voluntary Surrender.**

    **a.  Voluntarily Surrendering a Designation.** A designee may voluntarily surrender a designation.

        (1) Designees must surrender each designation separately. The voluntary surrender process applies only to a single designation at a time.

        (2) A voluntary surrender of a designation does not preclude the individual from applying to be a designee in the future.

        (3) Once DMS notifies the designee of the suspension based on a pending termination for cause action, the designee may not submit a voluntary surrender request in DMS.

    **b.  Voluntary Surrender Process.**

        (1) To begin the voluntary surrender process, a designee must submit a voluntary surrender request in DMS.

        (2) For a company designee, a company representative may contact the designee's managing specialist to request voluntary surrender in DMS.

        (3) The managing specialist must document the voluntary surrender in DMS and include the specific reason(s) provided by the designee.

        (4) If the designee is voluntarily surrendering a designation, the managing specialist will indicate whether or not the designee is considered "in good standing." This determination is helpful should the designee choose to reapply at a later date.

        (5) DMS will turn off access to DMS functionality as appropriate for the designation being terminated. The designee is no longer authorized to perform any duties related to the designation.

    **c.  Possible Reasons for Voluntary Surrender of a Designation.**

        (1) Retirement;

        (2) Lack of business activity;

        (3) Difficulty in meeting requirements;

**AR 96**

(4) Dissatisfied with being a designee;

(5) Personal reasons;

(6) Employment termination; or

(7) Any other reason.

**4. FAA-Initiated Termination.** Designees are selected, appointed, and trained to serve the needs of the FAA in fulfilling its safety mission, allowing the FAA to leverage its resources. Therefore, the FAA can rescind a designation at any time for any reason considered appropriate by the Administrator. Designees who are performing poorly, who are representing the Administrator in a negative manner, or who require excessive resources to manage must have their designations terminated to ensure continued effectiveness of the designee system.

    **a. Terminating a Designation.**

        (1) The FAA must document termination decisions in DMS and include the specific reason(s) for the termination.

        (2) When applicable, the FAA should consider feedback from individuals involved in reviewing work performed outside the designee's managing office.

        (3) Only managing specialists assigned to the designee can initiate the termination process in DMS.

    **b. Termination Process.**

        (1) When it has been determined that termination is warranted, the managing specialist should begin the process immediately. Termination decisions must be formally documented in DMS, to include the specific reason. The appointing official must approve or deny the termination recommendation through DMS.

        (2) Once the termination process has begun, DMS will prevent the designee from conducting new work under the designation being terminated. The status of the designee's authority will change to "suspended" during the termination process. The designee must immediately cease exercising designee privileges for the designation being terminated.

        (3) Upon completion of the termination process, the designee's status will be changed to "terminated." DMS will generate and send an electronic termination notice to the designee.

        (4) Depending on the reasons for termination, the designee may request an appeal. (See Chapter 11 for more information.)

    **c. Types of Termination.** There are two types of termination: "for cause" and "not for cause." Anyone terminated for cause cannot reapply for designation.

**AR 97**

(1)  For Cause. Examples of "for cause" reasons include:

(a)  Performance deficiencies found during oversight activities or identified by other sources;

(b)  Lack of integrity (e.g., making false statements, misrepresenting information, failing to disclose pertinent information, exhibiting behavior that reflects poorly on the Administrator, etc.);

(c)  Misconduct (e.g., purposefully not following prescribed procedures for gain, behavior that reflects poorly on the Administrator, etc.);

(d)  Inability to work constructively with the FAA or public (e.g., failure to return phone calls, follow guidance, exhibit a cooperative attitude, etc.);

(e)  Improper representation of the FAA (e.g., using designee number for inappropriate purposes, etc.); and

(f)  Other. Any other reason that the FAA Administrator considers appropriate.

**Note:**  DMS sends termination notifications to all managing specialists assigned responsibilities for a given designee. Managing specialists must review the "for cause" termination notices and consider termination of other designations held by the same designee (if applicable).

(2)  Not for Cause. Examples of "not for cause" reasons include any reason other than "for cause." A designee terminated not for cause may reapply for designation. Reasons for termination other than "for cause" include:

(a)  Lack of FAA Need.

*1.*  Activity in the office decreased, or is forecasted to decrease, eliminating the need for the designee.

*2.*  The FAA plan for delegated work changed, eliminating the need for the designee.

*3.*  The FAA can support the certification work or need with other existing designees.

(b)  FAA is Unable to Manage.

*1.*  The existing and projected office workload does not allow the office to effectively manage the designee.

*2.*  The FAA does not have the ability to provide authorization, testing, and/or additional training needed for its employees to oversee the designee. Adequate funds (for example, travel allocation) are not available to oversee the designee.

**AR 98**

*3.* FAA staff does not have the technical skills and knowledge to oversee the designee.

(c) Other.

*1.* Designee no longer meets minimum qualifications;

*2.* Designee does not meet training requirements;

*3.* Designee is deceased;

*4.* Designee is physically unable to perform designee duties;

*5.* Designee did not renew designation before expiration;

*6.* Designee's authority expired while suspended; or

*7.* Designee did not update DMS profile at least annually.

**AR 99**

# Chapter 10.  Suspension of a Designation

**1.  Purpose.** This chapter describes the common policy associated with the suspension of a designation. This chapter and the corresponding designation type-specific volumes constitute the policy for suspension of a designation.

**2.  General.** Suspension is a management process that allows the FAA to temporarily remove a designee's privileges without terminating the delegation. If an individual holds multiple designations, suspension of one designation may or may not impact other designations held. The impact of the suspension on other designations, if held, is determined by the respective managing specialist.

   **a.  DMS Actions.** During the suspension process, DMS will change the designee's status to "suspended." In suspended status, DMS:

     (1) Notifies the designee of suspension and denies access to initiate new work for the designation being suspended;

     (2) Cancels all previously approved activities, as applicable; and

     (3) Allows the designee to submit post-activity entries for up to 7 calendar-days after the date of suspension.

   **b.  Designee Action While Suspended.** The designee must immediately stop exercising authorized duties for the designation being suspended.

   **c.  Suspension Release.** If suspended designees think that they have met all of the requirements to be reinstated, they may submit a suspension release request in DMS.

   **d.  Length of Suspension.** Designees will remain in a suspended status until they have corrected the deficiency or until the designation expires. If the deficiency has not been corrected within 180 calendar-days, DMS will notify the managing specialist to remove the suspension and initiate termination.

**3.  FAA-Initiated Suspension.** The FAA may suspend a designation for the following reasons:

   **a.  Lapse in Minimum Qualifications.** The designee no longer meets the minimum qualifications.

     (1) Deadline Passes for Required Training. The designee fails to successfully complete required training within the specified timeframe.

     (2) Failed Test for Required Training. The designee fails a test that is part of required training, regardless of the due date of that training.

   **b.  Failure to Attend a Required Meeting.** The designee fails to attend a required meeting.

**AR 100**

**c.  Poor Performance.** The designee demonstrates an unsatisfactory level of performance for the designation.

**d.  Under Investigation.** The FAA investigates allegations or findings that the designee has been acting contrary to regulations or policy. This may include investigations not related to designee activity.

**e.  Failure to Maintain Currency With Training Requirements.** If a designee fails to maintain their currency with training requirements, they should be moved to suspended status until they complete their training.

**f.  Other.** Any other reason that the FAA Administrator considers appropriate.

**4.  Followup Actions.** The FAA may require the designee to complete followup actions to remove the suspension. FAA followup actions may include additional training, counseling, and requalification. The managing specialist should follow up with the designee to ensure that any requirements are completed. Based on the results of the followup actions, the managing specialist will remove the suspension or initiate termination. The managing specialist should consider the following scenarios as possible followup actions for different suspension reasons:

**a.  Lapse of Minimum Qualification.** The designee should propose a corrective action plan and timeline to meet the minimum qualifications that is acceptable to the managing specialist.

**b.  Deadline Passes for Required Training.** The designee must provide the managing specialist with a plan of action for attending training to meet requirements. If training lapses are a recurring event and without good cause, such as medical inability to attend, the managing specialist may consider termination of the designee.

**c.  Failed Test for Required Training.** Each failed test is reviewed for accuracy and fairness. Validated test failures will result in the managing office making a determination to either terminate the designation for failure to meet training requirements or require the designee to retake the training. The designee will remain in suspension until the training is completed. In the case of a non-valid test (e.g., power failure or accidental submission before completion), the designee will be allowed to retake the test.

**d.  Poor Performance.** The designee should propose a plan of action that is acceptable to the managing specialist as well as a corrective action plan to improve poor performance.

**AR 101**

## Chapter 11.  Appealing a Termination for Cause

**1.  Purpose.** This chapter describes the common policy by which a designee may appeal a termination for cause decision. This chapter and the corresponding designation type-specific volumes constitute the policy for appealing a termination for cause.

**2.  General.** The FAA only allows appeals if the FAA terminated the designee for cause. All appeal activities are processed and recorded in DMS.

   **a.  Appeal Initiation.** To appeal a for-cause termination, the designee must initiate an appeal in DMS within 15 calendar-days of for-cause termination. As part of the appeal request, designees should provide any evidence to support their case at the time the appeal is initiated.

   **b.  Scope of Appeal.** The appeal is intended to be a review of the termination for cause process (see Chapter 9, Termination of a Designation).

   **c.  Appeal Panel Outcomes.** The appeal panel may choose one of the following results:

      (1) Uphold the original termination decision whereby the original decision stands and no further appeals are accepted.

      (2) Overturn the termination decision whereby the FAA reinstates the designee.

   **d.  Timeframe for the Appeal Process.** The appeal panel must complete the appeal process within 45 calendar-days of receiving the appeal request.

   **e.  Notification of Decision.** DMS will notify the designee of the appeal panel's decision within 15 calendar-days of a decision.

**3.  Official Responsibilities of the Appointing or Selecting Official During Appeal.** Once the designee has submitted an appeal in DMS, DMS will automatically notify the appropriate appointing or selecting official who is required to complete the following:

   **a.  Review Appeal Information in DMS.** Review the designee's appeal information and make comments, if desired.

   **b.  Establish Appeal Panel.** The appeal panel must consist of two or three individuals. The panel comprises any combination of FAA managing specialists, selecting officials, or appointing officials who were not involved in the original decision.

   **c.  Appoint a Point of Contact (POC).** Appoint a POC for the panel from someone on the panel.

   **d.  Communicate Responsibilities.** Contact panel members and discuss appeal panel responsibilities, as needed.

**4.  Appeal Panel Responsibilities.** The POC for the appeal panel will ensure that the panel completes the following tasks:

**AR 102**

    **a.  Review File.** Review the appealing designee file stored in DMS.

    **b.  Request Additional Information.** Contact the managing specialist, evaluation panel lead, appointing official, and/or selecting official for additional information or clarification.

    **c.  Document Outcomes.** Document deliberations and outcomes in DMS.

**AR 103**

## Chapter 12.  Other Designee Management Functions

**1.  Purpose.** This chapter describes the common policy associated with other designee management functions in DMS. This chapter and the corresponding designation type-specific volumes constitute the policy for other designee management functions in DMS.

**2.  Assign DMS Roles.**

**a.  General.** The primary purpose of this process is to authorize a qualified FAA employee to have appropriate access to functionality within DMS.

(1) DMS roles allow users the ability to access DMS and perform functions within each process, including apply, select, appoint, etc., as described in this order. DMS roles control specific user access within DMS. The FAA may assign users more than one role within DMS.

(2) DMS roles are assigned based on the office needs and in accordance with the designation type-specific volumes of this order.

(3) The term "DMS role" does not convey an official position or title.

**b.  Master Role Assigner (MRA).** The MRA makes the initial assignment or assigns an existing internal user to a role in DMS.

(1) "Designee" is a role but is not assigned via the MRA process. DMS automatically assigns the designee role during appointment.

(2) The MRA function may be given at different levels within each service or office. It is the responsibility of the MRA to add roles for their office or remove roles for individuals who have moved offices, retired, or no longer need a role in DMS. Instructions for the MRA role can be found in the DMS help menu.

**3.  Send Message to Managing Specialist.** DMS provides a method to send messages between the managing specialist and the designee through the message center.

**4.  Impact of Updates to Information.** Depending on the designation type, updates to certain information in the designee record, such as change in designation location or qualifications, may affect the designation.

**a.  Change of Designation Location.** A change of designation location may cause the FAA to review need and ability to manage considerations. DMS will notify the current managing specialist if there has been a change of physical address, and the managing specialist will determine if the new address will initiate a change in the managing office. A change in designation location may require the FAA to initiate a designee transfer to the new location.

**Note:**  The FAA is under no obligation to transfer the designee to a new overseeing office.

**AR 104**

**b. Change of Name.** The managing specialist should verify a name change through reviewing government-issued forms of identification. A name change constitutes a legal change to a designee's authorization and must be verified.

**c. Additional Information.** Additional information can be found in the appropriate type-specific volumes for guidance on the types of changes and their impact.

**5. Retention of Existing Designee Management Files.**

**a. Maintain Existing Designee Records.** The FAA must continue to maintain existing designee records located in the managing office in accordance with FAA Order 1350.14. Once the designee becomes an active DMS user, all future documentation will be maintained electronically in DMS.

**b. Access to Electronic Files by Newly Appointed Designees.** DMS will store the records electronically for newly appointed designees.

**c. Uploading Capabilities.** DMS has uploading capabilities to maintain supporting documents. This function should be used for any documentation that supports designee management of the activities which occur in DMS. This function should not be used to upload existing designee file information that existed prior to the designee becoming an active DMS user.

**AR 105**

# Chapter 13.  Administrative Information

**1.  Distribution.** This order will be distributed to:

   **a.**  The division level in Flight Standards; all Flight Standards District Offices (FSDO), Certificate Management Offices (CMO), and International Field Offices (IFO); and all Air Carrier (AC) and General Aviation (GA) airman designees.

   **b.**  The Washington headquarters (HQ) branch levels of AIR; all responsible Aircraft Certification Service offices; Compliance and Airworthiness Division (AIR-700); System Oversight Division (AIR-800), Aircraft Certification Offices (ACO); MIO Branches and MIDO Section offices; and Operations and Airworthiness branches at the FAA Academy.

   **c.**  The division level within AAM, including the Civil Aerospace Medical Institute (CAMI), Regional Flight Surgeons (RFS), and AMEs.

   **d.**  The division level within AOV.

   **e.**  The Office of the Chief Counsel (AGC).

**2.  Deviations.** It is necessary to adhere to procedures in this order to achieve uniform administration of this directive material. If a selecting official thinks that a deviation is necessary, request the deviation in writing from the policy-owning office as outlined in Table 1-1, Offices Responsible for Designee Policy. You must follow the procedures in this order to ensure uniform administration of this directive. To deviate from this policy, you must coordinate with—and get approval from—the Policy and Innovation Division (AIR-600), Aerospace Medical Education Division (AAM-400), Regulatory Support Division (AFS-600), or System Oversight Division (AOV-200), as applicable. If deviation is necessary, be sure to substantiate and document the deviations and get approval from your supervisor and AIR-600, AAM-400, AFS-600, or AOV-200, as applicable. When a deviation is to Chapter 1 of this order, it will be signed by all three divisions before being approved. All deviations to chapters that cover specific designee types must be coordinated with the other services before being approved.

**3.  Directive Feedback Information.** For your convenience, use FAA Form 1320-19, Directive Feedback Information (which is found on the last page of this order), to submit suggestions or comments. Please use the "Other Comments" block on FAA Form 1320-19 to provide a complete explanation of why the suggested change is necessary. You may correct, as necessary, a copy of the pertinent information, or provide a handwritten note for consideration.

**AR 106**

# VOLUME 3.  DPE, ADMIN PE, AND SAE DESIGNEE POLICY

## Chapter 1.  General Information

### Section 1.  Overview

**1.   Purpose of This Volume.** This volume supplements Volume 1, Common Designee Policy, by providing specific guidance for the designee management program of Designated Pilot Examiners (DPE), Administrative Pilot Examiners (Admin PE), and Specialty Aircraft Examiners (SAE) not otherwise provided in detail in Volume 1.

**2.   Audience.** The primary audience for this volume is DPEs, Admin PEs, SAEs, their FAA managing specialists, and FAA personnel with oversight responsibilities of designee programs, including FAA management, operational, and administrative employees, as appropriate.

**3.   Supplemental Information.** This volume is organized to provide general policy and instructions related to DMS management. It is supplemented by DMS Job Aids for designees/applicants and FAA personnel.

   **a.   Applicant and Designee DMS Job Aid and Mailbox Support Location:** https://www.faa.gov/other_visit/aviation_industry/designees_delegations/dms/support/.

   **b.   FAA Internal DMS Job Aid Location:** https://my.faa.gov/org/linebusiness/avs/offices/air/div_dir/air600/dms.html.

### Section 2.  Designee Types

**1.   Types of DPE Designees.** A designee is an individual appointed in accordance with 14 CFR part 183, § 183.23. Most designees will be issued authorizations that are based on the type of designee, certificate level they are authorized testing/checking, and category/class or privileges that they are authorized to conduct. For example, a DPE with airline transport pilot (ATP) testing privileges in a multiengine land airplane would get the following authorization: DPE-ATPE-AMEL. The privileges associated with each part of each authorization are explained in the tables below. Administrative authorizations, Vintage Flight Engineer Examiner (VFEE) authorizations, and Vintage Aircraft Examiner (VAE) group authorizations may be a two-part authorization (e.g., VFEE-TJET).

**2.   Temporary Authorization.**

   **a.   Qualified and Current Designee.** If a designee is qualified and current in a specific make, model, and type (if applicable) of aircraft for which designee services are rarely requested and the designee holds a current DPE authorization for a comparable aircraft in the same category and class, the managing FAA office may issue the designee a temporary authorization for testing privileges in that aircraft. The request is made by a designee through the preapproval process. All preapprovals using a temporary authorization revert to manual approval, and must be approved by the managing specialist. Each request must be made and approved for each individual testing/checking event. If an office finds that they are approving numerous temporary

**AR 107**

authorizations for a specific authorization, every attempt should be made to appoint a designee that is qualified for that specific authorization.

**b. No Qualified and Current Designee.** In the event that there is no designee current and/or qualified in the aircraft, the managing office may grant a temporary authorization to an existing designee provided they have conducted a thorough risk analysis and have determined that the test/check can be conducted safely. The risk analysis must be documented in DMS, and the request will be evaluated on a case-by-case basis. This type of authorization should be used only as a last resort to get testing/checking accomplished.

### Table 3-1. Types of Designees[1]

| DPE | Designated Pilot Examiner | A DPE is an individual who meets the general and DPE-specific qualification requirements in Chapter 2. A DPE may be authorized to test/check in airplanes and/or rotorcraft helicopters (not listed as vintage or requiring an experimental authorization), gliders, or lighter-than-air (LTA) balloons at the Sport Pilot Examiner (SPE), Private Pilot Examiner (PE), Commercial Pilot Examiner (CE), ATP Examiner (ATPE), or Flight Instructor Examiner (FIE) certificate levels as authorized on their Certificate Letter of Authority (CLOA). They may also be authorized administrative functions. DPEs are designated for specific testing functions and may perform only the functions authorized by their CLOA. |
|---|---|---|
| SAE | Specialty Aircraft Examiner | SAEs are authorized to conduct tests and checks leading to certificates and/or ratings or operating privileges in aircraft that require specialized experience. Listed below are the sub-types of SAEs that exist as of the current date of this order. Should the need arise for an additional type of SAE, the Regulatory Support Division (AFS-600) has the authority to define the new type of SAE, eligibility requirements, as well as privileges and limitations of the new SAE sub-type. SAEs may issue pilot certificates at the certificate levels authorized. |
| *VAE | Vintage Aircraft Examiner | A VAE may conduct practical tests for type ratings or conduct 14 CFR part 61, § 61.58 proficiency checks in specifically authorized makes and models of aircraft, or authorized groups of aircraft, as shown in the Vintage Aircraft Examiner Groups and Type Rating Designations document at https://www.faa.gov/licenses_certificates/vintage_experimental/. |
| *EAE | Experimental Aircraft Examiner | An EAE may conduct practical tests for the issuance of an FAA authorization, and conduct § 61.58 proficiency checks, in specifically authorized makes and models of experimental aircraft that require an FAA-issued authorization to act as pilot in command (PIC), as listed at https://www.faa.gov/licenses_certificates/vintage_experimental/. |
| *VFEE | Vintage Flight Engineer Examiner | A VFEE conducts tests and/or checks in large, vintage aircraft requiring a flight engineer (FE), which are no longer in significant commercial service. These examiners may be authorized to conduct flight engineer certification tests, flight engineer recurrent |

---

[1] Where issuance of certificates are addressed in this volume, they are temporary certificates pending issuance of the airmen certificate by the Civil Aviation Registry Division (AFB-700).

**AR 108**

| | | checks required by 14 CFR part 91, § 91.529, or the VFEE may be authorized for both. |
|---|---|---|
| *SPE | Sport Pilot Examiner | An SPE conducts testing only in aircraft that meet the definition of light-sport aircraft (LSA). An SPE may issue a sport pilot certificate, as authorized. An SPE may also issue private pilot certificates for Powered Parachute (PPC), Weight Shift Control (WSC), Rotorcraft Gyroplane (RG), and lighter-than-air airships, as authorized. Additionally, an SPE may issue a Commercial Pilot Certificate for rotorcraft gyroplane and lighter-than-air balloon when authorized. |
| *LAE | Limited Aircraft Examiner | An LAE conducts practical tests and § 61.58 proficiency checks in limited production (including new production) type certificated (TC) aircraft, to reduce demands on the Flight Standards Inspector Resource Program (FSIRP). |
| Admin PE | Administrative Pilot Examiner | Admin PEs review applicant records, knowledge test reports, and logbooks, as applicable, and issue pilot certificates at various certificate levels as authorized. Currently, Admin PEs may be issued only the ACR-141 or ACR-FIRC authorizations. Admin PEs do not conduct certification practical tests. |

*SAE sub-type.

## Table 3-2. Certificate Level Testing/Checking Authorizations

| SPE | Sport Pilot Examiner | An SPE conducts sport pilot certification tests and additional aircraft rating test as specifically authorized. |
|---|---|---|
| PE | Private Pilot Examiner | A PE conducts private and recreational pilot certification tests and additional aircraft rating tests as specifically authorized. |
| CE | Commercial Pilot Examiner | A CE conducts commercial pilot certification tests in rotorcraft, gliders, and lighter-than-air aircraft and additional aircraft rating tests, as specifically authorized. |
| CIRE | Commercial and Instrument Rating Examiner | A CIRE conducts commercial pilot certification tests, instrument rating practical tests, and additional aircraft rating tests as specifically authorized for airplanes, powered lift, and rotorcraft helicopters. |
| ATPE | Airline Transport Pilot Examiner | An ATPE conducts ATP practical tests for the original issuance of an ATP Certificate and additional ratings as authorized. ATPEs must hold category, class, and, if appropriate, type ratings on their pilot certificates pertinent to the tests to be conducted. |
| SPFIE | Sport Pilot Flight Instructor Examiner | An SPFIE conducts practical tests for the initial issuance, renewal, and reinstatement of sport pilot flight instructor certificates, only in aircraft that meet the definition of LSA. |
| FIE | Flight Instructor Examiner | An FIE conducts practical tests for the renewal and reinstatement of flight instructor certificates and additional ratings. An FIE is authorized to issue flight instructor renewals, reinstatements, and additional ratings on the basis of practical tests only. An FIE does not conduct practical tests for initial issuance of flight instructor certificates. |
| FIEI | Flight Instructor Examiner Initial | An FIEI conducts practical tests for the initial issuance, renewal, and reinstatement of flight instructor certificates and additional ratings. An FIEI is authorized to issue flight instructor renewals, reinstatements, and additional ratings on the basis of practical tests only. |

**AR 109**

| PPE | Pilot Proficiency Examiner[2] | A PPE conducts the PIC proficiency checks required by § 61.58 for airmen who act as PIC of an aircraft that is type certificated for more than one required pilot flight crewmember or is turbojet-powered, and operated under regulations other than 14 CFR parts 91 subpart K (part 91K), 121, 125, 133, 135, or 137. A PPE does not conduct certification practical tests. The make and model of authorized aircraft will be included in the designee's authorization (e.g., DPE-PPE-GIV). |
|---|---|---|
| | | For PPEs limited to checking in flight simulation training devices (FSTD) for any make and model of aircraft, the CLOA will contain the limitation "limited to FSTD" for that make and model of aircraft. |
| TYPE | Type Rating Examiner | A type rating examiner conducts practical tests in aircraft that require the PIC to hold a type rating for a specific make and model of aircraft, as authorized, at all certificate levels. The designee must hold the type rating(s) on their pilot certificates pertinent to the tests to be conducted. The make and model of authorized aircraft will be a part of the designee's authorization (e.g., DPE-TYPE-LRJET). |
| | | To be authorized for a particular make and model of aircraft, the examiner must have logged at least 50 hours of PIC flight time in that aircraft type (25 hours for each additional aircraft type). |
| | | However, in the case of an SAE, when authorized a group of aircraft, the designee needs only to hold authorization in the group of aircraft shown on their CLOA (no minimum PIC experience requirement). |
| | | For examiners who are authorized to administer practical tests in an FSTD that is representative of an aircraft that requires the PIC to hold a pilot type rating, the examiner's CLOA must list the phrase "[Aircraft type]-FSTD only". |

[2] The FAA uses the DMS to authorize individuals to conduct pilot proficiency checks under § 61.58(d)(1).

**AR 110**

**Table 3-3. Aircraft Category/Class/Privileges Testing/Checking Authorizations**

| ASEL | Airplane Single-Engine Land | This authorizes a designee to administer practical tests in small piston-powered single-engine land airplanes or small turbopropeller single-engine land airplanes that do not require the PIC to hold a pilot type rating. Prior to administering practical tests in a single-engine airplane that is turbine-powered, the DPE must have logged at least 5 hours of PIC flight time in that single-engine make and model (emphasis added: turbine-powered single-engine airplane). |
|---|---|---|
| AMEL | Airplane Multiengine Land | This authorizes a designee to administer practical tests in small piston-powered multiengine land airplanes or small turbopropeller multiengine land airplanes that do not require the PIC to hold a pilot type rating. Prior to administering a practical test in a small multiengine land airplane, the DPE must have logged at least 5 hours of PIC flight time in that multiengine airplane make and model. |
| ASES | Airplane Single-Engine Sea | This authorizes a designee to administer practical tests in small piston-powered single-engine sea airplanes or small turbopropeller single-engine sea airplanes that do not require the PIC to hold a pilot type rating. Prior to administering practical tests in a single-engine airplane that is turbine powered, the DPE must have logged at least 5 hours of PIC flight time in that single-engine sea airplane make and model (emphasis added: turbine-powered single-engine airplane). |
| AMES | Airplane Multiengine Sea | This authorizes a designee to administer practical tests in small piston-powered multiengine sea airplanes or small turbopropeller multiengine sea airplanes that do not require the PIC to hold a pilot type rating. Prior to administering a practical test in a small multiengine sea airplane, the DPE must have logged at least 5 hours of PIC flight time in that multiengine sea airplane make and model. |
| RH | Rotorcraft Helicopter | This authorizes a designee to conduct practical tests in helicopters. For testing in multiengine helicopters, the specific make and model of helicopter must be listed on their CLOA. For testing in single-engine helicopters, "single-engine reciprocating" or "single-engine turbine" must be listed on the CLOA. The designee must have logged at least 5 hours of PIC flight time in each specific make and model of helicopter in which that examiner conducts tests. |
| RG | Rotorcraft Gyroplane | This authorizes a designee to administer practical tests in rotorcraft gyroplanes. |
| GL | Glider | This authorizes a designee to administer practical tests in gliders. Designees must show experience and demonstrate skill in at least one of the following launch procedures, for which they have a logbook endorsement: aero tow, ground tow, and self-launch. The designee is then authorized to conduct examining activity for all launch procedures for which they have a logbook endorsement. |

| LTAB | Lighter-than-Air Balloon | This authorizes a designee to administer practical tests in balloons. Designees may have flight time in gas balloons, hot air balloons, or a combination of the two in order to meet the flight time requirements for designation. If the examiner's pilot certificate is restricted to balloons with airborne heater or gas balloons only, the examiner may conduct practical tests only in that kind of balloon (e.g., hot air or gas balloon). This limitation must be listed on the designee's CLOA. |
| --- | --- | --- |
| LTAA | Lighter-than-Air Airship | This authorizes a designee to administer practical tests in airships. |
| WSCL | Weight Shift Control Land | This authorizes a designee to administer practical tests in weight-shift-control land aircraft. |
| WSCS | Weight Shift Control Sea | This authorizes a designee to administer practical tests in weight-shift-control sea aircraft. |
| PPCL | Powered Parachute Land | This authorizes a designee to administer practical tests in powered parachute land aircraft. |
| PPCS | Powered Parachute Sea | This authorizes a designee to administer practical tests in powered parachute sea aircraft. |
| TPRP | Turboprop | This authorizes a VFEE to conduct tests or checks in turboprop-powered aircraft. |
| TJET | Turbojet | This authorizes a VFEE to conduct tests or checks in turbojet-powered aircraft. |
| RECP | Reciprocating | This authorizes a VFEE to conduct tests or checks in reciprocating engine powered aircraft. |
| SMFT | Special Medical Flight Test | This authorizes a designee to conduct an applicant's special medical flight test. SMFTs may or may not involve a flight. Testing privileges limited to ground only must be listed on the designee's CLOA. |

**AR 112**

**Table 3-4. Administrative Authorizations**

| FPE | Foreign Pilot Examiner | An FPE reviews applicants' records, verifies computer test reports for the foreign pilot instrument knowledge tests, and may issue private pilot certificates and ratings at the private pilot certification level on the basis of the applicant's foreign license qualification in accordance with § 61.75. An FPE may also issue a private pilot, commercial pilot, or airline transport pilot certificate on the basis of a Bilateral Aviation Safety Agreement (BASA) Implementation Procedures for Licensing (IPL) in accordance with § 61.71(c). An FPE may also convert a European Union Part-Flight Crew Licensing (EU Part-FCL) pilot license to an FAA pilot certificate using the FAA/European Union Aviation Safety Agency (EASA) Technical Implementation Procedures—Licensing (TIP-L). Certificates issued will be at the private pilot certification level. |
| --- | --- | --- |
| MCE | Military Competency Examiner | The MCE reviews a military pilot's records, verifies computer test reports of the military competency knowledge test, and issues Commercial Pilot Certificates and ratings to qualified military pilot applicants as authorized (e.g., § 61.73). The MCE may issue or upgrade pilot certificates bearing type ratings based on the applicant's military pilot qualifications. The MCE may accept applications for a flight instructor certificate and appropriate ratings from current and former U.S. military instructor pilots or U.S. military pilot examiners who meet the eligibility requirements as set forth in § 61.73(g). |
| GIE | Ground Instructor Examiner | A GIE reviews applications and knowledge test results, and issues ground instructor certificates for the basic, advanced, or instrument ratings, as specifically authorized (as per § 61.213). |
| FIRE | Flight Instructor Renewal Examiner | A FIRE is authorized by the managing Flight Standards office to accept applications for renewal of a flight instructor certificate that is still current and for which the renewal process is merely administrative (i.e., a practical test is not required for renewal of the applicant's flight instructor certificate). The FIRE must identify himself/herself as a FIRE on FAA Form 8710-1, Airman Certificate and/or Rating Application, when processing flight instructor renewals. |
| RPE | Remote Pilot Examiner | An RPE reviews an applicant's knowledge test report, training course completion certificate, pilot certificate, and logbook, as applicable, for the issuance of a Remote Pilot Certificate, as specifically authorized (as per 14 CFR part 107, §§ 107.61 and 107.63). |
| ACR-141 | Airman Certification Representative for a Part 141 Pilot School With Examining Authority | An ACR-141 accepts applications for airman certificates and/or ratings from the graduates of a pilot school that holds examining authority under 14 CFR part 141. |
| ACR-FIRC | Airman Certification Representative for a Flight Instructor Refresher Course | An ACR-FIRC reviews applicants' attendance/training records and determines applicants' eligibility for the renewal of a current flight instructor certificate based on attendance of a flight instructor refresher course (FIRC). |
| BAE | Basic Administrative Examiner | A BAE reviews an applicant's knowledge test, training records, log books, course completion certificates (as applicable for second in command (SIC)), Supervised Operating Experience (SOE) Limitation Removal, night vision goggles (NVG), and Special Federal Aviation Regulations (SFAR) activity that is administrative only. BAE authorized activities must be listed on the CLOA. |

**AR 113**

**Note:**  Administrative authorizations may be given to DPEs and SAEs in addition to their other testing and checking authorizations. However, DPEs and SAEs may not be designated with administrative authorizations only. Designees that no longer meet initial designation requirements cannot be authorized administrative privileges.

**Note:**  Designees preparing to conduct authorized activities should follow the procedures set forth in FAA Order 8900.1, Volume 5, Airman Certification, as applicable. Specific sections that limit activities to an aviation safety inspector (ASI) also include properly trained and authorized designees.

3.  **Designated Examiners Abroad.**

    a.  **FAA Airman Certificate Exams.** A DPE, Admin PE, or SAE may be authorized to serve at locations outside the United States, provided the testing activities serve U.S. citizens abroad that were trained under part 61 or 141 only for an FAA airman certificate.

    b.  **Managing Office.** A designee serving internationally will generally be managed by an International Field Office (IFO) but may be assigned to a Flight Standards District Office (FSDO).

    c.  **Citizenship.** An individual who is not a U.S. citizen may be authorized as a DPE, Admin PE, or SAE abroad only when the need cannot be filled by a U.S. citizen and the individual has met the U.S. certification requirements for the examining authority requested.

## Section 3.  Roles and Responsibilities

1.  **FAA Personnel Roles and Responsibilities.**

    a.  **Flight Standards Office Managers.**

        (1)  Flight Standards office managers are responsible for the personnel, training, and budget resources necessary to accomplish the management and oversight of designees.

        (2)  Flight Standards office managers should anticipate changes in personnel requirements as a result of the "need and ability" standard.

        (3)  Flight Standards office managers are responsible for continually evaluating the effectiveness of the designee program and managing specialists.

        (4)  Flight Standards office managers are required to ensure that ASIs and office management are assigned appropriate roles within DMS to carry out their assigned duties.

    b.  **Master Role Assigner (MRA).** MRAs are typically office managers, but may be Front Line Managers (FLM). MRAs ensure inspectors and supervisory staff are assigned appropriate roles within DMS to carry out assigned duties.

**AR 114**

**c. Appointing Official.** Appointing officials are typically office managers, but may be FLMs.

**d. Selecting Official.** Selecting officials are typically FLMs, but may be office managers.

**e. Managing Specialists.** The managing specialist is an ASI primarily responsible for the management of a specific designee(s).

(1) Managing specialists must ensure that designees are prepared to perform their duties, including the completion of required training and the maintenance of the minimum qualifications for designation as prescribed in Chapter 2, Application Process.

(2) Designee management must consider potential risks and hazards to safety. Managing specialists should remain constantly vigilant for such risks and hazards. These ASIs should review data and other resources, such as Safety Performance Analysis Systems (SPAS), to focus oversight on potential problem areas.

(3) The managing specialists must be experienced FAA ASIs whose specialty is General Aviation (GA) Operations. They must have at least 3 years' tenure with the FAA as an ASI and have completed or be scheduled to complete the required training.

**f. Geographic Expansion Coordinator (GEC).** The GEC is a role assigned to at least one Airworthiness ASI in each Flight Standards managing office to receive and approve or deny geographic expansion requests contained within a DMS preapproval. Any requests received will be routed to all GECs assigned to the managing office. The appropriate specialty GEC must approve or deny the request. Coordination may be required outside of DMS such as telephone calls or emails; however, all actions to approve or deny the request will be documented in DMS.

**g. Aviation Safety Inspectors (ASI).** This role allows any ASI access into DMS to record specific oversight and other activities, as well as accessing information on any designee in DMS.

**h. Reporting.** The reporting role allows the user to access DMS reports to view designee data and assess risk.

> **Note:** DMS user roles determine which activities an FAA user can access in DMS. The DMS Management Action Links and DMS job aids should be reviewed for detailed information: https://my.faa.gov/content/myfaa/en/org/linebu siness/avs/offices/air/div_dir/air600/dms.html.

**i. Proxy.** The proxy role allows an office to assign a surrogate or backup in DMS to a person holding a primary DMS role for offices with a large number of designees or for when the person holding the primary role will be unavailable.

(1) Proxies should meet the same qualifications required to hold the primary role.

(2) Proxies may be assigned for a defined amount of time or indefinitely.

**AR 115**

(3) Only the appointing official, selecting official, and managing specialist roles may be proxied.

(4) An appointing official or selecting official may have only one proxy. Only an appointing official may assign an appointing official proxy. Only an appointing official or selecting official may assign a selecting official proxy.

(5) Each designee may have only one managing specialist and up to three managing specialist proxies. An appointing official, selecting official, and the managing specialist who will be proxied may assign a managing specialist proxy.

(6) Proxy candidates must accept the proxy request in DMS in order to be assigned a proxy.

(7) Primary role holders and proxies should coordinate designee-related activities outside of DMS to prevent duplicate efforts or entries in DMS.

**AR 116**

# Chapter 2.  Application Process

**1.  Purpose.** This chapter and the corresponding chapter in Volume 1 describe the policy related to the application process for individuals applying for the authority to function as a DPE, Admin PE, and/or SAE designee. This designation type-specific policy and Volume 1 constitute the overall policy for the application process for a DPE, Admin PE, and/or SAE applicants.

**2.  General.**

   **a.  Application Information.** Candidates for initial designation as a DPE, Admin PE, or SAE must submit an application through DMS.

   **b.  FAA Tracking Number (FTN).** DPE, SAE, and Admin PE applicants must enter their FTN as part of their application in DMS. The FTN is an essential link between DMS and the Integrated Airman Certification and Rating Application (IACRA) that verifies designee authorizations and allows activity and certification records to align between systems. Applicants can locate their FTN by logging into IACRA.

   **c.  Citizenship.** U.S. citizenship is not a requirement for appointment.

**3.  Reinstatement.** A former designee whose privileges were terminated "not for cause" may be reinstated only at the managing office where last assigned. This provision may only be exercised at the discretion of the previous managing office, and only when the following provisions are met:

   **a.** The former designee meets the requirements and procedures for an original issuance of designation and was previously authorized in DMS.

   **b.** The designation was terminated not more than 12 calendar-months prior to application for reinstatement.

   **c.** The applicant meets the recurrent training requirement for the designee type.

   **d.** The managing office determines that the former designee is still competent to perform the authorized activities.

   > **Note:**  If the provisions are met, the CLOA is reissued with the original designation number used for reinstatement.

**4.  Former Designee Appointment.** Except as stated in paragraph 3 above, former designees who wish to reapply for previously held authorizations that have been terminated "not for cause" must reapply through DMS as an initial applicant.

**5.  Relocation.** Designees may relocate to a different geographic area if the receiving FAA office agrees to the transfer. Any change in location, change of managing office, or change of managing specialist is conducted through DMS. This change is effected through DMS by the receiving managing specialist.

**AR 117**

**6. Minimum Qualifications.**

    **a. Minimum Qualifications for DPE, Admin PE, and SAE Applicants.**

    (1) In addition to the general minimum qualifications and disqualifiers depicted in this chapter, candidates for designation as a DPE must be technically qualified and must hold all pertinent category, class, and type ratings for each aircraft for which designation is sought. All DPEs must meet the requirements of §§ 61.56 and 61.57. If applying to administer tests in an aircraft that requires a type rating, the DPE must also be current in accordance with § 61.58.

    (2) For designations requiring a medical certificate, the examiner must maintain at least a third class medical certificate throughout the duration of the designation. Examples of designees not requiring a medical certificate are those whose authorizations are limited to examinations in balloons, gliders, or FSTDs for which no medical certificate is required. An SPE must maintain a current FAA flight instructor certificate, and a valid U.S. driver's license or an airman medical certificate.

    (3) Any required flight instructor certificate must be kept current for the duration of the designation.

    **b. Minimum Qualifications for DPE Applicants.** Except for SAEs and Admin PEs, all DPE applicants must meet the following in addition to the specific eligibility requirements listed in this chapter. Within the three years prior to application, the DPE applicant must have met at least one of the following:

    (1) Served as a chief instructor, assistant chief instructor, or check instructor in a school certificated under part 141, for a minimum of 12 calendar-months;

    (2) Served as a check airman authorized under part 121 and/or part 135, for a minimum of 12 calendar-months;

    (3) Served as an Aircrew Program Designee (APD) authorized under part 121, for a minimum of 12 calendar-months;

    (4) Served as a Training Center Evaluator (TCE) authorized under 14 CFR part 142, for a minimum of 12 calendar-months;

    (5) Served as an FAA ASI with checking/testing responsibilities in aircraft, for a minimum of 12 calendar-months;

    (6) Held an FAA pilot examiner designation (that was not terminated for cause) with authorization to conduct practical tests and/or proficiency checks in flight; or

(7) Provided at least the following hours of flight instruction to airmen which led to the issuance of a pilot certificate or rating as applicable to the categories sought.

| For Authorization In: | Hours in Category |
|---|---|
| Airplanes | 200 |
| Rotorcraft | 200 |
| Gliders | 100 |
| Lighter-than-Air | 50 |
| Weight Shift Control | 100 |
| Powered Parachute | 50 |

**c.   Specialty Aircraft Examiner (SAE).** An SAE must meet the requirements of all applicable regulations, including § 61.58, to conduct a practical test from the pilot seat of a vintage airplane.

**d.   Former ASIs (Operations).** Former ASIs (Operations) applying for DPE or SAE authority are required to successfully complete the same application procedures, training, and evaluations as required for all other examiner candidates. However, for PIC experience requirements in the past 12 calendar-months, former ASIs meet the experience requirements provided the following requirements are met:

(1) FAA Flight Program. Within the last 12 calendar-months, the former ASI has been current and qualified in the FAA's flight program.

(2) General Activity. Within the preceding 12 calendar-months, a former ASI (Operations) must have conducted a combination of at least 10 tests or checks of any of the following:

(a) Pilot certification/additional aircraft rating practical tests administered under part 61.

(b) Proficiency checks administered under part 121, 125, or 135.

(c) Proficiency tests administered to a chief instructor, assistant chief instructor, or check instructor under part 141.

(d) Stage checks and end-of-course tests administered under part 141.

**Note:**   A former ASI that has been out of FAA service for more than 12 calendar-months must meet all requirements for initial designation.

**7.   Specific Eligibility Requirements.** Designee applicants must meet all specific eligibility and experience requirements for the specific designation sought. If a designee applicant does not meet all of the appropriate eligibility and experience requirements in this order, they must obtain a written recommendation from the manager of the managing FAA office. The appointing official for the managing office must request a deviation from the National Policy Office (NPO).

**AR 119**

The designee applicant may contact the managing Flight Standards office for additional information.

    **a.  Eligibility.** A designee applicant must hold the appropriate level of certificate(s) and ratings that would allow the individual to provide flight instruction in that category, class, and type (if applicable) of aircraft. For example, a designee applicant who was applying for designation in helicopters would be required to hold at least a Commercial Pilot Certificate with rotorcraft and helicopter ratings as well as a flight instructor certificate with rotorcraft and helicopter ratings. A designee applicant who was applying for designation in balloons would be required to hold a Commercial Pilot Certificate with lighter-than-air and balloon ratings. A designee must not administer a test for a higher grade of certificate than they hold or for a rating that is not held by the designee. For example, a designee who holds a Commercial Pilot Certificate with rotorcraft category and helicopter class ratings would not be eligible to be designated as an ATPE in helicopters, but may be designated as a CE.

    **b.  Specific Eligibility Requirements for Designees With PPE Authorizations.** A designee, when exercising the PPE authorization:

    (1)  Must be willing to serve the public outside the examiner's geographic area upon reasonable request by an applicant.

    (2)  Must hold an ATP Certificate or a Commercial Pilot Certificate with an instrument rating and, for a PPE authorization in aircraft, a type rating for the type of aircraft authorized.

    (3)  Must hold PIC privileges for the type of aircraft authorized while acting in an official capacity of their PPE authorization.

    (4)  When holding a turbojet FSTD authorization, must hold a turbojet rating on their pilot certificate. However, the rating does not need to be in the same type aircraft that the FSTD represents.

    (5)  When holding an authorization for turboprop airplanes in FSTDs only, does not need to hold a turboprop type rating on their pilot certificate.

**Table 3-5. Specific Eligibility Requirements for Designation as a PE and/or a CE**

| | AIRPLANE (see Note) | ROTORCRAFT (VFR ONLY) | GLIDERS | LTA AIRSHIP | LTA BALLOON |
|---|---|---|---|---|---|
| **HOURS AS PIC** | 2,000 Total; which includes: 1,500 in airplanes, 500 in class, 100 at night, 200 in complex, AND in the past 12 months: 100 hours in airplanes. | 2,000 Total; 500 in rotorcraft, of which at least 250 were in helicopters or 150 were in gyroplanes, as appropriate, AND in the past 12 months: 100 hours in rotorcraft. If applying for large helicopters to be listed on CLOA, the additional requirement is 100 hours acting as PIC in large helicopters, including at least 50 hours in the type sought. (25 hours required for each additional type sought.) | 500 Total; 250 in gliders AND in the past 12 months: 20 hours in gliders, which included at least 50 flights | 2,000 Total; 500 in airships, of which at least 50 were at night AND in the past 12 months: At least 100 hours in airships | 200 Total; 100 in balloons, AND in the past 12 months: 20 hours in balloons, which included at least 10 flights of at least 30 minute duration. AND airman must have held a Commercial Pilot Certificate with Lighter-than-Air Category and Balloon Rating for at least 1 year |
| **HOURS AS A FLIGHT INSTRUCTOR** | 500 in airplanes, of which 100 are in the class of airplane for designation sought, and 150 hours preparing airmen for Commercial or ATP Certificates with Airplane Categories. | 250 in helicopters or 200 in gyroplanes, as appropriate. AND at least 100 in helicopters or 50 in gyroplanes, as appropriate, preparing an airman for a Commercial Pilot Certificate, ATP Certificate, or Instrument Rating. | 100 in gliders | 100 in airships | 50 in balloons |

**Note:**  For CE authority only in airplanes (no instrument authority), managing specialist should give the CIRE authorization and put "no instrument authority" in the limitations on the CLOA.

**Table 3-6. Specific Eligibility Requirements for Designation as an LAE, a CIRE, an ATPE, a PPE, and/or a Type Rating Examiner**

| | AIRPLANE | ROTORCRAFT HELICOPTER |
|---|---|---|
| **HOURS ACTING AS PIC** | 2,000 Total; which includes: 1,500 in airplanes, 500 in class, 100 at night, 200 in complex, 100 instrument flight (actual or simulated); AND in the past 12 months: 100 hours in airplanes. If applying for designation in large, turbine-powered aircraft to be listed on CLOA, the additional requirement is 300 hours acting as PIC in large, turbine-powered aircraft, of which at least 50 hours were in the type sought. (25 hours required for each additional type sought.) AND 10 hours in the past 12 months in the type sought. | 2,000 Total, 1,200 in helicopters, which includes: 100 instrument flight (actual or simulated) in helicopters AND in the past 12 months: 100 hours in helicopters. If applying for large helicopters to be listed on CLOA, the additional requirement is 100 hours acting as PIC in large helicopters, of which at least 50 hours were in the type sought. (25 hours required for each additional type sought.) |
| **HOURS AS A FLIGHT INSTRUCTOR** | 500 in airplanes, of which 100 are in the class of airplane for designation sought, AND 250 hours of instrument flight instruction, of which at least 200 hours were in airplanes, and 150 hours preparing airmen for Commercial or ATP Certificates with Airplane Categories OR airplane type ratings or instrument airplane ratings. | 250 in helicopters, 50 hours instrument instruction in helicopters and at least 100 hours preparing pilots in helicopters for the Commercial or ATP Certificates, or instrument helicopter ratings or type ratings. |

**Note:**  Applicants applying for type rating authorization only must meet the requirements for the applicable CIRE/ATPE category and class, along with the type rating requirements.

**c.   Specific Eligibility Requirements for SPEs.** DPEs who are authorized by a managing office to conduct airman testing at the private, commercial, or ATP level may be authorized by that office to conduct additional airman testing at the sport pilot level. In this instance, the managing office assumes the authorization and management responsibility.

**d.   Specific Eligibility Requirements for SPFIEs.**

(1) The SPFIE must already possess an active SPE authorization for airman testing to the sport pilot certificate level in a specific category and class of LSA. An SPFIE may issue a sport pilot certificate or flight instructor certificate with a sport rating, as applicable.

(2)  If a designee possesses an authorization for airman testing at the recreational pilot level or above and is managed by a Flight Standards office other than the Specialty Aircraft Examiner Branch (AFS-610), the Flight Standards office with direct oversight grants the SPFIE authorization. Otherwise, AFS-610 directly grants the SPFIE authorization.

**AR 122**

**Table 3-7. Specific Eligibility Requirements for Designation as an SPE**

| | BALLOON | WEIGHT SHIFT CONTROL | POWERED PARACHUTE | AIRSHIP | AIRPLANE | GYROPLANE | GLIDER |
|---|---|---|---|---|---|---|---|
| **HOURS ACTING AS PIC** | 200 Total, 100 in balloons AND in the past 12 months: 20 hours in balloons which included at least 10 flights that were of at least a 30 minute duration | 500 Total, 250 in weight shift control, 125 in class, AND in the past 12 months: 50 hours in weight shift aircraft | 250 Total, 100 in powered parachutes, 60 in class, AND in the past 12 months: 25 hours in powered parachutes | 200 Total, 100 in airships AND in the past 12 months: 20 hours in airships | 500 Total, 250 in light-sport airplanes, 125 in class, AND in the past 12 months: 50 hours in airplanes | 500 Total, 250 in gyroplanes AND in the past 12 months: 50 hours in gyroplanes | 250 Total, 100 in gliders AND in the past 12 months: 10 hours in gliders, which involved at least 10 flights |
| **HOURS AS A FLIGHT INSTRUCTOR** | 100 in balloons | 200; at least 100 in weight shift control | 100; at least 50 in powered parachutes | 100 in airships | 200; at least 100 in light-sport airplanes | 200 in gyroplanes | 100; at least 50 in gliders |

> **Note:**  If adding SPE or SPFIE authority in a category of aircraft for which the designee already holds PE privileges, the designee need not meet the requirements listed above.

**e. Specific Eligibility Requirements for VAEs, VFEEs, and EAEs.**

(1)  The FAA NPO determines the need for an SAE. If there is a need for a new SAE, and the NPO has the ability to manage the additional examiner, a selection will be made following the normal DMS process.

(2)  VAE, VFEE, and EAE applicants must apply through DMS, but must also include a letter of recommendation from a recognized community-based organization (CBO), such as Experimental Aircraft Association (EAA), Aircraft Owners and Pilots Association (AOPA), etc.

(3)  After selection but prior to designation, the NPO will contact the CBO to verify the qualifications of the proposed SAE.

(4)  When there are no qualified and/or current examiners available for a vintage aircraft, the best qualified SAE (qualified in an aircraft within the same group) may conduct the test from the jump seat of a vintage airplane as long as a current and qualified pilot occupies a pilot seat.

**AR 123**

(5)  There is no specific limit to the number of vintage airplanes for which a VAE, VFEE, or EAE may receive authorization. An SAE will be designated to conduct practical tests in one or more of the SAE authorizations based on their qualifications and the needs of the program.

(6)  An SAE must meet the requirements of all applicable regulations including § 61.58 to conduct a practical test while serving as a required flightcrew member. When conducting the evaluation from other than a crewmember station, they are not required to be current in accordance with § 61.58.

(7)  When a designation is added, a new CLOA containing all designations held is generated in DMS.

**f.   Flight Instructor Initial Test Authorization.** Prior to authorizing a designee to conduct initial flight instructor tests, the managing office must ensure that the designee is highly qualified to conduct those tests. The managing office should carefully review the qualifications, experience and reputation of the designee being considered. As a minimum, designees being considered for initial certificated flight instructor (CFI) authorization must have been designated as a CIRE and as an FIE (limited to add-on or renewal only) for at least 12 calendar-months.

**Table 3-8. Specific Eligibility Requirements for Designation as a VAE, VFEE, and EAE**

**Note:** The final decision as to eligibility to serve as an SAE is determined by the NPO for Vintage and Experimental Aircraft, AFS-600, with input from a CBO, if necessary.

| ELIGIBILITY REQUIREMENTS | VINTAGE AIRPLANES | VINTAGE GROUP | EXPERIMENTAL AIRCRAFT | EXPERIMENTAL GROUP | FLIGHT ENGINEER | GLIDERS |
|---|---|---|---|---|---|---|
| **CERTIFICATES REQUIRED** | Commercial and Instrument or Airline Transport<br><br>Flight Instructor<br><br>Airplane | Commercial Pilot and Instrument or Airline Transport<br><br>Flight Instructor | Commercial and Instrument or Airline Transport<br><br>Flight Instructor<br><br>Airplane or Helicopter, as appropriate | Commercial and Instrument or Airline Transport<br><br>Flight Instructor<br><br>Airplane or Helicopter, as appropriate | Flight Engineer | Commercial Pilot<br><br>Flight instructor |
| **CERTIFICATE CATEGORIES** | Both with Airplane category | Both with Airplane category | Both with Airplane or Helicopter category, as appropriate | Both with Airplane or Helicopter category, as appropriate | Flight Engineer | Both with Glider category |
| **RATINGS AND AUTHORIZATIONS** | Type Rating in the Subject Airplane | Type Ratings in at least 3 vintage airplanes | Experimental Aircraft Authorization in aircraft | Experimental Aircraft Authorizations in 3 aircraft | Reciprocating, Turbopropeller, or Turbojet, as appropriate | |
| **HOURS AS PIC** | 5,000<br><br>1,000 in airplanes, which includes at least 100 in past 12 months<br><br>100 in large vintage aircraft<br><br>10 hours in type | 5,000<br><br>1,000 in airplanes<br><br>100 in large vintage airplanes, which includes 100 in large vintage aircraft<br><br>Must be current in more than one vintage aircraft | 5,000<br><br>1,000 in airplanes, which includes at least 50 in past 12 months<br><br>If applicable, 100 in large aircraft.<br><br>10 hours in type | 5,000<br><br>1,000 in airplanes, which includes at least 50 in past 12 months.<br><br>If applicable, 100 in large aircraft | 2,500 as flight engineer<br><br>(Note: These are flight engineer hours. PIC is not applicable to flight engineer.) | 5000<br><br>25 as glider |
| **HOURS AS FLIGHT INSTRUCTOR (as CFI, Authorized Aircraft Instructor (AAI), or Military Flight Instructor (MFI))** | 100 | 100 | 100 | 100 | N/A | 100 |

**g. SMFT Authorization and Requirements**. Prior to authorizing a designee SMFT privileges, the managing office must carefully review the qualifications and experience of the designee being considered. As a minimum, designees being considered for SMFT authorization must have been designated with certification practical test privileges on their CLOA for at least 12 calendar-months.

**h. Specific Eligibility Requirements for Admin PEs.** Specific eligibility requirements for ACRs.

(1) ACR-141.

(a) The holder of a pilot school certification who has been issued examining authority under part 141 subpart D for at least one of its courses may request ACR designation for an employee or representative of that company. The pilot school makes the request for an ACR by submitting a letter to the school's responsible FSDO.

(b) The pilot school requesting the designation of an ACR must hold flight test examining authority under part 141 subpart D. Pilot schools holding examining authority for knowledge testing only are not eligible for ACR designation. ACR candidates:

*1.* Must be currently employed by or hold a position in the pilot school organization.

*2.* Must have been employed by, or held a position in, the pilot school for at least 12 calendar-months immediately preceding the application for designation.

*3.* Must hold a valid pilot certificate (other than a student pilot certificate), valid flight instructor certificate, or valid ground instructor certificate.

*4.* The ACR applicant must demonstrate knowledge of pilot school certification requirements, general operating rules, examining authority privileges and limitations, pilot certification and rating requirements, and specific standards and requirements for the performance of ACR-141 authorization.

(c) Any DPE or SAE who holds a current CLOA may be authorized to perform ACR duties and responsibilities (for any airman certificate or rating) provided the DPE or SAE is also current with regards to the ACR training requirements.

(2) ACR-FIRC.

(a) An FAA-approved FIRC provider may request the designation of an ACR. These individuals are authorized to renew flight instructor certificates to eligible course graduates of the approved FIRC.

(b) Only an authorized FIRC provider holding an FAA-approved FIRC training course outline (TCO) may make a request for the designation of an ACR applicant. Final approval of the FIRC provider's TCO is a prerequisite for an ACR designation. An authorized FIRC provider may request ACR designation for one or more responsible members or employees

**AR 126**

of that organization by submitting a letter to the managing FAA office where the applicant's principal business office is located.

(c) A FIRC provider requesting an ACR designation will provide the following information in a letter to the responsible Flight Standards office:

*1.* The original date of FAA approval of the FIRC provider to conduct the FIRC;

*2.* The number of courses delivered in the 12-month period immediately preceding the request for an ACR designation;

*3.* The number of attendees issued graduation certificates, the number of graduation certificates denied, including the reasons for the denials; and

*4.* The number and location of courses scheduled to be delivered, along with the expected number of attendees for the 12-month period immediately following the date of request for designation.

(d) ACR candidates:

*1.* Must be currently employed by the FAA-approved FIRC.

*2.* Must have been employed with the FIRC for at least 12 calendar-months immediately preceding application for designation as an ACR.

*3.* Must hold a valid pilot certificate (other than a student pilot certificate), valid flight instructor certificate, or valid ground instructor certificate.

(e) Any DPE or SAE who holds a current CLOA may be authorized to perform ACR duties and responsibilities for the FIRC provided the DPE or SAE is also current with regards to the ACR training requirements.

**8. Disqualifiers—Special Considerations.** Any applicant that has been previously terminated for cause must not be considered for designation (see Volume 1, Chapter 2, Application Process, for disqualifying criteria).

**9. Privilege, Not a Right.** See Volume 1.

**10. Post-Application.** See Volume 1.

**11. Maintaining an Active Designee Application.** See Volume 1.

**AR 127**

## Chapter 3.  Selection and Evaluation of a Designee Applicant

**1.  Purpose.** This chapter provides the policy related to the selection and evaluation of DPE, Admin PE, and SAE applicants. This designation type-specific policy and Volume 1 constitute the overall policy for the selection and evaluation of DPE, Admin PE, or SAE applicants.

> **Note:**  Detailed job aids for this DMS process can be found at: https://my.faa.gov /content/myfaa/en/org/linebusiness/avs/offices/air/div_dir/air600/dms.html.

**2.  General.**

**a.  Selection Process.** The general process of selection can be broken down into three parts: DMS determines if the designee meets system-defined minimum qualifications; the selecting official determines if need and ability requirements are met; and then assigns an evaluation panel to further review the applicant's qualifications and abilities. (See Figure 3-1 for a high-level representation of the selection flow.)

### Figure 3-1. High-Level Selection Process Flow



**b.  Selection Considerations.**

(1)  When a need for a designee has been identified, the office management will query DMS for a listing of applicants. Candidates must submit applications exclusively through DMS.

(2)  An evaluation panel, determined by the selecting official, will then be established to review and evaluate the list of viable applicants identified through DMS. The evaluation panel assesses each designee candidate's background knowledge and experience through:

(a)  A thorough review of the application;

(b)  Consultation with others who are familiar with the applicant; and

(c)  Review and contact references provided by the applicant and comments that may influence the decision to recommend or deny appointment.

> **Note:**  The selection and appointing process has multiple steps and involves several DMS users. The appointing official and the selecting official have access to the "Work Flow Tool" in DMS, which allows them to quickly determine the status of an appointment, or expanded authority request. The DMS Management Action Links and DMS job aids should be reviewed for detailed information: https://my.faa.gov/content/myfaa/en/org/linebusiness/avs/offices/air/div_dir/air600/dms.html.

**3. Need and Ability to Manage.** See Volume 1.

**4. Requesting Qualified Applicants.**

    **a. General.** Once the FAA establishes need and ability to manage, the selecting official can request a list of applicants through DMS, which searches active applications to identify candidates that most closely match the specified criteria.

    **b. Initial Request.** Once DMS has generated a list of applicant(s) based on the search criteria, the selecting official should review the applications prior to assigning personnel to evaluate the applicant's qualifications. Determining which applicants will be evaluated for appointment is at the sole discretion of the selecting official.

    **c. Additional Requests.** If no qualified candidates are available within DMS for the appointing office, the office should query for applicants from a nearby office to see if they would be willing to serve the requesting office. If no qualified applicants are available, an appointing official may request a deviation from minimum qualification requirements if:

    (1) The FAA demonstrates a significant need for the appointment, and

    (2) The managing office can justify that the designee candidate meets an equivalent qualification.

    **d. Minimum Qualification Deviation Request Process.** When there are no qualified applicants in DMS for the specific need of the office, the Flight Standards office may request that the selecting official petition the NPO for a deviation from the minimum qualifications.

    (1) Documentation. The selecting official will document and communicate the circumstances and justification for the deviation in a memo to the NPO outside of DMS.

    (2) Coordination. If in agreement with the Flight Standards office recommendation, the NPO will document the circumstances and justification in DMS and complete the required DMS process (deviation allowed).

    **Note:** The purpose of a deviation is to fill a specific need that the managing office has for which there are no qualified applicants in DMS. The expectation is that the office would appoint the applicant within 30 days of granting the deviation. If the applicant has not been appointed after 30 days, the process ends.

**5. Evaluation.**

    **a. Evaluation Process.** It is the goal of the FAA to establish a uniform designee candidate assessment process (as much as practicable) for all designee types.

    **b. Evaluation Panel.** At such time that one or more viable applicants have been identified through DMS, an evaluation panel is convened to consider the merits of each applicant. The panel generally comprises three FAA staff that should include:

**AR 129**

(1) An ASI from the office that initiated the selection and appointment process. This ASI should assume a lead role during the evaluation process, and will coordinate the evaluation panel results within DMS.

(2) An ASI from AFS-600 (required). For appointments to AFS-610, the member from AFS-600 must be from outside of AFS-610. The selecting official must contact AFS-600 via email to request an evaluation panel member before the evaluation panel is created in DMS. The request for an AFS-600 evaluation panel member must be sent to the following email: 9-AMC-AFS-650-DMS-EP-Request@faa.gov.

(3) At least one additional GA ASI, which may include an FLM.

**c. Evaluation Panel Tasks.** The evaluation panel assesses each applicant's background, knowledge, and experience by conducting a thorough review of the designee application. To support this process, the following tasks must be accomplished:

(1) Review the applicant's application and supporting documentation in DMS.

(2) Contact references as necessary.

(3) Conduct an interview with the designee candidate. The interview should determine whether the applicant has the general and specific qualifications, as well as the qualities necessary to be successful as a designee. Interview responses should be consistent with the information contained on the candidate's application.

(4) Verify that minimum qualifications have been met.

(5) Review the applicant's experience on the DMS application to determine what authorizations they may qualify for. This should be done in advance of an applicant interview.

(6) Verify that the applicant possesses the appropriate airman certificate, category and class rating, and type rating for the authorizations sought.

(7) Review relevant information from each of the following FAA databases to determine the candidate's aviation background and any issues which may have an adverse effect on the candidate's application:

(a) Accident Incident Data System (AIDS);

(b) SPAS;

(c) Program Tracking and Reporting Subsystem (PTRS); and

(d) Enforcement Information System (EIS).

(8) For Admin PEs, inspect facilities and equipment (if applicable) to be used in the conduct of their duties.

**AR 130**

(9) Ensure, based on research found in the databases above, that the requirements of Volume 1, Chapter 4, Designee Appointment, are met.

**d. DPE Applicant Pilot Proficiency Check Prior to Appointment.** The evaluation panel will consider the results of a pre-appointment pilot proficiency check, if applicable. The purpose of the proficiency check is to evaluate the designee applicant's piloting skills. The content of the proficiency check may include a demonstration of part or all of the following:

(1) The knowledge and skill areas required for the original issuance of the certificate for which the DPE will hold authority.

(2) Maneuvers and procedures listed in the practical test standards (PTS)/Airman Certification Standards (ACS) for the applicable certificate and rating.

> **Note:** Each DPE applicant (other than Admin PE) selected for designation must pass a proficiency check by an FAA inspector before the FAA issues an initial designation. If the managing office has direct knowledge of the flight proficiency of the designee applicant, such as recent part 135 or 141 flight check, or check airman activity, then a preappointment proficiency check is optional. However, if the designee applicant has not been recently observed (within the previous 12 calendar-months) in the specific category, class, and type for the authorizations desired, then a proficiency check in the appropriate aircraft is required.

**e. Evaluation Panel Outcomes.**

(1) When the evaluation panel determines that an applicant meets the requirements for designation, the results are documented in DMS and a recommendation is provided to the appointing official through the selecting official. If the appointing official is in agreement with the recommendation, the appointment process will ensue. See Chapter 4 for information relating to the appointment process.

(2) If the evaluation panel, with concurrence from the selecting official, rejects all applications provided by DMS for good cause, the managing office should encourage suitable applicants to apply through DMS so that they can be considered.

**6. Additional Authorizations.** Designees will apply for additional authorizations using the "request additional authorizations" link in DMS. The managing office will complete the process using the same procedures for original designation, although they are not required to add authorizations just because the designee requests them. This is entirely at the discretion of the FAA.

## Chapter 4.  Designee Appointment

**1.  Purpose.** This chapter provides the policy related to the appointment of DPEs, Admin PEs, and SAEs, referred to collectively in this chapter as designees. This designation type-specific policy and Volume 1 constitute the overall policy for the appointment process for a DPE, Admin PE, and SAE.

> **Note:** Detailed job aids for this DMS process can be found at: https://my.faa.gov /content/myfaa/en/org/linebusiness/avs/offices/air/div_dir/air600/dms.html.

**2.  General.**

    **a.  Appointment Process.** Below is a high-level representation of the appointment process.

### Figure 3-2. High-Level Appointment Process Flow



    **b.  Appointment Considerations.**

      (1) The managing specialist should issue appropriate privileges and limitations in the CLOA based on the applicant's:

      (a)  Background experience;

      (b)  Personal and professional qualifications; and

      (c)  Needs of the appointing office.

      (2) Prior to appointment, the managing specialist will verify that the following events are completed and recorded in DMS:

      (a)  Successful completion of the initial designee specific training conducted by the FAA's Designee Standardization Branch (AFS-640) in Oklahoma City, OK. For a list of the training, visit https://av-info.faa.gov/dsgreg/sections.aspx.

      (b)  Applicant has attended an orientation conducted by their managing office, which includes, but is not limited to, the following:

        *1.*  Caution the designee that any irregularities or deficiencies related to the delegated work may result in the termination of the designation under the provisions of part 183, § 183.15(b)(4).

        *2.*  Remind the designee to perform only authorized functions within the limits of their authority.

**AR 132**

*3.* Remind the designee to request preapproval through DMS before accepting any applicant requests for testing or checking activities.

(c) Remind the designees, except when using IACRA, to submit applicable original or duplicate documents within 7 calendar-days of completion to the managing office for review.

**3. ACR-141.** After an ACR is designated, the managing specialist will issue an initial supply of forms appropriate to the authorization and will instruct the ACR on the completion, checking, and disposition of certification files. The managing specialist will also train the ACR on how to use the IACRA program. The managing specialist should make certain that the ACR has the appropriate regulations; official guidance materials; the school's training course outline; and the syllabus, telephone contacts, and addresses of the managing FSDO and the Airmen Certification Branch (AFB-720).

**4. Designee Number.** See Volume 1.

**5. CLOA.** The CLOA will identify the designee type and the specific authorizations, or limitations.

> **Note:** The CLOA should not be issued until all required training and orientation requirements have been completed.

**6. Appointment Duration.** The initial duration of a designee's appointment is up to 12 calendar-months.

**AR 133**

## Chapter 5.  Responsibilities and Obligations of a Designee

**1.  Purpose.** This chapter provides the policy related to the responsibilities and obligations of the DPE, Admin PE, and SAE, referred to collectively in this chapter as designees. This designation type-specific policy and the Volume 1 constitute the overall policy for the responsibilities and obligations of DPEs, Admin PEs, and SAEs.

**2.  General Responsibilities.**

   **a.  Accept Airman Certificate and/or Rating Application.** Accept applicable airman certificate and/or rating applications for airman certificates and ratings.

   **b.  Conduct Tests.** All tests must be appropriate to the FAA CLOA held by the designee, and in accordance with the appropriate PTS or ACS. The use of an interpreter is strictly prohibited.

   **c.  Charge Reasonable Applicant Fees.** The designee must ensure that the applicant understands all fees charged, including the fee for retesting after failure, before the designee accepts the airman certificate and/or rating application.

   **d.  Issue Temporary Airman Certificates.** Issue Temporary Airman Certificates only to applicants who have been tested and found qualified for the certificate or rating sought. The managing FAA office may remove this authorization and retain this privilege. In this case, limitations will be entered on the CLOA.

   **e.  Accept Pilot Applications.** Accept pilot applications for new pilot certificates and/or ratings (for which the designee holds that authorization) and any pilot certificate that is administrative in nature (e.g., second-in-command (SIC) type rating or English language endorsement), provided the designee has received required initial training and recurrent training every 24 calendar-months thereafter, both offered by AFS-640.

   **f.  Expectations.** DPEs, Admin PEs, and SAEs are expected to:

      (1) Provide FAA testing and certification activities without prejudice or discrimination in a fair and unbiased manner.

      (2) Honor appointments made as promptly as possible. The designee is also expected to make their services available to all applicants on an equitable basis.

      (3) Give undivided attention to the applicant during the entire testing period.

      (4) Ensure that discussions following any test are private and confidential.

      (5) Maintain a high level of knowledge, skill, and expertise commensurate with their authorizations.

      (6) Charge no more than a reasonable fee for services.

**AR 134**

(7)  Keep abreast of current aviation trends and technologies.

(8)  Serve as a willing resource to the aviation community on matters of FAA airman certification regulations and policy.

(9)  Set a high standard of airmanship and safety through personal example.

(10)  Exercise diligence and care in the preparation of airman certification documentation and files.

(11)  Always represent the FAA and its workforce to the public in a positive manner.

(12)  Work constructively with the managing FAA office.

(13)  Become familiar with any circumstances unique to a particular area when testing outside their managing office's area.

> **Note:**  Designees should be encouraged to take part in FAA Safety Team (FAASTeam) seminars and events. The FAA values the participation of FAASTeam representatives in providing support for safety meetings.

g.  **Accidents and Incidents During Practical Tests.** If an accident or incident occurs during a practical test, the designee should ensure that the pilot in command (PIC) follows the prescribed procedures for reporting the occurrence. The safeguarding of lives and property is the highest priority. As soon as possible, the designee must notify the managing FAA office of the accident or incident. SPEs must notify AFS-610 in the event of an accident during a practical test.

h.  **Limitations.** DPEs and SAEs must not:

(1)  Conduct the flight portion of a practical test prior to the ground portion.

(2)  Schedule the test to be planned as a multiple-day event. Extenuating circumstances may allow for deviations, but must be approved by the managing FAA office. The extenuating circumstance will be evaluated on a case-by-case basis and documented in DMS. An example of a situation that may warrant a deviation is a lighter-than-air practical test, which requires the flight portion to begin at sunrise.

(3)  Test more than one applicant at a time. To clarify "at a time": when a designee begins a test with an applicant, prior to accepting an application from another airman, the designee will terminate the first test with the issuance of a Temporary Airman Certificate, a Notice of Disapproval, or a Letter of Discontinuance. In cases where the test aircraft requires a flightcrew of two, such as in the case of a type rating examination in an aircraft requiring two pilots, it is permissible to evaluate both applicants together.

(4)  Conduct or monitor any portion of computer knowledge tests.

(5)  Reissue or amend any expired Temporary Airman Certificate.

**AR 135**

(6) Endorse, amend, alter, or issue any permanent airman certificate.

(7) Exempt any applicant from the testing requirements in the applicable PTS/ACS.

(8) Combine teaching with testing during the testing of an applicant.

(9) Conduct tests unless an applicant presents proof of eligibility as prescribed in the applicable part 61 or 14 CFR part 63.

(10) Conduct practical tests unless the applicant has passed the required airman knowledge test, if a knowledge test is required.

(11) Temporarily suspend a test to allow the applicant further study, and then continue the same test later.

(12) Conduct tests in any language other than English.

(13) Conduct more than three complete practical tests in a single day. This limitation does not apply to the number of retests that can be conducted in one day. A complete practical test is defined as one that is not a retest from a previous unsatisfactory test or a continuation of a previously discontinued test.

(14) Allow anyone other than an ASI to observe a test. For designee training purposes only, exceptions may be authorized in writing by the managing FAA office.

(15) Test applicants trained by the examiner. A designee who trains an applicant for a certificate or rating may only test that applicant under the following conditions:

(a) If another instructor has given the applicant at least 3 hours (or 3 flights in a glider, or two training flights of 1 hour each for balloon) of flight instruction in the 2 calendar-months prior to the test, in preparation for the test, and is the recommending instructor. For sport pilot privileges, the hours are reduced to 1.5 hours if the test is in a balloon; 1.0 hours if the test is in a powered parachute; 2.0 hours if the test is in all other light sport aircraft categories.

(b) A designee may also test an applicant trained by that designee for an additional aircraft class rating if the applicant has obtained the written recommendation of another CFI who has personally checked the applicant and found the applicant prepared for the practical test.

(c) An FIE may test an applicant that they trained for a flight instructor certificate or rating if the designee obtains written permission from the managing FAA office.

(d) An ATPE may test an applicant that they trained for an ATP Certificate or rating if the designee obtains the permission of the managing FAA office.

(e) In cases where an SAE is the only readily available instructor qualified in a rare airplane, the SAE may conduct a certification practical test for an applicant that they trained if the designee obtains permission from the managing office.

**AR 136**

(16) An ACR may not accept a part 141 graduation certificate and will not issue a Temporary Airman Certificate to an applicant who has a Statement of Demonstrated Ability (SODA), unless an ASI from the managing FSDO has clearly determined that no operational limitations are required to be placed on that certificate.

**i. Conflicts.** Designees must maintain a cooperative attitude. If an issue occurs while acting in an official capacity as a designee, contact your managing specialists. Designees are responsible for following FAA guidance and the proper chain of command. Questions must be directed to the assigned managing specialists. If a conflict cannot be resolved at that level, the designee should contact the responsible Flight Standards office or IFO management for assistance. Other FAA offices, including the Delegation Program Branch (AFS-650) or AFS-640, do not manage designees and are not authorized to provide direct guidance to designees in lieu of the assigned Flight Standards (FS) managing office guidance and instruction. Designees will not contact AFS-640 for any matters other than course information, registration, or technical issues with course materials.

**3. Ongoing Requirements of a Designee.** In order to complement the general requirements established in Volume 1 of this order, a DPE, SAE, or Admin PE will:

**a. Maintain Minimum Requirements.** Maintain the minimum qualifications established for appointment as specified in this order including certification, currency, initial, and recurrent training, and attendance at the required annual meetings.

### Table 3-9. PIC Experience Requirements

| AIRCRAFT TYPE | PIC EXPERIENCE IN THE PRECEDING 12 MONTHS |
|---|---|
| Airplane | 60 hours (10 hours in each class authorized including 5 hours in type(s) authorized, if applicable) |
| Airplane—Light-Sport | 12 hours (5 hours in each class authorized) |
| Rotorcraft | 25 hours (5 hours in each class authorized) |
| Gliders | 3 hours, which included at least 3 flights |
| Lighter-than-Air—Airship | 40 hours |
| Lighter-than-Air—Balloon | 12 hours, which included at least 3 flights |
| Weight Shift Control | 12 hours (5 hours in each class authorized) |
| Powered Parachute | 5 hours (3 hours in each class authorized) |

**Note:** PIC experience obtained while administering practical tests will not be considered for the purposes of the recent PIC experience required of the designation (listed above).

**Note:** For designees who hold authorization to conduct tests in more than one category of aircraft, the DPE must have obtained the total PIC experience for the authorized category that requires the greatest number of hours. In addition, the number of PIC experience hours required for each additional class (in the case of gliders, 3 hours, including 3 flights) must be met. PIC experience obtained in airplane may be used to meet the requirements for airplane–light sport and vice versa. For instance, a DPE authorized to test in both airplanes and rotorcraft

**AR 137**

helicopter would be required to obtain a total of 60 hours of PIC (because 60 hours is the greatest total required of all authorized categories). Of those hours, at least 10 hours must be in each class of airplane authorized (i.e., ASEL or AMEL) and at least 5 of that in helicopters (rotorcraft class). In this case, the DPE must have accrued 5 hours in rotorcraft-helicopter plus 10 in AMEL plus 10 in ASEL totaling 25. The remaining hours could be in any category or class. Another example: a DPE authorized to conduct tests in airplanes, gyroplanes, and gliders would be required to obtain a total of 60 hours PIC (because 60 hours is the greatest total required of all authorized categories). Of those 60 hours, 10 hours must be in the class of airplane authorized (i.e., ASEL or AMEL), at least 5 hours in class of rotorcraft (gyroplanes), and 3 hours must be in gliders (which included at least 3 flights).

**b.  Use Current Regulations and Policies.** Maintain and use the most current versions of the Code of Federal Regulations (CFR), the PTS/ACS, FAA Order 8900.1, and this order. Storage and retrieval of these documents may be electronic.

**c.  Attend Annual Meeting.** Designees must attend the annual designee meeting conducted by the managing FAA office at least once every four quarters. For designees regularly testing in an area outside of their managing office's district, they are encouraged to attend the annual meeting for the district where they are regularly testing.

(1) The FAA office should attempt to schedule the annual meeting to allow for all designees of the same type to meet together in a location at the same time to discuss, at a minimum, the following subject areas:

(a)  Local issues;

(b)  Local problem areas;

(c)  Local procedures;

(d)  Standardization issues;

(e)  Designee performance; and

(f)  National issues.

(2) A record of attendance by each designee must be documented in DMS by the managing specialist.

(3) In cases where, beyond the designee's control, it is not possible for a designee to attend the annual meeting, the designee must meet with their managing specialist to discuss the same subject material that was presented at the meeting. A designee who misses the annual meeting must still satisfy the annual meeting requirement.

   **d.  IACRA.**

    (1)  For airman testing and certification, the designee is expected to use IACRA online processing system accessible through https://iacra.faa.gov.

    (2)  If IACRA is unavailable when the DPE is beginning the test, the applicant must submit a paper application (FAA Form 8710-1). The entire certification process must then be completed using the paper application and the certification file must be sent to the managing FAA office. The DPE cannot, under any circumstances, complete the certification in IACRA at the conclusion of the test, even if it is available. If the test is started with paper, it must be completed with paper. The DPE must also notify the managing FAA office of the reason for using paper instead of IACRA.

   **e.  PTS/ACS.** Designees with airman testing and checking privileges must use the appropriate PTS or ACS in accordance with their authorizations. The PTS or ACS is available through a number of commercial sources or through the FAA website at www.faa.gov.

**AR 139**

## Chapter 6.  Oversight and Management of a Designee

**1.  Purpose.** This chapter provides the policy related to the oversight and management of DPEs, Admin PEs, and SAEs, referred to collectively in this chapter as designees. This designation type-specific policy and Volume 1 constitute the overall policy for the oversight and management of DPEs, Admin PEs, and SAEs.

> **Note:** Detailed job aids for this DMS process can be found at: https://my.faa.gov /content/myfaa/en/org/linebusiness/avs/offices/air/div_dir/air600/dms.html.

**2.  General.**

    **a.  General Considerations.**

    (1) Effective oversight of designees is founded on a strategy of risk management. A robust oversight policy includes a continual process of weighing the potential for harm from any apparent hazard against the likelihood of its occurrence. When safety risks and hazards are identified, appropriate preventive action is imperative.

    (2) Designee oversight includes the managing, monitoring, and tracking of a designee's activities and performance. Managing specialists are also responsible for ensuring that DPEs, Admin PEs, and SAEs are thoroughly coached in the importance of their role of administering ground (knowledge) and flight (skill) tests to the applicants in accordance with the PTS/ACS and Order 8900.1, Volume 5.

    (3) Oversight will include oversight activities at varying intervals, as well as an overall performance evaluation (OPE) of each designee at least each 36 calendar-months. The outcome of each oversight activity provides data to be used in completing each designee's OPE.

    (4) Designees can expect that the managing office will assign to each DPE, Admin PE, and SAE a managing specialist that is a qualified ASI (Operations). The ASI will develop oversight plans to ensure quality, the highest degree of integrity, and compliance with current policy, regulations, and the PTS or ACS, as appropriate. The oversight plan will also identify potential hazards and risks to aviation safety. If and when the FAA discovers deficiencies, the managing specialist will respond in a manner prescribed by the common designee policy in this order and other relevant FAA guidance.

    (5) DPEs and SAEs shall expect the FAA to conduct a direct observation of their first complete test, and Admin PEs should expect the FAA to observe their first certification actions. Thereafter, the designees may be inspected or observed by FAA personnel at any time with or without prior notice.

    (6) For additional authorizations, in the case of an office having granted the DPE more than a single authorization during the initial designation (e.g., PE and CIRE), the managing office need not observe the DPE administering a practical test for each additional authorization prior to granting it. However, each subsequent authorization granted requires a demonstration of competency as a pilot examiner appropriate to the aircraft or simulator and the authorization sought. This demonstration of competency may be completed by:

**AR 140**

(a)  The observation of a complete practical test for the authorization sought;

(b)  The ASI acting in the role of an applicant during a simulated practical test or pilot proficiency check; or

(c)  The ASI administering a complete designee pilot proficiency check, including representative tasks and maneuvers contained in the PTS/ACS for each authorization that the managing office is granting to the DPE.

(7)  The managing specialist documents oversight activities and results in DMS. Such reporting is not only crucial for managing individual designees, but also for implementing risk-based decision making to the management of FS designees.

> **Note:**  For an additional authorization, if the managing office has direct knowledge of the flight proficiency of the designee, such as a recent part 135 or 141 flight check, or check airmen activity, then a demonstration of competency is optional. However, if the designee has not been recently observed (within the previous 12 calendar-months) in the specific category, class, and type for the authorizations desired, then a proficiency check in the appropriate aircraft is required.

**b.  Managing Office and Managing Specialist.** See Volume 1.

**c.  Oversight and DMS.**

(1)  Designee oversight includes the managing, monitoring, and tracking of a designee's activities and performance. DMS establishes the minimum required oversight activities for each designee based on their authorized activities and risk-based data. Additional oversight may be conducted as deemed necessary by the managing specialist or managing office. Oversight activities are the responsibility of the designee's managing specialist and the managing specialist is expected to conduct the oversight activities. However, other ASIs can enter oversight activities on the designee, and there are provisions in DMS for the managing specialist to "take credit" for an oversight activity of the same type conducted by another ASI if it's in the required timeframe. Additional instructions are included in the DMS job aids for oversight activities.

(2)  The managing specialist must conduct designee OPEs on an ongoing basis predicated on the outcome of oversight activities. The managing specialist should record in DMS the results of individual oversight activities. However, the managing specialist must record in DMS a formal evaluation at least once every 36 calendar-months.

(3)  Overdue Direct Observations. The managing specialist should ensure a designee's direct observation is completed on or before the due date listed in DMS. When a designee's direct observation cannot be completed before the due date, DMS will not prevent the designee from performing additional delegated activities. All factors must be considered and risk managed appropriately. If the managing specialist determines the lack of a completed direct observation presents an unacceptable risk, the designee may be suspended in DMS until the direct observation is completed. In cases where the managing specialist finds the risk acceptable, that risk assessment must be documented in DMS using the "Special Emphasis Item" oversight and

**AR 141**

putting "OVERDUE" in the National Use field, and an explanation of the factors considered and the reason for the extension. Direct observations may not be extended more than one quarter beyond the due date (e.g., a due date of June 30, 2020, cannot be extended beyond September 30, 2020).

**d. Performance Measures.** The managing specialist will render an overall rating for the period according to the following classifications:

(1) Technical. The designee demonstrates sufficient knowledge, skill, and ability to conduct authorized tasks within established guidance and standards. The designee possesses an expert level of knowledge and skill, understands and uses appropriate terminology, uses the correct equipment, applies appropriate standards, and accurately interprets results.

(a) Equipment and Materials. Does the designee possess relevant and current FAA publications, either electronically or in paper form, such as the CFR, the PTS/ACS, Aeronautical Information Manual (AIM), Chart Supplement U.S. (CS), and this order? Does the designee have access to technology in order to effectively use the IACRA system in the processing of airman certification files?

(b) Knowledge and Understanding. Does the designee understand the technical terminology contained in FAA orders, the PTS/ACS, and other reference material used in planning, describing, or conducting authorized activities? Does the designee demonstrate an expert level of knowledge about the aircraft operation and systems?

(c) Interpret and Apply. Does the designee correctly interpret and apply the technical performance standards required by the authorization?

(2) Procedural. The designee demonstrates the ability to complete administrative functions correctly. The designee accurately completes and issues appropriate documentation, submits required data, follows established procedures, and complies with all regulations, orders, and directives.

(a) Screening Applicants. Does the designee follow the correct procedure when accepting applications and determining applicant eligibility?

(b) Submittal of Information and Data to FAA. Does the designee properly submit information, documents, and data to the FAA when it is required by FAA orders or by specific instructions provided by the FAA managing office?

(c) Conducting Evaluations and Tests. Does the designee follow the correct procedure when conducting, grading, and providing feedback to applicants during testing?

(d) Issuing Certificates and Testing Results to Applicant. Does the designee follow the correct procedure when completing and issuing airman certificates, test results, or other findings to the applicant upon completion of the testing activity?

(3) Professional. The designee conducts activities in an ethical, courteous, and conscientious manner reflecting highly on the Administrator. The designee presents a

**AR 142**

cooperative attitude and demonstrates integrity, tact, and diplomacy when dealing with industry and the FAA. The designee communicates effectively in a manner that reflects positively on the FAA, both orally and written.

(a) Oral and Written Communication. Does the designee effectively communicate either in writing or in conversation with the FAA and the general public? Does the designee provide feedback to the FAA with ways to improve the designee system?

(b) Professional Representation of the FAA to the Public and Stakeholders. Does the designee demonstrate a positive reflection on the FAA and a willingness to comply with FAA policy and managing office instruction?

(c) Cooperative Attitude With the FAA. Is the designee easy to work with and present a positive attitude when interacting with the FAA? Is the designee responsive to the FAA and reasonably accessible to the FAA when required?

(d) Ethics and Judgment. Does the designee maintain high ethical standards and demonstrate good judgment in the conduct of authorized activities?

(4) Key DPE and SAE Performance Measures. Additional performance measures for DPEs and SAEs include, but are not limited to the following:

(a) Develops and uses a written plan of action in accordance with Order 8900.1 and the applicable PTS or ACS.

(b) When using PTS, evaluates "Special Emphasis Items" throughout the test.

(c) Employs "scenario-based" questioning and flight tasks liberally throughout the test to assess the applicant's decision making and resource management abilities.

(d) Completes pretest, preflight, and postflight briefings as appropriate

(e) Makes an accurate "pass/fail" determination.

(f) Properly completes the Temporary Airman Certificate, Letter of Discontinuance, or Notice of Disapproval, as appropriate, through the use of IACRA unless extenuating circumstances preclude IACRA use. In such cases, paper documents will be evaluated for completeness, accuracy, and legibility.

**3. Oversight Actions.**

**a. Planning an Oversight Activity.**

(1) In addition to guidance provided in Volume 1 of this order, the managing specialists should use a risk-based analysis to determine when an inspection is necessary. Circumstances that warrant an oversight activity include, but are not limited to:

**AR 143**

(a) Oversight from DMS generated oversight activities. The managing specialist also determines if additional oversight may be necessary.

(b) Complaints received about a designee's conduct during certifications.

(c) Persons newly designated (inspections can occur at a higher level of frequency to ensure compliance).

(d) Review of designee's certification files or reports produced through DMS indicate one or more of the following:

    *1.* Overall problems with the certification files;

    *2.* A "no failure" or "high pass rate" that seems unusual;

    *3.* A higher activity rate, as compared to the average total number of tests/checks for all active DPEs;

    *4.* Applicants are traveling long distances; or

    *5.* Unreasonably long or short test durations considering the type of test.

(2) Prepare for the Inspection.

(a) Review the following documents prior to the inspection:

    *1.* Designee's file;

    *2.* Previous inspection reports and historic PTRS and DMS entries; and

    *3.* Any correspondence between the managing office and the designee since the last inspection.

(b) If appropriate, review the designee's preapproval within DMS and arrange the inspection to coincide with the scheduled certification event.

(3) Additionally:

(a) Consider the habits and availability of designees and schedule activities so as not to inconvenience or create an unwarranted imposition on the individual.

(b) When planning an announced observation of a flight portion of a practical test being conducted by a DPE or SAE, communicate this intent in advance as much as practicable so that the aircraft is configured in such a manner (e.g., Weight and Balance (W&B), fuel load, etc.) to accommodate the FAA as well as the applicant and designee.

(c) It is noted that, when the FAA plans an observation of any portion of a practical test (either examination ground or flight), an applicant's permission is not required. Further, advance notice to either the designee or applicant is not required. Unannounced observations are

at the discretion of the managing specialist, and can be a useful tool in determining the quality of the designee's work when they are not expecting to be observed.

**b. Oversight Activities.** Designee oversight includes the comprehensive management, monitoring, and tracking of a designee and related activities. All of these actions are considered oversight activities in DMS. A complete surveillance of a DPE, Admin PE, or SAE involves a group of oversight activities performed to observe the designee's performance. These oversight activities may be completed independently within a set timeframe, or any number of them may be completed in conjunction with one another. This approach to oversight was adopted to allow the managing specialist's flexibility in completing oversight activities as the opportunity arises, and to encourage focus on the specific element being evaluated. Designee oversight is most effective when it occurs throughout the year rather than an all-at-once, infrequent approach. The frequency of each of these activities will be determined by DMS.

(1) Direct Observations. A direct observation is a managing specialist observing the designee performing work authorized by the designee's CLOA. The purpose is to determine that the designee has the knowledge and skill to properly administer a practical test or check, or in the case of an Admin PE, to properly conduct the certification function. Direct observations provide the managing specialist the opportunity to determine if the designee is performing the work within the guidelines. It allows the managing specialist to gain insight into the designee's technical, professional, and procedural attributes. It also provides the designee with feedback from their managing specialist. In DMS, the direct observation for DPEs and SAEs is split into two parts; the observation of the ground portion of the test and the observation of the flight portion of the test. These observations may be conducted independently of each other, or both may be accomplished with the observation of a complete (ground and flight) test administered to a single applicant. The goal of the inspector during a direct observation is to observe the designee test all required areas of operations and tasks for the test that is being administered. However, in the case that the test does not proceed far enough to include all areas (i.e., Letter of Discontinuance or Notice of Disapproval), the direct observation can be considered complete if the inspector has witnessed enough tasks that they are satisfied that the designee is testing in accordance with PTS/ACS and current policy. In the case of a test that ends in a Notice of Disapproval or Letter of Discontinuance, the inspector should use the questions below to determine if the observation is complete, or another direct observation will be required. In order for the direct observation of the flight portion to be considered complete, at a minimum, the applicant must have taken flight and departed the airport environment.

(a) For an examiner who conducts the majority of tests in an aircraft unsuited to carrying an FAA inspector, the inspector will observe a complete oral test, and the flight portion of the inspection will be completed with the FAA inspector playing the role of the applicant. This method of inspection is not intended to be used for examiners who conduct an adequate number of tests in aircraft that allow an inspector to observe the flight portion of the test. Whenever possible, the inspector will observe the designee conducting both the ground and flight portion of the practical test with the designee administering a test to an actual applicant.

(b) A minimum number of direct observations will be required to be completed by a managing specialist (see DMS to determine frequency). The number of observations determined by DMS is based on all indications that the examiner is conducting the test in accordance with

**AR 145**

current policy and standards. If there is any indication of unsatisfactory performance (e.g., interviews, complaints, etc.) the managing office must investigate and conduct additional surveillance in order to determine the actual performance of the designee. The managing specialists may increase the number of direct observations if deemed appropriate due to various risk indicators that may be established, such as when a "Needs Improvement" event has been identified, or any other reason deemed appropriate. The managing specialist must conduct a complete direct observation (ground and flight) of the first practical test for a newly designated DPE or SAE. For the direct observation of an Admin PE, the managing specialist would observe an entire certification event, from the applicant presenting the application to the designee completing the paperwork and presenting the applicant with the appropriate certificate. This would be recorded as a Direct Observation—Administrative PE.

(c)  While exercising the privileges of their designation, designees must continue to maintain their currency and proficiency. During the direct observation, the managing specialist or ASI must verify that the designee is maintaining currency and PIC requirements. Currency requirements are outlined in §§ 61.56 and 61.57, and PIC requirements are outlined in Table 3-9, PIC Experience Requirements. For designees (other than SAEs) who administer tests in large, turbine-powered aircraft, currency in accordance with § 61.58 must also be maintained, regardless of which seat the designee occupies.

(d)  During a direct observation for a DPE, Admin PE, or SAE, the managing specialist should assure the applicant that the observation is focused on the designee and not the applicant. Although this may not alleviate the heightened level of anxiety, the managing specialist should make the applicant as relaxed as possible.

(e)  If the managing specialist observes a designee that is not following proper certification policy, such as conducting an exam for an applicant that is not eligible and/or does not meet the prerequisites for the certificate or rating sought, the managing specialist has the responsibility to stop the certification and discuss the concern with the designee without the applicant being present. Under no circumstances will the managing specialist allow the certification to be issued until the discrepancy(ies) are corrected.

(f)  If during the testing/checking event a DPE or SAE omits required items from the PTS or ACS, managing specialists may, at their discretion, allow the test to continue. The managing specialist must not allow the airman certificate to be issued or check to be satisfactorily completed when required items were not tested or the applicant unsatisfactorily performed the tasks. Because the PTS/ACS specifically states that the tasks can be accomplished in any order, this discretion is necessary to allow the managing specialist to watch the entire test in the event that the designee completes the omitted items at the end of the test/check.

Note:  This type of discrepancy would be noted in DMS as a procedural issue, and might require additional observations by the managing specialist to ensure the problem does not continue.

(g) Observe the DPE or SAE conducting the ground portion of an exam as described below:

**AR 146**

*1.* Review the plan of action to determine the following:

(i) Does the plan of action include all the areas of operation and tasks required by the appropriate PTS or ACS?

(ii) Does the plan of action contain a scenario that allows the evaluation of most of the areas of operation and tasks required in the practical tests with minimum disruptions?

(iii) Does the plan of action contain the required pretest, preflight, and postflight briefings?

*2.* Ensure the DPE or SAE utilizes the plan of action to conduct the test.

*3.* Ensure the DPE or SAE conducts the required pretest briefing.

*4.* Ensure that the DPE or SAE requests appropriate identification from the applicant and verifies the applicant's identity. The DPE/SAE must also review the applicant's logbook/training record and compare aeronautical experience with what is reported on the application. The designee must properly ensure that the applicant is eligible for the test or check.

*5.* Ensure the DPE or SAE does not intend to administer the practical test to more than one applicant at a time.

*6.* Ensure the applicant is informed that the inspector is principally observing the DPE or SAE's performance and that at the conclusion of the tests, unless circumstances otherwise warrant, the DPE or SAE will issue a temporary certificate if the applicant passes the test.

*7.* Ensure that the DPE or SAE receives a completed and signed application prior to beginning the test. In the case of IACRA, the applicant must log in to IACRA and sign the application prior to beginning the test.

*8.* Ensure the DPE or SAE conducts the ground portion of the exam in accordance with the procedures in the applicable section(s) of Order 8900.1, Volume 5, Chapter 2, Title 14 CFR Part 61 Certification of Pilots and Flight Instructors.

(h) Observe the DPE or SAE conducting the flight portion of an exam as described below:

*1.* Ensure the DPE or SAE conducts the required preflight briefing.

*2.* Ensure the DPE or SAE observes the applicant preflight the aircraft.

*3.* Ensure the DPE or SAE conducts the flight portion of the exam in accordance with the procedures in the applicable section(s) of Order 8900.1, Volume 5, Chapter 2.

*4.* Ensure the DPE or SAE does not allow the applicant to repeat any maneuvers or procedures that have been determined to be unsatisfactory.

**AR 147**

*5.* Ensure the DPE or SAE conducts the required post-test briefing.

*6.* Ensure the DPE or SAE completes the required paperwork based on the following outcomes:

(i) If the DPE or SAE and the applicant perform satisfactorily, observe the designee properly completing FAA Form 8710-1 and issuing FAA Form 8060-4 (this may be accomplished in IACRA, but FAA Form 8060-4 must still be issued to the applicant).

(ii) If the DPE or SAE performs satisfactorily but the applicant is unsatisfactory, observe the DPE or SAE properly completing FAA Form 8710-1 and issuing FAA Form 8060-5, Notice of Disapproval of Application, properly identifying the area(s) of operation or task(s) failed or not tested in the block for remarks.

(iii) If the DPE or SAE performs unsatisfactorily but the applicant performs satisfactorily, allow the DPE or SAE to complete FAA Form 8710-1 and issue FAA Form 8060-4. This is only possible if the inspector determines that an adequate test was given. If the DPE or SAE's performance was inadequate, resulting in an incomplete test, then the airman applicant was not properly evaluated and the inspector should observe the DPE or SAE issue a Letter of Discontinuance.

(iv) If the DPE or SAE and the applicant perform unsatisfactorily, allow the DPE or SAE to properly complete FAA Form 8710-1 and FAA Form 8060-5, properly identifying the area(s) of operation or task(s) failed or not tested in the block for remarks.

*7.* Ensure the DPE or SAE completes and submits the certification file in accordance with Order 8900.1. When using IACRA, the certification file is submitted to AFB-720 automatically and it is not necessary to submit a paper file.

*8.* Conduct a debriefing with the DPE or SAE separate from the applicant. Discuss the performance of the applicant and the DPE or SAE, and recommend areas of improvement needed by the DPE or SAE.

**Note:** Prior to conducting surveillance in an aircraft, inspectors should review the certification and currency requirements contained in Order 8900.1, Volume 1, Chapter 3, Section 6, Operations Inspector Qualifications and Currency Overview.

**Note:** The purpose of evaluating a DPE's or SAE's conduct of the direct observation is to ensure that the DPE or SAE follows testing procedures.

(i) Observe the Admin PE conducting the certification functions as described below:

*1.* Ensure the Admin PE requests appropriate identification from the applicant, validates the applicant's identity, and reviews the applicant's application for accuracy. This is required even when using IACRA.

**AR 148**

*2.*  Ensure the Admin PE conducts the certification function in accordance with the procedures in the applicable section(s) of Order 8900.1, Volume 5, Chapter 2.

*3.*  Ensure the Admin PE completes and submits the certification file in accordance with Order 8900.1. When using IACRA, the certification file is submitted to AFB-720 automatically and it is not necessary to submit a paper file.

(j)  Administrative authority. DPEs and SAEs with administrative authorizations should expect the FAA to observe their first administrative certification actions. Thereafter, DPEs and SAEs may be observed conducting administrative functions at any time without prior notice, subject to the following requirements:

*1.*  Administrative observations will be recorded in DMS as a Direct Observation—Administrative.

*2.*  The DPE or SAE will be observed conducting a complete administrative certification event, from the applicant presenting the application, to the DPE or SAE completing appropriate documentation and issuing the certificate.

*3.*  At least one Direct Observation—Administrative must be conducted every 4 quarters.

*4.*  Completion of an administrative direct observation does not satisfy the requirement for a direct observation–ground or direct observation–flight.

(2) Interviews of Recently Tested Airmen. Each managing specialist will conduct interviews of recently tested airmen. These interviews are to ensure that the examiner is properly following the PTS/ACS when the FAA is not in attendance. Inform interviewees that the questions are to evaluate the testing procedure and are not a reexamination of their certificates. Conduct a sufficient number of interviews in the previous four quarters (at least five randomly selected airmen or 50 percent of the airmen newly certificated by the designee, whichever is fewer) to provide confidence that the designee is properly conducting the test. If the interviews indicate satisfactory performance by the designee, the schedule for direct observations developed by DMS may be followed. However, if the interviews of recently tested applicants indicate a deficiency with designee performance, the managing office must conduct additional direct observations.

**Note:**  Interview results are risk indicators used to determine the frequency of direct observations. Surveys and scripted interview questions must not be used. Closed-ended questions should be avoided and the ASI should have a relaxed but directed conversation with the recently tested airman about their check ride experience with the designee. Ask followup questions based on what the airman says. The goal is to determine if the designee is giving an adequate test. Is the designee teaching, allowing repeat maneuvers, failing to test all of the required items in the PTS/ACS for the certificate or rating tested? Using interviews properly will give the managing specialist a picture of how the designee is conducting their work on behalf of the FAA.

**AR 149**

(3) DPE or SAE Testing Proficiency Check. A managing specialist may, at their discretion, ask the designee to demonstrate and explain maneuvers or evaluate maneuvers performed by the managing specialist or an ASI. The purpose of a testing proficiency check is not to evaluate the piloting skills of the designee, but to assess the designee's understanding of the elements of the maneuvers and to determine that they are able to evaluate the applicant's performance in accordance with the PTS/ACS.

(4) Review Designee Certification Packages. Each managing office will review all certification packages submitted to the managing office to ensure that the designee has completed the documentation as required by the applicable section(s) of Order 8900.1, Volume 5, Chapter 2. Package reviews as a result of correction notices received from the Civil Aviation Registry Division (AFB-700) will also be recorded in DMS using this record.

(5) Provide Technical Assistance. Each managing specialist will document in DMS when they spend time providing technical assistance to one of their designees. This does not include answering a quick phone call or email, but only when research or training is involved in the assistance.

(6) Review DMS Activity Log. Each managing specialist will review the activity log of each of the designees they manage for the previous 4 quarters. The managing specialist will look for possible actions contrary to policy (e.g., test taking an unreasonable amount of time, etc.). This may also include comparing activity reported in the log to actual aircraft or training records.

(7) Review of Proper Guidance Materials. Each managing specialist will review the applicable guidance and reference materials that the designee used to conduct a practical test or proficiency check. The managing specialist will look to see that the designee is using the most current and correct documents for the specific test or check conducted. This includes, but is not limited to:

- Practical Test Standards (PTS)/Airman Certification Standards (ACS);
- FAA Order 8000.95, Designee Management Policy;
- FAA Order 8900.1;
- FAA Handbooks; and
- Advisory Circulars (AC).

(8) Evaluate the Plan of Action. Each managing specialist will evaluate the designee's plan of action. The managing specialist will look to see that it meets the requirements outlined in Order 8900.1, as well as to see that the designee alters their plan of action and is not using the same plan of action for each test or check that they administer.

(9) Record Feedback. Each managing specialist will record in DMS any information that has been received from outside sources regarding the performance of their designee. This may be positive or negative feedback, and may come from another FAA employee, or may come from someone outside the FAA. If any followup action is required, and what that action should be, will be determined by the managing specialist.

**AR 150**

(10) Annual Meeting. Each managing specialist will record the attendance at the annual meeting of each of their designees.

(11) Special Emphasis Items. Each managing specialist will record in DMS the completion of any special emphasis item(s). These activities are not routine surveillance or management of designees, but will be directed by the NPO. Specific instructions for recording this activity will be provided.

**c.  Additional Inspections.**

(1) In addition to the required activity listed above, the managing office may conduct additional inspections as they deem necessary. The objectives of the inspections may include:

(a)  To conduct additional direct observations.

(b)  Confirmation that the designee has appropriate FAA references available.

(c)  Evaluation of adequacy of facilities.

(d)  Verification of maintenance of minimum qualifications.

(e)  Analysis of pass/fail rates.

(f)  Verification of access to technology for IACRA processing.

(g)  Identification of risks or hazards.

(h)  Other areas deemed necessary by the managing specialist.

(2)  Certain designee performance factors may prompt additional inspections. These issues may be indicative of underlying safety risks that require timely FAA attention. The performance factors include:

(a)  A pass rate of 90 percent or higher.

(b)  Discovery that the designee tested a student trained by the designee without written approval from the managing office.

(c)  Ten percent or more of airman files were returned to the designee for correction.

(d)  Valid public complaints about the designee or designees involved in an accident, incident, or violation.

Note:  Managing specialists, in consultation with their management, may use their discretion and judgment in the kind and frequency of monitoring and inspections of their individual examiners. For example, a managing specialist should consider the difference between a pass rate exceeding 90 percent for a designee that has conducted very few practical tests, and a pass rate exceeding 90 percent for a high activity designee. Similarly, if a designee's error rate is

**AR 151**

above 10 percent, the managing specialist should consider whether the designee has conducted very few practical tests or is considered high activity. Also, in a case where a designee may have an excellent record for serving the public, and one applicant files a complaint, the managing specialist may want to discuss the complaint with the designee, but the depth and detail of the monitoring, inspection, and oversight may not have to be significant. Again, we expect managing specialists to use their discretion and judgment and be professional.

   **d. Outcomes of Oversight Activities.** For all oversight activities, the managing specialist or ASI selects from three performance measure categories: Satisfactory, Needs Improvement, or Unsatisfactory. If the designee's oversight outcome results in "Needs Improvement" or "Unsatisfactory," the managing specialist must enter descriptive text in the appropriate performance measure category(ies).

   (1) Followup Action. If the designee's oversight outcome results in "Needs Improvement" or "Unsatisfactory," then appropriate followup action(s) must be determined and recorded in DMS. These actions may include any of the following:

      (a) Counseling. As conditions warrant, the FAA will provide direct guidance and counseling to designees.

      (b) Additional training. It may be necessary for the designee to receive additional training. This may include taking the initial designee course, going to a refresher course, or training provided by the managing specialist or another ASI.

      (c) Suspension. The most common reason for a suspension is when the designee has not been following certification policy as described in FAA policy.

      (d) Termination. If counseling or suspension does not correct a deficiency in designee performance, termination of the designation must be initiated. Immediate termination may also be appropriate when a designee knowingly acts contrary to and/or deliberately disregards FAA policy.

      **Note:**  A result of unsatisfactory for an oversight activity does not require suspension or termination provided that the issue is immediately corrected. If the unsatisfactory event cannot be corrected, then suspension or termination may be warranted.

   (2) FAA Actions to Address Regulatory or Statutory Noncompliance. In the event that inappropriate actions by a designee require action against the designee's pilot and/or flight instructor certificate(s), the managing specialist should refer to FAA Order 8900.1, Volume 14, Compliance and Enforcement, and FAA Order 2150.3, FAA Compliance and Enforcement Program, for the correct procedures and to determine action choice(s). Actions taken under the Compliance Program may range from counseling to revocation of airman certificates. Note that revocation is necessitated, in most cases, by fraudulent certifications performed by the designee. In the most egregious cases, criminal charges may be levied under Title 18 of the United States Code (18 U.S.C.) § 1001, which may lead to imprisonment.

**AR 152**

(3) Special Emphasis Evaluation of Designees (SEED). AFS-600 will notify the designee's managing office whenever the division becomes aware of an issue through a SEED inspection or by other means that could require a designee to be suspended or terminated. The managing office is responsible to process the suspension or termination. In the event AFS-600 and the managing office disagree on the termination of a designee, AFS-600 will make the final determination.

**e. OPEs.** The OPE is a consolidated review of oversight activities and other data available outside of DMS (e.g., SPAS, EIS, AIDS, etc.) on a reoccurring basis. The OPE results in an overall rating for the performance period and considers risk-based elements. The objectives of the OPE are for the managing specialist to:

(1) Identify performance trends that are:

- Specific to the designee;
- Local in nature as compared to designees similar in authority locally; and
- National in nature as compared to designees similar in authority nationwide.

(2) Determine if corrective action is needed.

(3) Conduct a risk assessment of the designee.

(4) Review all data for the current performance evaluation period.

(5) Determine performance result. See Volume 1.

(6) Counseling. See Volume 1.

(7) Additional Training. See Volume 1.

**4. Designee Management Functions.**

**a. Expand Authorities and/or Change Limitations.** See Volume 1.

**b. Reduce Authority.** See Volume 1.

**c. Record Note.** See Volume 1.

**d. Send Message to Designee.** The managing specialist is able to transmit messages and notifications through DMS, such as changes in the PTS/ACS, regulations, upcoming meetings, and other communications, as may be necessary.

**e. Record Feedback of Interaction With a Designee.** See Volume 1.

**f. Preapproval.**

(1) Ensure designees understand that they must obtain preapproval in order to perform functions on behalf of the FAA. The managing specialist will issue any special instructions to the

**AR 153**

designee during the preapproval process. Preapproval requires the designee to request and receive approval to conduct authorized activity at least 24 hours prior to commencing that activity on behalf of the FAA. DMS will notify the managing specialist through the DMS message center any time a designee submits a preapproval less than 24 hours in advance. Preapprovals may be authorized through two methods: manual and automatic.

(a) Manual Preapproval. Manual preapproval requires the managing specialist to review the designee's request for activity and approve it in DMS. This allows the managing specialist to stay informed of the designee's activities and the nature of the certification activity involved. It provides a means of managing a designee's activity and ensuring only those activities that the managing office chooses to delegate are accomplished by the designee.

(b) Automatic Preapproval. Automatic preapproval allows the managing specialist to set the DMS function to automatically approve an activity request by a specific designee. This feature provides the managing specialist with a flexible option to provide preapproval and continue to manage a designee's activity. Automatic preapproval will only be used when the designee's performance remains acceptable and analysis indicates that the type of certification activity requested presents an acceptable risk. Automatic preapprovals must not be granted to a designee during the first 30 days of appointment.

> **Note:** The managing specialist will determine to grant manual or automatic preapproval separately for each of the designee's authorizations. For example, if a managing specialist is concerned about performance by the designee of one or two of their authorizations, the managing specialist may elect to keep those authorizations on manual approval while granting automatic approval for the rest of the authorizations.

(2) DMS allows the designee to change or cancel a preapproval request.

(3) For DPEs, Admin PEs, and SAEs, each certification activity must be approved before the designee can perform any function for the FAA.

(4) Designee activity. It is the FAA's intention that designees perform their authorized function(s) within the managing office's geographic boundaries. However, a designee may perform activities outside the geographic boundaries (including in other countries). The designee shall utilize DMS preapproval process for all preapproval requests.

(a) Designee activity outside the United States. Designees may perform an activity that is outside the United States when the activity is consistent with 49 U.S.C. § 44702 and pertinent international agreements. For airman certifications outside the United States, the applicant must be a U.S. citizen, or the activity is in support of a government-to-government initiative. The request must be entered in DMS at least 10 calendar-days in advance of the activity to allow the FAA sufficient time to provide any notification that may be required to other Civil Aviation Authorities (CAA).

> **Note:** Completed certification files and other documentation required for certification activity will be submitted to the designee's managing office. The Flight Standards office having responsibility for where the activity will be

**AR 154**

performed may, however, request to review any certification work performed by a DPE in their district by contacting the managing office.

(b) Temporary transfer. When designees work outside their local area in excess of 6 calendar-months, the managing specialist should consider a temporary transfer of supervisory and monitoring responsibilities to the appropriate geographic office where the activity is located. This transfer will require coordination and concurrence between both managing offices. The office handing off the designee to the temporary geographic office will reassign the designee in DMS to the new managing specialist at the temporary geographic location. The new managing office will be responsible for all oversight responsibilities while the designee is temporarily under their supervision.

g.  **Post-Activity Reports.** DPE, Admin PEs, and SAEs are required to complete post-activity reports in DMS after performing certification functions.

(1) Post-activity reports provide the managing specialist with a record of the activity for that designee. These reports can aid in planning an appropriate level of oversight of the designee.

(2) If the designees have post-activity reports that have passed the requisite 7 calendar-day submission deadline, DMS will not grant another preapproval number until all outstanding post-activity reports have been submitted.

(3) If a designee is terminated or suspended, data can still be entered into a post-activity report in DMS.

**AR 155**

## Chapter 7.  Training

**1.   Purpose.** This chapter provides the policy related to the training of DPEs, Admin PEs, and SAEs, referred to collectively in this chapter as designees. This chapter also provides training policy for FAA personnel with designee-related responsibilities. This designation type-specific policy and Volume 1 constitute the overall policy for the training of designees and FAA personnel.

**2.   General.**

   **a.   Overview.** This chapter prescribes the initial and recurrent training requirements for DPEs, Admin PEs, SAEs, and FAA personnel, including managing specialists, with designee management and oversight responsibilities. Applicants and designees register for training through the Designee Registration System (DRS). Successful completion of the training is documented in DMS. Information regarding designee standardization training is available at the DRS website at https://av-info.faa.gov/dsgreg/sections.aspx.

   **b.   Documentation.** Successful completion of the initial and recurrent training is documented in DMS. The managing specialist updates the training dates in DMS, and may upload a copy of the training certificate. Designees who have attended initial or recurrent training should send a copy of their training certificate to their managing specialist through the DMS message center.

**3.   Designee Training Requirements.**

   **a.   Initial Training.**

   (1) Before appointment, designee applicants must satisfactorily complete the initial training program for the designee type and authority for which they are being considered for appointment. The initial training will be conducted by online web-based training, face-to-face classroom training, or both depending on the authorized functions the prospective designees are seeking. Prospective designees can register for training through the DRS. The initial training requirements for each designee type are:

| Designee Type | Initial Training Requirement |
|---|---|
| DPE and SAE performing flight tests in aircraft or FSTD | Initial Designated Pilot Examiner, Part 1 (Online) and Part 2 |
| Admin PE (ACR-141, ACR-FIRC) | Web-Based Administrative DPE Training |
| DPE and SAE with Administrative Authorization(s) | Web-Based Administrative DPE Training |
| DPE and SAE with Pilot Proficiency Examiner Authorization(s) | Initial Designated Pilot Examiner, Part 1 (Online) and Part 2 |
| SAE with Flight Engineer Authorization(s) | Initial Training Conducted by the Managing FAA Office |
| DPE and SAE with SMFT Authorization | Initial Training Conducted by the Managing FAA Office |

**AR 156**

(2) Each designee must successfully complete the Initial Designated Pilot Examiner training requirements within 1 year before initial designation. DPE and SAE applicants should not attend initial training until they have been notified by the appointing FAA office that they have been selected for appointment.

**b. Recurrent Training.**

(1) Once a designee is appointed, attendance and successful completion of a recurrent training seminar is due on an established seminar interval based on the completion date of the initial standardization seminar or the most recent recurrent seminar, required of that specific designation type or authorization. Recurrent training requirements and the maximum recurrent completion interval in calendar-months are:

| Designee Type | Recurrent Training Requirement |
|---|---|
| DPE and SAE Performing Flight Tests in an Aircraft or FSTD | 24 calendar-months—Recurrent Designated Pilot Examiner Course |
| Admin PE (ACR-141, ACR-FIRC) | 24 calendar-months—Web-Based Administrative DPE Training (Online) |
| DPE or SAE With Administrative Authorization(s) | 24 calendar-months—Web-Based Administrative DPE Training |
| DPE or SAE With Pilot Proficiency Examiner Authorization(s) | 24 calendar-months—Designated Pilot Examiner Course |
| SAE With Flight Engineer Authorization(s) | Recurrent training conducted by the managing FAA office |
| DPE or SAE with SPE Authorizations Only | 24 calendar-months—Recurrent Sport Pilot Examiner Seminar (Online) |
| DPE and SAE with SMFT Authorization | 24 calendar-months—Recurrent Special Medical Flight Test Training |

(2) Completion of recurrent training is mandatory and must not exceed the maximum interval listed for each designee type and authorization held. For DPEs, Admin PEs, and SAEs, it should be noted that different authorizations may require different recurrent training, and those recurrent training intervals are not required to be on the same schedule.

(3) Designees must schedule themselves for a recurrent training seminar as required and notify the managing FAA office. The designee must forward a copy of the Certificate of Completion to the managing FAA office.

(4) DPEs and SAEs (performing flight tests in an aircraft or FSTD) may complete the Initial Designated Pilot Examiner Standardization Seminar (Parts 1 and 2) in lieu of the recurrent training to meet the recurrent training requirements.

(5) DPEs or SAEs with SPE that have authorizations that require them to take the Recurrent Designated Pilot Examiner Course will have satisfied the Recurrent Sport Pilot training requirement.

**AR 157**

**c.  Tests.**

(1)  Testing may be incorporated as knowledge assessments during practical application workshop (PAW) exercises and/or presented as a standalone test following training. The applicant/designee must complete all PAW exercises and/or take a comprehensive post-course test that will test the applicant/designee on any or all subjects in which the class received instruction. Some of the test questions may require knowledge beyond that encompassed by the authorizations indicated on an individual applicant/designee's current or proposed CLOA. The designee candidate will receive a completion certificate only after satisfactorily completing all required PAW exercises and assignments, or by achieving at least a 70 percent on the post-course test (if administered).

(2)  Should an applicant/designee fail to satisfactorily complete all required course assignments or pass the post-course test after completing the training curriculum, AFS-640 will notify the manager of the applicant/designee's assigned FAA office. After a review of the circumstances related to the failure, the FAA office may:

(a)  For initial training, elect not to appoint the applicant, or to allow the applicant to retake the training course. If appropriate, the FAA office will allow the applicant only one additional attempt at successfully completing the training.

(b)  For recurrent training, elect to terminate the designee for failure to complete training requirements, or if justification is provided, allow the designee to repeat the training. If appropriate, the FAA office will allow the designee only one additional attempt at successfully completing the training. The designee may not exercise the privileges of their designation until training has been successfully completed.

(c)  Successful completion of all required training is a prerequisite for holding a designation. Under most circumstances, if an applicant/designee is more than 1 hour late, the AFS-640 personnel will not permit that applicant/designee to complete the training. If they arrive in the first hour of training, the AFS-640 personnel will require the applicant/designee to make up the missed instruction with instructor personnel outside of normal class hours. Once the applicant/designee has accomplished this, they will take the final examination with the class. Designees or applicants will be marked as absent after 15 minutes has elapsed from the announced start time at the beginning of each day, or after the announced start time following a scheduled break. An applicant/designee marked as absent twice in the same class will not receive credit for the training, and will not be allowed to complete the final examination with the class.

**d.  Specialized Training.** DPE/SAE/Admin PEs who perform one or more specialized function(s) must complete the associated specialized training course prior to initial appointment, adding the authority, and at the recurrent interval specified regardless of any other initial or recurrent training requirement. A complete list of DPE/Admin PE specialized functions and the associated training requirements are available on the DRS website.

**e.  Training Limitations.**

(1)  Managing specialists will suspend designees who fail to meet recurrent training requirements.

**AR 158**

(2)  A designee will not exercise designation privileges unless all required training is current.

(3)  DMS will automatically provide notices of training due dates.

**4.  FAA Personnel Training.**

   **a.  Initial and Recurrent Training Requirements.** Initial training requirements for ASIs with managing specialist responsibilities for DPE, Admin PE, and SAE include:

(1)  Completion of the GA operations ASI indoctrination courses, or equivalent.

(2)  Specific courses required for designee oversight are listed in the "Inspector Training for Designee Oversight" matrix. The training matrix is maintained on the Flight Standards Workforce Development Division (AFB-500) website at https://my.faa.gov/org/linebusiness/avs/offices/afx/divisions/afb/afb500.html. The training matrix is organized by designee type, and promotes the FS philosophy that the most appropriate person (or target audience) should attend the right training at the right time. The local training coordinator can also provide access to the training matrix and assistance on training needs assessment for ASIs assigned to designee management.

(3)  Designee-specific on-the-job training (OJT) tasks for the type of designee oversight to be conducted.

## Chapter 8.  Annual Request for Extension of a Designee's Designation

See Volume 1.

# Chapter 9.  Termination of a Designation

**1.  Termination.** The following items require the managing specialist to initiate termination of a designee:

**a.**   Any actions by the designee that may reflect poorly on the FAA, such as misuse of the designation or failure to maintain a reputation for integrity and dependability in the industry and the community.

**b.**   Any time that a reexamination of an airman under 49 U.S.C. § 44709 becomes necessary due to an inadequate test performed by the designee, the managing office must immediately suspend the designee and begin the termination process.

> **Note:**   A managing office must not accept a voluntary surrender if a termination for cause is warranted

**2.  Additional Information.** For additional termination considerations and specific procedures to terminate a designee, see Volume 1.

**AR 161**

# Chapter 10.  Suspension of a Designation

See Volume 1.

## Chapter 11.  Appealing a Termination for Cause

**1.  Purpose.** This chapter provides the policy related to appealing a termination for cause of DPEs, Admin PEs, and SAEs referred to collectively in this chapter as designees. This designation type-specific policy and Volume 1 constitute the overall policy for appealing a termination for cause by DPEs, Admin PEs, and SAEs.

**2.  General.**

    **a.  Appeal Considerations.**

        (1)  The FAA office manager will convene an appeal panel comprising three members:

        (a)  An AFS-600 representative (for designees managed by AFS-610, the AFS-600 member must be from outside AFS-610);

        (b)  A General Aviation and Commercial Division (AFS-800) representative; and

        (c)  An FS office manager or FLM not associated with the office that terminated the designee.

        (2)  The panel will review the termination decision and make a final decision within 45 calendar-days of the appeal.

        (3)  The appeal panel's decision is final.

        (4)  All documentation associated with the appeal (e.g., outcome, members of the appeal panel, and communication with the designee or the managing office) should be included in the designee's DMS file.

**3.  Termination Appeal Process.** See Volume 1.

**4.  Appointing and Selecting Official Responsibilities During Appeal.** See Volume 1.

**5.  Appeal Panel Responsibilities.** See Volume 1.

**AR 163**

## Chapter 12.  Other Designee Management Functions

**1.  Purpose.** This chapter provides the policy related to other designee management functions of DPEs, Admin PEs, and SAEs, referred to collectively in this chapter as designees. This designation type-specific policy and volume constitute the policy for other designee management functions.

**2.  Assign DMS Roles—Master Role Assigner.** For FS GA designees, the MRA is typically the office manager or FLM. See Volume 1.

**3.  Send Message to Managing Specialist.** See Volume 1.

**4.  Update Profile.** Updates to certain information in the designee record, such as change in physical address or qualifications, may affect the designation. A change of physical address may cause the FAA to review need and ability to manage considerations. If the requested address change is in a different managing office's area, the FAA will make the determination if there is a need to transfer that designee to another managing specialist closer to the designee's new location.

**AR 164**

| **CHANGE** | **U.S. DEPARTMENT OF TRANSPORTATION**<br>FEDERAL AVIATION ADMINISTRATION | ORDER<br>1070.1A<br>CHG 2 |
|---|---|---|

National Policy

Effective Date:
11/14/2022

**SUBJ:** FAA Hotline Program

**1. Purpose.** To align the AAE Order with DOT Order 8000.1A as required by DOT Order 8000.8.

**2. Who this change affects.** This change affects all FAA Employees and Contractors.

**3. Disposition of Transmittal Paragraph.** Retain this transmittal sheet until this Directive is canceled by a new Directive.

## PAGE CHANGE CONTROL CHART

| Remove Pages | Dated | Insert Pages | Dated |
|---|---|---|---|
| 7 | 09/30/21 | 7 | 11/14/22 |
| 8-10 | 08/22/14 | 8-10 | 11/14/22 |



Billy Nolen
Acting Administrator



**CHANGE**

**U.S. DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION

ORDER
1070.1A
CHG 1

National Policy

Effective Date:
09/30/2021

---

**SUBJ:**  FAA Hotline Program

1. **Purpose.** This change is to align the AAE Order 1070.1A with DOT Order 8000.8A.

2. **Who this change affects.** This change affects all FAA Employees and Contractors.

3. **Explanation of Policy Change.** Order 1070.1A, Change 1 required a statement to be added that employees must ensure investigative matters within the purview of the Department of Transportation Office of Inspector General are promptly referred for disposition in accordance with the procedures in DOT Order 8000.8A.

4. **Disposition of Transmittal Paragraph.** Retain this transmittal sheet until the directive is canceled by a new directive.

**PAGE CHANGE CONTROL CHART**

| Remove Pages | Dated | Insert Pages | Dated |
|---|---|---|---|
| 7 | 08/22/14 | 7 | 09/30/21 |

5. **Administrative Information.** This Order change is distributed to divisions and branches in Washington D.C. headquarters, regions, and centers and all field offices and facilities.

*Steve Dickson*

Steve Dickson
Administrator

---

Distribution: Electronic                                    Initiated By:  AAE-1

**AR 166**

National Policy



Effective Date:
08/22/2014

ORDER
1070.1A

**SUBJ:**    FAA Hotline Program

**1. Purpose of This Order.**  This order establishes the operations, responsibilities, and requirements of the Federal Aviation Administration (FAA) Hotline Program.

**2. Audience.**  All FAA employees who are responsible for oversight, coordination, processing, and/or investigating FAA Hotlines.

**3. Where Can I Find This Order.**  You can find this order on the Directives Management System (DMS) website at https://employees.faa.gov/tools_resources/orders_notices/.  This order is available to the public at http://www.faa.gov/regulations_policies/orders_notices/.

**4. Cancellation.**  This order cancels the following Orders, FAA Order 1070.1, Hotline Operations Program, dated 4/17/00 and FAA Order 8000.73, Aviation Safety Hotline Program, dated 6/21/91.

**5. Explanation of Policy Changes.**  The Administrator's Hotline Operations Program, Aviation Safety Hotline, and Consumer Hotline were consolidated under the Office of Audit and Evaluation (AAE). This revision reflects process changes from the consolidation.

**6. Definitions.**

   **a. Action:**  A hotline report determined to warrant further investigation.

   **b. Action Office:**  Offices throughout the FAA (i.e., Headquarters/Regions/Centers) that hotline reports are forwarded to for Action or Information.

   **c. Air Safety Investigator:**  FAA Air Safety Investigator within the Agency's Office of Accident Investigation and Prevention (AVP-100) responsible for providing aviation expertise to the Washington Operations Center on a 24-hour basis.

   **d. Anonymous:**  A request made by an individual that his/her identity not be disclosed or submissions to the hotline containing no contract information.  Reports submitted anonymously will not include information about the reporting individual in the FAA Hotline system of record.  Anonymous calls are accepted, but no feedback will be provided to the reporting individual.

   **e. Closeout:**  The memo containing the final disposition of a hotline report now referred to as the Investigative Results Report (IRR).

   **f. Confidential:**  A request made by an individual submitting a report to the FAA Hotline that his/her identify not be disclosed to anyone other than the Hotline Analyst or individuals responsible for investigating the actual report.  Callers willing to disclose their name and contact information to

**AR 167**

the investigating office will be categorized as "Confidential Field Office." All other confidential reporting individuals will be categorized as "Confidential Headquarters."

**g. FAA Hotline:** Term used to refer to reports submitted to AAE by way of the Administrator's Hotline or the safety Hotline. This term is used to reflect the consolidation of the hotlines.

**h. FAA Washington Operations Center (WOC):** The WOC provides telephone coverage to the Hotline beyond that provided during normal business hours by the Hotline staff for time critical after-hours safety issues.

**i. Hotline Analyst:** Individual with responsibility for reviewing, analyzing, and ensuring the appropriate handling and resolution of issues reported to the FAA Hotline.

**j. Hotline Report:** Information received by the FAA Hotline. This includes issues involving aviation safety, violations of FAA regulations or policy, concerns involving FAA employees or facilities, maintenance issues, aircraft incidents, and/or aircraft accidents. Information contained in the hotline report may include, but is not limited to, a detailed description of what is being reported, the names of individuals or organization being reported, date and time when the event occurred, the specific area of concern, as well as any and all supplemental material provided by the reporting individual.

**k. Hotline Response:** Responses to investigated hotline reports. The response consists of a cover letter from AAE and a copy of the IRR, which is sent to the reporting individual. The cover letter indicates the office the hotline was referred to for investigation and provides information on appeal procedures. Hotline responses will not include supporting documentation used in the preparation of the IRR unless this information is deemed necessary by AAE and would not violate the Privacy Act.

**l. Information:** A hotline report that does not require an investigation unless requested by the receiving office for reclassification as action. This includes any hotline report sent out for investigation where it is later determined that the report is currently being investigated in a different forum.

**m. Interim Hotline Responses:** Responses sent to the Reporting Individual regarding the status of their hotline report. Interim responses are provided upon request by AAE in those cases where the investigation of the hotline is expected to exceed established processing times.

**n. Investigating Office:** The office assigned by the Action Office to investigate a hotline report received by the FAA Hotline.

**o. Investigative Results Report (IRR):** A summary report of the investigation results in memorandum format to the Manager, Reporting and Data Analysis Branch, AAE-300, along with supporting documentation The summary report includes, but is not limited to, a description of the issues/allegations made, the hotline report number, the name of the office that conducted the investigation, and responses to each allegation made in the hotline report. It should also include corrective or enforcement actions which have been initiated for any/all allegations that were

**AR 168**

substantiated in full *or in part*, a description of other actions taken as a result of the hotline report (policy change, remedial training, counseling, etc.), and whether the reporting individual was contacted during the course of the investigation.  Supporting documentation may include a grid copy of the memo to AAE and details of the investigation (i.e., program tracking and reporting subsystem reports, enforcement information system numbers, emails, reports of investigation, etc.) used in the preparation of the IRR. .

    **p. Principal Point of Contact (PPOC):**  The individual in the Action Office (Headquarters/Regional/Centers/Directorate/Service Area) that the hotline report is forwarded to for action or information.  The PPOC serves as the interface between the hotline staff and the investigating office and is determined by the Line of Business/Service Office.  <u>Note</u>**:**  In the case of Suspected Unapproved Parts (SUP) reports, this individual will be the HQ SUP Focal Point located in the Aircraft Certification Service.

**7.  Roles and Responsibilities**.

    **a. Hotline Analyst:**  The Hotline Analyst is responsible for the following activities:

    (1)  Receives reports from any person via telephone, email, voicemail, letter, facsimile, walk-ins, or referrals from other entities.

    (2) Processes submissions to the FAA Hotline, Monday through Friday, from 0800 to 1600 ET, except Federal holidays.  If after-hours callers believe a safety issue is time critical and should not wait until the next business day to be addressed, the caller may contact the WOC.  The WOC will then forward the call to an Air Safety Investigator.  All other after-hour calls left on the FAA Hotline voicemail system will be retrieved the next business day.

    (3) Documents information provided by the Reporting Individual ensuring that as much pertinent information as possible is obtained to determine whether investigation is warranted.  All reports, other than those received anonymously, will receive an acknowledgement of receipt along with an assigned hotline number for those referred for investigation.  For multiple reports on the same issue, one number will be assigned.

    (4) Evaluates all information received from the reporting individual to determine whether the matter falls within AAE's jurisdiction and to determine whether investigation is warranted.  If a hotline report does not contain enough information, the Hotline Analyst will attempt to contact the reporting individual to get clarification or collect additional information to better determine whether the issue warrants investigation.  Once a determination is made to send the report out as action or information, the report is forwarded to the PPOC for appropriate handling.  <u>Note</u>**:**  All reports of SUP will be assigned to the HQ SUP Focal Point for action.  The SUP HQ Focal Point will either assign the SUP to the appropriate Regional SUP Coordinator or notify the Hotline Analyst of the appropriate geographical region to assign the hotline report for a non-SUP investigation

    (5) Closes the report and provides notice to the reporting individual if it is determined that there is insufficient information to warrant further investigation.  This excludes anonymous hotline reports or reports consisting of comments only.  Hotline reports that can be handled by the Hotline

**AR 169**

Analyst will be processed and closed out accordingly.  <u>Note</u>**:**  Reports involving administrative matters or aviation safety issues involving FAA employees or an FAA office will include AAE management review prior to closure.

(6) Provides the hotline response to the reporting individual in writing with the IRR, except those reports submitted anonymously or those containing insufficient information.  As part of the closeout process, the Hotline Analyst will review the IRR to ensure the report includes all the necessary elements.  Once it is confirmed that all necessary elements have been addressed, the Hotline Analyst will notify the PPOC of IRR acceptance except in the case of SUP reports, which are reviewed by the HQ SUP Focal Point/Regional SUP coordinator for sufficiency.  Hotline responses are provided within five business days of AAE concurrence with the IRR.  The IRR is used as part of the hotline response to the reporting individual except where the report was submitted anonymously.

(7) Obtains answers to questions for the investigating office from those reporting individuals not wishing to release contact information.  These reports are identified as "Confidential Headquarters."  In these cases, the investigating office may contact AAE with their questions.  The Hotline Analyst will follow-up with the reporting individual and respond to the investigating office with the reporting individual's response when provided.

**b.  Air Safety Investigator.**  The Air Safety Investigator (also referred to as AVP Stand-by Duty Officer) tracks after-hours aviation safety related calls received by the WOC.  These reports will be forwarded to AAE electronically along with information on any actions taken by the Air Safety Investigator.

**c.  Action Office/Principal Point of Contact (PPOC).**  The PPOC is located in the Action Office and is responsible for the following activities:

(1)  Receives hotline reports for action or information.

(2)  Reviews and assigns the hotline report to the appropriate investigating office for investigation or notifies the Hotline Analyst if a transfer to another region is more appropriate for processing, along with the reason for the transfer.

(3)  Provides notification to AAE if the hotline report requires assignment to more than one region, along with the specific issues/concerns to be addressed by each Action Office.

(4)  Requests extensions via email to AAE if the investigation will not be completed by the assigned due date.

(5)  Reviews the completed IRR for formatting, accuracy, and completeness (including signature and date) then forwards the IRR to the Manager, Reporting and Data Analysis Staff, AAE-300, in writing within 45 business days (180 business days for SUP reports and 90 business days for Aeromedical related issues) from the date the report is assigned to the PPOC.

**AR 170**

**d.  Investigating Office:**  The investigating office is responsible for investigating the allegations contained within the Hotline Report.  The investigating office is responsible for the following activities:

(1) Provides the completed IRR in memo format to the PPOC by their imposed deadline. Reports may be submitted electronically or in hard copy.  The IRR must be signed by the appropriate management level and should be reviewed by the PPOC prior to forwarding to AAE.

(2) If the reporting individual has requested confidentiality, the investigating office may obtain the individual's contact information from the Hotline if such a request is approved by the reporting individual.  The contact information is to be used for FAA official use only, and the investigating office must maintain the AAE provided confidentiality of such contact information. If it is determined by the investigating office that it is necessary to release the name of the reporting individual, the investigating office will contact the reporting individual prior to releasing their information.

(3) Notifies AAE and the Office of Security and Hazardous Materials Safety (ASH) of any Law Enforcement Agency's (LEA) ongoing investigations of a hotline report.  In the cases of SUPS where LEA is involved, the hotline issue will remain open until an IRR is received.

(4) For SUP issues, once a report is received the investigating office will follow procedures outlined in FAA Order 8120.16, Processing Reports of SUPs.

## 8.  Security, Retention, Privacy Act, and Freedom of Information Act

**a.  Security.**  Hotline materials and documents are stored in secure storage and will not be disseminated to persons other than those directly involved in processing, investigating, or resolving the allegations raised by a reporting individual.  The Hotline stores confidential and sensitive investigative hard copy materials in locked file cabinets when not necessary for processing or reference. The Hotline maintains confidential and sensitive investigative electronic material on the Hotline secure server with controlled access.

**b.  Retention of Files.**  Delete and/or destroy hotline reports and files in accordance with Order 1350.15, Records Organizations, Transfers.

**c.  Privacy.**  The information collected from individuals in the course of receiving Hotline reports, and the responses provided to individuals, becomes part of the DOT/FAA Privacy Act System of Records, DOT/FAA System of Records Notification (SORN) 845, Correspondence Control and Information System.  The information in that system must be protected against unauthorized disclosure to third parties. Misuse and/or unauthorized disclosure of this information are punishable by internal disciplinary action and/or civil or criminal penalties with a possible fine of up to $5,000. Necessary information will be disclosed only on a need-to-know basis, or in accordance  with the routine uses specified in DOT/FAA SORN 845.  The investigative records  used to develop responses are not part of the Privacy Act System of Records, DOT/FAA SORN 845, FAA Hotline Systems, Airport Voluntary Reporting Systems, and Whistleblower Protection Program System.

The Privacy Act provides the individual, whose record is accessed by his/her name or personal identifier, with various rights. First, the individual about whom the record pertains has the right to access the record to see what is there; and second, the individual has the right to request amendment to the record if he/she believes the information is not correct. In the case of the Privacy Act System of Records, DOT/FAA SORN 845, the record pertains to the caller, not the subject of the complaint. Therefore, those rights of access and amendment apply to the caller. Other provisions of the Privacy Act protect the information from disclosure to a third party. Requests for access to, or amendment of, information contained in this system of records must only be responded to by the FAA Hotline Program Office. The action office may have the same information as the FAA Hotline Program Office to use in responding to the Hotline complaint; however, the action office does not have the authority to respond to a Privacy Act request using information from the automated hotline tracking system. Any request for information from a Privacy Act System of Records must go to the AAE-300 reporting manager or his/her delegate. Guidance on the Privacy Act can be found in the current version of Order 1280.1, Protecting Personally Identifiable Information (PII). FAA airmen medical files should not contain the hotline complaint, as confidentiality cannot be maintained.

    **d. Freedom of Information Act (FOIA).** FOIA requests will be assigned and processed in accordance with FAA Order 1270.1 (series) FOIA, which may include file retention as appropriate.

**9. Hotline Operations Procedures.**

    **a. Submitting Hotline Reports to the FAA.**

    (1) The general public, aviation industry, and FAA employees may contact the FAA Hotline by telephone (1-800-255-1111, 1-800-322-7873, or 1-866-835-5322), by email by accessing the AAE Web site or by U.S. Postal mail. The hours of operation for the FAA Hotline Program are 0800 to 1600 ET, Monday through Friday, except on Federal holidays. After 1600, if a reporting individual believes their safety issue is time critical and should not wait until the next business day to be addressed, he/she may select an option that transfers him/her to the WOC, who will forward the call to the Air Safety Investigator. All other after-hour calls left on the FAA Hotline voice mail system will be retrieved the next business day.

    (2) A reporting individual, who contacts the FAA Hotline, may request that their identity remain confidential. Confidential reports are categorized as Confidential Headquarters or Confidential Field Office. For those reports categorized Confidential Headquarters, the investigating office may submit a request to AAE to communicate to the reporting individual and AAE will provide the response from the reporting individual to the investigating office. For those reports categorized Confidential Field Office, the investigating office may contact AAE to get the reporting individual's contact information. Anonymous reports to the FAA Hotline are accepted, but no response will be provided.

    (3) If the employee requests confidentiality from the investigating office or anonymity, his/her identity will be removed from the hotline report before it is forwarded to the PPOC. However, authorized disclosure of FAA employees' identities may be made within the agency on a "need to know" basis to a Washington Headquarters investigator from ASH.

**AR 172**

(4)   FAA employees that contact the FAA Hotline will be asked if their report is currently being investigated under a different agency forum and whether or not they are represented by an FAA collective bargaining unit.  Note:  Submissions to the FAA Hotline that are identified as being investigated under a different agency forum will be closed upon confirmation by the Hotline Analyst.  The reporting individual will also be notified that his/her submission to the Hotline is not being referred for further investigation.

(5)   Reports submitted that are determined to be outside of the purview of the FAA Hotline will be referred to the appropriate venue/forum and closed in the hotline system of records.  Reporting individuals will be notified that their questions/concerns were outside the purview of the FAA Hotline and have been referred.

(6)   Employees must ensure that investigative matters within the purview of OIG are promptly referred for disposition in accordance with the procedures in DOT Order 8000.8.  FAA employees will cooperate with OIG requests for timely access to all relevant records, reports, audits, reviews, or other available material.  FAA employees also have the option of reporting a suspected violation via direct referral to OIG through the OIG hotline at 800-424-8071, online at https://www.oig.dot.gov/hotline, by email at hotline@dot.oig.gov, or by mail to Office of Inspector General, 1200 New Jersey Avenue, SE, West Building, 7th Floor, Washington, DC 20590.

**b.  Referrals to the FAA Hotline.**

(1)   Hotline referrals from the FAA Whistleblower Protection Program will be processed in the same manner as any other hotline report submitted to the FAA Hotline.

(2)   Hotline referrals from other government agencies or modes within DOT that do not require a response from the FAA will be reviewed by AAE management to determine whether or not to send the hotline out for investigation through the FAA Hotline.  These referrals will be processed in the same manner as any other hotline report submitted to the FAA Hotline.  Referring agencies include, but are not limited to, the DOT Consumer Protection Division, C-75, the DOT Office of the Inspector General (OIG), and the Government Accountability Office (GAO).

(3)   Hotline referrals from other government agencies or modes within DOT, submitted to AAE requiring a response from the FAA, are reviewed and assigned by AAE directly to the appropriate Lines of Business or Staff Offices (LOB/SO) for investigation.  All responses to these hotlines will be prepared by the investigating office for the signature of the Director, AAE-1, and addressed to the referring office (e.g., DOT OIG).  Responses should include a copy of the IRR along with a copy of the original hotline in electronic format (including the memo in Adobe PDF or Microsoft Word format) as well as in hard copy format.

(4)   Requests by the LOBs/SOs to create new hotline reports will be reviewed on a case-by-case basis.  All such requests must be submitted to AAE management or management designee for acceptance.  If accepted, these requests will be processed as a regular hotline report.  Congressional requests and other requests submitted directly to LOBs/SOs through the FAA's Correspondence Control Management System will not be accepted into the FAA Hotline.

**AR 173**

**c. Processing Hotline Reports.**

(1) The Hotline Analyst inputs the information submitted by the reporting individual into the automated hotline tracking system, creates a hotline report, and provides an acknowledgment of receipt by phone or email back to the reporting individual. Acknowledgments for hotline reports sent out for investigation will include the assigned hotline number.

(2) The hotline report is transmitted by email, along with any supporting documentation provided by the reporting individual, to the PPOC for action or information.

(a) Reports alleging fraud, waste, and abuse within the FAA, as well as any reports of serious conduct and discipline issues requiring security investigation, national security, or criminal activity, will be sent to ASH for review. For reports accepted by ASH, the reporting individual will be notified that the issue falls outside the purview of the FAA Hotline and has been referred to ASH. Any hotline report ASH determines does not involve security issues will be returned to the Hotline Analyst within three business days and forwarded to the appropriate LOB for investigation.

(b) Reports of alleged misconduct falling within the scope of the Accountability Board (AB) will be referred to the AB Coordinator.

(c) Reports of safety disclosures falling within the scope of FAA's internal or external Whistleblower Program will be referred to AAE's Audit and Analysis Branch, AAE-100. Hotline reports accepted by AAE-100 will be closed out in the FAA Hotline system upon notification of acceptance.

(d) Reports involving Equal Employment Opportunity issues or falling within the scope of the Office of Civil Rights (ACR) that are reported to the FAA Hotline will be referred to the ACR.

(e) Reports involving issues that are subject to negotiations between the exclusive collective bargaining representative and the FAA or that are subject to challenge under the provisions of a negotiated grievance procedure will be referred to the appropriate parties. Collective bargaining agreements provide the mechanism by which such issues should be addressed. Bargaining unit employees contacting the FAA Hotline regarding such issues will be referred to the appropriate collective bargaining agreement.

(3) Hotline reports accepted by ASH and other forums (e.g., AB, Equal Employment pre-complaint hotline, Bargaining Unit, OIG) will be closed out in the FAA Hotline system upon notification of acceptance or confirmation that the issues submitted are already being investigated. The reporting individual will be notified that the issue has been referred to another venue and is being closed out in the hotline system. No IRRs are required in these cases. In addition, no contact information will be provided for confidential reports without the reporting individual's consent.

**AR 174**

**d.  Investigation of Hotline Reports.**

(1)  The PPOC forwards the hotline report for action to the appropriate office.  Note**:** When a hotline report includes allegations of wrongdoing by FAA employees, the hotline investigation should be conducted by individuals who have no direct or indirect involvement in the allegations or issues identified.  This includes individuals named or working in the same office identified in the hotline report.

(2)  The investigating office investigates hotline reports and prepares the IRR.

(a)  Investigation of a hotline report includes addressing all allegations identified, reviewing any supporting documentation provided by the reporting individual, conducting interviews with any witnesses identified, as well as contacting the reporting individual when contact information is provided or available (in the case of confidential contacts) to ensure a complete understanding of the issue(s) being reported.

(b)  If a hotline report is related to another hotline report or is part of an existing hotline investigation, the investigating office is responsible for notifying the PPOC and AAE. The Hotline Analyst will update the hotline record with a note including the related hotline number(s).  In such cases, only one IRR is required by the investigating office.  The IRR should address allegations from all hotline reports.

(c)  If the FAA Hotline receives multiple reports on the same issue, only one hotline report will be created, and the report will include copies of the information provided by each of the reporting individuals.  In such cases, only one IRR is required by the investigating office.

(d)  The IRR submitted by the investigating office should be carefully reviewed to ensure it clearly indicates if the allegations were substantiated in full, in part, or unsubstantiated. If substantiated, the IRR should indicate whether or not the allegations violate Title 14, Code of Federal Regulations or any FAA order, standard, or policy.  The IRR should also clearly state if any corrective or administrative actions have been taken to resolve the matter.  In cases where a violation of FAA regulations or policy has taken place and no corrective actions have been identified, the IRR must include an explanation of why no corrective actions are necessary.

(3)  The investigating office may request a due date extension by contacting the PPOC or AAE (if the PPOC is not available) via email in the event the investigation cannot be completed on time.  Extension requests will include how long an extension is needed in terms of days or a newly proposed due date.  The suspense date is 45 business days for regular hotline reports.  The suspense date for SUP reports is 180 business days and 90 business days for Aeromedical-related hotlines.

**e.  Preparing the Hotline Response.**

(1)  The PPOC and the Hotline Analyst review the IRR and all supporting documentation used in the preparation of the IRR to ensure the response satisfactorily addresses issues contained in the hotline report and is consistent with the investigation details.  The Hotline Analyst or the

**AR 175**

PPOC will contact the investigating office if the IRR does not satisfactorily address the allegations/issues identified in the hotline report for a revised IRR, which includes any missing information and any other corrections identified.

(2)   The Hotline Analyst prepares the hotline response, which will include a cover letter from AAE and a copy of the IRR prepared by the investigating office.  The cover letter prepared by AAE will indicate the office the hotline was referred to for investigation and provide information on appeal procedures.  Hotline responses will not include supporting documentation used in the preparation of the IRR unless this information is deemed necessary by AAE and does not violate the Privacy Act.

(3)   In the event the hotline report is being addressed in another venue (e.g., AB, EEO case), the investigating office will verify that all of the issues in the hotline report are being addressed in that venue.  In this case, the investigating office will prepare a memo in writing to AAE that will include the venue and the case number (or other form of verification) where the issues in the hotline report are being addressed.

**f.   Appeals to Hotline Investigations.**  When a reporting individual does not believe their concerns have been adequately addressed in the hotline response, the individual may submit a written appeal to the FAA Hotline requesting their issues be reconsidered.  Appeal requests should include the specific allegation(s) that were not addressed in the original response, the hotline number, and the reason(s) why the reporting individual feels his/her allegations were not addressed, along with evidence to support his/her appeal.  All appeals are reviewed by AAE to determine if further action is warranted.  Accepted appeals to hotline reports will be re-actioned to the original investigating office under the same hotline number for a response to the allegations/issues outlined in the written appeal.  Confidential callers may maintain confidentiality on their appeal.

**10. Administrative Information.**

**a.   Distribution.**  This order is distributed to all FAA LOBs and SOs.

**b.   Related Publications**.  For further information on this process, refer to FAA Order 1100.176, AAE Order.

Billy Nolen
Acting Administrator

**AR 176**



**U.S. DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION
National Policy



**ORDER
8000.95C**

Effective Date:
09/21/23

**SUBJ:**   Designee Management Policy

This order is a comprehensive publication establishing policy and procedures for managing all aspects of certain representatives of the Administrator including selection, appointment, orientation, training, oversight, suspension, and termination.

This order represents a consolidation of existing policies across the following Aviation Safety services and offices: Aircraft Certification Service, Flight Standards Service, and the Office of Aerospace Medicine, as well as new policies within the Air Traffic Safety Oversight Service. This order also establishes the Designee Management System, which is a web-based tool designed to standardize the management of designees.

David H. Boulter
Associate Administrator for Aviation Safety

**AR 177**

# Table of Contents

*Chapter*                                                                                                    *Page*

VOLUME 1.  COMMON DESIGNEE POLICY ................................................................. 1-1
Chapter 1.  General Information ..................................................................................... 1-1
Chapter 2.  Application Process..................................................................................... 1-7
Chapter 3.  Selection and Evaluation of a Designee Applicant ........................................ 1-10
Chapter 4.  Designee Appointment................................................................................ 1-12
Chapter 5.  Responsibilities and Obligations of a Designee ............................................ 1-13
Chapter 6.  Oversight and Management of a Designee .................................................... 1-15
Chapter 7.  Training ..................................................................................................... 1-23
Chapter 8.  Annual Request for Extension of a Designee's Designation .......................... 1-24
Chapter 9.  Termination of a Designation...................................................................... 1-26
Chapter 10.  Suspension of a Designation ....................................................................... 1-31
Chapter 11.  Other Designee Management Functions ....................................................... 1-33
Chapter 12.  Administrative Information........................................................................... 1-35

VOLUME 2.  AME DESIGNEE POLICY.................................................................... 2-1
Chapter 1.  Introduction ............................................................................................... 2-1
Chapter 2.  Application Process..................................................................................... 2-2
Chapter 3.  Selection and Evaluation of a Designee Applicant ........................................ 2-5
Chapter 4.  Designee Appointment................................................................................ 2-7
Chapter 5.  Responsibilities and Obligations of a Designee ............................................ 2-10
Chapter 6.  Oversight and Management of a Designee .................................................... 2-13
Chapter 7.  Training ..................................................................................................... 2-19
Chapter 8.  Annual Request for Extension of a Designee's Designation .......................... 2-22
Chapter 9.  Termination of a Designation...................................................................... 2-23
Chapter 10.  Suspension of a Designation ....................................................................... 2-26
Chapter 11.  Other Designee Management Functions ....................................................... 2-27

VOLUME 3.  DPE, SAE, AND ADMIN PE DESIGNEE POLICY ....................................... 3-1
Chapter 1.  General Information ..................................................................................... 3-1
Chapter 2.  Application Process..................................................................................... 3-11
Chapter 3.  Selection and Evaluation of a Designee Applicant ........................................ 3-23
Chapter 4.  Designee Appointment................................................................................ 3-27
Chapter 5.  Responsibilities and Obligations of a Designee ............................................ 3-29
Chapter 6.  Oversight and Management of a Designee .................................................... 3-35
Chapter 7.  Training ..................................................................................................... 3-51
Chapter 8.  Annual Request for Extension of a Designee's Designation .......................... 3-55
Chapter 9.  Termination of a Designation...................................................................... 3-56
Chapter 10.  Suspension of a Designation ....................................................................... 3-57
Chapter 11.  Other Designee Management Functions ....................................................... 3-58

VOLUME 4.  DADE DESIGNEE POLICY ...................................................................... 4-1
Chapter 1.  General Information ..................................................................................... 4-1
Chapter 2.  Application Process..................................................................................... 4-5

**AR 178**

Chapter 3.    Selection and Evaluation of a Designee Applicant ............................................ 4-8
Chapter 4.    Designee Appointment .................................................................................... 4-14
Chapter 5.    Responsibilities and Obligations of a Designee ............................................... 4-16
Chapter 6.    Oversight and Management of a Designee ...................................................... 4-22
Chapter 7.    Training ............................................................................................................ 4-34
Chapter 8.    Annual Request for Extension of a Designee's Designation .......................... 4-39
Chapter 9.    Termination of a Designation .......................................................................... 4-40
Chapter 10.  Suspension of a Designation ........................................................................... 4-41
Chapter 11.  Other Designee Management Functions .......................................................... 4-42

VOLUME 5.   DME, DPRE, AND DAR-T DESIGNEE POLICY ......................................... 5-1
Chapter 1.    General Information .......................................................................................... 5-1
Chapter 2.    Application Process ........................................................................................... 5-13
Chapter 3.    Selection and Evaluation of a Designee Applicant .......................................... 5-23
Chapter 4.    Designee Appointment ..................................................................................... 5-27
Chapter 5.    Responsibilities and Obligations of a Designee ............................................... 5-30
Chapter 6.    Oversight and Management of a Designee ...................................................... 5-37
Chapter 7.    Training ............................................................................................................ 5-55
Chapter 8.    Annual Request for Extension of a Designee's Designation .......................... 5-58
Chapter 9.    Termination of a Designation .......................................................................... 5-59
Chapter 10.  Suspension of a Designation ........................................................................... 5-60
Chapter 11.  Other Designee Management Functions .......................................................... 5-61

VOLUME 6.   APD DESIGNEE POLICY ............................................................................. 6-1
Chapter 1.    General Information .......................................................................................... 6-1
Chapter 2.    Application Process ........................................................................................... 6-7
Chapter 3.    Selection and Evaluation of a Designee Applicant .......................................... 6-9
Chapter 4.    Designee Appointment ..................................................................................... 6-13
Chapter 5.    Responsibilities and Obligations of a Designee ............................................... 6-15
Chapter 6.    Oversight and Management of a Designee ...................................................... 6-19
Chapter 7.    Training ............................................................................................................ 6-28
Chapter 8.    Annual Request for Extension of a Designee's Designation .......................... 6-31
Chapter 9.    Termination of a Designation .......................................................................... 6-32
Chapter 10.  Suspension of a Designation ........................................................................... 6-33
Chapter 11.  Other Designee Management Functions .......................................................... 6-34

VOLUME 7.   TCE DESIGNEE POLICY .............................................................................. 7-1
Chapter 1.    General Information .......................................................................................... 7-1
Chapter 2.    Application Process ........................................................................................... 7-8
Chapter 3.    Selection and Evaluation of a Designee Applicant .......................................... 7-13
Chapter 4.    Designee Appointment ..................................................................................... 7-18
Chapter 5.    Responsibilities and Obligations of a Designee ............................................... 7-20
Chapter 6.    Oversight and Management of a Designee ...................................................... 7-26
Chapter 7.    Training ............................................................................................................ 7-38
Chapter 8.    Annual Request for Extension of a Designee's Designation .......................... 7-43
Chapter 9.    Termination of a Designation .......................................................................... 7-44
Chapter 10.  Suspension of a Designation ........................................................................... 7-45

**AR 179**

Chapter 11.  Other Designee Management Functions ....................................................... 7-46

VOLUME 8.  DMIR AND DAR-F DESIGNEE POLICY ........................................................... 8-1
Chapter 1.  General Information ............................................................................................ 8-1
Chapter 2.  Application Process ............................................................................................ 8-2
Chapter 3.  Selection and Evaluation of a Designee Applicant ..................................... 8-14
Chapter 4.  Designee Appointment .................................................................................... 8-17
Chapter 5.  Responsibilities and Obligations of a Designee ........................................... 8-21
Chapter 6.  Oversight and Management of a Designee ................................................... 8-23
Chapter 7.  Training ............................................................................................................. 8-33
Chapter 8.  Annual Request for Extension of a Designation .......................................... 8-35
Chapter 9.  Termination of a Designation ......................................................................... 8-36
Chapter 10.  Suspension of a Designation ........................................................................ 8-37
Chapter 11.  Other Designee Management Functions ..................................................... 8-39

VOLUME 9.  DER DESIGNEE POLICY .................................................................................. 9-1
Chapter 1.  General Information ............................................................................................ 9-1
Chapter 2.  Application Process ............................................................................................ 9-6
Chapter 3.  Selection and Evaluation of a Designee Applicant ..................................... 9-18
Chapter 4.  Designee Appointment .................................................................................... 9-21
Chapter 5.  Responsibilities and Obligations of a Designee ........................................... 9-24
Chapter 6.  Oversight and Management of a Designee ................................................... 9-25
Chapter 7.  Training ............................................................................................................. 9-33
Chapter 8.  Annual Request for Extension of a Designee's Designation ....................... 9-35
Chapter 9.  Termination of a Designation ......................................................................... 9-36
Chapter 10.  Suspension of a Designation ........................................................................ 9-37
Chapter 11.  Other Designee Management Functions ..................................................... 9-38

VOLUME 10.  DCTO-E DESIGNEE POLICY ....................................................................... 10-1
Chapter 1.  General Information .......................................................................................... 10-1
Chapter 2.  Application Process .......................................................................................... 10-2
Chapter 3.  Selection and Evaluation of a Designee Applicant ..................................... 10-4
Chapter 4.  Designee Appointment .................................................................................... 10-6
Chapter 5.  Responsibilities and Obligations of a Designee ........................................... 10-7
Chapter 6.  Oversight and Management of a Designee ................................................... 10-9
Chapter 7.  Training ........................................................................................................... 10-16
Chapter 8.  Renewal of Designee Appointment.............................................................. 10-19
Chapter 9.  Termination of a Designation ....................................................................... 10-20
Chapter 10.  Suspension of a Designation ...................................................................... 10-21
Chapter 11.  Other Designee Management Functions ................................................... 10-22

APPENDIX A.  DEFINITIONS ............................................................................................... A-1
APPENDIX B.  ACRONYM LIST ............................................................................................B-1

**AR 180**

# List of Tables

*Table*                                                                    *Page*

Table 1-1. Offices Responsible for Designee Policy ................................................. 1-2
Table 1-2. Overall Performance Result ................................................................... 1-18
Table 3-1. Types of Designees ............................................................................... 3-2
Table 3-2. Certificate Level Testing/Checking Authorizations ................................. 3-3
Table 3-3. Aircraft Category/Class/Privileges Testing/Checking Authorizations .................... 3-5
Table 3-4. Administrative Authorizations ................................................................. 3-7
Table 3-5. Specific Eligibility Requirements for Designation as a PE and/or a CE .............. 3-15
Table 3-6. Specific Eligibility Requirements for Designation as an LAE, a CIRE, an ATPE, a
    PPE, and/or a Type Rating Examiner ................................................................ 3-16
Table 3-7. Specific Eligibility Requirements for Designation as an SPE ............................. 3-17
Table 3-8. Specific Eligibility Requirements for Designation as a VAE, VFEE, and EAE ... 3-19
Table 3-9. DPE and SAE PIC Experience Requirements .......................................... 3-32
Table 3-10. Initial Training Requirements for Each Designee ..................................... 3-51
Table 5-1. Standard Airworthiness Certification Function Codes .................................. 5-2
Table 5-2. Standard Airworthiness Certification Function Codes—Primary and Restricted
    Categories ...................................................................................................... 5-3
Table 5-3. Limited Category Function Codes ............................................................. 5-4
Table 5-4. Experimental Category for the Purposes of Market Survey, R&D, or Crew Training
    Function Codes ............................................................................................... 5-4
Table 5-5. Experimental Category for the Purposes of Exhibition and/or Air Racing Function
    Codes ............................................................................................................ 5-5
Table 5-6. Experimental Category for the Purposes of Operating Amateur-Built Aircraft
    Function Codes ............................................................................................... 5-6
Table 5-7. Light-Sport Category and Experimental Category for the Purpose of Operating
    Light-Sport Aircraft Function Codes ................................................................ 5-7
Table 5-8. Export Approvals Function Codes ............................................................ 5-8
Table 5-9. Domestic Approval of Engines, Propellers, and Articles Function Codes .......... 5-8
Table 5-10. Other Authorizations Function Codes ..................................................... 5-9
Table 6-1. Certificate Level Testing Authorizations ................................................... 6-2
Table 6-2. Aircraft Category and Class Authorizations .............................................. 6-2
Table 6-3. Administrative Authorizations ................................................................. 6-3
Table 6-4. Special Authorizations ............................................................................ 6-3
Table 6-5. FAA-Conducted Training and Meeting Requirements ............................... 6-29
Table 7-1. Certificate Level Testing and Checking Authorizations ............................. 7-2
Table 7-2. Aircraft Category and Class Authorizations .............................................. 7-3
Table 7-3. Administrative Authorizations ................................................................. 7-4
Table 7-4. Special Authorizations ............................................................................ 7-5
Table 7-5. TCE Training Requirements .................................................................... 7-39
Table 7-6. FAA-Conducted Training and Meeting Requirements ............................... 7-41
Table 8-1. Minimum Qualification Requirements ...................................................... 8-6
Table 8-2. Schedule a DO Based on the Highest Risk from this Table ........................ 8-24
Table 10-1. FAA-Conducted Training and Meeting Requirements ............................. 10-17
Table A-1. Designee Management Definitions—Common ......................................... A-1

**AR 181**

Table A-2. Designee Management Definitions—AME ............................................. A-3
Table A-3. Designee Management Definitions—DPE, Admin PE, and SAE ...................... A-4
Table A-4. Designee Management Definitions—DADE ........................................... A-6
Table A-5. Designee Management Definitions—DME, DPRE, and DAR-T ....................... A-6
Table A-6. Designee Management Definitions—APD ............................................ A-8
Table A-7. Designee Management Definitions—TCE ............................................. A-8
Table A-8. Designee Management Definitions—DMIR and DAR-F ................................ A-9
Table A-9. Designee Management Definitions—DER ........................................... A-12

## List of Figures

*Figure*                                                                          *Page*

Figure 3-1. High-Level Selection Process Flow ................................................. 3-23
Figure 3-2. High-Level Appointment Process Flow .............................................. 3-27
Figure 4-1. High-Level Selection Process Flow ................................................. 4-8
Figure 4-2. High-Level Appointment Process Flow .............................................. 4-14
Figure 4-3. DADE Checklist.................................................................... 4-20
Figure 4-4. Sample Designated Aircraft Dispatcher Examiner Surveillance Checklist ........ 4-33
Figure 4-5. Sample Annual Meeting—Combined Safety Standardization Meeting, FAA
        Briefing, and Recurrent Training Agenda ............................................... 4-37
Figure 5-1. High-Level Selection Process Flow ................................................. 5-23
Figure 5-2. High-Level Appointment Process Flow .............................................. 5-27
Figure 5-3. Designee Post-Activity Attachments ............................................... 5-54
Figure 6-1. High-Level Selection Process Flow ................................................. 6-9
Figure 6-2. High-Level Appointment Process Flow .............................................. 6-13
Figure 7-1. High-Level Selection Process Flow ................................................. 7-13
Figure 7-2. High-Level Appointment Process Flow .............................................. 7-18
Figure 8-1. High-Level Selection Process Flow ................................................. 8-14
Figure 8-2. High-Level Appointment Process Flow .............................................. 8-17
Figure 8-3. Performance Measures and Oversight Activity Results................................ 8-26
Figure 10-1. High-Level Selection Process Flow ................................................ 10-4
Figure 10-2. High-Level Appointment Process Flow ............................................. 10-6
Figure 10-3. Performance Measures and Oversight Activity Results................................ 10-13

## VOLUME 1.  COMMON DESIGNEE POLICY

## Chapter 1.  General Information

## Section 1.  Introduction

**1.   Purpose of This Order.** This order establishes policy for integrated designee management across the Office of Aerospace Medicine (AAM), Aircraft Certification Service (AIR), Flight Standards Service (FS), and Air Traffic Safety Oversight Service (AOV), as well as the use of the Designee Management System (DMS), which is a web-based tool designed to standardize the management of designees.

   **a.**   This order consolidates orders across Aviation Safety (AVS) services and offices (S/O) and establishes a common policy section for all designees and provides respective volumes for the specific designee types. These policy changes are global in nature and, therefore, are not listed individually.

   **b.**   All users of this order must familiarize themselves with its contents and comply with the instructions and guidance contained herein. Many of the procedural functions are not included in the order since they are now incorporated into the functionality of DMS.

**2.   Audience.** The primary audience for this order are AVS designees, Federal Aviation Administration (FAA) managing specialists, and FAA personnel who may interact with designees or designee programs, including FAA management, operational, and administrative employees, as appropriate. The secondary audience is persons seeking to become designees.

**3.   Where You Can Find This Order.** You can find this order on the MyFAA employee website at https://employees.faa.gov/tools_resources/orders_notices and the Dynamic Regulatory System (DRS) at https://drs.faa.gov. Operators and the public can find this order on the FAA's website at https://www.faa.gov/regulations_policies/orders_notices and DRS.

**4.   What This Order Cancels.** This order cancels FAA Order 8000.95B, Designee Management Policy, dated April 12, 2022.

**5.   How This Order Is Organized.** This order contains ten volumes. Volume 1 contains common policy applicable to all AVS designee types. Volumes 2 through 10 contain policy applicable to specific designee types. Together, these volumes represent the designee management policy for AVS designees, excluding holders of Organization Designation Authorization (ODA).

**6.   Implementation.** Compliance with this order will be phased in by designee type(s) and achieved in accordance with the implementation plans established by each S/O for their respective designee types. Implementation will involve transition from existing management and information systems and designee management policies to the DMS policy and automation. Affected employees and designees will be notified through directive/memo or other means of communication when each implementation will begin and end, as well as when full compliance with this policy is required. FAA employee access and designee login credentials and

**AR 183**

instructions will be provided at the beginning of each implementation. Timing for release and completion of each implementation plan will depend upon:

   **a.** Availability of the DMS policy and automation for the respective designee type.

   **b.** Completion of transition training in the electronic Learning Management System (eLMS) by the managing specialist and their respective management officials, if required.

**7. Conflicts With Other FAA Orders**. The guidance in this order may conflict with that in other FAA orders and directives. This situation may arise inadvertently or because it is impractical to revise all orders simultaneously. Because FAA Order 8000.95, Designee Management Policy, encompasses all aspects of individual designee management, this order takes precedence over other orders containing conflicting information. If the guidance in this order conflicts with a statute or regulation, the statute or regulation controls.

**8. Authority to Change This Order.** The AVS Organization Designation Authorization (ODA) Office (AVS-60) has the authority to revise or cancel material in this order. AVS-60 is responsible for coordinating and managing order revisions. AVS-60 is responsible for the content of Volume 1, and the service offices identified in Table 1-1 below are responsible for the content of Volumes 2 through 10. Specific changes requested by service offices must be provided to AVS-60, which will then coordinate with the other organizations to ensure consistency and alignment with DMS policy.

**9. Deviations to This Order.** Requests to deviate from Volume 1 of this order must be sent to AVS-60 for review and approval/disapproval. Requests to deviate from Volumes 2 through 10 of this order will be sent to the responsible service office identified in Table 1-1 below for review and approval/disapproval. Deviation requests affecting more than one organization or that may require changes to DMS automation must be coordinated across the affected organizations and with AVS-60. When a deviation is requested to Volume 1 of this order, AVS-60 will coordinate with all responsible policy offices before issuance. Service offices may grant deviations to Volumes 2 through 10 of this order, as appropriate. Such deviations do not require pre-coordination with AVS-60. Once a deviation is granted, the issuing office must provide an electronic copy of the deviation memorandum and a copy of the initiating request to AVS-60.

**10. Responsible Offices/Divisions for Designee Policy.**

### Table 1-1. Offices Responsible for Designee Policy

| Designee Type | Volume | Office/Division |
|---|---|---|
| Aviation Medical Examiner (AME) | Volume 2 | AAM-400 |
| Administrative Pilot Examiner (Admin PE) Designated Pilot Examiner (DPE) Specialty Aircraft Examiner (SAE) | Volume 3 | AFS-600 |
| Designated Aircraft Dispatcher Examiner (DADE) | Volume 4 | AFS-600 |
| Designated Airworthiness Representative – Maintenance (DAR-T) Designated Mechanic Examiner (DME) Designated Parachute Rigger Examiner (DPRE) | Volume 5 | AFS-600 |

**AR 184**

| Designee Type | Volume | Office/Division |
|---|---|---|
| Aircrew Program Designee (APD) | Volume 6 | AFS-600 |
| Training Center Evaluator (TCE) | Volume 7 | AFS-600 |
| Designated Airworthiness Representative—Manufacturing (DAR-F) Designated Manufacturing Inspection Representative (DMIR) | Volume 8 | AIR-600 |
| Designated Engineering Representative (DER) | Volume 9 | AIR-600 |
| Designated Control Tower Operator Examiner (DCTO-E) | Volume 10 | AOV-200 |

**11. Directive and Guidance Information.**

    **a. Directive Information.**

        (1) This type of information is directive in nature and contains terms such as "shall," "will," or "must." These words indicate that the actions are mandatory. "Shall not" prohibits the action.

        (2) The use of these terms does not allow for flexibility.

    **b. Guidance Information.**

        (1) This type of information is considered guidance and contains terms such as "should," "can," or "may."

        (2) These terms indicate actions that may not be mandatory; however, they are strongly encouraged, permissive, and allow flexibility.

**12. Designation of a Designee Authorization.**

    **a. Power to Delegate.** Title 49 of the United States Code (49 U.S.C.) § 44702 empowers the Administrator to "...delegate to a qualified private person, or to an employee under the supervision of that person, a matter related to the examination, testing, and inspection necessary to issue a certificate under this chapter; and issuing the certificate."

    **b. Designation Authority.** Title 14 of the Code of Federal Regulations (14 CFR) Part 183, Representatives of the Administrator, prescribes the requirements for designating a private person or an organization to act as a representative of the Administrator.

**13. Employee Status.** A designee is not considered an employee of the U.S. Government and is not federally protected for the work performed or the decisions made as a designee.

**14. Role of DMS.** DMS will collect, store and process data and information associated with designees and the designee management processes in accordance with FAA recordkeeping requirements. DMS may utilize information from other FAA systems where appropriate and other FAA systems may utilize information from DMS where appropriate.

**15. Technical Support.** For questions regarding the operation of DMS, contact the AVS National IT Service Desk at 844-322-6948 or via email at helpdesk@faa.gov. For

**AR 185**

non-system-related questions, please visit the DMS web page to find the email addresses for various designee types.

## Section 2.  Designee Overview

**1.  Legal Authority.** Title 49 U.S.C. § 44702(d) is the statutory authority to delegate private persons to perform certain authorized functions on behalf of the FAA. These persons are called designees. The designee's function is vital to enhancing the FAA's public service role and improving overall safety in the National Airspace System (NAS). The FAA appoints designees to provide airman and aircraft certifications and other services to the public in accordance with FAA policy, guidance, and regulations.

**2.  Vision of Delegation Management Programs.** The FAA delegation programs leverage agency resources; respond to changes in workloads and aviation industry needs in a dynamic environment; demand the highest technical and ethical standards from designees; and ensure public, governmental, and industry confidence in aviation safety through strict compliance with certification policies and regulations.

**3.  Designation Principles.** The FAA bases the designation programs on the following principles, which are implicit in the day-to-day management of these programs:

    **a.  Privilege.** Designation is a privilege, not a right. The FAA may rescind a designation at any time for any reason the Administrator considers appropriate.

    **b.  Conduct.** Designees must not conduct themselves in a manner that casts doubt on their integrity, honesty, moral judgement or character at any time, or conduct any actions that bring discredit to the FAA.

    **c.  Knowledgeable.** Designees must be knowledgeable, qualified, and competent.

    **d.  Risk-Based Approach.** Management of designation programs must employ a risk-based approach.

    **e.  Essential.** Designation programs are essential.

    **f.  Need and Ability.** A need for and ability to manage a designee must exist for all designees.

**4.  Designee Types Covered by This Order.** Specific designee types covered by this order include:

    **a.  AAM.** AME.

    **b.  FS.**

        (1) Air Transportation Designated Examiner (ATDE).

**AR 186**

(a) APD. [1]

(b) DADE.

(c) TCE.

(2) Airworthiness Certification and Airman Examiner.

(a) DAR-T.

(b) DME.

(c) DPRE.

(3) General Aviation Pilot Examiner.

(a) Admin PE.

(b) DPE.

(c) SAE.

**c. AIR.**

(1) Airworthiness Designee.

(a) DAR-F.

(b) DMIR.

(2) DER.

(a) Company (DER-Y).

(b) Consultant (DER-T).

**d. AOV.** DCTO-E.

**5. Risk-Based Principles.**

**a. Risk-Based Management.** Risk-based management is a continuous process of identifying, analyzing, evaluating, controlling, and monitoring risks that exist with the designee program. DMS captures and manages the data, including the substantiation and documentation of the decisions.

**b. Risk Management Strategy (RMS).** RMS provides the managing specialist with a methodology for managing hazards and the associated risks related to designee performance.

---

[1] For purposes of this order, the term "Aircrew Program Designee" encompasses "aircrew designated examiners" in 14 CFR part 121.

**AR 187**

DMS provides the managing specialist with a means to document and track the performance of a designee utilizing the oversight module. The oversight module allows the managing specialist to review and evaluate the disposition of any risks associated with discrepancy findings. This methodology may include the following:

    (1) Identifying the discrepancy and determining the hazard;

    (2) Analyzing and assessing the risk;

    (3) Making a decision;

    (4) Implementing the decision; and

    (5) Monitoring the effectiveness of the decision.

    **c.** **Oversight.** Throughout the oversight process for each designee, there are both automated and manual entries within DMS that may trigger specific actions by the managing specialist. Using risk-based principles provides a comprehensive method of managing designees.

## Section 3.  Minimum Qualifications Overview

**1.  Minimum Qualifications of Managing Specialists.** The minimum qualifications for managing specialists are established by the responsible offices for designee policy. See Chapter 1, General Information, of each volume of the designee type-specific volumes for details.

# Chapter 2.  Application Process

**1. Purpose.** This chapter describes the designee application process. This chapter and the corresponding designation type-specific volumes constitute the application process policy.

**2. General.**

    **a. Application Information.** To learn about the designee program and/or initiate the designee application process, qualified individuals should access the FAA Designee website at https://www.faa.gov/other_visit/aviation_industry/designees_delegations/dms/.

    **b. Eligibility.** Anyone may apply to be a designee; however, the following persons are not eligible for appointment:

        (1) Current FAA employees.

        (2) Former designees who have been terminated for cause.

    **c. Multiple Designee Types.**

        (1) The FAA may appoint an individual to more than one type of designation. Once appointed, any designee holding multiple designations will have only one designee number.

        (2) Designee applicants must complete a separate application for each designation type sought. Each designation is a separate appointment.

    **d. References.** The applicant may provide the following:

        (1) Three verifiable character references to substantiate that the applicant possesses integrity and sound judgment.

        (2) Three verifiable technical references to substantiate that the applicant possesses the required technical expertise for the designation sought. These references may be the same individuals used as character references.

**3. Qualifications.** In addition to the requirements in subparagraph 2b above, applicants may also have additional eligibility and qualification requirements which can be found in the appropriate designation type-specific volumes of this order.

    **a. Minimum Qualifications.** The designee applicant must:

        (1) Meet FAA English language standards as described in Advisory Circular (AC) 60-28, FAA English Language Standard for an FAA Certificate Issued Under 14 CFR Parts 61, 63, 65, and 107; and

        (2) Be at least 23 years of age

**b.  Character.** At all times, the designee applicant must:

(1) Have a high degree of integrity, even when not exercising their delegated authority;

(2) Have a cooperative attitude;

(3) Be able to exercise sound judgment;

(4) Be engaged in the aviation industry;

(5) Have a reputation for dependability and professionalism; and

(6) Be able to maintain the highest degree of objectivity while performing authorized functions.

**c.  Technical Experience.** The applicant must have up-to-date extensive knowledge and experience that is pertinent to the designation being sought.

**d.  FAA Interaction.** Any previous working relationship the applicant had with the FAA must have been positive.

**4.  Disqualifiers.** Applicants will be disqualified for any of the following reasons:

**a.  Terminated for Cause.** See Chapter 9, Termination of a Designation, for details.

**b.  Convictions and Felonies.** Having, within the past 7 years:

(1) Been convicted of any violation of any local, state, or Federal law pertaining to drugs or alcohol.

(2) Been convicted of any felony offenses. A felony offense is considered a conviction where the punishment could have been greater than 1 year regardless of the sentence.

(3) Been imprisoned, been on probation, or is on parole because of a felony conviction (including civilian or military felonies, firearms, or explosive violations).

(4) Been other than "honorably" discharged from the military.

(5) Had an airman certificate (other than medical), rating, or authorization (or foreign equivalent) suspended, revoked, or paid a civil penalty as a result of a violation of any FAA or other Civil Aviation Authority (CAA) regulations (foreign or domestic).

**c.  Current Disqualifiers.** Is currently under investigation, charged indictments, or has a pending action for the items described in subparagraph 4b of this chapter.

**AR 190**

**5. Privilege, Not a Right.** Successfully meeting the minimum qualifications does not guarantee appointment as a designee. During the application process in DMS, the designee applicant will be required to acknowledge the following in DMS:

    **a.** Designation is a privilege, not a right.

    **b.** The FAA can terminate any designation at any time, for any reason the Administrator considers appropriate.

**6. Post-Application.**

    **a. Retention of Application Data.** DMS saves all application data in accordance with FAA Order 1350.14, Records Management.

    **b. Notification.** DMS will automatically notify designee applicants regarding the status of their application by sending a generic email to check the DMS message center. This email is sent to the email address provided during the registration/application process.

    **c. Updating Applications.** Applicants must update their applications whenever information changes and they must validate and verify the application data at least every 12 calendar-months. Failure to maintain up-to-date information may affect selection eligibility and appointment as a designee. An application that is updated will remain active in DMS until the applicant is selected or cancels the application.

    **d. Cancellation.** A designee applicant may cancel an application at any time in DMS.

**AR 191**

## Chapter 3.  Selection and Evaluation of a Designee Applicant

**1.  Purpose.** This chapter describes the common policy related to the selection and evaluation of a designee applicant. This chapter and the corresponding designation type-specific volumes constitute the policy for the selection and evaluation of a designee applicant.

**2.  General.** Selection refers to the identification of qualified designee applicants that best meet the FAA's needs. Evaluation refers to the FAA's responsibility to determine if an applicant is the best qualified for appointment.

    **a.  Qualified Applicants.** DMS will provide a list of qualified applicants that meet the needs identified by the requesting FAA office.

    **b.  Selection Timeframe.** Once DMS presents a list of qualified applicants, the selecting official (SO) should complete the selection action within 30 calendar-days.

**3.  Need and Ability to Manage.** The FAA must show the need for specific functions to be delegated and, subsequently, the ability to manage a designee performing those functions before an applicant can be appointed. The managing FAA office, within its sole discretion, determines the need for and ability to manage a designee. The SO at the managing FAA office must validate the need and ability to manage an additional designee by answering a series of questions during the selection process in DMS.

    **a.  Considerations for Determining Specific Need.**

        (1) The FAA cannot support the certification work and need with existing designees.

        (2) The activity in the office has increased or is forecasted to increase and cannot be supported with existing designees.

        (3) The FAA has lost an employee or designee resource.

        (4) The need for a new designee is driven by the needs of the public and not by the impact on other existing designees or entities.

    **b.  Considerations for Determining Ability to Manage.**

        (1) The managing office staff has the technical skills and knowledge to manage the designee.

        (2) The existing and/or projected office workload allows the office to effectively manage the designee.

        (3) Adequate funds (e.g., travel allocation) exist to oversee the additional or existing designee.

**AR 192**

**4. Requesting Qualified Applicants.**

    **a.  List of Qualified Applicants.** Once the FAA establishes the need and ability to manage a designee, the SO can request a list of qualified applicants from DMS. DMS will search active applicants to identify applicants that most closely match the specified criteria.

    **b.  Deviation from Minimum Qualifications**. For most designee types, if no qualified applicants are available within DMS, a managing office may request a deviation from the minimum qualification requirements if:

        (1) The FAA demonstrates a significant need for the appointment, and

        (2) The applicant meets an equivalent qualification or possesses equivalent experience. (See the appropriate designee type-specific volume for more information.)

**5.  Evaluation.** The following tasks are part of the evaluation process:

    **a.  Evaluating Applications.** Once DMS has generated a list of applicant(s) based on the search criteria, the SO may choose to review the applications prior to assigning personnel to evaluate the applicant's qualifications. Determining which applicants will be evaluated for appointment is at the sole discretion of the SO.

    **b.  Assigning Evaluation Panel.** Once the SO determines which applicant(s) will be evaluated for appointment, DMS will prompt the SO to assign a panel of individuals to conduct an evaluation of the applicant based on designee type-specific policies.

    **c.  Reviewing Application for Minimum Qualifications.** For each applicant, the personnel assigned to evaluate the application will review the application for completeness to ensure that all minimum qualifications have been met.

    **d.  Completing Evaluation Checklist.** The evaluation panel lead, depending on the designee type-specific policies, completes an evaluation checklist in DMS for each applicant being evaluated. See Chapter 3 in each designee type-specific volume for more information.

**AR 193**

## Chapter 4.  Designee Appointment

**1.  Purpose.** This chapter describes the common policy associated with the appointment of a selected qualified applicant. This chapter and the corresponding designation type-specific volumes constitute the policy for designee appointment.

**2.  General.**

    **a.  Identity Verification.** Prior to appointment, the managing office must verify the identity of the designee applicant. Such identification must include an official government-issued identification with a photograph of the applicant, the applicant's signature, and the applicant's residential address, if different from the mailing address. This information may be presented in more than one form of identification.

    **b.  Designee Number.** During the application process, DMS assigns a unique nine-digit identification number known as the designee number. However, this number is not known to applicants and only visible to the designee once appointed. This designee number is used in documentation to identify the activities completed by the designee when authorized by the Administrator.

    **c.  Certificate Letter of Authority (CLOA).** For each appointment, DMS generates and stores a CLOA that serves as the letter of authority, certificate of authority, certificate of designation, and identification card (applicable to AME only). The CLOA provides a detailed description of the designee's authorities, limitations, and associated expiration as contained within DMS. A CLOA is available to the designee for each type of designation held and serves as the record of the designee's authority. Authorized users can view a designee's authority in DMS. A designee may print a copy of the CLOA but is not required to do so.

**3.  Appointment Duration.** Appointment duration is 1 year from the appointment date. See Volume 1, Chapter 8, Annual Request for Extension of a Designee's Designation, and the designee type-specific policy for considerations to extend the designation beyond the expiration date.

**AR 194**

## Chapter 5.  Responsibilities and Obligations of a Designee

**1. Purpose.** This chapter describes the common policy associated with the responsibilities and obligations of a designee. This chapter and the corresponding designation type-specific volumes constitute responsibilities and obligations of a designee.

**2. Responsibilities.** A designee must:

   **a.  Represent the Administrator in a Positive Manner.** Each designee must represent the Administrator in a manner that reflects positively on the FAA at all times.

   **b.  Conduct Approved Activities.** Each designee must conduct only those activities approved in DMS.

   **c.  Follow Guidance.** Designees must follow all requirements found in regulations, orders, and other guidance related to the functions they perform.

   **d.  Maintain Skills and Knowledge.** Designees must maintain technical skill and knowledge of subject matter specific to the designation held.

   **e.  Exhibit Sound Judgment.** Designees must display sound judgment.

   **f.  Exhibit Integrity.** Designees must show a high degree of integrity, responsibility, and professionalism.

   **Note:**  Any designee conduct that casts doubt on the designee's judgement, integrity or character at any time could lead to an investigation and be grounds for termination.

**3.  Ongoing Requirements.** In addition to maintaining minimum qualifications as specified in this and the designee type-specific volumes, all designees must continue to meet the following requirements:

   **a.  Use DMS.** Designees must use DMS as directed in this order. Designees have the responsibility to read and respond to DMS messages and provide requested information within DMS, as directed, in a timely manner.

   **b.  Maintain Contact Information.** Designees must update their DMS profile when changes occur and review their profile at least annually.

   **c.  Access to Internet.** Designees must have access to DMS and email through the internet.

   (1) The designee is responsible for accessing DMS and checking DMS messages, notifications, and email on a regular and recurring basis.

   (2) The designee is responsible for scanning and uploading documents required for designation.

**AR 195**

    **d.** **Attend Required Training.** Designees must comply with minimum training requirements.

    **e.** **Attend Required Meetings.** Designees must comply with meeting requirements.

**4.** **Other.** Designees must maintain other requirements deemed necessary by the appointing office.

## Chapter 6.  Oversight and Management of a Designee

**1.  Purpose.** This chapter describes the common policy associated with the oversight and management of a designee. This chapter and the corresponding designation type-specific volumes constitute the policy for oversight and management of a designee.

**2.  General.**

    **a.  Oversight Principles.**

        (1) Promote Safety. A primary responsibility of the FAA is to promote safety through systematic oversight of industry stakeholders, including designees. Information generated from oversight programs permits the FAA to identify safety hazards, mitigate risk, and enhance aviation safety. In order for oversight programs to be effective, they must be carefully planned and executed during the conduct of specific inspection activities.

        (2) Evaluate Performance. The objective of an oversight program is to ensure that the designee performs to the standards and expectations set forth by the FAA in its policies and regulations. Oversight is not merely an isolated event or series of activities. Oversight results should be considered in total to provide a high-level perspective of a designee's performance over time.

    **b.  Managing Office and Managing Specialist.**

        (1) Designation Type. Designees have a managing office and managing specialist for each designation type. If the designee holds more than one type of designation, a designee may have more than one managing office and more than one managing specialist.

        (2) Area of Responsibility. The FAA expects designees to perform a sufficient number of their functions within the bounds of their managing office's area of responsibility to support required oversight, unless otherwise noted in the designee type-specific volume.

        (3) Regulatory Oversight Responsibility. Managing specialists have regulatory oversight responsibility of designees and must monitor them to ensure that they continue to meet the requirements of their designations. A comprehensive oversight plan enables managing specialists to:

            (a) Determine the designee's compliance with regulatory requirements, guidance, policy, and safe operating practices;

            (b) Validate any corrective actions;

            (c) Detect changes as they occur in the operational environment; and

            (d) Detect the need for regulatory, managerial, and operational changes.

**c. Oversight and DMS.** The FAA uses DMS to record the outcomes of oversight activities for a designee which may vary depending on the designee type. By documenting oversight activity in DMS, the FAA can make an overall assessment of the designee's performance.

(1) Oversight Characteristics. In DMS, oversight activities have the following characteristics:

(a) A definite beginning and a definite end;

(b) Defined procedures;

(c) Specific objectives; and

(d) A required report of findings.

(2) DMS Oversight and Management Activities. The following activities are available in DMS for most designee types:

(a) Direct observation;

(b) Counseling;

(c) Record feedback;

(d) Training record;

(e) Overall performance evaluation (OPE).

(f) Suspend; and

(g) Terminate.

**d. Performance Measures.** For many of the oversight activities, the managing specialist should use the following performance measures to determine designee performance:

(1) Technical. The designee demonstrates sufficient knowledge, skill, and ability to conduct authorized tasks within established guidance and standards. The designee possesses an expert level of knowledge and skill, understands and uses appropriate terminology, uses the correct equipment, applies appropriate standards, and accurately interprets results.

(2) Procedural. The designee demonstrates the ability to complete administrative functions correctly. The designee accurately completes and issues appropriate documentation, submits required data, follows established procedures, and complies with all regulations, orders, and directives.

(3) Professional. The designee conducts activities in an ethical, courteous, and conscientious manner reflecting highly on the Administrator. The designee presents a cooperative attitude and demonstrates integrity, tact, and diplomacy when dealing with industry

**AR 198**

and the FAA. The designee communicates effectively in a manner that reflects positively on the FAA, both orally and written.

**3. Oversight Actions.** Managing specialists may use DMS to plan but must use DMS to document the outcome of oversight activities.

   **a. Planning an Oversight Activity.** DMS allows managing specialists to plan and record oversight activities.

   (1) Managing specialists should use risk management principles when planning oversight.

   (2) Managing specialists should review the designee's previous oversight outcomes as well as current activities, records, and policy as part of the planning.

   **b. Oversight Activity.** For a list and explanation of oversight activities applicable to a specific designee type, see Chapter 6, Oversight and Management of a Designee, in the respective designee type-specific volume.

   **c. Outcomes of Oversight Activities.**

   (1) For some oversight activities, the managing specialist must select from three general categories in DMS for the overall ranking of the oversight activity: Satisfactory, Needs Improvement, and Unsatisfactory. If the designee's oversight outcome results in "Needs Improvement" or "Unsatisfactory," the managing specialist must enter descriptive text in the appropriate performance measure category(ies).

   (2) Additionally, if the designee's oversight outcome results in "Needs Improvement" or "Unsatisfactory," the managing specialist must also determine and record appropriate followup action(s). For more detail on followup actions, see Table 1-2, Overall Performance Result, and Paragraph 4, Followup Actions, in this chapter, as well as the performance evaluation information in Chapter 6 of each designee type-specific volume.

   **d. Overall Performance Evaluation (OPE).** In addition to normally-scheduled oversight, managing specialists will complete an assessment of the designee's OPE over a set period of time by reviewing the designee's record in DMS.

   (1) Managing specialists should perform at least one OPE within the first year after initial designee appointment. After that the schedule is set by the managing specialist. See Chapter 6 in the respective designee type-specific volumes for more information.

   (2) During each OPE period, the managing specialist conducts a consolidated review of the designee's documented oversight activity and other data available in DMS.

   (3) Based on an analysis of the information and considering risk-based elements, the managing specialist selects an OPE rating (Satisfactory, Unsatisfactory, or Needs Improvement) and any followup actions, if required. See Table 1-2 below.

**AR 199**

(4) Unless otherwise noted in the designee type-specific volumes, if the OPE rating is "Needs Improvement" or "Unsatisfactory," the next performance evaluation must be completed within 6 calendar-months from the previous performance evaluation date. If the performance evaluation result is "Satisfactory," the due date for the next performance evaluation is between 12 and 36 calendar-months.

(5) If the OPE rating requires a 6-month followup, the next performance evaluation of the designee must be a "Satisfactory" rating or the designee will be terminated.

### Table 1-2. Overall Performance Result

| Overall Performance Result | | | |
|---|---|---|---|
| The managing specialist will choose the overall rating that best represents the overall performance result of the designee during the performance period: | | | |
| **Overall Rating** | **Required Action Against Designee Authority** | **Followup Actions** | **Performance Evaluation Required w/in 6 Months?\*** |
| **Satisfactory** | None | None | No |
| **Needs Improvement** | See designee type-specific volume, as applicable | Plan and execute an oversight activity | Yes |
| **Unsatisfactory** | Suspend* | Plan and execute a corrective action activity | Yes |
| | Reduce/Restrict Authority | Change authority, plan and execute oversight activity | Yes |
| | Terminate | Terminate | N/A |

\* Requires description of planned followup activity.

**e. Followup Actions.** Depending on the issues involved, additional followup or oversight may be needed to ensure that the deficiency has been corrected. The intent of the followup action is to correct the deficiency using the most appropriate method. The following options are available to provide support for designee management:

**Note:** If suspension or termination is required, please see the designee type-specific "Suspension of a Designation" and "Termination of a Designation" chapters for more information. For "Reduce Authority" decisions, see subparagraph 5b below.

**f. Counseling.** Managing specialists may use counseling as a type of corrective action to follow up from a specific event, an oversight activity, or to address specific performance issues. The managing specialist must record the results of the counseling session in DMS.

**g. Additional Training.**

(1) Managing specialists may prescribe additional training to correct a deficiency related to a specific event, an oversight activity, or to address specific performance issues.

**AR 200**

(2) If the deficiency is such that the designee is unable to perform authorized functions correctly, the managing specialist may initiate the suspension process to suspend the designation or specific authority until the designee completes the training.

**4. Designee Management Functions.** Designee management includes the comprehensive evaluation, oversight, and monitoring of a designee's activities. DMS provides a group of management functions designed to manage the designee's authorities, limitations, performance and conduct throughout the lifecycle of the designee.

**a. Request for Additional Authorizations or Limitations.**

(1) Authorities can be expanded and limitations changed on an existing designation only.

(2) When designees believe that they are qualified to perform additional authorized tasks within their designee type, other than those that the FAA currently authorizes, they may request the change through DMS.

**Note:** In some cases, the managing specialist may also initiate this process in DMS.

(3) The appointing official (AO) must approve all requests for additional authorizations or limitations in DMS. In order for the AO to approve the request, the designee must meet all requirements, and the FAA must have the need and ability to manage the designee. In some cases, an evaluation panel will be convened to review the designee's qualifications for the additional authorizations. Refer to the designee type-specific volumes for specific instructions.

(4) If approved, DMS will automatically update the authority and CLOA as appropriate, notifying both the designee and the managing specialist. A designee shall not exercise any expanded authority until the request has been approved and official notification has been made.

**b. Reduce Authority.** A managing specialist may initiate a reduction in a designee's authority for a specific designation through DMS, or a designee can request a reduction of authority through the managing specialist.

(1) DMS requires the managing specialist to enter a justification for reducing a designee's authority.

(2) In order for the request to be approved, the FAA must consider whether the need and ability to manage the designation still exists given the reduction in authority. If there is no longer a need or ability to manage the designee with reduced authority, the managing specialist will initiate the termination (not for cause) process.

(3) An AO must approve all requests to reduce authority in DMS. If approved, DMS will automatically update the designee's authorities and CLOA, as appropriate.

**c. Investigations.** The FAA may determine an investigation of a designee is warranted. Investigations can be initiated based on information discovered during oversight, internal or external feedback, complaints, allegations of misconduct, inappropriate behavior, misuse of

**AR 201**

authority granted to a designee or other matters the FAA becomes aware of warranting further investigation. This may include investigating actions not directly related to a designee's activity, but raise questions or concerns about the designee's ability to continue to act as a Representative of the Administrator. If termination for cause is a possible outcome, the managing specialist will initiate an investigation to determine the appropriate course of action.

> **Note:** Investigations as defined in this policy are intended to address issues with designee performance and/or conduct and are not related to investigations as defined in FAA Order 2150.3, FAA Compliance and Enforcement Program.

(1) **Purpose.** The purpose of the investigation is to determine the appropriate outcome through analysis and assessment. Successful completion will result in a decision on the appropriate management action(s) related to the designee.

(2) **Investigation Process.** The investigation process may vary depending on designee type. Refer to each designee type-specific volume for additional guidance. At a minimum, the investigation will include the following elements:

(a) The reason(s) for the investigation, to include any complaints or allegations.

(b) Collection of evidence related to the investigation.

(c) A review of the facts and circumstances surrounding the case.

(d) A review of the designee's record in DMS and any relevant background information in the appropriate FAA databases to determine if there is a pattern of inappropriate behavior or misconduct.

(e) If the FAA notifies the designee of the investigation and the designee chooses to respond, a review of the designee's response and any documentation provided by the designee.

(f) A decision on the appropriate course of action based on the results of the investigation.

(g) Recording the results in DMS, to include at a minimum:

*1.* The specific reason(s) for the decision;

*2.* Any additional designee management actions taken;

*3.* The designee's response, if any;

*4.* Any associated documentation.

(3) **Suspension During an Investigation.** The managing specialist may suspend a designee during an investigation depending on the type of designation and authority the designee holds. Refer to each designee type-specific volume for more information.

**AR 202**

(4) **Designee's Ability to Respond.** If suspended, the designee may request a release from suspension as outlined in Chapter 10 of this volume in order to respond to the investigation. Managing specialists must provide sufficient information within the suspension to allow the designee to respond to the investigation, but must not release sensitive information or data that is not publicly available. The MS may review the designee's response without releasing the suspension.

(5) **Results of the Investigation.** Based on the outcome of the investigation, the managing specialist will recommend to the AO one of three courses of action in DMS to resolve the investigation:

(a) **No Action Required.** If the investigation reveals no further action is required, the managing specialist will document the outcome in DMS. If the designee is under suspension, the managing specialist will remove the suspension.

(b) **Additional Action Required.** If the investigation reveals additional action is required such as counseling, corrective action, training or additional oversight, the managing specialist will document the outcome in DMS and initiate the additional action(s).

(c) **Termination of a Designation.** If the investigation reveals termination of the designation is warranted, the managing specialist will begin the termination process immediately. If terminating for cause, the AO will initiate a termination for cause review panel as outlined in Chapter 9 of this volume.

(6) **Suspected Criminal Activity.** If the investigation reveals suspected criminal activity, the managing specialists will consult with their management for referral to the appropriate Law Enforcement Agency.

d. **Inquiries.** The FAA will provide support to any official inquires by other government agencies regarding a designee. An inquiry could result in an FAA investigation.

e. **Record Note.** Managing specialists can create a personal note or reminder in DMS. This note is the digital equivalent of a sticky note; it is not part of the designee's official record, and only the author can view the note. Managing specialists should not use this feature to record performance-related issues or other oversight-related information.

f. **Send Message to Designee.**

(1) Managing specialists can use DMS to send a message to one or more of their assigned designees.

(2) DMS will store the message and record the date the message is sent, along with the date the message is opened by the designee.

(3) DMS users can view these messages. Designees are required to monitor DMS for new messages.

**AR 203**

**g.  Record Feedback or an Interaction Regarding a Designee.**

(1)  Interaction can be verbal and/or written communication between the designee, FAA, and industry.

(2)  Feedback should be provided promptly following the activity to which it references. While the managing specialist has management responsibility for the designee, any FAA employee working with a designee or designee's work product has the responsibility to provide feedback regarding the designee's performance or activity. Any FAA employee with access to DMS can enter feedback on a designee. If the user providing the feedback is not the managing specialist, DMS will send a notification to the managing specialist.

(3)  Types of feedback or interactions that should be recorded in DMS include, but are not limited to, the following:

(a)  Corrective—intended to correct an error;

(b)  Evaluative—intended to detail specific positive feedback;

(c)  Instructional—intended to provide information about the quality of performance; and

(d)  Compliments, critiques, and suggestions.

**AR 204**

# Chapter 7.  Training

1.  **Purpose.** This chapter describes the common policy associated with training of designee applicants, designees, and FAA personnel. This chapter and the corresponding designation type-specific volumes constitute the policy for training.

2.  **General.** Designees and FAA personnel must develop and maintain the technical skills, knowledge, ability, and proficiency to effectively perform their duties and roles.

3.  **Designee Training Requirements.**

    a.  **Initial Training.** Prior to the FAA appointing an individual as a designee, the individual must participate in and successfully complete the initial training program.

    b.  **Recurrent Training.** A designee must regularly attend and successfully complete recurrent training.

    c.  **Specialized Training.** Specialized training covers specific authority not held by the majority of designees of a particular type, or covers new concepts, processes, and delegation authority. These topics are not normally covered in the initial or recurrent training for those designee types and are therefore addressed outside of this normal training environment. Specialized training is typically web-based and addresses those areas where specialized experience and authority is required. Where applicable, a designee must complete any specialized training that is required for the specific authority requested or held. This specialized training must be completed prior to appointment or adding the special authority and in some cases must be repeated at the interval specified.

4.  **FAA Managing Specialist Training Requirements.** Managing specialists should complete relevant initial training prior to being assigned as a managing specialist. If an individual cannot complete the relevant initial training prior to being assigned as a managing specialist, they should enroll in relevant training that takes place within 6 calendar-months of assignment. The managing office may assign another managing specialist (either from the managing office or another office) to manage the designee(s) until the desired managing specialist completes training.

5.  **Other FAA Employee Training Requirements.** Managers of DMS users who have assigned DMS roles should complete AVS training associated with designee management within 6 calendar-months of being assigned that role.

**AR 205**

## Chapter 8.  Annual Request for Extension of a Designee's Designation

**1.   Purpose.** This chapter describes the common policy associated with the FAA's extension of a designee's designation from the current expiration date. This chapter and the corresponding designation type-specific volumes constitute the policy for extending a designee's expiration date.

**2.   General.** Extension of the designee's expiration date is the responsibility of the designee. Since designee oversight requirements have defined intervals, extension of a designation is not contingent upon completion of a particular oversight activity. As long as a designee is in good standing and continues to meet the requirements of the designation, the designee will be given a one-year extension of their expiration date upon completion of the annual request to extend expiration date action in DMS.

**3.   Annual Request to Extend Expiration Date.**

   **a.   Timeframe.** The action item to extend the expiration date will appear on the designee's home page 60 days prior to the expiration date. If a designee does not complete the action item in DMS prior to the expiration date, DMS changes the designee's status to "expired." Designees in an expired status are no longer authorized to perform any duties related to the expired designation and will have limited access to DMS. The designee can return to an active status by completing the action item.

   **b.   Extension Workflow.** The extension workflow in DMS requires the designee to verify basic designation information such as designee location, personal profile, and the eligibility requirements to maintain the specific designation. Additionally, the designee must:

- Be in good standing;
- Have no violation history;
- Be current on all required training;
- Have no arrests or convictions; and
- Have not had an airman certificate (other than medical), rating, or authorization (or foreign equivalent) suspended or revoked; or have not had to pay a civil penalty as a result of a violation of any FAA or other CAA regulations (foreign or domestic).

**4.   Updated Expiration Date.** Once the annual request to extend the expiration date has been successfully submitted, the expiration date will be extended 12 months to the last day of the month.

   **Note:**   Designees in a suspended status may qualify for extension of the expiration date, but they must be in an active status in order to submit the annual request to extend expiration date.

**5.   Termination—Nonsubmittal.** If a designee fails to submit the annual request to extend expiration date, the FAA will initiate the termination process. See Chapter 9 for additional information. Designees terminated for nonsubmittal of an extension are considered terminated "not for cause" and may reapply or be reinstated where designee-specific policy allows.

**AR 206**

**6. Reminders.** The designee is responsible for accessing DMS on a regular basis to check DMS message center notifications and action required items. The designee has the sole responsibility to extend their expiration date upon receipt of the action item in DMS.

**7. Surrender.** A designee who does not intend to extend a designation is encouraged to voluntarily surrender the designation in DMS prior to expiration.

**8. Expansion of Authority.** The designee may not seek an expansion of authority using the expiration date extension process. See Chapter 6, Subparagraph 5a, Request for Additional Authorizations and Limitations.

**9. Privilege, Not a Right.** During the annual request to extend expiration date, the designee will acknowledge that the designation is a privilege, not a right, and the FAA Administrator can terminate the designation at any time, for any reason.

**10. Disqualifiers.** See the list in Volume 1, Chapter 2, Application Process.

**AR 207**

# Chapter 9.  Termination of a Designation

**1.  Purpose.** This chapter describes the common policy associated with the termination of a designation. This chapter and the corresponding designation type-specific volumes constitute the policy for termination of a designation.

**2.  General.** There are two methods used to terminate a designation: voluntary surrender and FAA-initiated termination.

**3.  Voluntary Surrender.**

    **a.  Voluntarily Surrendering a Designation.** A designee may voluntarily surrender a designation.

        (1) Designees must surrender each designation separately. The voluntary surrender process applies only to a single designation at a time.

        (2) A voluntary surrender of a designation does not preclude the individual from applying to be a designee in the future.

        (3) Once DMS notifies a designee of the suspension based on a pending termination for cause action, the designee may not submit a voluntary surrender request in DMS.

    **b.  Possible Reasons for Voluntary Surrender of a Designation.**

        (1) Retirement;

        (2) Employment termination;

        (3) Lack of business activity;

        (4) Difficulty in meeting requirements;

        (5) Dissatisfied with being a designee; or

        (6) Personal reasons.

    **c.  Voluntary Surrender Process.**

        (1) To begin the voluntary surrender process, a designee must submit a voluntary surrender request in DMS.

        (2) The managing specialist will review the voluntary surrender request in DMS and indicate whether or not the designee is considered "in good standing." This determination is helpful should the designee choose to reapply at a later date.

        (3) DMS will limit access to DMS functionality as appropriate for the designation being terminated. The designee is no longer authorized to perform any duties related to the designation.

**AR 208**

**4. FAA-Initiated Termination.** Designees are selected, appointed, and trained to serve the needs of the FAA in fulfilling its safety mission, allowing the FAA to leverage its resources. Therefore, the FAA can rescind a designation at any time for any reason considered appropriate by the Administrator. Designees who are performing poorly, who are representing the Administrator in a negative manner, or who require excessive resources to manage must have their designations terminated to ensure continued effectiveness of the designee system.

    **a. Terminating a Designation.**

        (1) The FAA must document termination decisions in DMS and include the specific reason(s) for the termination.

        (2) When applicable, the FAA should review feedback from individuals who have observed the designee's activities outside of the designee's managing office.

        (3) Only managing specialists assigned to the designee can initiate the termination process in DMS.

    **b. Types of Termination.** There are two types of termination: "for cause" and "not for cause."

    (1) For Cause. Examples of "for cause" reasons include:

        (a) Performance deficiencies found during oversight activities or identified by other sources;

        (b) Lack of integrity (e.g., making false statements, misrepresenting information, failing to disclose pertinent information, exhibiting behavior that reflects poorly on the Administrator, etc.);

        (c) Misconduct (e.g., purposefully not following prescribed procedures for gain, participating in unethical or illegal activity, etc.);

        (d) Inability to work constructively with the FAA or public (e.g., failure to return phone calls, follow guidance, exhibit a cooperative attitude, etc.);

        (e) Improper representation of the FAA (e.g., using designee number for inappropriate purposes, etc.); and

        (f) Other. Any other reason that the FAA Administrator considers appropriate.

    **Note:** DMS sends termination notifications to all managing specialists assigned responsibilities for a given designee. The AO will initiate a termination for cause review panel per subparagraph 4.f. below.

    (2) Not For Cause. Examples of "not for cause" reasons include any reason other than "for cause." A designee terminated not for cause may reapply for designation. Examples of termination other than "for cause" include:

**AR 209**

(a) Lack of FAA Need.

*1.* Activity in the office decreased, or is forecasted to decrease, eliminating the need for the designee.

*2.* The FAA plan for delegated work changed, eliminating the need for the designee.

*3.* The FAA can support the certification work or need with other existing designees.

(b) FAA is Unable to Manage.

*1.* The existing and projected office workload does not allow the office to effectively manage the designee.

*2.* The FAA does not have the ability to provide authorization, testing, and/or additional training needed for its employees to oversee the designee. Adequate funds (for example, travel allocation) are not available to oversee the designee.

*3.* FAA staff does not have the technical skills and knowledge to oversee the designee.

(c) Other.

*1.* Designee no longer meets minimum qualifications;

*2.* Designee does not meet training requirements;

*3.* Designee is physically unable to perform designee duties;

*4.* Designee did not extend designation before expiration;

*5.* Designee's authority expired while suspended; or

*6.* Designee is deceased.

**c.  Termination Process.**

(1) When it has been determined termination is warranted, the managing specialist should begin the process immediately. Termination decisions must be formally documented in DMS, to include the specific reason(s). The AO must approve or deny the termination recommendation in DMS.

(2) Once the termination process has begun, DMS will prevent the designee from conducting new work under the designation being terminated. The status of the designee's authority will change to "suspended" during the termination process. The designee must immediately cease exercising designee privileges for the designation being terminated.

**AR 210**

(3) Upon completion of the termination process, the designee's status will be changed to "terminated." DMS will send an electronic termination notice to the designee.

**d.  Termination For Cause Investigation.** If termination for cause is a possible outcome, the managing specialist will initiate an investigation to determine the appropriate course of action. See Investigations in Chapter 6 of this volume.

**e.  Designee Response to Termination For Cause.** If the termination for cause investigation determines termination for cause is the appropriate course of action, once the managing specialist initiates the termination for cause process, the designee may respond in DMS. To respond to a possible termination for cause action, the designee must respond in DMS within 15 calendar days of the termination for cause action being initiated.

**f.  Termination For Cause Review Panel.**

(1) During the termination for cause process, the AO will initiate a termination for cause review panel to determine if termination is appropriate. There are two types of panels. Only one panel will be conducted, depending on the designee:

(a) Designee with One Designation. When a designee who only holds one designation is being terminated for cause, the members required for the review panel depend on the specific designee type being terminated. Refer to each designee type-specific volume for instructions.

(b) Designee with Multiple Designations. When a designee with multiple designations is being terminated for cause, the AO associated with the designation from the office that initiated the investigation will establish the review panel to determine if the termination is appropriate and if the additional designation(s) should be terminated. In this case, the review panel will consist of:

*1.*  The AO associated with the designation from the office that initiated the termination process. This individual will be the panel point of contact (POC).

*2.*  Each AO associated with the additional designation(s) that may be terminated.

*3.*  A representative from the associated policy office(s).

(2) The review panel will review the facts and circumstances surrounding the termination for cause decision, including all documentation and the designee's record in DMS, and provide a recommendation to the AO(s) responsible for making the decision. The review panel will determine the following:

- Was a thorough investigation performed?
- Was the designee provided an opportunity to respond to the investigation?
- Is termination justified?

(3)  The review panel will complete the review process and submit a recommendation within 45 calendar-days of the termination for cause process being initiated.

**AR 211**

(4) All documentation associated with the review panel (e.g., outcome, members of the review panel, communication with the designee or the associated office) should be included in the designee's DMS file.

(5) The AO will make the decision to either terminate the designee or reject the termination and reinstate the designee's privileges. For a designee with multiple designations, the AO for each designation will determine whether to terminate the designee or reject the termination. Each AO's decision is final and concludes the process.

**AR 212**

# Chapter 10.  Suspension of a Designation

**1.  Purpose.** This chapter describes the common policy associated with the suspension of a designation. This chapter and the corresponding designation type-specific volumes constitute the policy for suspension of a designation.

**2.  General.** Suspension is a management process that allows the FAA to temporarily remove a designee's privileges without terminating the designation. If an individual holds multiple designations, suspension of one designation may or may not impact other designations held. The impact of the suspension on other designations, if held, is determined by the respective managing specialist.

    **a.  DMS Actions.** During the suspension process, DMS will change the designee's status to "suspended." In suspended status, DMS:

        (1) Notifies the designee of suspension and denies access to initiate new work for the designation being suspended;

        (2) Cancels all previously approved activities, as applicable; and

        (3) Allows the designee to submit post-activity entries for up to 7 calendar-days after the date of suspension.

    **b.  Designee Action While Suspended.** The designee must immediately stop exercising authorized duties for the designation being suspended.

    **c.  Suspension Release.** If suspended designees believe they have met all of the requirements to release the suspension, they may submit a suspension release request in DMS.

    **d.  Length of Suspension.** Designees will remain in a suspended status until they have corrected the deficiency or until the designation expires. If the deficiency has not been corrected within 180 calendar-days of the suspension being initiated, DMS will notify the managing specialist to remove the suspension and initiate termination.

**3.  FAA-Initiated Suspension.** The FAA may suspend a designation for the following reasons:

    **a.  Lapse in Minimum Qualifications.** The designee no longer meets the minimum qualifications.

        (1) The designee loses a required certificate, rating, or license.

        (2) The designee fails to maintain required currency, knowledge or proficiency.

    **b.  Failure to Attend a Required Meeting.** The designee fails to attend a required meeting.

    **c.  Failure to Maintain Currency With Training Requirements.** If a designee fails to maintain their currency with training requirements, they should be moved to suspended status until they complete their training.

**AR 213**

(1) Deadline Passes for Required Training. The designee fails to successfully complete required training within the specified timeframe.

(2) Failed Test for Required Training. The designee fails a test that is part of required training, regardless of the due date of that training.

**d.  Poor Performance.** The designee demonstrates an unsatisfactory level of performance for the designation.

**e.  Under Investigation.** The FAA investigates allegations or findings that the designee has been acting contrary to regulations or policy. This may include investigations not related to designee activity.

**f.  Other.** Any other reason that the FAA Administrator considers appropriate.

**4.  Followup Actions.** The FAA may require the designee to complete certain followup actions to remove the suspension. FAA followup actions may include additional training, counseling, and requalification. The designee should propose a plan of action and timeline to meet requirements. The managing specialist should follow up with the designee to ensure that any requirements are completed. Based on the results of the followup actions, the managing specialist will remove the suspension or initiate termination.

**AR 214**

## Chapter 11. Other Designee Management Functions

**1. Purpose.** This chapter describes the common policy associated with other designee management functions in DMS. This chapter and the corresponding designation type-specific volumes constitute the policy for other designee management functions in DMS.

**2. Assign DMS Roles.**

    **a. General.** The primary purpose of this process is to authorize a qualified FAA employee to have appropriate access to functionality within DMS.

    (1) DMS roles allow users the ability to access DMS and perform functions within each process, including apply, select, appoint, etc., as described in this order. DMS roles control specific user access within DMS. The FAA may assign users more than one role within DMS.

    (2) DMS roles are assigned based on the office needs and in accordance with the designation type-specific volumes of this order.

    (3) The term "DMS role" does not convey an official position or title.

    **b. Master Role Assigner (MRA).** MRAs ensure FAA personnel are assigned appropriate roles within DMS to carry out assigned duties.

    (1) "Designee Applicant" and "Designee" are roles but are not assigned via the MRA process. DMS automatically assigns designee roles during the appointment process.

    (2) The MRA function may be given at different levels within each service or office. It is the responsibility of the MRA to add roles for their office or remove roles for individuals who have moved offices, retired, or no longer need a role in DMS.

**3. DMS Message Center.** DMS provides a method to send messages between the managing specialist and the designee through the message center.

**4. Impact of Updates to Information.** Depending on the designation type, updates to certain information in the designee record, such as a change in designation location or qualifications, may affect the designation.

    **a. Change of Designation Location.** A change of designation location may cause the FAA to review need and ability to manage considerations. DMS will notify the current managing specialist if there has been a change of physical address, and the managing specialist will determine if the new address will initiate a change in the managing office. A change in designation location may require the FAA to initiate a designee transfer to the new location.

    **Note:** The FAA is under no obligation to transfer the designee to a new overseeing office.

    **b. Additional Information.** Additional information can be found in the appropriate type-specific volumes for guidance on the types of changes and their impact.

**AR 215**

**5.   Designee Records.**

    **a.   DMS Electronic Records.** Once a designee is appointed in DMS, DMS becomes the electronic system of record for all designee information.

    **b.   Prior Designee Records.** The FAA must maintain any records associated with the designee prior to appointment in DMS in accordance with the recordkeeping requirements of FAA Order 1350.14.

**6.   Document Upload.** DMS provides the ability to upload documents in support of designee management functions. This capability should not be used to upload designee files associated with the designee prior to DMS appointment.

**AR 216**

## Chapter 12.  Administrative Information

**1.  Distribution.** This order will be distributed to:

**a.**  The division level within AAM, including the Civil Aerospace Medical Institute (CAMI) and Regional Flight Surgeons (RFS).

**b.**  The division level within FS; all Flight Standards District Offices (FSDO), Certificate Management Offices (CMO), and International Field Offices (IFO).

**c.**  The Washington Headquarters (HQ) branch levels within AIR; all responsible AIR offices; all Certification Branches; the Integrated Certificate Management Division (AIR-500); Policy & Standards Division (AIR-600); the Compliance & Airworthiness Division (AIR-700); the System Oversight Division (AIR-800); Certificate Management Branches (CMBs), and Certificate Management Section (CMS).

**d.**  The division level within the AOV.

**e.**  The Office of the Chief Counsel (AGC).

**f.**  The FAA Academy branches.

**g.**  All individual designees.

**2.  Directive Feedback Information.** For your convenience, you may use FAA Form 1320-19, Directive Feedback Information (which is found on the last page of this order), to submit suggested changes or comments. Please use the "Other Comments" block on FAA Form 1320-19 to provide a complete explanation of why the suggested change is necessary. You may correct, as necessary, a copy of the pertinent policy language, or provide a handwritten note for consideration.

**AR 217**

# VOLUME 3.  DPE, SAE, AND ADMIN PE DESIGNEE POLICY

## Chapter 1.  General Information

### Section 1. Overview

**1.  Purpose of This Volume.** This volume supplements Volume 1, Common Designee Policy, by providing specific guidance for the designee management program of Designated Pilot Examiners (DPE), Administrative Pilot Examiners (Admin PE), and Specialty Aircraft Examiners (SAE) not otherwise provided in detail in Volume 1.

**2.  Audience.** The primary audience for this volume is DPEs, Admin PEs, SAEs, their FAA managing specialists, and FAA personnel with oversight responsibilities of designee programs, including FAA management, operational, and administrative employees, as appropriate.

**3.  Supplemental Information.** This volume is organized to provide general policy and instructions related to DMS management. It is supplemented by DMS Job Aids for designees/applicants and FAA personnel.

   **a.  Applicant and Designee DMS Job Aid and Mailbox Support Location:**
https://www.faa.gov/other_visit/aviation_industry/designees_delegations/dms/support/.

   **b.  FAA Internal DMS Job Aid Location:**
https://my.faa.gov/org/linebusiness/avs/offices/air/div_dir/air600/dms.html.

### Section 2. Designee Types

**1.  Types of DPE Designees.** A designee is an individual appointed in accordance with 14 CFR part 183, § 183.23. Most designees will be issued authorizations that are based on the type of designee, certificate level they are authorized testing/checking, and category/class or privileges that they are authorized to conduct. For example, a DPE with airline transport pilot (ATP) testing privileges in a multiengine land airplane would get the following authorization: DPE-ATPE-AMEL. The privileges associated with each part of each authorization are explained in the tables below. Administrative authorizations, Vintage Flight Engineer Examiner (VFEE) authorizations, and Vintage Aircraft Examiner (VAE) group authorizations may be a two-part authorization (e.g., VFEE-TJET).

**2.  Temporary Authorization.**

   **a.  Qualified and Current Designee.** If a designee is qualified and current in a specific make, model, and type (if applicable) of aircraft for which designee services are rarely requested and the designee holds a current DPE authorization for a comparable aircraft in the same category and class, the managing FAA office may issue the designee a temporary authorization for testing privileges in that aircraft. The request is made by a designee through the preapproval process. All preapprovals using a temporary authorization revert to manual approval, and must be approved by the managing specialist. Each request must be made and approved for each individual testing/checking event. If an office finds that they are approving numerous temporary

**AR 218**

authorizations for a specific authorization, every attempt should be made to appoint a designee that is qualified for that specific authorization.

   **b. No Qualified and Current Designee.** In the event that there is no designee current and/or qualified in the aircraft, the managing office may grant a temporary authorization to an existing designee provided they have conducted a thorough risk analysis and have determined that the test/check can be conducted safely. When conducting a risk analysis, the applicable Safety Risk Management Policy should be used, and the risk analysis must be documented in DMS. This type of authorization should be used only as a last resort to get testing/checking accomplished, and must be evaluated on a case-by case basis.

### Table 3-1. Types of Designees [1]

| DPE | Designated Pilot Examiner | A DPE is an individual who meets the general and DPE-specific qualification requirements in Chapter 2. A DPE may be authorized to test/check in airplanes and/or rotorcraft helicopters (not listed as vintage or requiring an experimental authorization), gliders, or lighter-than-air (LTA) balloons at the Sport Pilot Examiner (SPE), Private Pilot Examiner (PE), Commercial Pilot Examiner (CE), ATP Examiner (ATPE), or Flight Instructor Examiner (FIE) certificate levels as authorized on their Certificate Letter of Authority (CLOA). They may also be authorized administrative functions. DPEs are designated for specific testing functions and may perform only the functions authorized by their CLOA. |
|---|---|---|
| SAE | Specialty Aircraft Examiner | SAEs are authorized to conduct tests and checks leading to certificates and/or ratings or operating privileges in aircraft that require specialized experience. Listed below are the sub-types of SAEs that exist as of the current date of this order. Should the need arise for an additional type of SAE, the Regulatory Support Division (AFS-600) has the authority to define the new type of SAE, eligibility requirements, as well as privileges and limitations of the new SAE sub-type. SAEs may issue pilot certificates at the certificate levels authorized by their CLOA. |
| *VAE | Vintage Aircraft Examiner | A VAE may conduct practical tests for type ratings or conduct 14 CFR part 61, § 61.58 proficiency checks in specifically authorized makes and models of aircraft, or authorized groups of aircraft, as shown in the VAE Groups and Type Rating Designations document at https://www.faa.gov/licenses_certificates/vintage_experimental/. |
| *EAE | Experimental Aircraft Examiner | An EAE may conduct practical tests for the issuance of an FAA authorization, and conduct § 61.58 proficiency checks, in specifically authorized makes and models of experimental aircraft that require an FAA-issued authorization to act as pilot in command (PIC), as listed at https://www.faa.gov/licenses_certificates/vintage_experimental/. |
| *VFEE | Vintage Flight Engineer Examiner | A VFEE conducts tests and/or checks in large, vintage aircraft requiring a flight engineer (FE), which are no longer in significant commercial service. These examiners may be authorized to conduct FE certification tests, FE recurrent checks required by 14 |

---

[1] Where issuance of certificates are addressed in this volume, they are temporary certificates pending issuance of the airmen certificate by the Civil Aviation Registry Division (AFB-700).

**AR 219**

| | | CFR part 91, § 91.529, or the VFEE may be authorized for both. A VFEE may also be authorized to endorse FAA Form 8060-7, Airman's Authorization for Written/Knowledge Test. |
|---|---|---|
| *SPE | Sport Pilot Examiner | An SPE conducts testing only in aircraft that meet the definition of light-sport aircraft (LSA). An SPE may issue a sport pilot certificate, as authorized. An SPE may also issue private pilot certificates for Powered Parachute (PPC), Weight Shift Control (WSC), Rotorcraft Gyroplane (RG), and LTA airships, as authorized. Additionally, an SPE may issue a Commercial Pilot Certificate for rotorcraft gyroplane and LTA balloon when authorized. |
| *LAE | Limited Aircraft Examiner | An LAE conducts practical tests and § 61.58 proficiency checks in limited production (including new production) type certificated (TC) aircraft, to reduce demands on the Flight Standards Inspector Resource Program (FSIRP). |
| Admin PE | Administrative Pilot Examiner | Admin PEs review applicant records, knowledge test reports, and logbooks, as applicable, and issue pilot certificates at various certificate levels as authorized. Currently, Admin PEs may be issued only the ACR-141 or ACR-FIRC authorizations. Admin PEs do not conduct certification practical tests. |

*SAE sub-type.

## Table 3-2. Certificate Level Testing/Checking Authorizations

| SPE | Sport Pilot Examiner | An SPE conducts sport pilot certification tests and additional aircraft rating test as specifically authorized. |
|---|---|---|
| PE | Private Pilot Examiner | A PE conducts private and recreational pilot certification tests and additional aircraft rating tests as specifically authorized. |
| CE | Commercial Pilot Examiner | A CE conducts commercial pilot certification tests in rotorcraft, gliders, and LTA aircraft and additional aircraft rating tests, as specifically authorized. |
| CIRE | Commercial and Instrument Rating Examiner | A CIRE conducts commercial pilot certification tests, instrument rating practical tests, and additional aircraft rating tests as specifically authorized for airplanes, powered lift, and rotorcraft helicopters. |
| ATPE | Airline Transport Pilot Examiner | An ATPE conducts ATP practical tests for the original issuance of an ATP Certificate and additional ratings as authorized. ATPEs must hold category, class, and, if appropriate, type ratings on their pilot certificates pertinent to the tests to be conducted. |
| SPFIE | Sport Pilot Flight Instructor Examiner | An SPFIE conducts practical tests for the initial issuance, renewal, and reinstatement of sport pilot flight instructor certificates, only in aircraft that meet the definition of LSA. |
| FIE | Flight Instructor Examiner | An FIE conducts practical tests for the renewal and reinstatement of flight instructor certificates and additional ratings. An FIE is authorized to issue flight instructor renewals, reinstatements, and additional ratings on the basis of practical tests only. An FIE does not conduct practical tests for initial issuance of flight instructor certificates. |
| FIEI | Flight Instructor Examiner Initial | An FIEI conducts practical tests for the initial issuance, renewal, and reinstatement of flight instructor certificates and additional ratings. An FIEI is authorized to issue initial flight instructor certificates, renewals, reinstatements, and additional ratings on the basis of practical tests only. |

**AR 220**

| PPE | Pilot Proficiency Examiner [2] | A PPE conducts the PIC proficiency checks required by § 61.58 for airmen who act as PIC of an aircraft that is type certificated for more than one required pilot flight crewmember or is turbojet-powered, and operated under regulations other than 14 CFR parts 91 subpart K (part 91K), 121, 125, 133, 135, or 137. A PPE does not conduct certification practical tests. The make and model of authorized aircraft will be included in the designee's authorization (e.g., DPE-PPE-GIV). |
| --- | --- | --- |
| | | For PPEs limited to checking in flight simulation training devices (FSTD) for any make and model of aircraft, the CLOA will contain the limitation "limited to FSTD" for that make and model of aircraft. |
| TYPE | Type Rating Examiner | A type rating examiner conducts practical tests in aircraft that require the PIC to hold a type rating for a specific make and model of aircraft, as authorized, at all certificate levels. The designee must hold the type rating(s) on their pilot certificates pertinent to the tests to be conducted. The make and model of authorized aircraft will be a part of the designee's authorization (e.g., DPE-TYPE-LRJET). |
| | | To be authorized for a particular make and model of aircraft, the examiner must have logged at least 50 hours of PIC flight time in that aircraft type (25 hours for each additional aircraft type). |
| | | However, in the case of an SAE, when authorized a group of aircraft, the designee needs only to hold authorization in the group of aircraft shown on their CLOA (no minimum PIC experience requirement). |
| | | For examiners who are authorized to administer practical tests in an FSTD that is representative of an aircraft that requires the PIC to hold a pilot type rating, the examiner's CLOA must list the phrase "[Aircraft type]-FSTD only". |

---

[2] The FAA uses the DMS to authorize individuals to conduct pilot proficiency checks under § 61.58(d)(1).

**AR 221**

**Table 3-3. Aircraft Category/Class/Privileges Testing/Checking Authorizations**

| ASEL | Airplane Single-Engine Land | This authorizes a designee to administer practical tests in small piston-powered single-engine land airplanes or small turbopropeller single-engine land airplanes that do not require the PIC to hold a pilot type rating. Prior to administering practical tests in a single-engine airplane that is turbine-powered, the DPE must have logged at least 5 hours of PIC flight time in that single-engine make and model (emphasis added: turbine-powered single-engine airplane). |
|------|------|------|
| AMEL | Airplane Multiengine Land | This authorizes a designee to administer practical tests in small piston-powered multiengine land airplanes or small turbopropeller multiengine land airplanes that do not require the PIC to hold a pilot type rating. Prior to administering a practical test in a small multiengine land airplane, the DPE must have logged at least 5 hours of PIC flight time in that multiengine airplane make and model. |
| ASES | Airplane Single-Engine Sea | This authorizes a designee to administer practical tests in small piston-powered single-engine sea airplanes or small turbopropeller single-engine sea airplanes that do not require the PIC to hold a pilot type rating. Prior to administering practical tests in a single-engine airplane that is turbine powered, the DPE must have logged at least 5 hours of PIC flight time in that single-engine sea airplane make and model (emphasis added: turbine-powered single-engine airplane). |
| AMES | Airplane Multiengine Sea | This authorizes a designee to administer practical tests in small piston-powered multiengine sea airplanes or small turbopropeller multiengine sea airplanes that do not require the PIC to hold a pilot type rating. Prior to administering a practical test in a small multiengine sea airplane, the DPE must have logged at least 5 hours of PIC flight time in that multiengine sea airplane make and model. |
| PLFT | Powered-Lift | This authorizes a designee to administer practical tests in powered-lift aircraft. |
| RH | Rotorcraft Helicopter | This authorizes a designee to conduct practical tests in helicopters. For testing in multiengine helicopters, the specific make and model of helicopter must be listed on their CLOA. For testing in single-engine helicopters, "single-engine reciprocating" or "single-engine turbine" must be listed on the CLOA. The designee must have logged at least 5 hours of PIC flight time in each specific make and model of helicopter in which that examiner conducts tests. |
| RG | Rotorcraft Gyroplane | This authorizes a designee to administer practical tests in rotorcraft gyroplanes. |
| GL | Glider | This authorizes a designee to administer practical tests in gliders. Designees must meet the requirements of CFR 61.31(j)(2) or show experience and demonstrate skill in at least one of the following launch procedures, for which they have a logbook endorsement: aero tow, ground tow, and self-launch. The designee is then authorized to conduct examining activity for all launch procedures for which they have a logbook endorsement. |

**AR 222**

| LTAB | Lighter-than-Air Balloon | This authorizes a designee to administer practical tests in balloons. Designees may have flight time in gas balloons, hot air balloons, or a combination of the two in order to meet the flight time requirements for designation. If the examiner's pilot certificate is restricted to balloons with airborne heater or gas balloons only, the examiner may conduct practical tests only in that kind of balloon (e.g., hot air or gas balloon). This limitation must be listed on the designee's CLOA. |
|------|------|------|
| LTAA | Lighter-than-Air Airship | This authorizes a designee to administer practical tests in airships. |
| WSCL | Weight Shift Control Land | This authorizes a designee to administer practical tests in weight-shift-control land aircraft. |
| WSCS | Weight Shift Control Sea | This authorizes a designee to administer practical tests in weight-shift-control sea aircraft. |
| PPCL | Powered Parachute Land | This authorizes a designee to administer practical tests in powered parachute land aircraft. |
| PPCS | Powered Parachute Sea | This authorizes a designee to administer practical tests in powered parachute sea aircraft. |
| TPRP | Turboprop | This authorizes a VFEE to conduct tests or checks in turboprop-powered aircraft. |
| TJET | Turbojet | This authorizes a VFEE to conduct tests or checks in turbojet-powered aircraft. |
| RECP | Reciprocating | This authorizes a VFEE to conduct tests or checks in reciprocating engine powered aircraft. |
| SMFT | Special Medical Flight Test | This authorizes a designee to conduct an applicant's special medical flight test. SMFTs may or may not involve a flight. Testing privileges limited to ground only must be listed on the designee's CLOA. |

**AR 223**

## Table 3-4. Administrative Authorizations

| FPE | Foreign Pilot Examiner | An FPE reviews applicants' records, verifies computer test reports for the foreign pilot instrument knowledge tests, and may issue private pilot certificates and ratings at the private pilot certification level on the basis of the applicant's foreign license qualification in accordance with § 61.75. An FPE may also issue a private pilot, commercial pilot, or ATP certificate on the basis of a Bilateral Aviation Safety Agreement (BASA) Implementation Procedures for Licensing (IPL) in accordance with § 61.71(c). An FPE may also convert a European Union Part-Flight Crew Licensing (EU Part-FCL) pilot license to an FAA pilot certificate using the FAA/European Union Aviation Safety Agency (EASA) Technical Implementation Procedures—Licensing (TIP-L). Certificates issued will be at the private pilot certification level. |
|---|---|---|
| MCE | Military Competency Examiner | The MCE reviews a military pilot's records, verifies computer test reports of the military competency knowledge test, and issues Commercial Pilot Certificates and ratings to qualified military pilot applicants as authorized (e.g., § 61.73). The MCE may issue or upgrade pilot certificates bearing type ratings based on the applicant's military pilot qualifications. The MCE may accept applications for a flight instructor certificate and appropriate ratings from current and former U.S. military instructor pilots or U.S. military pilot examiners who meet the eligibility requirements as set forth in § 61.73(g) and 61.199(a)3. |
| GIE | Ground Instructor Examiner | A GIE reviews applications and knowledge test results, and issues ground instructor certificates for the basic, advanced, or instrument ratings, as specifically authorized (as per § 61.213). |
| FIRE | Flight Instructor Renewal Examiner | An FIRE is authorized by the managing Flight Standards office to accept applications for renewal of a flight instructor certificate that is still current and for which the renewal process is merely administrative (i.e., a practical test is not required for renewal of the applicant's flight instructor certificate) in accordance with § 61.197(a)(2)(i), (ii), (iii) and (iv). The FIRE must identify himself/herself as a FIRE on FAA Form 8710-1, Airman Certificate and/or Rating Application, when processing flight instructor renewals. |
| RPE | Remote Pilot Examiner | An RPE reviews an applicant's knowledge test report, training course completion certificate, pilot certificate, and logbook, as applicable, for the issuance of a Remote Pilot Certificate, as specifically authorized (as per 14 CFR part 107, §§ 107.61 and 107.63). |
| ACR-141 | Airman Certification Representative for a Part 141 Pilot School With Examining Authority | An ACR-141 accepts applications for airman certificates and/or ratings from the graduates of a pilot school that holds examining authority under 14 CFR part 141. |
| ACR-FIRC | Airman Certification Representative for a Flight Instructor Refresher Course | An ACR-FIRC reviews applicants' attendance/training records and determines applicants' eligibility for the renewal of a current flight instructor certificate based on attendance of a flight instructor refresher course (FIRC). |
| BAE | Basic Administrative Examiner | A BAE reviews an applicant's knowledge test, training records, log books, course completion certificates (as applicable) for Second in Command (SIC), Supervised Operating Experience (SOE) limitation removal, Night Vision Goggles (NVG) and Special Federal Aviation Regulations (SFAR) activity that is administrative only. Each BAE authorized activity must be listed in the limitations section of the CLOA. |

**AR 224**

**Note:** Administrative authorizations may be given to DPEs and SAEs in addition to their other testing and checking authorizations. At the office manager's discretion, existing designees that no longer meet initial designation medical requirements, may be authorized administrative privileges only.

**Note:** Designees preparing to conduct authorized activities should follow the procedures set forth in FAA Order 8900.1, Volume 5, Airman Certification, as applicable. Specific sections that limit activities to an aviation safety inspector (ASI) also include properly trained and authorized designees.

### Section 3.  Roles and Responsibilities

1. **FAA Personnel Roles and Responsibilities.**

    a. **Flight Standards Office Managers.**

    (1) Flight Standards office managers are responsible for the personnel, training, and budget resources necessary to accomplish the management and oversight of designees.

    (2) Flight Standards office managers should anticipate changes in personnel requirements as a result of the "need and ability" standard.

    (3) Flight Standards office managers are responsible for continually evaluating the effectiveness of the designee program and managing specialists.

    (4) Flight Standards office managers are required to ensure that ASIs and office management are assigned appropriate roles within DMS to carry out their assigned duties.

    b. **MRA.** MRAs are typically office managers, but may be Front Line Managers (FLM). MRAs ensure inspectors and supervisory staff are assigned appropriate roles within DMS to carry out assigned duties.

    c. **Appointing Official (AO).** AOs are typically office managers, but may be FLMs.

    d. **Selecting Official (SO).** SOs are typically FLMs, but may be office managers.

    e. **Managing Specialists.** The managing specialist is an ASI primarily responsible for the management of a specific designee(s).

    (1) Managing specialists must ensure that designees are prepared to perform their duties, including the completion of required training and the maintenance of the minimum qualifications for designation as prescribed in Chapter 2, Application Process.

    (2) Designee management must consider potential risks and hazards to safety. Managing specialists should remain constantly vigilant for such risks and hazards. These ASIs should review data and other resources, such as Safety Performance Analysis Systems (SPAS), to focus oversight on potential problem areas.

**AR 225**

(3) The managing specialists must be experienced FAA ASIs whose specialty is General Aviation (GA) Operations. They must have completed the GA Operations indoctrination courses, or equivalent, and have completed or have a scheduled course start date to complete the required training. Training requirements can be found in Chapter 7 of this volume.

**f.  Aviation Safety Inspectors (ASI).** This role allows any ASI access into DMS to record specific oversight and other activities, as well as accessing information on any designee in DMS.

**g.  Office Administrator (OA).** The OA role allows certain FAA administrative office personnel limited MS functionality to submit administrative DMS entries such as training and meetings. The OA is typically an aviation safety assistant (ASA) or aviation safety technician (AST), but may also be an ASI.

**h.  Reporting.** The reporting role allows the user to access DMS reports to view designee data and assess risk.

> **Note:**  DMS user roles determine which activities an FAA user can access in DMS. The DMS Management Action Links and DMS job aids should be reviewed for detailed information: https://my.faa.gov/content/myfaa/en/org/linebusiness/avs/offices/air/div_dir/air600/dms.html.

**i.  Proxy.** The proxy function allows an office to assign a surrogate or backup in DMS to a person holding a primary DMS role for offices with a large number of designees or for when the person holding the primary role will be unavailable.

(1) Proxies should meet the same qualifications required to hold the primary role.

(2) Proxies may be assigned for a defined amount of time or indefinitely.

(3) Only the AO, SO, and managing specialist roles may be proxied.

(4) An AO or SO may have only one proxy. Only an AO may assign an AO proxy. Only an AO or SO may assign a SO proxy.

(5) Each designee may have only one managing specialist and up to three managing specialist proxies. An AO, SO, and the managing specialist who will be proxied may assign a managing specialist proxy.

(6) Proxy candidates must accept the proxy request in DMS in order to be assigned a proxy.

(7) Primary role holders and proxies should coordinate designee-related activities outside of DMS to prevent duplicate efforts or entries in DMS.

**j.  Designee Focal Point.** In order to enhance designee oversight, each responsible Flight Standards office manager should appoint an operations focal point within that office to support the oversight of DPEs and SAEs managed by that office.

**Note:**  For offices with a high volume of designee surveillance responsibilities, the responsible office manager may appoint more than one focal point.

(1) Designee focal points serve as resources for other inspectors in the area of designee oversight and surveillance. Focal points provide guidance to and answer questions from other inspectors in the office who have responsibility for designee management.

(2) Designee focal points work with the MSs to take action necessary to correct performance issues and communicating performance issues with the national program office, when necessary.

(3) Designee focal points address issues relating to designee training, duties, and surveillance and they ensure the designee annual meeting requirements are met and properly documented for each designee.

**Note:**  Plan and conduct the annual meeting with input from the national program office and the office MSs to ensure any critical issues have been addressed.

(4) Designee focal points keep all personnel in the office aware of current designee issues, such as:

- Changes to the policies or processes regarding designees,
- National issues regarding designees, and
- Areas of emphasis related to designees.

(5) The MSs and ASIs should coordinate with the office focal point for all issues that arise related to designee oversight.

(6) To be appointed as a designee focal point, they must be a current or former MS who meet the current training requirements for Designee Oversight.

**Note:**  Offices must maintain a current list of office focal points, and forward any changes to the list to AFS-650 at: 9-AMC-AFS-650@faa.gov, when changes occur.

**AR 227**

## Chapter 2.  Application Process

**1.   Purpose.** This chapter and the corresponding chapter in Volume 1 describe the policy related to the application process for individuals applying for the authority to function as a DPE, SAE, or Admin PE. This designation type-specific policy and Volume 1 constitute the overall policy for the application process for a DPE, SAE, or Admin PE applicants.

**2.   General.**

  **a.   Application Information.** Candidates for initial designation as a DPE, SAE, or Admin PE must submit an application through DMS.

  **b.   FAA Tracking Number (FTN).** DPE, SAE, and Admin PE applicants must enter their FTN as part of their application in DMS. The FTN is an essential link between DMS and the Integrated Airman Certification and Rating Application (IACRA) that verifies designee authorizations and allows activity and certification records to align between systems. Applicants can locate their FTN by logging into IACRA.

  **c.   Citizenship.** U.S. citizenship is not a requirement for appointment.

**3.   Reinstatement.** A former designee whose privileges were terminated "not for cause" may be reinstated only at the managing office where last assigned. This provision may only be exercised at the discretion of the previous managing office, and only when the following provisions are met:

  **a.** The former designee meets the requirements and procedures for an original issuance of designation and was previously authorized in DMS.

  **b.** The designation was terminated not more than 12 calendar-months prior to application for reinstatement.

  **c.** The applicant meets the recurrent training requirement for the designee type.

  **d.** The managing office determines that the former designee is still competent to perform the authorized activities.

  **Note:**  If the provisions are met, the CLOA is reissued with the original designation number used for reinstatement.

**4.   Former Designee Appointment.** Except as stated in paragraph 3 above, former designees who wish to reapply for previously held authorizations that have been terminated "not for cause" must reapply through DMS as an initial applicant.

**5.   Relocation.** Designees may relocate to a different FSDO if the receiving FAA office agrees to the transfer. Any change in location, change of managing office, or change of managing specialist is conducted through DMS. This change is effected through DMS by the receiving managing specialist.

**AR 228**

**6.  Minimum Qualifications.**

    **a.  Minimum Qualifications for DPE, SAE, and Admin PE Applicants.**

    (1)  In addition to the general minimum qualifications and disqualifiers depicted in this chapter, candidates for designation as a DPE must be technically qualified and must hold all pertinent category, class, and type ratings for each aircraft for which designation is sought. All DPEs must meet the requirements of §§ 61.56 and 61.57. If applying to administer tests in an aircraft that requires a type rating, the DPE must also be current in accordance with § 61.58.

    (2)  For designations requiring a medical certificate, the examiner must maintain at least a third class medical certificate throughout the duration of the designation. Examples of designees not requiring a medical certificate are those whose authorizations are limited to examinations in balloons, gliders, or FSTDs for which no medical certificate is required. An SPE must maintain a current FAA flight instructor certificate, and a valid U.S. driver's license or an airman medical certificate.

    (3)  Any required flight instructor certificate must be kept current for the duration of the designation.

    **b.  Minimum Qualifications for DPE Applicants.** Except for SAEs and Admin PEs, all DPE applicants must meet the following in addition to the specific eligibility requirements listed in this chapter. Within the three years prior to application, the DPE applicant must have met at least one of the following:

    (1)  Served as a chief instructor, assistant chief instructor, or check instructor in a school certificated under part 141, for a minimum of 12 calendar-months;

    (2)  Served as a check airman authorized under part 121 and/or part 135, for a minimum of 12 calendar-months;

    (3)  Served as an APD authorized under part 121, for a minimum of 12 calendar-months;

    (4)  Served as a TCE authorized under 14 CFR part 142, for a minimum of 12 calendar-months;

    (5)  Served as a military instructor pilot or examiner with checking/testing responsibilities in an aircraft, for a minimum of 12 calendar-months;

    (6)  Served as an FAA ASI with checking/testing responsibilities in aircraft, for a minimum of 12 calendar-months;

    (7)  Held an FAA pilot examiner designation (that was not terminated for cause) with authorization to conduct practical tests and/or proficiency checks in flight; or

**AR 229**

(8) Provided at least the following hours of flight instruction to airmen which led to the issuance of a pilot certificate or rating as applicable to the categories sought.

| For Authorization In: | Hours in Category |
| --- | --- |
| Airplanes | 200 |
| Rotorcraft | 200 |
| Gliders | 100 |
| LTA | 50 |
| Weight Shift Control | 100 |
| Powered Parachute | 50 |

**Note:**  Military instructor pilots or examiners must provide a record that shows they passed a U.S. Armed Forces instructor pilot or pilot examiner proficiency check in a manned aircraft within the preceding 24 calendar-months from the date of application. This copy must be included with the supplemental information sheet.

**c.  SAE.** An SAE must meet the requirements of all applicable regulations, including § 61.58, to conduct a practical test from the pilot seat of a vintage airplane.

**d.  Former ASIs (Operations).** Former ASIs (Operations) applying for DPE or SAE authority are required to successfully complete the same application procedures, training, and evaluations as required for all other examiner candidates. However, for PIC experience requirements in the past 12 calendar-months, former ASIs meet the experience requirements provided the following requirements are met:

(1) FAA Flight Program. Within the last 12 calendar-months, the former ASI has been current and qualified in the FAA's flight program.

(2) General Activity. Within the preceding 12 calendar-months, a former ASI (Operations) must have conducted a combination of at least 10 tests or checks of any of the following:

(a) Pilot certification/additional aircraft rating practical tests administered under part 61.

(b) Proficiency checks administered under part 121, 125, or 135.

(c) Proficiency tests administered to a chief instructor, assistant chief instructor, or check instructor under part 141.

(d) Stage checks and end-of-course tests administered under part 141.

**Note:**  A former ASI that has been out of FAA service for more than 12 calendar-months must meet all requirements for initial designation.

**AR 230**

**7.   Specific Eligibility Requirements.** Designee applicants must meet all specific eligibility and experience requirements for the specific designation sought. If a designee applicant does not meet all of the appropriate eligibility and experience requirements in this order, they must obtain a written recommendation from the manager of the managing FAA office. The AO for the managing office must request a deviation from the National Policy Office (NPO). The designee applicant may contact the managing Flight Standards office for additional information.

   **a.   Eligibility.** A designee applicant must hold the appropriate level of certificate(s) and ratings that would allow the individual to provide flight instruction in that category, class, and type (if applicable) of aircraft. For example, a designee applicant who was applying for designation in helicopters would be required to hold at least a Commercial Pilot Certificate with rotorcraft and helicopter ratings as well as a flight instructor certificate with rotorcraft and helicopter ratings. A designee applicant who was applying for designation in balloons would be required to hold a Commercial Pilot Certificate with LTA and balloon ratings. A designee must not administer a test for a higher grade of certificate than they hold or for a rating that is not held by the designee. For example, a designee who holds a Commercial Pilot Certificate with rotorcraft category and helicopter class ratings would not be eligible to be designated as an ATPE in helicopters, but may be designated as a CE.

   **b.   Specific Eligibility Requirements for Designees With PPE Authorizations.** A designee, when exercising the PPE authorization:

        (1)   Must be willing to serve the public outside the examiner's geographic area upon reasonable request by an applicant.

        (2)   Must hold an ATP Certificate or a Commercial Pilot Certificate with an instrument rating and, for a PPE authorization in aircraft, a type rating for the type of aircraft authorized.

        (3)   Must hold PIC privileges for the type of aircraft authorized while acting in an official capacity of their PPE authorization.

        (4)   When holding a turbojet FSTD authorization, must hold a turbojet rating on their pilot certificate. However, the rating does not need to be in the same type aircraft that the FSTD represents.

        (5)   When holding an authorization for turboprop airplanes in FSTDs only, does not need to hold a turboprop type rating on their pilot certificate.

**AR 231**

## Table 3-5. Specific Eligibility Requirements for Designation as a PE and/or a CE

|  | AIRPLANE (see Note) | ROTORCRAFT (VFR ONLY) | GLIDERS | LTA AIRSHIP | LTA BALLOON |
|---|---|---|---|---|---|
| HOURS AS PIC | 2,000 Total; which includes: 1,500 in airplanes, 500 in class, 100 at night, 200 in complex, AND in the past 12 months: 100 hours in airplanes. | 2,000 Total; 500 in rotorcraft, of which at least 250 were in helicopters or 150 were in gyroplanes, as appropriate, AND in the past 12 months: 100 hours in rotorcraft. If applying for large helicopters to be listed on CLOA, the additional requirement is 100 hours acting as PIC in large helicopters, including at least 50 hours in the type sought. (25 hours required for each additional type sought.) | 500 Total; 250 in gliders AND in the past 12 months: 20 hours in gliders, which included at least 50 flights | 2,000 Total; 500 in airships, of which at least 50 were at night AND in the past 12 months: At least 100 hours in airships | 200 Total; 100 in balloons, AND in the past 12 months: 20 hours in balloons, which included at least 10 flights of at least 30 minute duration. AND airman must have held a Commercial Pilot Certificate with LTA Category and Balloon Rating for at least 1 year |
| HOURS AS A FLIGHT INSTRUCTOR | 500 in airplanes, of which 100 are in the class of airplane for designation sought, and 150 hours preparing airmen for Commercial or ATP Certificates with Airplane Categories. | 250 in helicopters or 200 in gyroplanes, as appropriate. AND at least 100 in helicopters or 50 in gyroplanes, as appropriate, preparing an airman for a Commercial Pilot Certificate, ATP Certificate, or Instrument Rating. | 100 in gliders | 100 in airships | 50 in balloons |

**Note:** For CE authority only in airplanes (no instrument authority), managing specialist should give the CIRE authorization and put "no instrument authority" in the limitations on the CLOA.

AR 232

**Table 3-6. Specific Eligibility Requirements for Designation as an LAE, a CIRE, an ATPE, a PPE, and/or a Type Rating Examiner**

|  | **AIRPLANE** | **ROTORCRAFT HELICOPTER** |
|---|---|---|
| **HOURS ACTING AS PIC** | 2,000 Total; which includes: 1,500 in airplanes, 500 in class, 100 at night, 200 in complex, 100 instrument flight (actual or simulated); AND in the past 12 months: 100 hours in airplanes. If applying for designation in large or turbine-powered aircraft to be listed on CLOA, the additional requirement is 300 hours acting as PIC in large or turbine-powered aircraft, of which at least 50 hours were in the type sought. (25 hours required for each additional type sought.) AND 10 hours in the past 12 months in the type sought. | 2,000 Total, 1,200 in helicopters, which includes: 100 instrument flight (actual or simulated) in helicopters AND in the past 12 months: 100 hours in helicopters. If applying for large helicopters to be listed on CLOA, the additional requirement is 100 hours acting as PIC in large helicopters, of which at least 50 hours were in the type sought. (25 hours required for each additional type sought.) |
| **HOURS AS A FLIGHT INSTRUCTOR** | 500 in airplanes, of which 100 are in the class of airplane for designation sought, AND 250 hours of instrument flight instruction as a CFII, and 150 hours preparing airmen for Commercial or ATP Certificates with Airplane Categories or airplane type ratings. | 250 in helicopters, 50 hours of instrument flight instruction in helicopters as a CFII and at least 100 hours preparing pilots in helicopters for the Commercial or ATP Certificates, or helicopter type ratings. |

> **Note:**  Applicants applying for type rating authorization only must meet the requirements for the applicable CIRE/ATPE category and class, along with the type rating requirements.

**c.  Specific Eligibility Requirements for SPEs.** DPEs who are authorized by a managing office to conduct airman testing at the private, commercial, or ATP level may be authorized by that office to conduct additional airman testing at the sport pilot level. In this instance, the managing office assumes the authorization and management responsibility.

**d.  Specific Eligibility Requirements for SPFIEs.**

(1)  The SPFIE must already possess an active SPE authorization for airman testing to the sport pilot certificate level in a specific category and class of LSA. An SPFIE may issue a sport pilot certificate or flight instructor certificate with a sport pilot rating, as applicable.

(2)  If a designee possesses an authorization for airman testing at the recreational pilot level or above and is managed by a Flight Standards office other than the Specialty Aircraft Examiner Branch (AFS-610), the Flight Standards office with direct oversight grants the SPFIE authorization. Otherwise, AFS-610 directly grants the SPFIE authorization

**AR 233**

**Table 3-7. Specific Eligibility Requirements for Designation as an SPE**

| | BALLOON | WEIGHT SHIFT CONTROL | POWERED PARACHUTE | AIRSHIP | AIRPLANE | GYROPLANE | GLIDER |
|---|---|---|---|---|---|---|---|
| **HOURS ACTING AS PIC** | 200 Total, 100 in balloons AND in the past 12 months: 20 hours in balloons which included at least 10 flights that were of at least a 30 minute duration | 500 Total, 250 in weight shift control, 125 in class, AND in the past 12 months: 50 hours in weight shift aircraft | 250 Total, 100 in powered parachutes, 60 in class, AND in the past 12 months: 25 hours in powered parachutes | 200 Total, 100 in airships AND in the past 12 months: 20 hours in airships | 500 Total, 250 in light-sport airplanes, 125 in class, AND in the past 12 months: 50 hours in airplanes | 500 Total, 250 in gyroplanes AND in the past 12 months: 50 hours in gyroplanes | 250 Total, 100 in gliders AND in the past 12 months: 10 hours in gliders, which involved at least 10 flights |
| **HOURS AS A FLIGHT INSTRUCTOR** | 100 in balloons | 200; at least 100 in weight shift control | 100; at least 50 in powered parachutes | 100 in airships | 200; at least 100 in light-sport airplanes | 200 in gyroplanes | 100; at least 50 in gliders |

**Note:** If adding SPE or SPFIE authority in a category of aircraft for which the designee already holds PE privileges, the designee need not meet the requirements listed above.

**e. Specific Eligibility Requirements for VAEs, VFEEs, and EAEs.**

(1) The FAA NPO determines the need for an SAE. If there is a need for a new SAE, and the NPO has the ability to manage the additional examiner, a selection will be made following the normal DMS process.

(2) VAE, VFEE, and EAE applicants must apply through DMS, but must also include a letter of recommendation from a recognized community-based organization (CBO), such as Experimental Aircraft Association (EAA), Aircraft Owners and Pilots Association (AOPA), etc.

(3) After selection but prior to designation, the NPO will contact the CBO to verify the qualifications of the proposed SAE.

(4) When there are no qualified and/or current examiners available for a vintage aircraft, the best qualified SAE (qualified in an aircraft within the same group) may conduct the test from the jump seat of a vintage airplane as long as a current and qualified pilot occupies a pilot seat.

(5) There is no specific limit to the number of vintage airplanes for which a VAE, VFEE, or EAE may receive authorization. An SAE will be designated to conduct practical tests in one or more of the SAE authorizations based on their qualifications and the needs of the program.

(6) An SAE must meet the requirements of all applicable regulations including § 61.58 to conduct a practical test while serving as a required flightcrew member. When conducting the evaluation from other than a crewmember station, they are not required to be current in accordance with § 61.58.

(7) When a designation is added, a new CLOA containing all designations held is generated in DMS.

**f. Flight Instructor Initial Test Authorization.** Prior to authorizing a designee to conduct initial flight instructor tests, the managing office must ensure that the designee is highly qualified to conduct those tests. The managing office should carefully review the qualifications, experience and reputation of the designee being considered. As a minimum, designees being considered for initial certified flight instructor (CFI) authorization must have been designated as a CIRE and as an FIE (limited to add-on or renewal only) for at least 12 calendar-months.

**AR 235**

**Table 3-8. Specific Eligibility Requirements for Designation as a VAE, VFEE, and EAE**

**Note:** The final decision as to eligibility to serve as an SAE is determined by the NPO for Vintage and Experimental Aircraft, AFS-600, with input from a CBO, if necessary.

| ELIGIBILITY REQUIREMENTS | VINTAGE AIRPLANES | VINTAGE GROUP | EXPERIMENTAL AIRCRAFT | EXPERIMENTAL GROUP | FE | GLIDERS |
|---|---|---|---|---|---|---|
| **CERTIFICATES REQUIRED** | Commercial and Instrument or Airline Transport<br><br>Flight Instructor<br><br>Airplane | Commercial Pilot and Instrument or Airline Transport<br><br>Flight Instructor | Commercial and Instrument or Airline Transport<br><br>Flight Instructor<br><br>Airplane or Helicopter, as appropriate | Commercial and Instrument or Airline Transport<br><br>Flight Instructor<br><br>Airplane or Helicopter, as appropriate | FE | Commercial Pilot<br><br>Flight instructor |
| **CERTIFICATE CATEGORIES** | Both with Airplane category | Both with Airplane category | Both with Airplane or Helicopter category, as appropriate | Both with Airplane or Helicopter category, as appropriate | FE | Both with Glider category |
| **RATINGS AND AUTHORIZATIONS** | Type Rating in the Subject Airplane | Type Ratings in at least 3 vintage airplanes | Experimental Aircraft Authorization in aircraft | Experimental Aircraft Authorizations in 3 aircraft | Reciprocating, Turbopropeller, or Turbojet, as appropriate | |
| **HOURS AS PIC** | 5,000<br><br>1,000 in airplanes, which includes at least 100 in past 12 months<br><br>100 in large vintage aircraft<br><br>10 hours in type | 5,000<br><br>1,000 in airplanes<br><br>100 in large vintage airplanes, which includes 100 in large vintage aircraft<br><br>Must be current in more than one vintage aircraft | 5,000<br><br>1,000 in airplanes, which includes at least 50 in past 12 months<br><br>If applicable, 100 in large aircraft.<br><br>10 hours in type | 5,000<br><br>1,000 in airplanes, which includes at least 50 in past 12 months.<br><br>If applicable, 100 in large aircraft | 2,500 as FE<br><br>(Note: These are FE hours. PIC is not applicable to FE.) | 5000<br><br>25 as glider |
| **HOURS AS FLIGHT INSTRUCTOR (as CFI, Authorized Aircraft Instructor (AAI), or Military Flight Instructor (MFI))** | 100 | 100 | 100 | 100 | N/A | 100 |

**g. SMFT Procedures and Requirments**

(1) The Managing Specialist must:

(a) Train the DPE/SAE on policy, procedures and PIC responsibilities when conducting a SMFT.

(b) SMFT authorization will be a manual approval only.

(c) Refer an applicant to a different DPE/SAE, if there is any doubt as to the designee's qualifications to conduct a particular SMFT.

(d) Upload the Letter of Authorization (LOA) for the SMFT to DMS during pre-approval request review.

(e) Document SMFT package review in DMS using the "Oversight Activities" tab, "Review of Certification Packages" link.

(2) The DPE/SAE must:

(a) Have been designated with certification practical test privileges on their CLOA for at least 12 calendar-months.

(b) Continue to meet general and specific requirements of their designation.

(c) Use SMFT authorization during pre-approval request.

(d) Follow associated procedures for testing and documenting SMFT as indicated in FAA Order 8900.1, Volume 5, Chapter 8, Section 1, as applicable.

(e) Submit applicable original or duplicate documents within 7 calendar-days of completion to the managing office for review and processing.

**h. Specific Eligibility Requirements for Admin PEs.** Specific eligibility requirements for ACRs.

(1) ACR-141.

(a) The holder of a pilot school certification who has been issued examining authority under part 141 subpart D for at least one of its courses may request ACR designation for an employee or representative of that company. The pilot school makes the request for an ACR by submitting a letter to the school's responsible FSDO.

(b) The pilot school requesting the designation of an ACR must hold flight test examining authority under part 141 subpart D. Pilot schools holding examining authority for knowledge testing only are not eligible for ACR designation. ACR candidates:

*1.* Must be currently employed by or hold a position in the pilot school organization.

**AR 237**

*2.* Must have been employed by, or held a position in, the pilot school for at least 12 calendar-months immediately preceding the application for designation.

*3.* Must hold a valid pilot certificate (other than a student pilot certificate), valid flight instructor certificate, or valid ground instructor certificate.

*4.* The ACR applicant must demonstrate knowledge of pilot school certification requirements, general operating rules, examining authority privileges and limitations, pilot certification and rating requirements, and specific standards and requirements for the performance of ACR-141 authorization.

(c) Any DPE or SAE who holds a current CLOA may be authorized to perform ACR duties and responsibilities (for any airman certificate or rating) provided the DPE or SAE is also current with regards to the ACR training requirements.

(2) ACR-FIRC.

(a) An FAA-approved FIRC provider may request the designation of an ACR. These individuals are authorized to renew flight instructor certificates to eligible course graduates of the approved FIRC.

(b) Only an authorized FIRC provider holding an FAA-approved FIRC training course outline (TCO) may make a request for the designation of an ACR applicant. Final approval of the FIRC provider's TCO is a prerequisite for an ACR designation. An authorized FIRC provider may request ACR designation for one or more responsible members or employees of that organization by submitting a letter to the managing FAA office where the applicant's principal business office is located.

(c) A FIRC provider requesting an ACR designation will provide the following information in a letter to the responsible Flight Standards office:

*1.* The original date of FAA approval of the FIRC provider to conduct the FIRC;

*2.* The number of courses delivered in the 12-month period immediately preceding the request for an ACR designation;

*3.* The number of attendees issued graduation certificates, the number of graduation certificates denied, including the reasons for the denials; and

*4.* The number and location of courses scheduled to be delivered, along with the expected number of attendees for the 12-month period immediately following the date of request for designation.

(d) ACR candidates:

*1.* Must be currently employed by or hold a position in the FIRC organization.

**AR 238**

*2.* Must have been employed with the FIRC for at least 12 calendar-months immediately preceding application for designation as an ACR.

*3.* Must hold a valid pilot certificate (other than a student pilot certificate), valid flight instructor certificate, or valid ground instructor certificate.

(e) Any DPE or SAE who holds a current CLOA may be authorized to perform ACR duties and responsibilities for the FIRC provided the DPE or SAE is also current with regards to the ACR training requirements.

**8. Disqualifiers—Special Considerations.** Any applicant that has been previously terminated for cause must not be considered for designation (see Volume 1, Chapter 2, Application Process, for disqualifying criteria).

**9. Privilege, Not a Right.** See Volume 1.

**10. Post-Application.** See Volume 1.

**11. Maintaining an Active Designee Application.** See Volume 1.

**AR 239**

## Chapter 3.  Selection and Evaluation of a Designee Applicant

**1.  Purpose.** This chapter provides the policy related to the selection and evaluation of DPE, Admin PE, and SAE applicants. This designation type-specific policy and Volume 1 constitute the overall policy for the selection and evaluation of DPE, Admin PE, or SAE applicants.

> **Note:**  Detailed job aids for this DMS process can be found at: https://my.faa.gov /content/myfaa/en/org/linebusiness/avs/offices/air/div_dir/air600/dms.html, and the DMS web based tool.

**2.  General.**

   **a.  Selection Process.** The general process of selection can be broken down into three parts: DMS determines if the designee meets system-defined minimum qualifications; the SO determines if need and ability requirements are met; and then assigns an evaluation panel to further review the applicant's qualifications and abilities. (See Figure 3-1 for a high-level representation of the selection flow.)

### Figure 3-1. High-Level Selection Process Flow

   **b.  Selection Considerations.**

   (1)  When a need for a designee has been identified, the office management will query DMS for a listing of applicants. Candidates must submit applications exclusively through DMS.

   (2)  An evaluation panel, determined by the SO, will then be established to review and evaluate the list of viable applicants identified through DMS. The evaluation panel assesses each designee candidate's background knowledge and experience through:

      (a)  A thorough review of the application;

      (b)  Consultation with others who are familiar with the applicant; and

      (c)  Contact references provided by the applicant and evaluate any comments that may influence the decision to recommend or deny appointment.

> **Note:**  The selection and appointing process has multiple steps and involves several DMS users. The AO and the SO have access to the "Work Flow Tool" in DMS, which allows them to quickly determine the status of an appointment, or expanded authority request. The DMS Management Action Links and DMS job aids should be reviewed for detailed information: https://my.faa.gov/content/myfaa/en/org/linebusiness/avs/offices/air/div_dir/ air600/dms.html.

**AR 240**

**3. Need and Ability to Manage.** See Volume 1.

**4. Requesting Qualified Applicants.**

    **a. General.** Once the FAA establishes need and ability to manage, the SO can request a list of applicants through DMS, which searches active applications to identify candidates that most closely match the specified criteria.

    **b. Initial Request.** Once DMS has generated a list of applicant(s) based on the search criteria, the SO should review the applications prior to assigning personnel to evaluate the applicant's qualifications. Determining which applicants will be evaluated for appointment is at the sole discretion of the SO.

    **c. Additional Requests.** If no qualified candidates are available within DMS for the appointing office, the office should query for applicants from a nearby office to see if they would be willing to serve the requesting office. If no qualified applicants are available, an AO may request a deviation from minimum qualification requirements if:

    (1) The FAA demonstrates a significant need for the appointment, and

    (2) The managing office can justify that the designee candidate meets an equivalent qualification.

    **d. Minimum Qualification Deviation Request Process.** When there are no qualified applicants in DMS for the specific need of the office, the Flight Standards office may request that the SO petition the NPO for a deviation from the minimum qualifications.

    (1) Documentation. The SO will document and communicate the circumstances and justification for the deviation in a memo to the NPO outside of DMS. The deviation memo must be sent to 9-AMC-AFS-650@faa.gov.

    (2) Coordination. If in agreement with the Flight Standards office recommendation, the NPO will document the circumstances and justification in DMS and complete the required DMS process (deviation allowed).

    **Note:** The purpose of a deviation is to fill a specific need that the managing office has for which there are no qualified applicants in DMS. The expectation is that the office would appoint the applicant within 30 days of granting the deviation. If the applicant has not been appointed after 30 days, the process ends.

**5. Evaluation.**

    **a. Evaluation Process.** It is the goal of the FAA to establish a uniform designee candidate assessment process (as much as practicable) for all designee types. An evaluation process that is not complete within 90 days of evaluation panel assignment shall be cancelled by the SO.

**AR 241**

**b. Evaluation Panel.** At such time that one or more viable applicants have been identified through DMS, an evaluation panel is convened to consider the merits of each applicant. The panel should be comprised of members as described below:

(1) An ASI from the office that initiated the selection and appointment process (required). This ASI should assume a lead role during the evaluation process, and will coordinate the evaluation panel results within DMS.

(2) An ASI from AFS-600 (required). For appointments to AFS-610, the member from AFS-600 must be from outside of AFS-610. The SO must contact AFS-600 via email to request an evaluation panel member before the evaluation panel is created in DMS. The request for an AFS-600 evaluation panel member must be sent to the following email: 9-AMC-AFS-650-DMS-EP-Request@faa.gov.

(3) At least one additional GA ASI, which may include an FLM (optional).

**c. Evaluation Panel Tasks.** The evaluation panel assesses each applicant's background, knowledge, and experience by conducting a thorough review of the designee application. To support this process, the following tasks must be accomplished:

(1) Review the applicant's application and supporting documentation in DMS.

(2) Contact references as necessary.

(3) Conduct an interview with the designee candidate. The interview should determine whether the applicant has the general and specific qualifications, as well as the qualities necessary to be successful as a designee. Interview responses should be consistent with the information contained on the candidate's application.

(4) Verify that minimum qualifications have been met.

(5) Review the applicant's experience on the DMS application to determine what authorizations they may qualify for. This should be done in advance of an applicant interview.

(6) Verify that the applicant possesses the appropriate airman certificate, category and class rating, and type rating for the authorizations sought.

(7) Review relevant information from each of the following FAA databases to determine the candidate's aviation background and any issues which may have an adverse effect on the candidate's application:

(a) Accident Incident Data System (AIDS);

(b) SPAS;

(c) National Program Tracking and Reporting Subsystem (NPTRS); and

(d) Enforcement Information System (EIS).

**AR 242**

(8) For Admin PEs, inspect facilities and equipment (if applicable) to be used in the conduct of their duties.

**d. DPE Applicant Pilot Proficiency Check Prior to Appointment.** The evaluation panel will consider the results of a pre-appointment pilot proficiency check, if applicable. The purpose of the proficiency check is to evaluate the designee applicant's piloting skills. The content of the proficiency check will include a demonstration of part or all of the following:

(1) The knowledge and skill areas required for the original issuance of the certificate for which the DPE will hold authority.

(2) Maneuvers and procedures listed in the practical test standards (PTS)/Airman Certification Standards (ACS) for the applicable certificate and rating.

> **Note:** Each DPE applicant (other than Admin PE) selected for designation must pass a proficiency check by an FAA inspector before the FAA issues an initial designation. If the managing office has direct knowledge of the flight proficiency of the designee applicant, such as recent part 135 or 141 flight check, or check airman activity, then a preappointment proficiency check is optional. However, if the designee applicant has not been recently observed (within the previous 12 calendar-months) in the specific category, class, and type for the authorizations desired, then a proficiency check in the appropriate aircraft is required.

**e. Evaluation Panel Outcomes.**

(1) When the evaluation panel determines that an applicant meets the requirements for designation, the results are documented in DMS and a recommendation is provided to the AO through the SO. If the AO is in agreement with the recommendation, the appointment process will ensue. See Chapter 4 for information relating to the appointment process.

(2) If the evaluation panel, with concurrence from the SO, rejects all applications provided by DMS for good cause, the managing office should encourage suitable applicants to apply through DMS so that they can be considered.

**6. Additional Authorizations.** Designees will apply for additional authorizations using the "request additional authorizations" link in DMS. The designee must upload a current supplemental information sheet or equivalent showing qualifications or currency as applicable. The managing office will complete the process using the same procedures for original designation, although they are not required to add authorizations just because the designee requests them. This is entirely at the discretion of the FAA.

> **Note:** Required DMS oversight activities must be completed prior to approving an additional authorization request.

**AR 243**

## Chapter 4.  Designee Appointment

**1.  Purpose.** This chapter provides the policy related to the appointment of DPEs, Admin PEs, and SAEs, referred to collectively in this chapter as designees. This designation type-specific policy and Volume 1 constitute the overall policy for the appointment process for a DPE, Admin PE, and SAE.

> **Note:** Detailed job aids for this DMS process can be found at: https://my.faa.gov/content/myfaa/en/org/linebusiness/avs/offices/air/div_dir/air600/dms.html.

**2.  General.**

    **a.  Appointment Process.** Below is a high-level representation of the appointment process.

### Figure 3-2. High-Level Appointment Process Flow



    **b.  Appointment Considerations.**

        (1)  The managing specialist should issue appropriate privileges and limitations in the CLOA based on the applicant's:

        (a)  Background experience;

        (b)  Personal and professional qualifications; and

        (c)  Needs of the appointing office.

        (2)  Prior to appointment, the managing specialist will verify that the following events are completed and recorded in DMS:

        (a)  Successful completion of the initial designee specific training conducted by the FAA's Designee Standardization Branch (AFS-640). For a list of the training, visit https://av-info.faa.gov/dsgreg/sections.aspx.

        (b)  Applicant has attended an orientation conducted by their managing office, which includes, but is not limited to, the following:

          *1.*  Caution the designee that any irregularities or deficiencies related to the delegated work may result in the termination of the designation under the provisions of part 183, § 183.15(b)(4).

          *2.*  Remind the designee to perform only authorized functions within the limits of their authority.

*3.* Remind the designee to request preapproval through DMS before accepting any applicant requests for testing or checking activities.

(c) Remind the designees, except when using IACRA, to submit applicable original or duplicate documents within 7 calendar-days of completion to the managing office for review.

**3. ACR-141.** After an ACR is designated, the managing specialist will issue an initial supply of forms appropriate to the authorization and will instruct the ACR on the completion, checking, and disposition of certification files. The managing specialist will also train the ACR on how to use the IACRA program. The managing specialist should make certain that the ACR has the appropriate regulations; official guidance materials; the school's training course outline; and the syllabus, telephone contacts, and addresses of the managing FSDO and the Airmen Certification Branch (AFB-720).

**4. Designee Number.** See Volume 1.

**5. CLOA.** The CLOA will identify the designee type and the specific authorizations, or limitations.

> **Note:** The CLOA should not be issued until all required training and orientation requirements have been completed.

**6. Appointment Duration.** The initial duration of a designee's appointment is up to 12 calendar-months.

**AR 245**

## Chapter 5.  Responsibilities and Obligations of a Designee

**1.  Purpose.** This chapter provides the policy related to the responsibilities and obligations of the DPE, SAE, and Admin PE, referred to collectively in this chapter as designees. This designation type-specific policy and the Volume 1 constitute the overall policy for the responsibilities and obligations of DPEs, SAEs, and Admin PEs.

**2.  General Responsibilities.**

   **a.  Accept Airman Certificate and/or Rating Application.** Accept applicable airman certificate and/or rating applications for airman certificates and ratings.

   **b.  Conduct Tests.** All tests must be appropriate to the FAA CLOA held by the designee, and in accordance with the appropriate PTS or ACS. The use of an interpreter is strictly prohibited.

   **c.  Charge Reasonable Applicant Fees.** The designee must ensure that the applicant understands all fees charged, including the fee for retesting after failure, before the designee accepts the airman certificate and/or rating application.

   **d.  Issue Temporary Airman Certificates.** Issue Temporary Airman Certificates only to applicants who have been tested and found qualified for the certificate or rating sought. The managing FAA office may remove this authorization and retain this privilege. In this case, limitations will be entered on the CLOA.

   **e.  Accept Pilot Applications.** Accept pilot applications for new pilot certificates and/or ratings (for which the designee holds that authorization) and any pilot certificate that is administrative in nature (e.g., second-in-command (SIC) type rating or English language endorsement), provided the designee has received required initial training and recurrent training every 24 calendar-months.

   **f.  Expectations.** DPEs, Admin PEs, and SAEs are expected to:

      (1) Provide FAA testing and certification activities without prejudice or discrimination in a fair and unbiased manner.

      (2) Honor appointments made as promptly as possible. The designee is also expected to make their services available to all applicants on an equitable basis.

      (3) Give undivided attention to the applicant during the entire testing period.

      (4) Ensure that discussions following any test are private and confidential.

      (5) Maintain a high level of knowledge, skill, and expertise commensurate with their authorizations.

      (6) Charge no more than a reasonable fee for services.

**AR 246**

(7)  Keep abreast of current aviation trends and technologies.

(8)  Serve as a willing resource to the aviation community on matters of FAA airman certification regulations and policy.

(9)  Set a high standard of airmanship and safety through personal example.

(10)  Exercise diligence and care in the preparation of airman certification documentation and files.

(11)  Always represent the FAA and its workforce to the public in a positive manner.

(12)  Work constructively with the managing FAA office.

(13)  Become familiar with any circumstances unique to a particular area when testing outside their managing office's area.

> **Note:**  Designees should be encouraged to take part in FAA Safety Team (FAASTeam) seminars and events. The FAA values the participation of FAASTeam representatives in providing support for safety meetings.

**g.  Accidents and Incidents During Practical Tests.** If an accident or incident occurs during a practical test, the designee should ensure that the PIC follows the prescribed procedures for reporting the occurrence. The safeguarding of lives and property is the highest priority. As soon as possible, the designee must notify the managing FAA office of the accident or incident.

**h.  Limitations.** DPEs and SAEs must not:

(1)  Conduct the flight portion of a practical test prior to the ground portion.

(2)  Schedule the test to be planned as a multiple-day event. Extenuating circumstances may allow for deviations, but must be approved by the managing FAA office. The extenuating circumstance will be evaluated on a case-by-case basis and documented in DMS. An example of a situation that may warrant a deviation is a LTA practical test, or weather conditions which requires the flight portion to begin at sunrise.

(3)  Test more than one applicant at a time. To clarify "at a time": when a designee begins a test with an applicant, prior to accepting an application from another airman, the designee will terminate the first test with the issuance of a Temporary Airman Certificate, a Notice of Disapproval, or a Letter of Discontinuance. In cases where the test aircraft requires a flightcrew of two, such as in the case of a type rating examination in an aircraft requiring two pilots, it is permissible to evaluate both applicants together.

(4)  Conduct or monitor any portion of computer knowledge tests.

(5)  Reissue or amend any expired Temporary Airman Certificate.

(6)  Endorse, amend, alter, or issue any permanent airman certificate.

(7) Exempt any applicant from the testing requirements in the applicable PTS/ACS.

(8) Combine teaching with testing during the checking or testing of an applicant.

(9) Conduct tests unless an applicant presents proof of eligibility as prescribed in the applicable part 61 or 14 CFR part 63.

(10) Conduct practical tests unless the applicant has passed the required airman knowledge test, if a knowledge test is required.

(11) Temporarily suspend a test to allow the applicant further study, and then continue the same test later.

(12) Conduct checks or tests in any language other than English.

(13) Conduct activities outside the United States and its territories.

(14) Conduct more than three complete practical tests in a single day. This limitation does not apply to the number of retests that can be conducted in one day. A complete practical test is defined as one that is not a retest from a previous unsatisfactory test or a continuation of a previously discontinued test.

(15) Allow anyone other than an ASI to observe a test. For designee training purposes only, exceptions may be authorized in writing by the managing FAA office.

(16) Test applicants trained by the examiner. A designee who trains an applicant for a certificate or rating may only test that applicant under the following conditions:

(a) If another instructor has given the applicant at least 3 hours (or 3 flights in a glider, or two training flights of 1 hour each for balloon) of flight instruction in the 2 calendar-months prior to the test, in preparation for the test, and is the recommending instructor. For sport pilot privileges, the hours are reduced to 1.5 hours if the test is in a balloon; 1.0 hours if the test is in a powered parachute; 2.0 hours if the test is in all other light sport aircraft categories.

(b) A designee may also test an applicant trained by that designee for an additional aircraft class rating if the applicant has obtained the written recommendation of another CFI who has personally checked the applicant and found the applicant prepared for the practical test.

(c) A designee may test an applicant that they trained for a flight instructor certificate or rating if the designee obtains written permission from the managing FAA office.

(d) An ATPE may test an applicant that they trained for an ATP Certificate or rating if the designee obtains the permission of the managing FAA office.

(e) In cases where an SAE is the only readily available instructor qualified in a rare airplane, the SAE may conduct a certification practical test for an applicant that they trained if the designee obtains permission from the managing office.

**AR 248**

(17) An ACR may not accept a part 141 graduation certificate and will not issue a Temporary Airman Certificate to an applicant who has a Statement of Demonstrated Ability (SODA), unless an ASI from the managing FSDO has clearly determined that no operational limitations are required to be placed on that certificate.

(18) A VFEE must not endorse FAA Form 8060-7 to take a knowledge or written test unless the applicant has presented satisfactory documenation of having completed one of the experience requirements of 14 CFR part 63.37.

**i. Conflicts and Questions.** Designees must maintain a cooperative attitude and are responsible for following FAA policies and instructions. If an issue occurs while acting in an official capacity as a designee, contact your managing specialist. If a conflict cannot be resolved at that level, the designee should contact their responsible Flight Standards Office  management for assistance. Questions or concerns that involve other FAA offices must be coordinated by the managing specialist or managing office.

**3. Ongoing Requirements of a Designee.** In order to complement the general requirements established in Volume 1 of this order, a DPE, SAE, or Admin PE will:

**a. Maintain Minimum Requirements.** Maintain the minimum qualifications established for appointment as specified in this order including certification, currency, initial, and recurrent training, and attendance at the required annual meetings.

### Table 3-9. DPE and SAE PIC Experience Requirements

| AIRCRAFT TYPE | PIC EXPERIENCE IN THE PRECEDING 12 MONTHS |
|---|---|
| Airplane | 60 hours (10 hours in each class authorized including 5 hours in type(s) authorized, if applicable) |
| Airplane—Light-Sport | 12 hours (5 hours in each class authorized) |
| Rotorcraft | 25 hours (5 hours in each class authorized) |
| Gliders | 3 hours, which included at least 3 flights |
| LTA—Airship | 40 hours |
| LTA—Balloon | 12 hours, which included at least 3 flights |
| Weight Shift Control | 12 hours (5 hours in each class authorized) |
| Powered Parachute | 5 hours (3 hours in each class authorized) |

**Note:** PIC experience obtained while administering practical tests will not be considered for the purposes of the recent PIC experience required of the designation (listed above).

**Note:** For designees who hold authorization to conduct tests in more than one category of aircraft, the DPE must have obtained the total PIC experience for the authorized category that requires the greatest number of hours. In addition, the number of PIC experience hours required for each additional class (in the case of gliders, 3 hours, including 3 flights) must be met. PIC experience obtained in airplane may be used to meet the requirements for airplane–light sport and vice versa. For instance, a DPE authorized to test in both airplanes and rotorcraft

**AR 249**

helicopter would be required to obtain a total of 60 hours of PIC (because 60 hours is the greatest total required of all authorized categories). Of those hours, at least 10 hours must be in each class of airplane authorized (i.e., ASEL or AMEL) and at least 5 of that in helicopters (rotorcraft class). In this case, the DPE must have accrued 5 hours in rotorcraft-helicopter plus 10 in AMEL plus 10 in ASEL totaling 25. The remaining hours could be in any category or class. Another example: a DPE authorized to conduct tests in airplanes, gyroplanes, and gliders would be required to obtain a total of 60 hours PIC (because 60 hours is the greatest total required of all authorized categories). Of those 60 hours, 10 hours must be in the class of airplane authorized (i.e., ASEL or AMEL), at least 5 hours in class of rotorcraft (gyroplanes), and 3 hours must be in gliders (which included at least 3 flights).

**b. Use Current Regulations and Policies.** Maintain and use the most current versions of the Code of Federal Regulations (CFR), the PTS/ACS, FAA Order 8900.1, and this order. Storage and retrieval of these documents may be electronic.

**c. Attend Annual Meeting.** Designees must attend the annual designee meeting conducted by the managing FAA office at least once every four quarters. For designees regularly testing in an area outside of their managing office's district, they are encouraged to attend the annual meeting for the district where they are regularly testing.

(1) The FAA office should attempt to schedule the annual meeting to allow for all designees of the same type to meet together in a location at the same time. At a minimum, the following subject areas must be discussed:

(a) Local issues;

(b) Local problem areas;

(c) Local procedures;

(d) Standardization issues;

(e) Designee performance; and

(f) National issues.

(2) A record of attendance by each designee must be documented in DMS by the managing FAA office.

(3) In cases where, beyond the designee's control, it is not possible for a designee to attend the annual meeting, the designee must meet with their managing specialist to discuss the same subject material that was presented at the meeting. A designee who misses the annual meeting must still satisfy the annual meeting requirement.

**AR 250**

**d. IACRA.**

(1) For airman testing and certification, the designee is expected to use IACRA online processing system accessible through https://iacra.faa.gov.

(2) If IACRA is unavailable when the DPE is beginning the test, the applicant must submit a paper application (FAA Form 8710-1). The entire certification process must then be completed using the paper application and the certification file must be sent to the managing FAA office. The DPE cannot, under any circumstances, complete the certification in IACRA at the conclusion of the test, even if it is available. If the test is started with paper, it must be completed with paper. The DPE must also notify the managing FAA office of the reason for using paper instead of IACRA.

**e. PTS/ACS.** Designees with airman testing and checking privileges must use the appropriate PTS or ACS in accordance with their authorizations. The PTS or ACS is available through a number of commercial sources or through the FAA website at www.faa.gov.

**AR 251**

## Chapter 6.  Oversight and Management of a Designee

**1.  Purpose.** This chapter provides the policy related to the oversight and management of DPEs, Admin PEs, and SAEs, referred to collectively in this chapter as designees. This designation type-specific policy and Volume 1 constitute the overall policy for the oversight and management of DPEs, Admin PEs, and SAEs.

> **Note:**  Detailed job aids for this DMS process can be found at: https://my.faa.gov/content/myfaa/en/org/linebusiness/avs/offices/air/div_dir/air600/dms.html.

**2.  General.**

**a.  General Considerations.**

(1) Effective oversight of designees is founded on a strategy of risk management. A robust oversight policy includes a continual process of weighing the potential for harm from any apparent hazard against the likelihood of its occurrence. When safety risks and hazards are identified, appropriate preventive action is imperative.

(2) Designee oversight includes the managing, monitoring, and tracking of a designee's activities and performance. Managing specialists are also responsible for ensuring that DPEs, Admin PEs, and SAEs are thoroughly coached in the importance of their role of administering ground and flight tests to the applicants in accordance with the PTS/ACS and Order 8900.1, Volume 5.

(3) Oversight will include oversight activities at varying intervals, as well as an OPE of each designee at least each 36 calendar-months. The outcome of each oversight activity provides data to be used in completing each designee's OPE.

(4) Designees can expect that the managing office will assign to each DPE, Admin PE, and SAE a managing specialist that is a qualified ASI (Operations). The ASI will develop oversight plans to ensure quality, the highest degree of integrity, and compliance with current policy, regulations, and the PTS or ACS, as appropriate. The oversight plan will also identify potential hazards and risks to aviation safety. If and when the FAA discovers deficiencies, the managing specialist will respond in a manner prescribed by the common designee policy in this order and other relevant FAA guidance.

(5) DPEs and SAEs shall expect the FAA to conduct a direct observation of their first complete test, and Admin PEs should expect the FAA to observe their first certification actions. Thereafter, the designees may be inspected or observed by FAA personnel at any time with or without prior notice.

(6) For multiple or additional authorizations. In the case of an office having granted the DPE more than a single authorization during initial designation (e.g., PE and CIRE), or subsequent authorizations to an existing CLOA, the managing office need not observe the DPE administering a practical test for each additional authorization. However, subsequent authorization requests require a demonstration of competency as a pilot examiner appropriate to

**AR 252**

the aircraft or simulator and the authorization sought. This demonstration of competency may be completed by:

(a) The observation of a complete practical test for the authorization;

(b) The ASI acting in the role of an applicant during a simulated practical test or pilot proficiency check; or

(c) The ASI administering a complete designee pilot proficiency check, including representative tasks and maneuvers contained in the PTS/ACS for the authorization request that the managing FAA office is granting the DPE.

(7) The managing specialist documents oversight activities and results in DMS. Such reporting is not only crucial for managing individual designees, but also for implementing risk-based decision making to the management of FS designees.

**Note:** For an additional authorization, if the managing office has direct knowledge of the testing proficiency of the designee, such as a recent part 135 or 141 flight check, or check airmen activity, then a demonstration of competency is optional. However, if the designee has not been recently observed (within the previous 12 calendar-months) in the specific category, class, and type for the authorizations desired, then a testing proficiency check in the appropriate aircraft is required.

**b. Managing Office and Managing Specialist.** See Volume 1.

**c. Oversight and DMS.**

(1) Designee oversight includes the managing, monitoring, and tracking of a designee's activities and performance. DMS establishes the minimum required oversight activities for each designee based on their authorized activities and risk-based data. Additional oversight may be conducted as deemed necessary by the managing specialist or managing office. Oversight activities are the responsibility of the designee's managing specialist and the managing specialist is expected to conduct the oversight activities. However, other ASIs can enter oversight activities on the designee, and there are provisions in DMS for the managing specialist to "take credit" for an oversight activity of the same type conducted by another ASI if it's in the required timeframe. Additional instructions are included in the DMS job aids for oversight activities.

(2) The managing specialist must conduct designee OPEs on an ongoing basis predicated on the outcome of oversight activities. The managing specialist should record in DMS the results of individual oversight activities. However, the managing specialist must record in DMS a formal evaluation at least once every 36 calendar-months.

(3) Overdue Direct Observations. The managing specialist should ensure a designee's direct observation is completed on or before the due date listed in DMS. When a designee's direct observation cannot be completed before the due date, DMS will not prevent the designee from performing additional delegated activities. All factors must be considered and risk managed appropriately. If the managing specialist determines the lack of a completed direct observation

**AR 253**

presents an unacceptable risk, the designee must be suspended in DMS until the direct observation is completed. In cases where the managing specialist finds the risk acceptable, that risk assessment must be documented in DMS using the "Special Emphasis Item" oversight and putting "OVERDUE" in the National Use field, and an explanation of the factors considered and the reason for the extension. Direct observations may not be extended more than one quarter beyond the due date (e.g., a due date of June 30, 2020, cannot be extended beyond September 30, 2020), and the designee must be suspended.

    **d. Performance Measures.** The managing specialist will render an overall rating for the period according to the following classifications:

    (1) Technical. The designee demonstrates sufficient knowledge, skill, and ability to conduct authorized tasks within established guidance and standards. The designee possesses an expert level of knowledge and skill, understands and uses appropriate terminology, uses the correct equipment, applies appropriate standards, and accurately interprets results.

    (a) Equipment and Materials. Does the designee possess relevant and current FAA publications, either electronically or in paper form, such as the CFR, the PTS/ACS, Aeronautical Information Manual (AIM), Chart Supplement U.S. (CS), and this order? Does the designee have access to technology in order to effectively use the IACRA system in the processing of airman certification files?

    (b) Knowledge and Understanding. Does the designee understand the technical terminology contained in FAA orders, the PTS/ACS, and other reference material used in planning, describing, or conducting authorized activities? Does the designee demonstrate an expert level of knowledge about the aircraft operation and systems?

    (c) Interpret and Apply. Does the designee correctly interpret and apply the technical performance standards required by the authorization?

    (2) Procedural. The designee demonstrates the ability to complete administrative functions correctly. The designee accurately completes and issues appropriate documentation, submits required data, follows established procedures, and complies with all regulations, orders, and directives.

    (a) Screening Applicants. Does the designee follow the correct procedure when accepting applications and determining applicant eligibility?

    (b) Submittal of Information and Data to FAA. Does the designee properly submit information, documents, and data to the FAA when it is required by FAA orders or by specific instructions provided by the FAA managing office?

    (c) Conducting Evaluations and Tests. Does the designee follow the correct procedure when conducting, grading, and providing feedback to applicants during testing?

    (d) Issuing Certificates and Testing Results to Applicant. Does the designee follow the correct procedure when completing and issuing airman certificates, test results, or other findings to the applicant upon completion of the testing activity?

**AR 254**

(3) Professional. The designee conducts activities in an ethical, courteous, and conscientious manner reflecting highly on the Administrator. The designee presents a cooperative attitude and demonstrates integrity, tact, and diplomacy when dealing with industry and the FAA. The designee communicates effectively in a manner that reflects positively on the FAA, both orally and written.

(a) Oral and Written Communication. Does the designee effectively communicate either in writing or in conversation with the FAA and the general public? Does the designee provide feedback to the FAA with ways to improve the designee system?

(b) Professional Representation of the FAA to the Public and Stakeholders. Does the designee demonstrate a positive reflection on the FAA and a willingness to comply with FAA policy and managing office instruction?

(c) Cooperative Attitude With the FAA. Is the designee easy to work with and present a positive attitude when interacting with the FAA? Is the designee responsive to the FAA and reasonably accessible to the FAA when required?

(d) Ethics and Judgment. Does the designee maintain high ethical standards and demonstrate good judgment in the conduct of authorized activities?

(4) Key DPE and SAE Performance Measures. Additional performance measures for DPEs and SAEs include, but are not limited to the following:

(a) Develops and uses a written plan of action in accordance with Order 8900.1 and the applicable PTS or ACS.

(b) When using PTS, evaluates "Special Emphasis Items" throughout the test.

(c) Employs "scenario-based" questioning and flight tasks liberally throughout the test to assess the applicant's decision making and resource management abilities.

(d) Completes pretest, preflight, and postflight briefings as appropriate

(e) Makes an accurate "pass/fail" determination.

(f) Properly completes the Temporary Airman Certificate, Letter of Discontinuance, or Notice of Disapproval, as appropriate, through the use of IACRA unless extenuating circumstances preclude IACRA use. In such cases, paper documents will be evaluated for completeness, accuracy, and legibility.

**3. Oversight Actions.**

**a. Planning an Oversight Activity.**

(1) In addition to guidance provided in Volume 1 of this order, the managing specialists should use a risk-based analysis to determine when an inspection is necessary. Circumstances that warrant an oversight activity include, but are not limited to:

(a) Oversight from DMS generated oversight activities. The managing specialist also determines if additional oversight may be necessary.

(b) Complaints received about a designee's conduct during certifications.

(c) Persons newly designated (inspections can occur at a higher level of frequency to ensure compliance).

(d) Review of designee's certification files or reports produced through DMS indicate one or more of the following:

    *1.* Overall problems with the certification files;

    *2.* A "no failure" or "high pass rate" that seems unusual;

    *3.* A higher activity rate, as compared to the average total number of tests/checks for all active DPEs;

    *4.* Applicants are traveling long distances; or

    *5.* Unreasonably long or short test durations considering the type of test.

(2) Prepare for the Inspection.

(a) Review the following documents prior to the inspection:

    *1.* Designee's file in DMS;

    *2.* Previous inspection reports and historic PTRS and DMS entries; and

    *3.* Any correspondence between the managing office and the designee since the last inspection.

(b) If appropriate, review the designee's preapproval within DMS and arrange the inspection to coincide with the scheduled certification event.

(3) Additionally:

(a) Consider the habits and availability of designees and schedule activities so as not to inconvenience or create an unwarranted imposition on the individual.

(b) When planning an announced observation of a flight portion of a practical test being conducted by a DPE or SAE, communicate this intent in advance as much as practicable so that the aircraft is configured in such a manner (e.g., Weight and Balance (W&B), fuel load, etc.) to accommodate the FAA as well as the applicant and designee.

(c) It is noted that, when the FAA plans an observation of any portion of a practical test (either examination ground or flight), an applicant's permission is not required. Further, advance notice to either the designee or applicant is not required. Unannounced observations are

**AR 256**

at the discretion of the managing specialist, and can be a useful tool in determining the quality of the designee's work when they are not expecting to be observed.

**b.  Oversight Activities.** Designee oversight includes the comprehensive management, monitoring, and tracking of a designee and related activities. All of these actions are considered oversight activities in DMS. A complete surveillance of a DPE, Admin PE, or SAE involves a group of oversight activities performed to observe the designee's performance. These oversight activities may be completed independently within a set timeframe, or any number of them may be completed in conjunction with one another. This approach to oversight was adopted to allow the managing specialist's flexibility in completing oversight activities as the opportunity arises, and to encourage focus on the specific element being evaluated. Designee oversight is most effective when it occurs throughout the year rather than an all-at-once, infrequent approach. The frequency of each of these activities will be determined by DMS.

(1) Direct Observations. A direct observation is a managing specialist observing the designee performing work authorized by the designee's CLOA. The purpose is to determine that the designee has the knowledge and skill to properly administer a practical test or check, or in the case of an Admin PE, to properly conduct the certification function. Direct observations provide the managing specialist the opportunity to determine if the designee is performing the work within the guidelines. It allows the managing specialist to gain insight into the designee's technical, professional, and procedural attributes. It also provides the designee with feedback from their managing specialist. In DMS, the direct observation for DPEs and SAEs is split into two parts; the observation of the ground portion of the test and the observation of the flight portion of the test. These observations may be conducted independently of each other, or both may be accomplished with the observation of a complete (ground and flight) test administered to a single applicant. The goal of the inspector during a direct observation is to observe the designee test all required areas of operations and tasks for the test that is being administered. However, in the case that the test does not proceed far enough to include all areas (i.e., Letter of Discontinuance or Notice of Disapproval), the direct observation flight can be considered complete if, at a minimum, the applicant has departed the airport environment and the inspector has witnessed enough tasks that they are satisfied the designee is testing in accordance with PTS/ACS and current policy. Regardless of the test outcome, if in the judgment of the inspector there was an insufficient amount of tasks observed, another direct observation will be required.

(a)  For an examiner who conducts the majority of tests in an aircraft unsuited to carrying an FAA inspector, the inspector will observe a complete oral test, and the flight portion of the inspection will be completed with the FAA inspector playing the role of the applicant. This method of inspection is not intended to be used for examiners who conduct an adequate number of tests in aircraft that allow an inspector to observe the flight portion of the test. Whenever possible, the inspector will observe the designee conducting both the ground and flight portion of the practical test with the designee administering a test to an actual applicant.

(b)  A minimum number of direct observations will be required to be completed by a managing specialist (see DMS to determine frequency). The number of observations determined by DMS is based on all indications that the examiner is conducting the test in accordance with current policy and standards. If there is any indication of unsatisfactory performance (e.g., interviews, complaints, etc.) the managing office must investigate and conduct additional

**AR 257**

surveillance in order to determine the actual performance of the designee. The managing specialists may increase the number of direct observations if deemed appropriate due to various risk indicators that may be established, such as when a "Needs Improvement" event has been identified, or any other reason deemed appropriate. The managing specialist must conduct a complete direct observation (ground and flight) of the first practical test for a newly designated DPE or SAE. For the direct observation of an Admin PE, the managing specialist would observe an entire certification event, from the applicant presenting the application to the designee completing the paperwork and presenting the applicant with the appropriate certificate. This would be recorded as a Direct Observation—Administrative PE.

(c)  While exercising the privileges of their designation, designees must continue to maintain their currency and proficiency. During the direct observation, the managing specialist or ASI must verify that the designee is maintaining currency and PIC requirements. Currency requirements are outlined in §§ 61.56 and 61.57, and PIC requirements are outlined in Table 3-9, PIC Experience Requirements. For designees (other than SAEs) who administer tests in large, turbine-powered aircraft, currency in accordance with § 61.58 must also be maintained, regardless of which seat the designee occupies.

(d)  During a direct observation for a DPE, Admin PE, or SAE, the managing specialist should assure the applicant that the observation is focused on the designee and not the applicant. Although this may not alleviate the heightened level of anxiety, the managing specialist should make the applicant as relaxed as possible.

(e)  If the managing specialist observes a designee that is not following proper certification policy, such as conducting an exam for an applicant that is not eligible and/or does not meet the prerequisites for the certificate or rating sought, the managing specialist has the responsibility to stop the certification and discuss the concern with the designee without the applicant being present. Under no circumstances will the managing specialist allow the certification to be issued until the discrepancy(ies) are corrected.

(f)  If during the testing/checking event a DPE or SAE omits required items from the PTS or ACS, managing specialists may, at their discretion, allow the test to continue. The managing specialist must not allow the airman certificate to be issued or check to be satisfactorily completed when required items were not tested or the applicant unsatisfactorily performed the tasks. Because the PTS/ACS specifically states that the tasks can be accomplished in any order, this discretion is necessary to allow the managing specialist to watch the entire test in the event that the designee completes the omitted items at the end of the test/check.

**Note:**  This type of discrepancy would be noted in DMS as a procedural issue, and might require additional observations by the managing specialist to ensure the problem does not continue.

(g)  Observe the DPE or SAE conducting the ground portion of an exam as described below:

*1.*  Review the plan of action to determine the following:

**AR 258**

(i)  Does the plan of action include all the areas of operation and tasks required by the appropriate PTS or ACS?

(ii)  Does the plan of action contain a scenario that allows the evaluation of most of the areas of operation and tasks required in the practical tests with minimum disruptions?

(iii)  Does the plan of action contain the required pretest, preflight, and postflight briefings?

*2.*  Ensure the DPE or SAE utilizes the plan of action to conduct the test.

*3.*  Ensure the DPE or SAE conducts the required pretest briefing.

*4.*  Ensure that the DPE or SAE requests appropriate identification from the applicant and verifies the applicant's identity. The DPE/SAE must also review the applicant's logbook/training record and compare aeronautical experience with what is reported on the application. The designee must properly ensure that the applicant is eligible for the test or check.

*5.*  Ensure the DPE or SAE does not intend to administer the practical test to more than one applicant at a time.

*6.*  Ensure the applicant is informed that the inspector is principally observing the DPE or SAE's performance and that at the conclusion of the tests, unless circumstances otherwise warrant, the DPE or SAE will issue a temporary certificate if the applicant passes the test.

*7.*  Ensure that the DPE or SAE receives a completed and signed application prior to beginning the test. In the case of IACRA, the applicant must log in to IACRA and sign the application prior to beginning the test.

*8.*  Ensure the DPE or SAE conducts the ground portion of the exam in accordance with the procedures in the applicable section(s) of Order 8900.1, Volume 5, Chapter 2, Title 14 CFR Part 61 Certification of Pilots and Flight Instructors.

(h) Observe the DPE or SAE conducting the flight portion of an exam as described below:

*1.*  Ensure the DPE or SAE conducts the required preflight briefing.

*2.*  Ensure the DPE or SAE observes the applicant preflight the aircraft.

*3.*  Ensure the DPE or SAE conducts the flight portion of the exam in accordance with the procedures in the applicable section(s) of Order 8900.1, Volume 5, Chapter 2.

*4.*  Ensure the DPE or SAE does not allow the applicant to repeat any maneuvers or procedures that have been determined to be unsatisfactory.

*5.*  Ensure the DPE or SAE conducts the required post-test briefing.

**AR 259**

*6.* Ensure the DPE or SAE completes the required paperwork based on the following outcomes:

(i) If the DPE or SAE and the applicant perform satisfactorily, observe the designee properly completing FAA Form 8710-1 and issuing FAA Form 8060-4 (this may be accomplished in IACRA, but FAA Form 8060-4 must still be issued to the applicant).

(ii) If the DPE or SAE performs satisfactorily but the applicant is unsatisfactory, observe the DPE or SAE properly completing FAA Form 8710-1 and issuing FAA Form 8060-5, Notice of Disapproval of Application, properly identifying the area(s) of operation or task(s) failed or not tested in the block for remarks.

(iii) If the DPE or SAE performs unsatisfactorily but the applicant performs satisfactorily, allow the DPE or SAE to complete FAA Form 8710-1 and issue FAA Form 8060-4. This is only possible if the inspector determines that an adequate test was given. If the DPE or SAE's performance was inadequate, resulting in an incomplete test, then the airman applicant was not properly evaluated and the inspector should observe the DPE or SAE issue a Letter of Discontinuance.

(iv) If the DPE or SAE and the applicant perform unsatisfactorily, allow the DPE or SAE to properly complete FAA Form 8710-1 and FAA Form 8060-5, properly identifying the area(s) of operation or task(s) failed or not tested in the block for remarks.

*7.* Ensure the DPE or SAE completes and submits the certification file in accordance with Order 8900.1. When using IACRA, the certification file is submitted to AFB-720 automatically and it is not necessary to submit a paper file.

*8.* Conduct a debriefing with the DPE or SAE separate from the applicant. Discuss the performance of the applicant and the DPE or SAE, and recommend areas of improvement needed by the DPE or SAE.

**Note:** Prior to conducting surveillance in an aircraft, inspectors should review the certification and currency requirements contained in Order 8900.1, Volume 1, Chapter 3, Section 6, Operations Inspector Qualifications and Currency Overview.

**Note:** The purpose of evaluating a DPE's or SAE's conduct of the direct observation is to ensure that the DPE or SAE follows testing procedures.

(i) Observe the Admin PE conducting the certification functions as described below:

*1.* Ensure the Admin PE requests appropriate identification from the applicant, validates the applicant's identity, and reviews the applicant's application for accuracy. This is required even when using IACRA.

*2.* Ensure the Admin PE conducts the certification function in accordance with the procedures in the applicable section(s) of Order 8900.1, Volume 5, Chapter 2.

**AR 260**

*3.* Ensure the Admin PE completes and submits the certification file in accordance with Order 8900.1. When using IACRA, the certification file is submitted to AFB-720 automatically and it is not necessary to submit a paper file.

(j) Administrative authority. DPEs and SAEs with administrative authorizations should expect the FAA to observe their first administrative certification actions. Thereafter, DPEs and SAEs may be observed conducting administrative functions at any time without prior notice, subject to the following requirements:

*1.* Administrative observations will be recorded in DMS as a Direct Observation—Administrative.

*2.* The DPE or SAE will be observed conducting a complete administrative certification event, from the applicant presenting the application, to the DPE or SAE completing appropriate documentation and issuing the certificate.

*3.* At least one Direct Observation—Administrative must be conducted every four quarters.

*4.* Completion of an administrative direct observation does not satisfy the requirement for a direct observation–ground or direct observation–flight.

*5.* For DPEs and SAEs with administrative authorizations only, Annual Meeting and Activity Log are also required every four quarters.

(2) Interviews of Recently Tested Airmen. The managing specialist, an ASI or AST should conduct interviews of recently tested airmen. These interviews are to ensure that the examiner is properly following the PTS/ACS when the FAA is not in attendance. Inform interviewees that the questions are to evaluate the testing procedure and are not a reexamination of their certificates. Conduct enough interviews to provide confidence that the designee is properly conducting the Practical Tests. If the interviews indicate satisfactory performance by the designee, the schedule for direct observations developed by DMS may be followed. However, if the interviews of recently tested applicants indicate a deficiency with designee performance, the managing office must conduct additional direct observations.

**Note:** Interview results are risk indicators used to determine the frequency of direct observations. Surveys and scripted interview questions must not be used. Closed-ended questions should be avoided, and the MS, ASI or AST should have a relaxed but directed conversation with the recently tested airman about their practical test experience with the designee. Ask follow-up questions based on what the airman says. The goal is to determine if the designee is giving an adequate test. Is the designee teaching, allowing repeat maneuvers, failing to test all the required items in the PTS/ACS for the certificate or rating tested? Using interviews properly will give the managing specialist a picture of how the designee is conducting their work on behalf of the FAA.

**Note:** ASTs conducting interviews of recently tested Airmen must be provided training by the managing FAA office.

**AR 261**

(3) DPE or SAE Testing Proficiency Check. A managing specialist may, at their discretion, ask the designee to demonstrate and explain maneuvers or evaluate maneuvers performed by the managing specialist or an ASI. The purpose of a testing proficiency check is not to evaluate the piloting skills of the designee, but to assess the designee's understanding of the elements of the maneuvers and to determine that they are able to evaluate the applicant's performance in accordance with the PTS/ACS.

(4) Review Designee Certification Packages. Each managing office will review all certification packages submitted to the managing office to ensure that the designee has completed the documentation as required by the applicable section(s) of Order 8900.1, Volume 5, Chapter 2. Package reviews as a result of correction notices received from the Civil Aviation Registry Division (AFB-700) will also be recorded in DMS using this record.

(5) Provide Technical Assistance. Each managing specialist will document in DMS when they spend time providing technical assistance to one of their designees. This does not include answering a quick phone call or email, but only when research or training is involved in the assistance.

(6) Review DMS Activity Log. Each managing specialist will review the activity log of each of the designees they manage for the previous four quarters. The managing specialist will look for possible actions contrary to policy (e.g., test taking an unreasonable amount of time, etc.). This may also include comparing activity reported in the log to actual aircraft or training records.

(7) Review of Proper Guidance Materials. Each managing specialist will review the applicable guidance and reference materials that the designee used to conduct a practical test or proficiency check. The managing specialist will look to see that the designee is using the most current and correct documents for the specific test or check conducted. This includes, but is not limited to:

- Practical Test Standards (PTS)/Airman Certification Standards (ACS);
- FAA Order 8000.95, Designee Management Policy;
- FAA Order 8900.1;
- FAA Handbooks; and
- Advisory Circulars (AC).

(8) Evaluate the Plan of Action. Each managing specialist will evaluate the designee's plan of action. The managing specialist will look to see that it meets the requirements outlined in Order 8900.1, as well as to see that the designee alters their plan of action and is not using the same plan of action for each test or check that they administer.

(9) Record Feedback. Each managing specialist will record in DMS any information that has been received from outside sources regarding the performance of their designee. This may be positive or negative feedback, and may come from another FAA employee, or may come from someone outside the FAA. If any followup action is required, and what that action should be, will be determined by the managing specialist.

(10) Annual Meeting. Each managing FAA office will record the attendance at the annual meeting of each of their designees.

(11) Special Emphasis Items. Each managing specialist will record in DMS the completion of any special emphasis item(s). These activities are not routine surveillance or management of designees, but will be directed by the NPO. Specific instructions for recording this activity will be provided.

**c.  Additional Inspections.**

(1) In addition to the required activity listed above, the managing office may conduct additional inspections as they deem necessary. The objectives of the inspections may include:

(a)  To conduct additional direct observations.

(b)  Confirmation that the designee has appropriate FAA references available.

(c)  Evaluation of adequacy of facilities.

(d)  Verification of maintenance of minimum qualifications.

(e)  Analysis of pass/fail rates.

(f)  Verification of access to technology for IACRA processing.

(g)  Identification of risks or hazards.

(h)  Other areas deemed necessary by the managing specialist.

(2) Certain designee performance factors may prompt additional inspections. These issues may be indicative of underlying safety risks that require timely FAA attention. The performance factors include:

(a)  A pass rate of 90 percent or higher.

(b)  Discovery that the designee tested a student trained by the designee without written approval from the managing office.

(c)  Ten percent or more of airman files were returned to the designee for correction.

(d)  Valid public complaints about the designee or designees involved in an accident, incident, or violation.

> **Note:**  Managing specialists, in consultation with their management, may use their discretion and judgment in the kind and frequency of monitoring and inspections of their individual examiners. For example, a managing specialist should consider the difference between a pass rate exceeding 90 percent for a designee that has conducted very few practical tests, and a pass rate exceeding 90 percent for a high activity designee. Similarly, if a designee's error rate is

**AR 263**

above 10 percent, the managing specialist should consider whether the designee has conducted very few practical tests or is considered high activity. Also, in a case where a designee may have an excellent record for serving the public, and one applicant files a complaint, the managing specialist may want to discuss the complaint with the designee, but the depth and detail of the monitoring, inspection, and oversight may not have to be significant. Again, we expect managing specialists to use their discretion and judgment and be professional.

**d. Outcomes of Oversight Activities.** For all oversight activities, the managing specialist or ASI selects from three performance measure categories: Satisfactory, Needs Improvement, or Unsatisfactory. If the designee's oversight outcome results in "Needs Improvement" or "Unsatisfactory," the managing specialist must enter descriptive text in the appropriate performance measure category(ies).

(1) Followup Action. If the designee's oversight outcome results in "Needs Improvement" or "Unsatisfactory," then appropriate followup action(s) must be determined and recorded in DMS. These actions may include any of the following:

(a) Counseling. As conditions warrant, the FAA will provide direct guidance and counseling to designees.

(b) Additional training. It may be necessary for the designee to receive additional training. This may include taking the initial designee course, going to a refresher course, or training provided by the managing specialist or another ASI.

(c) Suspension. The most common reason for a suspension is when the designee has not been following certification policy.

(d) Termination. If counseling or suspension does not correct a deficiency in designee performance, termination of the designation must be initiated. Immediate termination may also be appropriate when a designee knowingly acts contrary to and/or deliberately disregards FAA policy.

**Note:** A result of unsatisfactory for an oversight activity does not require suspension or termination provided that the issue is immediately corrected. If the unsatisfactory event cannot be corrected, then suspension or termination may be warranted.

(2) FAA Actions to Address Regulatory or Statutory Noncompliance. In the event that inappropriate actions by a designee require action against the designee's pilot and/or flight instructor certificate(s), the managing specialist should refer to FAA Order 8900.1, Volume 14, Compliance and Enforcement, and FAA Order 2150.3, FAA Compliance and Enforcement Program, for the correct procedures and to determine action choice(s). Actions taken under the Compliance Program may range from counseling to revocation of airman certificates. Note that revocation is necessitated, in most cases, by fraudulent certifications performed by the designee. In the most egregious cases, criminal charges may be levied under Title 18 of the United States Code (18 U.S.C.) § 1001, which may lead to imprisonment.

**AR 264**

(3) Special Emphasis Evaluation of Designees (SEED). AFS-600 will notify the designee's managing office whenever the division becomes aware of an issue through a SEED inspection or by other means that could require a designee to be suspended or terminated. The managing office is responsible to process the suspension or termination. In the event AFS-600 and the managing office disagree on the termination of a designee, AFS-600 will make the final determination.

**e. OPE.** The OPE is a consolidated review of oversight activities and other data available outside of DMS (e.g., SPAS, EIS, AIDS, etc.) on a reoccurring basis. The OPE results in an overall rating for the performance period and considers risk-based elements. The objectives of the OPE are for the managing specialist to:

(1) Identify performance trends that are:

- Specific to the designee;
- Local in nature as compared to designees similar in authority locally; and
- National in nature as compared to designees similar in authority nationwide.

(2) Determine if corrective action is needed.

(3) Conduct a risk assessment of the designee.

(4) Review all data for the current performance evaluation period.

(5) Determine performance result. See Volume 1.

(6) Counseling. See Volume 1.

(7) Additional Training. See Volume 1.

**4. Designee Management Functions.**

**a. Expand Authorities and/or Change Limitations.** See Volume 1 and Volume 3, Chapter 3.

**b. Reduce Authority.** See Volume 1.

**c. Record Note.** See Volume 1.

**d. Send Message to Designee.** The managing specialist is able to transmit messages and notifications through DMS, such as changes in the PTS/ACS, regulations, upcoming meetings, and other communications, as may be necessary.

**e. Record Feedback of Interaction With a Designee.** See Volume 1.

**f. Preapproval.**

(1) Ensure designees understand that they must obtain preapproval in order to perform functions on behalf of the FAA. The managing specialist will issue any special instructions to the designee during the preapproval process. Preapproval requires the designee to request and receive approval to conduct authorized activity at least 24 hours prior to commencing that activity on behalf of the FAA. DMS will notify the managing specialist through the DMS message center any time a designee submits a preapproval less than 24 hours in advance. Preapprovals may be authorized through two methods: manual and automatic.

(a) Manual Preapproval. Manual preapproval requires the managing specialist to review the designee's request for activity and approve it in DMS. This allows the managing specialist to stay informed of the designee's activities and the nature of the certification activity involved. It provides a means of managing a designee's activity and ensuring only those activities that the managing office chooses to delegate are accomplished by the designee.

(b) Automatic Preapproval. Automatic preapproval allows the managing specialist to set the DMS function to automatically approve an activity request by a specific designee. This feature provides the managing specialist with a flexible option to provide preapproval and continue to manage a designee's activity. Automatic preapproval will only be used when the designee's performance remains acceptable and analysis indicates that the type of certification activity requested presents an acceptable risk. Automatic preapprovals must not be granted to a designee during the first 30 days of appointment.

> **Note:** The managing specialist will determine to grant manual or automatic preapproval separately for each of the designee's authorizations. For example, if a managing specialist is concerned about performance by the designee of one or two of their authorizations, the managing specialist may elect to keep those authorizations on manual approval while granting automatic approval for the rest of the authorizations.

(2) DMS allows the designee to change or cancel a preapproval request.

(3) For DPEs, Admin PEs, and SAEs, each certification activity must be approved before the designee can perform any function for the FAA.

(4) Designee activity. It is the FAA's intention that designees perform their authorized function(s) within the managing office's area of responsibility. However, a designee may perform activities outside the area of responsibility as long as the FAA's ability to oversee the designee is maintained. The designee shall utilize DMS preapproval process for all preapproval requests.

(a) Designee activity outside the United States. Designees are not allowed to conduct activities outside the United States and its territories.

**AR 266**

(b) Temporary transfer. When designees work outside their local area in excess of 6 calendar-months, the managing specialist should consider a temporary transfer of supervisory and monitoring responsibilities to the appropriate geographic office where the activity is located. This transfer will require coordination and concurrence between both managing offices. The office handing off the designee to the temporary geographic office will reassign the designee in DMS to the new managing specialist at the temporary geographic location. The new managing office will be responsible for all oversight responsibilities while the designee is temporarily under their supervision.

g. **Post-Activity Reports.** DPE, Admin PEs, and SAEs are required to complete post-activity reports in DMS after performing certification functions.

(1) Post-activity reports provide the managing specialist with a record of the activity for that designee. These reports can aid in planning an appropriate level of oversight of the designee.

(2) If the designees have post-activity reports that have passed the requisite 7 calendar-day submission deadline, DMS will not grant another preapproval number until all outstanding post-activity reports have been submitted.

(3) If a designee is terminated or suspended, data can still be entered into a post-activity report in DMS.

**AR 267**

# Chapter 7.  Training

**1.  Purpose.** This chapter provides the policy related to the training of DPEs, Admin PEs, and SAEs, referred to collectively in this chapter as designees. This chapter also provides training policy for FAA personnel with designee-related responsibilities. This designation type-specific policy and Volume 1 constitute the overall policy for the training of designees and FAA personnel.

**2.  General.**

**a.  Overview.** This chapter prescribes the initial and recurrent training requirements for DPEs, SAEs, Admin PEs,  and FAA personnel, including managing specialists, with designee management and oversight responsibilities. Applicants and designees register for training through the Designee Registration System (DRS). Information regarding designee standardization training is available at the DRS website at https://av-info.faa.gov/dsgreg/sections.aspx.

**b.  Documentation.** Successful completion of the initial and recurrent training is documented in DMS. The managing specialist updates the training dates in DMS, and may upload a copy of the training certificate. Designees who have attended initial or recurrent training should send a copy of their training certificate to their managing specialist through the DMS message center.

**3.  Designee Training Requirements.**

**a.  Initial Training.**

(1) Before appointment, designee applicants must satisfactorily complete the initial training program for the designee type and authority for which they are being considered for appointment. The initial training will be conducted by online web-based training, face-to-face classroom training, or both depending on the authorized functions the prospective designees are seeking. The initial training requirements for each designee type are:

**Table 3-10. Initial Training Requirements for Each Designee**

| Designee Type | Initial Training Requirement |
|---|---|
| DPE and SAE performing flight tests in aircraft or FSTD | Initial Designated Pilot Examiner, Part 1 (Online) and Part 2 |
| Admin PE (ACR-141, ACR-FIRC) | Web-Based Administrative DPE Training |
| DPE and SAE with Administrative Authorization(s) | Web-Based Administrative DPE Training |
| DPE and SAE with Pilot Proficiency Examiner Authorization(s) | Initial Designated Pilot Examiner, Part 1 (Online) and Part 2 |
| SAE with FE Authorization(s) | Initial Training Conducted by the Managing FAA Office |
| DPE and SAE with SMFT Authorization | Initial Training Conducted by the Managing FAA Office |

**AR 268**

(2) Each designee must successfully complete the Initial Designated Pilot Examiner training requirements within 1 year before initial designation. DPE and SAE applicants shall not attend initial training until they have been notified by the appointing FAA office that they have been selected for appointment. Once selected for appointment, DPE and SAE applicants will be eligible to enroll for training in the Designee Registration System.

**b.  Recurrent Training.**

(1) Once a designee is appointed, attendance and successful completion of a recurrent training seminar is due on an established seminar interval based on the completion date of the initial standardization seminar or the most recent recurrent seminar, required of that specific designation type or authorization. Recurrent training requirements and the maximum recurrent completion interval in calendar-months are:

| Designee Type | Recurrent Training Requirement |
|---|---|
| DPE and SAE Performing Flight Tests in an Aircraft or FSTD | 24 calendar-months—Recurrent Designated Pilot Examiner Course |
| Admin PE (ACR-141, ACR-FIRC) | 24 calendar-months—Web-Based Administrative DPE Training (Online) |
| DPE or SAE With Administrative Authorization(s) | 24 calendar-months—Web-Based Administrative DPE Training (Online) |
| DPE or SAE With Pilot Proficiency Examiner Authorization(s) | 24 calendar-months—Recurrent Designated Pilot Examiner Course |
| SAE With FE Authorization(s) | 24 calendar-months-Recurrent training conducted by the managing FAA office |
| DPE or SAE with SPE Authorizations | 24 calendar-months—Recurrent SPE Seminar (Online) |
| DPE and SAE with SMFT Authorization | 24 calendar-months—Recurrent training conducted by the managing FAA office |

(2) Completion of recurrent training is mandatory and must not exceed the maximum interval listed for each designee type and authorization held. For DPEs, Admin PEs, and SAEs, it should be noted that different authorizations may require different recurrent training, and those recurrent training intervals are not required to be on the same schedule.

(3) Designees must schedule themselves for a recurrent training seminar as required and notify the managing FAA office. The designee must forward a copy of the Certificate of Completion to the managing FAA office.

(4) DPEs and SAEs (performing flight tests in an aircraft or FSTD) may complete the Initial Designated Pilot Examiner Standardization Seminar (Parts 1 and 2) in lieu of the recurrent training to meet the recurrent training requirements.

**Note:**  A designee may attend recurrent training one calendar-month prior to the established seminar due date. Early training attendance will not change the established due date of that specific designation type or authorization. If a designee attends recurrent training early, the MS must include "Early Training Attendance" in the course ID.

**AR 269**

c.  **Post Course Test.**

(1)  Post course testing may be incorporated as knowledge assessments during practical application workshop (PAW) exercises and/or presented as a standalone test following training. The applicant/designee must complete all PAW exercises and/or take a comprehensive post-course test that will test the applicant/designee on any or all subjects in which the class received instruction. Some of the test questions may require knowledge beyond that encompassed by the authorizations indicated on an individual applicant/designee's current or proposed CLOA. The designee candidate will receive a completion certificate only after satisfactorily completing all required PAW exercises and assignments, or by achieving at least a 70 percent on the post-course test (if administered).

(2)  Should an applicant/designee fail to satisfactorily complete all required course assignments or pass the post-course test after completing the training curriculum, AFS-640 will notify the manager of the applicant/designee's assigned FAA office. After a review of the circumstances related to the failure, the FAA office may:

(a)  For initial training, elect not to appoint the applicant, or to allow the applicant to retake the training course. If appropriate, the FAA office will allow the applicant only one additional attempt at successfully completing the training.

(b)  For recurrent training, elect to terminate the designee for failure to complete training requirements, or if justification is provided, allow the designee to repeat the training. If appropriate, the FAA office will allow the designee only one additional attempt at successfully completing the training. The designee may not exercise the privileges of their designation until training has been successfully completed.

(c)  Successful completion of all required training is a prerequisite for holding a designation. Under most circumstances, if an applicant/designee is more than one hour late, the AFS-640 personnel will not permit that applicant/designee to complete the training. If they arrive in the first hour of training, the AFS-640 personnel will require the applicant/designee to make up the missed instruction with instructor personnel outside of normal class hours. Once the applicant/designee has accomplished this, they will take the final examination with the class. Designees or applicants will be marked as absent after 15 minutes has elapsed from the announced start time at the beginning of each day, or after the announced start time following a scheduled break. An applicant/designee marked as absent twice in the same class will not receive credit for the training, and will not be allowed to complete the final examination with the class.

d.  **Specialized Training.** DPE, SAE, andAdmin PEs who perform one or more specialized function(s) must complete the associated specialized training course prior to initial appointment, adding the authority, and at the recurrent interval specified regardless of any other initial or recurrent training requirement. A complete list of DPE/Admin PE specialized functions and the associated training requirements are available on the DRS website.

e.  **Training Limitations.**

(1)  Managing specialists will suspend designees who fail to successfully complete required training within the specified timeframe.

**AR 270**

(2)  A designee will not exercise designation privileges unless all required training is current.

(3)  DMS will automatically provide notices of training due dates.

**Note:**  A designee that conducted activities with expired training must remain in a suspended status until the managing office conducts an investigation. The investigation must include a thorough review of the activities during this time, and a determination must be made if reduced authority or termination of designation is warranted. The investigation and associated steps taken must be documented in DMS.

**4.  FAA Personnel Training.**

    **a.  Initial and Recurrent Training Requirements.** Initial training requirements for ASIs with managing specialist responsibilities for DPE, Admin PE, and SAE include:

(1)  Completion of the GA operations ASI indoctrination courses, or equivalent.

(2)  Specific courses required for designee oversight are listed in the "Inspector Training for Designee Oversight" matrix. The training matrix is maintained on the Flight Standards Workforce Development Division (AFB-500) website at https://my.faa.gov/org/linebusiness/avs/offices/afx/divisions/afb/afb500.html. The training matrix is organized by designee type, and promotes the FS philosophy that the most appropriate person (or target audience) should attend the right training at the right time. The training coordinator can also provide access to the training matrix and assistance on training needs assessment for ASIs assigned to designee management.

(3)  Designee-specific on-the-job training (OJT) tasks for the type of designee oversight to be conducted.

**AR 271**

## Chapter 8.  Annual Request for Extension of a Designee's Designation

See Volume 1.

## Chapter 9.  Termination of a Designation

1.  **Purpose.** This chapter provides the policy related to termination of a DPE, SAE, or Admin_PE. This designation type-specific policy and Volume 1 constitute the overall policy for termination of  DPEs, SAEs, and Admin-PEs.

> **Note:**  A managing office must not accept a voluntary surrender if termination for cause is warranted.

2.  **General.** The following items require the managing specialist to initiate termination of a designee:

   **a.**  Any actions, at any time, by the designee that may reflect poorly on the FAA, such as misuse of the designation or failure to maintain a reputation for integrity and dependability in the industry and the community.

   **b.**  Any time that a reexamination of an airman under 49 U.S.C. § 44709 becomes necessary due to an inadequate or inappropriate test performed by the designee, the managing office must immediately suspend the designee and begin the termination process.

   **c.**  Any time that the FAA must revoke a pilot certificate or authorization improperly issued by a designee, the managing office must immediately suspend the designee and begin the termination process.

   **d.**  Any time an airman voluntarily surrenders or downgrades a pilot certificate or authorization  that was improperly issued by the designee, the managing office must immediately suspend the designee and begin the termination process.

3.  **Termination Investigation.** See Volume 1.

4.  **Termination for Cause Review Panel Responsibilities.** See Volume 1.

5.  **Termination for Cause Review Panel Members.** For a DPE, SAE, or Admin PE that holds no other designations, the AO will convene a termination for cause review panel comprised of three members:

   **a.**  The AO associated with the designation. This individual will be the panel POC.

   **b.**  An AFS-600 division representative.

   **c.**  An AFS-800  division representative.

> **Note:**  For designees with multiple designations, refer to Volume 1 for appropriate termination for cause review panel procedures.

**AR 273**

## Chapter 10.  Suspension of a Designation

See Volume 1.

## Chapter 11.  Other Designee Management Functions

**1.   Purpose.** This chapter provides the policy related to other designee management functions of DPEs, Admin PEs, and SAEs, referred to collectively in this chapter as designees. This designation type-specific policy and volume constitute the policy for other designee management functions.

**2.   Assign DMS Roles—Master Role Assigner.** For FS GA designees, the MRA is typically the office manager or FLM. See Volume 1.

**3.   Send Message to Managing Specialist.** See Volume 1.

**4.   Update Profile.** Updates to certain information in the designee record, such as change in physical address or qualifications, may affect the designation. A change of physical address may cause the FAA to review need and ability to manage considerations. If the requested address change is in a different managing office's area, the FAA will make the determination if there is a need to transfer that designee to another managing specialist closer to the designee's new location.

**AR 275**