No. 23-9608

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

ELIZABETH WRIGHT-SMITH,

     Petitioner,

         vs.

FEDERAL AVIATION ADMINISTRATION,

     Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER OF THE

FEDERAL AVIATION ADMINISTRATION

---

**OPENING BRIEF OF PETITIONER**

---

BUTT THORNTON & BAEHR, P.C.
Sarah L. Shore
P.O. Box 3170
Albuquerque, NM 87190-3170
(505) 884-0777
sshore@btblaw.com

*Attorneys for Petitioner*

**ORAL ARGUMENT REQUESTED**

TABLE OF CONTENTS

*Page*

Table of Authorities ................................................................................. ii

PRIOR OR RELATED APPEALS ........................................................... iv

GLOSSARY ............................................................................................... v

INTRODUCTION........................................................................................ 1

JURISDICTIONAL STATEMENT............................................................. 1

STATEMENT OF THE ISSUES.................................................................. 3

STATEMENT OF THE CASE...................................................................... 3

I.   Legal Background.................................................................................. 3

     A.   FAA Designation Program ............................................................ 3

     B.   Judicial Review of FAA Orders Terminating a Designee ............ 9

II.  Factual Background ............................................................................. 10

     A.  Wright-Smith's Termination .......................................................... 10

     B.   The Hotline Complaint and Administrative Record ...................... 15

SUMMARY OF THE ARGUMENT............................................................ 19

ARGUMENT ............................................................................................... 20

     I.    The FAA Failed To Properly Investigate The Complaint Underlying The
           Termination Of Wright-Smith's Designation As A Pilot Examiner...................... 20

     II.   The FAA Failed To Provide The Specific Reason For Terminating Wright-
           Smith's Designation On September 7, 2023 ......................................... 22

     III.  The FAA Failed To Follow Appellate Review Or Termination For Cause
           Review Panel Procedures ........................................................................ 27

CONCLUSION ............................................................................................. 30

STATEMENT REGARDING ORAL ARGUMENT.................................... 31

Certificate of Service.................................................................................... 31

Attachment 1 – FAA Letter Decision 10/25/2023

Attachment 2 – Federal Aviation Administration, "About the FAA Designee
Program," available at
https://www.faa.gov/other_visit/aviation_industry/designees_delegations/about
(last accessed April 9, 2024)

## TABLE OF AUTHORITIES

*Pages*

### Cases

*Bradshaw v. Fed. Aviation Admin.*,
    8 F.4th 1215 (11th Cir. 2021) ....................................................... 2, 9, 10, 20, 23, 26, 29

*Burdue v. F.A.A.*,
    774 F.3d 1076 (6th Cir. 2014) ................................................................................... 2, 9

*Green v. Brantley*,
    981 F.2d 514 (11th Cir. 1993) ..................................................................................... 2

*Greenwood v. F.A.A.*,
    28 F.3d 971 (9th Cir. 1994) .......................................................................................... 9

*Holt v. F.A.A.*,
    1999 WL 617714, 189 F.3d 477 (10th Cir. 1999) .................................................. 10

*Lopez v. Fed. Aviation Admin.*,
    318 F.3d 242 (D.C. Cir. 2003) *as amended* (Feb. 11, 2003) ................ 9, 10, 19, 20, 30

*Lowman v. Fed. Aviation Admin.*,
    83 F.4th 1345 (11th Cir. 2023) ................................................................................. 21

*Marcy v. F.A.A.*,
    1991 WL 114660, 936 F.2d 583 (10th Cir. 1991) .................................................. 10

*Mazaleski v. Treusdell*,
    562 F.2d 701 (D.C. Cir. 1977) ....................................................... 10, 19, 20, 25

*Sheble v. Huerta*,
    755 F.3d 954 (D.C. Cir. 2014) ........................................................................... 5, 9, 26

*Sierra Club v. United States Env't Prot. Agency*,
    964 F.3d 882 (10th Cir. 2020) ..................................................................................... 3

*United States v. Caceres*,
    440 U.S. 741 (1979) ...................................................................................................... 9

*Vitarelli v. Seaton*,
    359 U.S. 535 (1959) ......................................................................................... 9, 10, 20

## Statutes, Rules, Regulations & Orders

5 U.S.C. §701(a)(2) ................................................................... 9

5 U.S.C. §706(2)(A) ................................................................. 9

49 U.S.C. §46110 ........................................................ 2, 9, 21, 28

49 U.S.C. §44702(a), (d) ............................... 1-3, 5, 9, 13, 24

14 C.F.R. §183.11 ................................................................. 1,4

14 C.F.R. §183.15 ...................................... 1, 5, 12, 13, 24

14 C.F.R. §183.23 ............................................................. 4, 11

Fed. R. App. P. 28(a)(8) .............................................. 20

Fed. R. Evid. 11-201(b), (c)(2), (d) ................................ 3

FAA Order 1070.1A (as amended 11/14/2022)
    (AR 165-176) ...................................... 11, 15, 16, 21, 22

FAA Order 8000.95B (4/12/2022), Vol. 1
    (AR 66-106) ..................... 4-7, 11, 12, 15, 21-25, 27, 28-30

FAA Order 8000.95B (4/12/2022), Vol. 3
    (AR 107-164) ................................ 4, 5, 7, 21, 28-30

FAA Order 8000.95C (9/21/2023), Vol. 1
    (AR 177-217) .............................. 4, 5, 7-9, 20, 22, 28-30

FAA Order 8000.95C (9/21/2023), Vol. 3
    (AR 218-275) ................................ 8, 20, 22, 28-30

## PRIOR OR RELATED APPEALS

There are no prior or related appeals pursuant to 10th Cir. R. 28.2(C)(3).

# GLOSSARY

| **Term** | **Definition** |
|---|---|
| AFS | Flight Standards Service |
| AFS-660 | Flight Standards Service: Regulatory Support Division |
| AFS-800 | Flight Standards Service: General Aviation and Commercial Division |
| AO | Appointing Official |
| DER | Designated Engineering Representative |
| DMS | Designee Management System |
| DPE | Designated Pilot Examiner |
| FAA | Federal Aviation Administration |
| FLM | Front Line Manager |
| FS | Flight Standards |
| FSDO | Flight Standards District Office |
| IRR | Investigative Results Report |
| POC | Point of Contact |

## INTRODUCTION

The question presented in this Petition is whether the Federal Aviation Administration (FAA) may terminate the designation of a pilot examiner in violation of the FAA's own mandatory Orders—Orders that constitute the only procedural protections for FAA designees. Petitioner Elizabeth Wright-Smith has devoted her entire forty-year career to training and testing pilots. She had an exemplary record as a designated pilot examiner (DPE) for ten years, until the FAA received an anonymous Hotline Complaint (Complaint) reporting second-hand gossip about her. The FAA then undertook a defective investigation which excluded important evidence. Next, the FAA terminated Wright-Smith's designation without providing her with a copy of the Complaint, any information about the investigation, or the specific reason(s) for the termination decision. Finally, the FAA failed to constitute a review panel comprised of the required individuals or to document the deliberations and/or determinations of the review panel. These procedural violations were substantial and prejudicial, vitiating the meaningful agency review to which Wright-Smith was entitled before the final termination of her designation. Therefore, the Court should reverse the final order of the FAA and remand the matter to the agency, to afford Wright-Smith the benefits of the agency's Orders.

## STATEMENT OF JURISDICTION

The Administrator of the FAA may delegate authority to a designee to conduct examinations, testing, and inspections, and to issue airman certificates and other certificates on behalf of the FAA. 49 U.S.C. §44702(a), (d) (Part A of Subtitle VII); 14 C.F.R. §§183.11, 183.15. The Administrator may also rescind a delegation of

authority. *Id.* "[A] person disclosing a substantial issue in an order issued by … the Administrator of the [FAA] … under [Part A of Subtitle VII] … may apply for review of the order by filing a petition for review in … the court of appeals of the United States for the circuit in which the person resides," triggering the Court's "exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order" and to "order the … Administrator of the [FAA] to conduct further proceedings." 49 U.S.C. §46110(a), (d). (Part A of Subtitle VII). A final decision rescinding or terminating a designation under §44702(d) is a final order of the FAA under §46110. *Burdue v. F.A.A.*, 774 F.3d 1076, 1080-81 (6th Cir. 2014) ("[O]rder" has been given an "expansive construction" and includes a final decision of the FAA terminating a designation under §44702(d)(2)); s*ee also Bradshaw v. Fed. Aviation Admin.*, 8 F.4th 1215, 1221 (11th Cir. 2021); *Green v. Brantley*, 981 F.2d 514, 519 (11th Cir. 1993). "The petition [for judicial review] must be filed not later than 60 days after the order is issued." §46110(a). Here, the FAA issued a final decision terminating Wright-Smith's designation as a pilot examiner on October 25, 2023. "Attachment 1" (FAA Letter of 10/25/2023); AR 61.[1] Wright-Smith, a resident of New Mexico, filed her Petition for Review on December 21, 2023, 57 days after the final decision. *See* App. Case 23-9608, Doc. No. 1. Accordingly, the Court has jurisdiction over Wright-Smith's timely filed Petition.

---

[1] The Administrative Record (AR) is filed on the docket as Document No. 12.1.

## STATEMENT OF THE ISSUES

1.      Whether the FAA fell substantially short of its own procedural requirements by: (a) failing to properly and adequately investigate the Complaint against Wright-Smith by excluding important evidence and declining to consider/document Wright-Smith's overall performance as a DPE; (b) failing to state the specific reason for Wright-Smith's termination in her September 7, 2023 termination notice; and (c) failing to constitute an appeal panel or termination review panel consisting of at least two FAA officials other than Wright-Smith's Appointing Official and failing to document the deliberations and/or determinations of the panel.

2.      Whether some or all of these violations prejudiced Wright-Smith.

## STATEMENT OF THE CASE

### I.   Legal Background

#### A.  FAA Designation Program

The FAA's selection and termination of designees is governed by statute, regulation, and Orders of the FAA Administrator. Designees are private persons (or organizations) who represent the FAA in performing certain authorized functions. §44702(a), (d); 14 C.F.R. §§183.1-183.33. Designation programs are essential because the FAA lacks the resources to perform all of its certification activities. [2]

---

[2] "[T]he FAA doesn't have the resources to do all the certification activities necessary to keep up with an expanding aviation industry. Using designees for routine certification tasks allows the FAA to focus its limited resources on critical safety certification issues as well as new and novel technologies." Federal Aviation Administration, "About the FAA Designee Program," available at https://www.faa.gov/other_visit/aviation_industry/designees_delegations/about (last accessed April 9, 2024) (appended as "Attachment 2"); *see* Fed. R. Evid. 11-201(b), (c)(2), (d); *Sierra Club v. United States Env't Prot. Agency*, 964 F.3d 882,

AR 74-75 (FAA Order 8000.95B, Designee Management Policy (4/12/2022), Vol. 1, Ch. 1, ¶¶2-3); AR 186 (FAA Order 8000.95C, Designee Management Policy (9/21/2023), Vol. 1, Ch. 1, §2).[3] In the case of DPEs, designees are authorized to "accept applications for flight tests necessary for issuing pilot certificates and ratings," to "conduct those tests," and "issue temporary pilot certificates and ratings to qualified applicants," on behalf of the FAA. 14 C.F.R. §183.23. DPEs receive a reasonable fee for their services. AR 134 (Order 8000.95B, Vol. 3, Ch. 5, ¶2(c)).

DPEs are selected according to need, from among applicants who are qualified and meet the enumerated requirements. 14 C.F.R. §183.11; AR 118 (Order 8000.95B, Vol. 3, Ch. 2, ¶6(a), (b)). The FAA has detailed policies for the oversight of DPEs. AR 86-92 (Order 8000.95B, Vol. 1, Ch. 6); AR 140-155 (Order 8000.95B, Vol. 3, Ch. 6). Managing Specialists, who directly oversee DPEs, are required to use a document management system (DMS) to record the outcome of oversight activities, enabling the FAA to "make an overall assessment of the designee's performance." AR 87 (Order 8000.95B, Vol. 1, Ch. 6, ¶2(c)), AR 152 (Order 8000.95B, Vol. 3, Ch. 6, ¶3(d)). Oversight results "should be considered in total to

---

893 (10th Cir. 2020) (taking judicial notice of information published on the website of the Environmental Protection Agency).

[3] Hereinafter "Order 8000.95B" and "Order 8000.95C." FAA Order 8000.95B was canceled and replaced by FAA Order 8000.95C on September 21, 2023, the day after Wright-Smith's administrative appeal was filed. Accordingly, Wright-Smith cites the provisions of the prior Order (8000.95B) with respect to the FAA's investigation and initial termination of Wright-Smith. As discussed below, the FAA purported to follow the administrative appeal procedures of Order 8000.95B, and therefore Wright-Smith discusses both Orders with respect to her administrative appeal, which was resolved on October 25, 2023. AR 61. Both Orders are cited in this Section to show the FAA's ongoing policy objectives.

provide a high-level perspective of a designee's performance over time." AR 86 (Order 8000.95B, Vol. 1, Ch. 6, ¶2(a)). Managing Specialists provide regular performance evaluations of DPEs and, where a deficiency requires correction, determine and effectuate follow-up actions. AR 89-90 (Order 8000.95B, Vol. 1, Ch. 6, ¶¶3-4); AR 152 (Order 8000.95B, Vol. 3, Ch. 6, ¶3(d)). These actions may include counseling, additional training, suspension, or termination. AR 152 (Order 8000.95B, Vol. 3, Ch. 6, ¶3(d)). The FAA's Orders establishing policies and procedures for oversight, selection, and termination of designees are mandatory, and any deviation from the Orders requires formal request and approval. AR 72-74 (Order 8000.95B, Vol. 1 Ch. 1, §1, ¶¶1-2, 6, 9), AR 183-185 (Order 8000.95C, Vol. 1, Ch. 1, §1, ¶¶1-2, 7, 9, 11); *see also Sheble v. Huerta*, 755 F.3d 954, 957-58 (D.C. Cir. 2014) (FAA acknowledged obligation to abide by the procedural requirements of the preceding FAA Order governing designees, Order 8900.1).

According to statute, the FAA Administrator may terminate a designation "at any time for any reason the Administrator considers appropriate." §44702(d)(2). The agency's regulations and Orders, however, outline circumstances justifying termination and procedures for doing so. FAA Order explains that "[d]esignees who are performing poorly, who are representing the administrator in a negative manner, or who require excessive resources to manage must have their designations terminated to ensure continued effectiveness of the designee system." AR 97 (Order 8000.95B, Vol. 1, Ch. 9, ¶4); *see also* 14 C.F.R. §183.15(b) (listing grounds for termination of a designation). There are "specific procedures to terminate a

designee" on either a "for cause" or "not for cause" basis. AR 97-99, 161 (Order 8000.95B, Vol. 1 (Ch. 9, ¶4), Vol. 3 (Ch. 9, ¶2)).

For all termination decisions, the "specific reason(s)" for termination "must" be formally documented. AR 97 (Order 8000.95B, Vol. 1, Ch. 9, ¶4(a), (b)). The FAA gives "examples" of "for-cause" termination reasons, including:

> (a) Performance deficiencies found during oversight activities or identified by other sources;
> (b) Lack of integrity (for example making false statements, misrepresenting information, failing to disclose pertinent information, etc.)
> (c) Misconduct (for example, purposefully not following prescribed procedures for gain; etc.)
> (d) Inability to work constructively with the FAA or the public (for example, failure to return phone calls, follow guidance, exhibit a cooperative attitude, etc.)
> (e) Improper representation of the FAA (e.g., using designee number for inappropriate purposes, etc.); and
> (f) Any other reason that the FAA Administrator considers appropriate.

AR 98 (Order 8000.95B, Vol. 1, Ch. 9, ¶4(c)). The DPE's Managing Specialist makes the initial determination that termination is warranted. AR 97 (Order 8000.95B, Vol. 1, Ch. 9, ¶4(a), (b)). The Appointing Official (AO) must approve or deny the Managing Specialist's termination recommendation. *Id.*

Under the FAA Order in place until September 21, 2023, if the AO approved termination for cause, the designee could file an administrative appeal within 15 days. AR 102 (Order 8000.95B, Vol. 1, Ch. 11, ¶¶1, 2(a)). The designee was to "provide any evidence to support their case at the time the appeal is initiated." *Id.* (Ch. 11, ¶2(a)). The appeal panel was to consist of three FAA officials "who were not involved in the original decision," and the Point of Contact (POC) for the panel was required to ensure that the panel's activities (including reviewing the designee

6

file and contacting the relevant officials for additional information/clarification), members, deliberations, and decision were documented/recorded in DMS. AR 103 (Order 8000.95B, Vol. 1, Ch. 11, ¶¶3, 4(a)-(c)), AR 163 (Order 8000.95B, Vol. 3, Ch. 11, ¶2(a)).[4] The appeal panel either upheld or overturned the original termination decision. AR 102 (Order 8000.95B, Vol. 1, Ch. 11, ¶2(c). If a termination decision was upheld, no further administrative appeals were accepted. *Id.*

On September 21, 2023, a new FAA Order was issued, eliminating the "appeal" process, but creating new investigation and "termination review panel" processes. AR 201-204 (Order 8000.95C, Vol. 1, Ch. 6, §4(c); AR 209-212 (Ch. 9, §4). Under the new Order, wherever termination for cause is a possible outcome of a complaint or other matter the FAA "becomes aware of," "the managing specialist will initiate an investigation to determine the appropriate course of action." AR 202 (Order 8000.95C, Vol. 1, Ch. 6, §4(c)(1)). The "minimum" requirements for an investigation are seven-fold, including "collection of evidence related to the investigation," "a review of the facts and circumstances surrounding the case," "review of the designee's record and relevant background information in the appropriate FAA database to determine if there is a pattern of inappropriate behavior or misconduct," and, "[i]f the FAA notifies the designee of the investigation and the

---

[4] With respect to DPEs, the FAA office manager was to convene an appeal panel comprised of "(a) An AFS-600 representative …; (b) [a] General Aviation and Commercial Division (AFS-800) representative; and (c) [a]n FS office manager or FLM not associated with the office that terminated the designee. AR 163. "AFS" refers to the Flight Standards Service, and "AFS-600" refers to the Regulatory Support Division of that Service; "FS" refers to Flight Standards and "FLM" refers to Front Line Manager.

designee chooses to respond, a review of the designee's response and any documentation provided by the designee." AR 202 (Order 8000.95C, Vol. 1, Ch. 6, §4(c)(2)). Results, including any associated documentation, must be recorded in DMS. *Id.* If the Managing Specialist suspends a designee during the investigation, the designee may request to respond, and the "Managing Specialist *must* provide sufficient information within the suspension to allow the designee to respond to the investigation." AR 203 (Order 8000.95C, Vol. 1, Ch. 6, §4(c)(4)) (emphasis added). Based on the outcome of the investigation, the Managing Specialist will recommend one of three courses of action, including termination. *Id.* If termination for cause is recommended, the Managing Specialist will initiate the process in DMS, and the designee has 15 days to respond. AR 211 (Order 8000.95C, Vol. 1, Ch. 9, §4(e)).

Where termination for cause is the recommended action, the AO will initiate a "termination for cause review panel" to determine if termination is appropriate. AR 203 (Order 8000.95C, Vol. 1, Ch. 6, §5(c)), AR 211 (Order 8000.95C, Vol. 1, Ch. 9, §4(f)). For DPEs, that panel must consist of the AO, an AFS-600 representative (a Regulatory Support Division member of the Flight Standards Service), and an AFS-800 representative (General Aviation and Commercial Division member of the Flight Standards Service). *Id.*; AR 273 (Order 8000.95C, Vol. 3, Ch. 9, §5). The review panel "will review the facts and circumstances surrounding the termination for cause decision, including all documentation and the designee's record in DMS." AR 211 (Order 8000.95C, Vol. 1, Ch. 9, §4(f)(2)). The review panel must specifically determine:

- Was a thorough investigation performed?

- Was the designee provided an opportunity to respond to the investigation?
- Is termination justified?

*Id.* The review panel must "provide a recommendation to the AO(s) responsible for making the decision," who then makes a final decision whether to terminate the designation. AR 211-212 (Order 8000.95C, Vol. 1, Ch. 9, §4(f)(3), (5)).

## B.    Judicial Review of FAA Orders Terminating a Designee

The Court may review a decision terminating the designation of a DPE as a final order of the FAA. §46110; 49 U.S.C. §44702(a), (d); *Bradshaw*, 8 F.4th at 1221. Sister Circuits have held that the Courts of Appeal lack jurisdiction to review the FAA's substantive termination decision;[5] however, the Courts do possess jurisdiction to review "whether the FAA met its [own] procedural requirements." *See Bradshaw*, 8 F.4th at 1222 (citations omitted); *Sheble*, 755 F.3d at 957; *Lopez v. Fed. Aviation Admin.*, 318 F.3d 242, 247 (D.C. Cir. 2003) (quoting and citing *United States v. Caceres*, 440 U.S. 741, 749 (1979)), *as amended* (Feb. 11, 2003); *Vitarelli v. Seaton*, 359 U.S. 535, 540 (1959) (agency bound by regulations it had promulgated even though, without such regulations, petitioner could have been summarily discharged). "[T]he court has jurisdiction to review whether the FAA

---

[5] *See*, *e.g.*, *Bradshaw*, 8 F.4th at 1221 (explaining that, although the Court has jurisdiction to review a final FAA order for substantial evidence under 49 U.S.C. §46110, "and can set aside that order if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,'… Congress authorized the FAA administrator to 'rescind a delegation ... at any time for any reason,'" so "the FAA's order to terminate a designation 'is committed to agency discretion by law'" and is effectively unreviewable with respect to the substance of the decision) (citing and quoting 5 U.S.C. §§701(a)(2), 706(2)(A)); 49 U.S.C. § 44702(d)(2)); *Burdue*, 774 F.3d at 1082; *Greenwood v. F.A.A.*, 28 F.3d 971, 974-75 (9th Cir. 1994).

followed its procedural rules in terminating [a designation] because scrupulous observance of departmental procedural safeguards is clearly of particular importance where no other agency rules protect" the individual. *Lopez*, 318 F.3d at 248 (quotation, citation omitted). Where a petitioner demonstrates that the FAA "fell substantially short of the requirements of the applicable departmental regulations," prejudicing the petitioner/designee, the FAA's decision should be reversed and the matter remanded to the agency, to afford petitioner the benefits of the agency's procedural requirements. *See Lopez*, 318 F.3d at 248; *Bradshaw*, 8 F.4th at 1222-23; *Vitarelli*, 359 U.S. at 545 (where agency's process of terminating petitioner fell "substantially short of the requirements of the applicable departmental regulations," termination was "illegal and of no effect"); *cf. Mazaleski v. Treusdell*, 562 F.2d 701, 722 (D.C. Cir. 1977).[6]

## II.    Factual Background

### A. Wright-Smith's Termination

Wright-Smith has been a pilot trainer, tester, and safety counselor for forty years. AR 32-33. She is respected throughout the hot air ballooning community and

---

[6] No published decision in this Circuit addresses arguments concerning the FAA's obligation to follow its own procedural rules with respect to designees, and the Circuit's unpublished decisions preceded *Lopez* and *Bradshaw*. *Holt v. F.A.A.*, 1999 WL 617714, *1, 189 F.3d 477 (10th Cir. 1999) is an unpublished decision in which the Court held that the procedural rules at issue in the FAA's non-renewal of a Designated Engineering Representative (DER) certification were followed by the FAA or were discretionary on the part of the FAA. In *Marcy v. F.A.A.*, 1991 WL 114660, *6, 936 F.2d 583 (10th Cir. 1991), also unpublished, the Court determined that the FAA's decision not to renew petitioner's DER status was supported by substantial evidence and was neither arbitrary nor capricious.

is known for her professionalism and integrity, including among FAA officials who have been her students and/or supervisors. AR 38-58. In 2013, Wright-Smith began serving the FAA and the public as a DPE. AR 3, 32; 14 C.F.R. §183.23. She has renewed her designation annually for approximately a decade,[7] and has never been made aware of any alleged deficiency in her performance until July of 2023. AR 3, 32-33. On July 7, 2023, the FAA received an anonymous FAA Hotline Complaint (Complaint). AR 1. The Complaint was *never* provided in writing to Wright-Smith. AR 2-3, 32.[8] The text of the Complaint, as reflected in the administrative record, is as follows:

> Word on the street is there are some juicy details floating around the Albuquerque NM hot air balloon scene. So, FAA Beth Wright-smith, who's supposed to test private and commercial hot air balloon pilots for the FAA a designated pilot examiner Dpe for Albuquerque Fsdo at the FAA, paid a visit to our local Albuquerque, NM hot air balloon FAA repair center, AERCO run by David and Jared. And get this, she straight-up threatened them-to not fix or inspect the balloons of her competitor and arch-rival [REDACTED][9] a pilot trainer and commercial pilot in the balloon community and anyone else who she hates-if AERCO knows what is good for there business. Talk about a major threat to AERCO [REDACTED] and the other ABQ balloon owners

---

[7] "As long as a designee is in good standing and continues to meet the qualification requirements for their designation, the designee will be given a 1-year extension on their designation once they complete the annual request to extend the expiration date." *See* AR 94 (Order 8000.95B, Vol. 1, Ch. 8, ¶4).

[8] Wright-Smith saw the Complaint for the first time when the Administrative Record was produced.

[9] The pilot whose name is redacted is believed to be Brittany Campbell. The FAA has redacted her name as a matter of "standard practice," but nothing in the attached FAA Orders (or other authorities) indicates that the identities of third-party individuals named in a Hotline Complaint are confidential. *See*, *e.g.*, AR 165-176 (FAA Order 1070.1A, FAA Hotline Program (as amended 11/14/2022) (hereinafter "Order 1070.1A"). Moreover, "David and Jared" of "AERCO" are not redacted.

and pilots! Not being able to buy proper balloon maintenance and yearly inspections seriously messes with aviation safety, FAA! – The BIG thing is, Beth Wright-smith has some serious clout in the ABQ balloon scene. She's got this special FAA status, she's in the spotlight, and she's a big shot in AAAA ballooning and ABQ Balloon Fiesta. The FAA should freak out that one of their representatives is making them and the whole balloon world look bad and unsafe. They might wanna consider giving her the boot and slapping her with a hefty fine! FAA do the write thing and investigate this mess. We've got some rotten apples in our balloon world here in ABQ, and it's time to sort it out! Can't we all just get along and stop with these pathetic pissant feuds? Thanks for your time, and let's hope for some resolution.

AR 1. The Complaint was forwarded to the Albuquerque Flight Standards District Office (FSDO) on July 11, 2023. AR 2. On July 12, 2023, Wright-Smith's Managing Specialist, Gary Medina, notified her that the Albuquerque FSDO had received a Hotline Complaint, and that her designation was suspended because "FAA Order 8000.95B, Chapter 10 pages 1-29 though 1-30, requires the FAA to suspend your Designation and Privileges in the Designee Management System (DMS) while under investigation." AR 2.[10]

Wright-Smith was asked to meet with Medina and FAA Inspector Raymond Romero of the Albuquerque FSDO the following day, when Medina interviewed Wright-Smith about the Complaint. AR 3, 12, 33. Wright-Smith denied that she had instructed any local repair station owner to stop doing business with a local pilot. AR 3, 12, 33. Wright-Smith explained that she had a *private* conversation with repair station owner Jared Scutt, in which she commented that Scutt should be careful about what he told Campbell, a local pilot who had filed a previous, unfounded Hotline Complaint (based on statements attributed to Scutt) against a Colorado pilot. *Id.*

---

[10] In fact, the referenced provisions only permit suspension; they do not "require" it. *See* AR 5, 6 (attaching excerpts of Order 8000.95B, Vol. 1).

Nevertheless, Wright-Smith expressed that she would not make any such comments in the future and would participate in any corrective action the FAA deemed appropriate. AR 3, 33-34. The FAA did not respond, other than to deny the "suspension removal request." AR 4, 34.

Indeed, Wright-Smith received no further communications from the FAA (despite written and verbal requests for information about the investigation) until her designation was terminated through a DMS letter/notification on September 7, 2023. AR 14-19, 32, 34. The notification stated that her termination was "pursuant to 14 C.F.R. part 183.15(b)[11] and 49 U.S.C. §44702(d)," and listed as the "reason" for the termination:

- Lack of integrity (for example making false statements, misrepresenting information, failing to disclose pertinent information, etc.)

- Misconduct (for example, purposefully not following prescribed procedures for gain; etc.)

- Inability to work constructively with the FAA or the public (for example, failure to return phone calls, follow guidance, exhibit a cooperative attitude, etc.)

AR 14, 17. The "Justification" given was as follows:

---

[11] This subsection provides that "[a] designation made under this subpart terminates:
    (1)  Upon the written request of the representative;
    (2)  Upon the written request of the employer in any case in which the recommendation of the employer is required for the designation;
    (3)  Upon the representative being separated from the employment of the employer who recommended him or her for certification;
    (4)  Upon a finding by the Administrator that the representative has not properly performed his or her duties under the designation;
    (5) Upon the assistance of the representative being no longer needed by the Administrator; or
    (6) For any reason the Administrator considers appropriate.

During July 2023, the Albuquerque FSDO received and investigated an FAA
Safety Hotline Complaint against the DPE, and based on the comprehensive
FAA investigation, the allegations were substantiated.

AR 15, 17. The "Justification" contained no description or summary of the
"comprehensive investigation" or its results, nor a copy (or summary) of the
underlying complaint. The notification advised Wright-Smith of her right to an
administrative appeal, indicating that she should "include any and all evidence or
statements that you wish to have considered concerning this matter." AR 18.

Wright-Smith appealed the decision on September 20, 2023, attaching her
own affidavit (AR 32-34); the affidavits of repair station owners Scutt and David
Eichhorn (of AERCO), and Matthew Grote (of Highland Balloon Repair) (AR 35-
37); 17 letters from students (including FAA personnel), former supervisors, and
industry colleagues (AR 38-58); and a Memorandum of Law (AR 22-31). Wright-
Smith was forced to guess about what if any "specific reasons" the FAA relied upon
in support of its decision to terminate her designation. AR 32-34. She asserted that
the Complaint (as she understood and could recall) was false. AR 24-34. Scutt and
Eichhorn flatly denied, in sworn affidavits, that they had reported Wright-Smith
threatening them or telling them not to do business with Campbell or any other
person. AR 35-36. Wright-Smith's reputation for integrity was shown by letters from
her past FAA Managing Specialists/Inspectors, some of whom were also her
students, the President of the Balloon Federation of America (BFA), and many
others. AR 26, 38-58. The same letters show decades of Wright-Smith working well
with the FAA and the public. AR 26-27, 33, 38-40, 53. With respect to the

Complaint—Wright-Smith's first and only alleged deficiency as a DPE—Wright-Smith offered to engage in training or counseling and sought more information about the Complaint, but to no avail. AR 26-28, 33-34.

Wright-Smith also argued that the FAA's termination process was defective and unreliable, and that (among other things) it violated the FAA's own policies. AR 28-30. The FAA's failure to provide Wright-Smith with even a summary of the Albuquerque FSDO's investigation of the Complaint or the specific reasons/justifications underlying her termination failed to comply with Order 8000.95(B), Vol. 1, Ch. 9, §4(a)(1), (b)(1), (c)(1). AR 29. Wright-Smith also objected that Medina's investigation was not impartial and did not take into consideration Wright-Smith's overall performance as a DPE, as required by FAA policy. AR 29 (citing FAA Order 8000.95B, Vol. 1, Ch. 6). Wright-Smith sought reinstatement of her designation, and/or the opportunity to respond to any evidence against her. AR 30.

On October 25, 2023, Wright-Smith received a letter from an undisclosed "appeal panel" of the FAA, stating that it was "unable to find any justification to overturn the termination of your designation." AR 61. The appeal stated that this decision "is final and exhausts all appeal rights associated with the termination of your designation." *Id.* The letter disclosed no information about the members of the appeal panel or their deliberations; it is simply signed: "Federal Aviation Administration." *Id.*

**B.    The Hotline Complaint and Administrative Record**

The FAA's Administrative Record of Wright-Smith's termination reveals that the Complaint was made anonymously, but that the identity of the reporting individual was not "confidential." AR 1 (Complaint), 167-168 (Order 1070.1A, ¶6(d), (f)).[12] Investigations of Hotline Complaints are to address "all allegations identified," and require interviews of witnesses, review of supporting documentation, and contact with the reporting individual where possible "to ensure a complete understanding of the issue(s) being reported." AR 175 (Order 1070.1A, ¶9(d)(2)). Investigative Results Reports, or IRRs, are to "clearly indicate[]" if the allegations were "substantiated in full, in part, or unsubstantiated," and if substantiated, whether or not the allegations violate regulations or FAA orders, standards, or policies. AR 175 (Order 1070.1A, ¶9(d)(2)(d)). Moreover, IRRs are to include "supporting documentation." AR 168-169 (Order 1070.1A, ¶6(o)).

Wright-Smith's Managing Specialist, Medina, investigated the Complaint (along with Romero, another Inspector in the Albuquerque FSDO) and prepared the associated Memorandum (Memo), or IRR, reporting the results of the investigation. AR 9-13. The Memo indicates that, on the same day that Medina and Romero interviewed Wright-Smith, they interviewed the "Repairman" (Scutt, presumably),

---

[12] The Order defines "anonymous" calls as those where either the individual requests that his/her identity not be disclosed, or the individual provides no contact information. However, for all callers who ask that their identity not be disclosed to anyone other than the Hotline Analyst or the individuals responsible for investigating the report, the callers will be categorized as "Confidential Field Office or "Confidential Headquarters." Here, the Complaint lists its confidentiality status only as "[a]nonymous." AR 1, and the FAA Memorandum resulting from the investigation of the Complaint only states that the Complainant is "[a]nonymous," and the Memorandum nowhere states "Confidential." AR 9-13.

"Owner" (Eichhorn, presumably), and "Commercial Pilot" (Campbell). AR 11-12. The Memo records that the Repairman and Owner "admitted" the allegations in the Complaint, but the Memo does not actually state what was asked. AR 11. The Commercial Pilot/Campbell indicated that she was not present for Wright-Smith's alleged statements to the Repairman; she purportedly stated to Medina that the "Repairman shared all the details of the DPE's comments during the DPE's visit to the Repair Station, where the DPE spoke negatively about the Commercial Pilot." AR 12. The Memo also records a fourth purported conversation with an anonymous "FAA test pilot" who received training from Wright-Smith and stated that "the DPE and her personnel routinely disparaged the Commercial Pilot." *Id.*

The only information Medina records as having provided to Wright-Smith in her interview is that he "confirmed for the DPE the reason behind her suspension as an FAA DPE was an FAA Hotline Complaint alleging that she prompted the Repair Station to cease doing business with the Commercial Pilot." *Id.* Wright-Smith denied the allegation that she had told the Repair Station to cease doing business with the Commercial Pilot. *Id.* Medina records that Wright-Smith purportedly spoke disparagingly of Campbell during the interview, a fact which informed Medina's conclusions. AR 12, 13.

In the "Investigator's Conclusions" section of the Memo, Medina states that the "complaint was substantiated during the in-person investigation at the FAA Repair Station, but when asked for a written statement" (from Scutt and/or Eichhorn, who had promised to provide written statements) "the written statement did not support what was said in person." AR 13. The "written statement" is not included in

17

the administrative record. AR 9-13. Nor, indeed, is there any other documentation/evidence apart from Medina's own account of his interviews. *Id.* There is also no reference to Wright-Medina's record of performance as a DPE. *Id.* Medina concludes that "verbal accounts" of "the DPE's actions," were "consistent"—though Campbell was, by her own account, not present, and Wright-Smith denied the allegations—and "confirm[ed] that the DPE did, indeed, make inappropriate statements at the Repair Station in front of multiple individuals. The DPE did explicitly caution Repair Station personnel against servicing any balloons belonging [sic] the Commercial Pilot and her associates, insinuating potential consequences if the Repair Station failed to comply." *Id.* Medina further states that "[t]hese actions were seen as abuse of DPE Wright-Smith's authority as an FAA representative," and that "her behavior was clearly inappropriate and has the potential to compromise aviation safety and the FAA's overall reputation within the ballooning community." *Id.* The Memo's "Action Taken" section states that "[t]he ABQ FSDO has determined that DPE Elizabeth Wright-Smith will be terminated for cause." *Id.*

The "Termination Recommendation" form prepared by Medina for AO John Wensel (also the Manager of the Albuquerque FSDO) has various "Termination for Cause Reason[s]" boxes, with a directive to "check all that apply." AR 14. Medina checked the boxes for "Lack of Integrity," "Misconduct," and "Inability to work constructively with FAA or public," but not "Result of Investigation," and did not answer questions pertaining to whether the termination was the result of an investigation, or which type of investigation. *Id.* In the "Justification" section,

Medina stated that "During July 2023, the Albuquerque FSDO received and investigated an FAA Safety Hotline Complaint against the DPE, and based on the comprehensive FAA investigation, the allegations were substantiated." AR 15.

The administrative record contains Wright-Smith's appeal of the termination decision but does not document which FAA officials were members of the appeal panel, nor their deliberations and/or determinations. AR 20-61. The only document related to Wright-Smith's administrative appeal, other than the notification of appeal to AO Wensel on September 20, 2023, is the unsigned three-sentence letter notifying Wright-Smith that her appeal was denied. AR 20, 61.

## SUMMARY OF THE ARGUMENT

FAA Orders "provide procedural safeguards that are the only available protection" for DPEs whose designation can otherwise be terminated by the FAA for any reason considered appropriate by the Administrator. *Lopez*, 318 F.3d at 248. Accordingly, "scrupulous compliance with those regulations is required to avoid any injustice." *Mazaleski*, 562 F.2d at 719. Here, the FAA fell substantially short of its own procedural requirements in terminating Wright-Smith's designation, to her prejudice. First, it failed to follow its policy regarding investigation of Hotline Complaints and "initial" termination procedures for DPEs by failing to include important written documentation from key witnesses in the report of its investigation and failing to consider Wright-Smith's overall performance as a DPE. Second, it failed to provide Wright-Smith the specific reason for her termination. Third, it failed to follow administrative appeal requirements for DPEs or, in the alternative, to afford Wright-Smith the benefit of the investigation and "termination for cause

panel" review processes afforded by FAA Order 8000.95C. Wright-Smith was prejudiced by these failures because they created a deficient record of the underlying investigation; deprived Wright-Smith of the information necessary to effectively prosecute her administrative appeal; and deprived her of a panel review process at any stage. Accordingly, the FAA's decision should be reversed and the matter remanded to the agency, to afford Wright-Smith the benefits of the agency's procedural requirements. *Cf. Mazaleski*, 562 F.2d at 722; *see Lopez*, 318 F.3d at 248; *Bradshaw*, 8 F.4th at 1222-23; *Vitarelli*, 359 U.S. at 545.

Whether the FAA fell substantially short of its own procedural requirements, to Wright-Smith's prejudice, is the relevant standard of review on each argument/contention presented herein. Fed. R. App. P. 28(a)(8). Such standard accounts for the broader standard of review presuming agency actions to be valid and placing the burden on the party challenging the agency action to overcome that presumption. *E.g.*, *Mazaleski*, 562 F.2d at 717 n. 38, 719 (explaining that "appellant has met his burden by referring to documents in the record on appeal that indisputably establish that the agency did violate its own regulations in at least one material respect," and concluding that such violation was prejudicial to appellant); *see Lopez*, 318 F.3d at 248.

## ARGUMENT

## I.   The FAA Failed To Properly Investigate The Complaint Underlying The Termination Of Wright-Smith's Designation As A Pilot Examiner.

The FAA failed to follow its own policies regarding documentation of evidence and consideration of a DPE's overall performance when it investigated the

Complaint against Wright-Smith.[13] Managing Specialists are required to document their oversight of DPEs and, with respect to investigations of Hotline Complaints in particular, are required to include in the IRR supporting documentation—e.g., evidence gathered in the course of the investigation. AR 88 (Order 8000.95B, Vol. 1, Ch. 6, ¶3), AR 152 (Order 8000.95B, Vol. 3, Ch. 6, ¶3(d)), AR 168 (Order 1070.1A, ¶6(o)). Here, Medina concluded his Memo/IRR by stating that his in-person" investigation substantiated the complaint, but that the written statement(s) of the Repairman/Owner "did not support what was said in person." AR 13. Yet, *Medina did not attach any written statements to his Memo/IRR*. AR 9-13. This failure is a glaring one. Medina does not actually say *how* the written statement(s) failed to support what was said in person—even though what was said in person is the basis for Medina's conclusion that the Complaint is "substantiated." *Id.* Moreover, on administrative review, statements provided *to the FAA before termination* may have been given greater weight than the affidavits of Scutt and Eichhorn (dated September 19, 2023), which were later attached to Wright-Smith's appeal. Finally, these statements would constitute the only verifiable aspect of Medina's IRR/Termination Recommendation, since not one person interviewed is actually named, and there is no other supporting documentation/evidence attached.

---

[13] The FAA's failure to consider Wright-Smith's overall performance as a DPE was raised in Wright-Smith's administrative appeal. AR 22-23, 28-29. Arguments concerning the investigation were not raised, since Wright-Smith did not have access to information about the investigation prior to the filing of the Administrative Record in this case. *See* 49 U.S.C. § 46110(d) (if there was a "reasonable ground for not making the objection in the [FAA] proceeding," the Court may review such objection/argument on petition for review); *see also Lowman v. Fed. Aviation Admin.*, 83 F.4th 1345, 1357 (11th Cir. 2023).

Additionally, the IRR and Termination Recommendation contain no acknowledgment of Wright-Smith's overall performance: in particular, her ten years as a DPE without a single deficiency. AR 9-15. Oversight is intended to facilitate an overall assessment of a designee's performance. AR 86 (FAA Order 8000.95B, Vol. 1, Ch. 6, ¶2(a)(c) (explaining that "[o]versight is not merely an isolated event" and emphasizing that oversight results "should be considered in total to provide a high-level perspective of a designee's performance over time."). Medina "substantiated" a second-hand, anonymous Complaint that *identifies itself as gossip* and initiated termination of Wright-Smith without even considering Wright-Smith's exemplary record as a DPE. *Id.*, AR 1. The failure of Medina and AO Wensel, who approved the IRR and termination decision, to document important written statements from witnesses or to consider Wright-Smith's overall performance compromised the investigation underlying Wright-Smith's termination and thwarted meaningful appeal panel review by other FAA officials, to Wright-Smith's prejudice. AR 102 (Order 8000.95B, Vol. 1, Ch. 11); AR 211 (FAA Order 8000.95C, Vol. 1, Ch. 11) AR 273 (FAA Order 8000.95, Vol. 3, Ch. 9, ¶5).[14]

## II. The FAA Failed To Provide The Specific Reason For Terminating Wright-Smith's Designation On September 7, 2023.

The FAA's failure to provide the specific reasons for Wright-Smith's September 7, 2023, termination, contrary to FAA Order, prejudiced her by precluding her from presenting an effective case in her administrative appeal or on

---

[14] Notably, the Memo/IRR also failed to cite the FAA orders, regulations, or policies that were purportedly violated, and failed to indicate whether the complainant was interviewed. AR 13, 175 (Order 1070.1A, ¶9(d)(2)(d)).

panel review. AR 102 (Order 8000.95B, Vol. 1, Ch. 11, ¶1).[15] The FAA was required to "formally document" the termination decision in DMS,[16] "to include the specific reason(s) for termination." AR 97 (Order 8000.95B, Vol. 1, Ch. 9, ¶4(a), (b)). While Courts have lamented the difficulty of defining similar terms in prior FAA policies, *see Bradshaw*, 8 F.4th at 1223 ("'[A]s specifically as possible,' is, ironically enough, not very specific."), "*specific* reason" must mean more than merely quoting the example "reasons" listed in the FAA Order. Indeed, this interpretation is supported by the FAA's Termination Recommendation form and the text of the example "for cause" reasons. AR 14-15; *see Bradshaw*, 8 F.4th at 1223 (utilizing the FAA's then-applicable termination letter template to determine whether the FAA met its procedural requirements). The Termination Recommendation form contains "Termination for Cause Reasons," and the Managing Specialist is to "select all that apply" by checking a box next to a given "reason." AR 14. These are identical to the example for-cause termination reasons listed in Order 8000.95B, Vol. 1, Ch. 9, ¶4(c)(1), except for the addition of a box for "Result of Investigation." AR 14. This area of the form is followed (after more questions relating to investigations) by a section for the Managing Specialist to state the "Justification" for termination. AR 15. It is followed by an explanation that "[t]hese comments will be sent to the

---

[15] This argument was raised in Wright-Smith's administrative appeal. AR23, 28-29.
[16] Designees now receive suspension and initial termination notices through DMS, as can be seen from the administrative record. AR16-19. Accordingly, the requirement that the "specific reason" for an initial termination decision be documented in DMS is for the benefit of the designee as well as the agency.

designee for termination," whereas a subsequent section for "Internal FAA Comments" is listed as "Optional." AR 14-15.

It is apparent that Managing Specialists utilizing this form are to select among the "reasons" listed on the Termination Recommendation form, and then to offer a *specific* justification for those selections in the "Justification" section of the form, *which is not optional*. AR 14-15. This interpretation is reinforced in several ways. First, some of the "reasons" listed are so vague ("Misconduct" or "Result of Investigation") that no one would characterize them as "specific" absent further information. AR 14. Indeed, if all that were required for terminating a designee were the checking of the "reasons" boxes, it would be virtually impossible for a designee to "provide … evidence to support their case" in a subsequent appeal, AR 102 (Order 8000.95B, Vol. 1, Ch. 11, ¶1), since the designee would not be privy to the "case" that supported the FAA's termination decision in the first instance. [17] Furthermore, the "reasons" are followed by parenthetical examples (e.g., "Misconduct (for example, purposefully not following prescribed procedures for gain, etc)"). AR 14. The purpose of such examples is to show the sort of "specific" reason which should be included in the "Justification" area of the form. AR 14-15.

Here, on the Termination Recommendation form, Medina checked the boxes for "Lack of integrity," "Misconduct," and "Inability to work constructively with

---

[17] The statutory and regulatory provisions cited in the termination notice afforded Wright-Smith no additional insight, since 49 U.S.C. §44702(d) only conveys the Administrator's authority to rescind a delegation "at any time for any reason," and 14 C.F.R. §183.15(b) lists six possible bases for termination, the last of which is "any reason the Administrator considers appropriate." AR 17.

FAA or public." AR 14. In the "Justification" area of the form, however, Medina gave no specifics, other than to state that, "[d]uring July 2023, the Albuquerque FSDO received and investigated an FAA Safety Hotline Complaint against the DPE, and based on the comprehensive FAA investigation, the allegations were substantiated." AR 15. Of course, because Wright-Smith was never given a written copy of the Complaint, or any written summary or explanation of the allegations about which the FAA was concerned, or any information about the investigation whatsoever, this "Justification" shed little light on why Wright-Smith was terminated. AR 32-34. Moreover, the Complaint itself is 19 lines long, and contains not just the second-hand report that Wright-Smith threatened a balloon repair station not to do business with Campbell, but also that Wright-Smith told the station not to do business with "anyone else who she hates," that Wright-Smith was "making the whole balloon world look bad and unsafe," etc. AR 1. The "Justification" that this 19-line Complaint was "substantiated" was therefore particularly insufficient to inform Wright-Smith about the specific reasons for her termination.

Courts have held that, where the meaningful administrative review to which a petitioner is entitled was "vitiated by [an agency's] failure to notify" the petitioner, "as required, of the specific grounds for …termination," such failure is not a "de minimis or harmless violation of [the agency's] own regulations." *Mazaleski*, 562 F.2d at 718-719. A petitioner cannot "be expected to prosecute [an administrative] appeal effectively without knowledge of the precise grounds specified by the [agency]." *Id.* at 719. Here, the failure to apprise Wright-Smith of the specific reasons for her termination, as required by FAA Order, prejudiced her by

compromising her ability to present an effective case in her administrative appeal or on panel review. AR 102 (Order 8000.95B, Vol. 1, Ch. 11, ¶1). Indeed, it is apparent from Wright-Smith's appeal that she was uncertain which allegations or issues were the bases for her termination. For that reason, Wright-Smith discussed (for example) another balloon repair station, Highland Balloon Repair and Wright-Smith's flight school inspections. AR 32-34, 37. She was also unable to effectively address much of the information of concern in the Memo/IRR (e.g., Wright-Smith's purported disparagement of Campbell during Medina's interview of Wright-Smith, the "statement" of one of Wright-Smith's students, the allegation that members of the public were present for the conversation with Scutt, etc.). AR 9-13, 22-34.

The contrast between Wright-Smith's termination and cases where the specific termination reasons given to designees *met* the requirements of the applicable FAA Orders (which previously contained a similar requirement that reasons for termination be stated "as specifically as possible") is also stark. In *Bradshaw*, the FAA's termination notice stated:

> Your designation is being terminated for not performing your duties under your designation. Specifically, on June 12, 2018, you administered an instrument rating practical test during which you failed to uphold the Instrument Rating – Airplane, Airman Certification Standards (FAA-S-ACS-8B) as required by 14 CFR § 61.43(a) and FAA Order 8900.2B, Chapter 5, Paragraph 1b and Chapter 7, Section 2, Paragraph 6. Furthermore, during the aforementioned practical test, and while operating under Instrumental Flight Rules (IFR), you permitted the applicant to deviate from an Air Traffic Control (ATC) clearance contrary to FAA Order 8900.2B, Chapter 7, Section 2, Paragraph 6; and 14 CFR § 91.123(a). Additionally, throughout the flight, you were heard conducting numerous radio transmissions that draws into question whether or not you adequately tested the applicant's single pilot resource management (SRM) skills.

26

8 F.4th at 1221, 1223. Similarly, in *Sheble*, the termination letter stated, in pertinent

part:

> Your designation is being terminated for not performing your duties under
> your designation in accordance with current FAA guidance and policy. (FAA
> Order 8900.2, Chapter 7 and the current Practical Test Standards for the test
> being administered)[.] During the November 26, 2012, [SEED] inspection it
> was determined that:
> 1. Required elements of the Practical Test Standards (PTS) were omitted
> during testing, including special emphasis items.
> 2. Testing was not conducted beyond the rote level.
> 3. Numerous PTS tasks used in evaluating the applicant were not applicable
> to the practical test being administered.
> 4. Pretest briefing items were omitted.
> 5. Incorrect answers were accepted without objections or further testing.

755 F.3d at 957. The dissimilarity between these termination notices and Wright-

Smith's notice, enumerating no specific reasons, is obvious. Thus, again, the FAA's

termination of Wright-Smith violated its own policy set forth in Order 8000.95B,

Vol. 1, Ch. 9, ¶4(a), (b), *see* AR 97, and this violation was prejudicial to Wright-

Smith in that it vitiated her right to a meaningful administrative review process.

## III. The FAA Failed To Follow Appellate Review Or Termination For Cause Review Panel Procedures.

The FAA failed to follow its own required procedures for panel review of a

decision finally terminating Wright-Smith's designation. While the relevant FAA

Order was changed during the pendency of Wright-Smith's administrative appeal,

the FAA was required to follow *either* the prior appeal process—which the FAA

purported to do, and which had already begun—*or* to comply with the new panel

review process. The FAA complied with neither Order.[18] Such failure prejudiced

---

[18] To the extent the FAA supplements the Administrative Record to make a showing
of compliance with respect to panel review requirements, such belated

Wright-Smith by depriving her of two meaningful benefits: (1) additional review of the termination decision and the underlying investigation or termination process, and (2) review by a panel including at least two representatives other than Wright-Smith's AO from the Albuquerque FSDO.[19]

Under Order 8000.95B, Vol. 1, Ch. 11, ¶¶1, 3(b), Wright-Smith was entitled to appeal her termination to a panel comprised of three FAA officials who were not involved in the original termination decision. AR 102, AR 164 (Order 8000.95B, Vol. 3, Ch. 11, ¶2(a)(1)). "All appeal activities" were to be recorded and processed in DMS; moreover, the POC was to ensure that Wright-Smith's file was reviewed, and that the panel's deliberations and decision were documented. AR 102-103 (Order 8000.95B, Vol. 1, Ch. 11, ¶¶2(b), 3(b), 4(a)-(c)), AR 163 (Order 8000.95B, Vol. 3, Ch. 11, ¶2(a)). On September 20, 2023, Wright-Smith filed her administrative appeal and AO Wensel received a notification from the DMS System Administrator directing him to assign an appeal panel. AR 20. Although FAA Order 8000.95C went into effect on September 21, 2023 (the next day), the FAA proceeded under the administrative appeal process of Order 8000.95B, presumably because Wright-Smith's termination was not final and her appeal had already been filed. AR 177. An anonymous, so-called "appeal panel" rendered its final decision on Wright-Smith's termination on October 25, 2023. AR 61. But the Administrative Record

---

supplementation would be yet another after-the-fact, prejudicially timed explanation for the decision to terminate Wright-Smith's designation.

[19] Wright-Smith did not raise objections to the appeal process in her administrative appeal, for the reason that she did not know the agency would fail to adhere to appeal panel or termination panel review requirements. 49 U.S.C. § 46110(d).

contains no "appeal activities"—there is no DMS documentation showing the members of the appeal panel, and therefore no showing of compliance with the requirements for the members of that panel, nor is there any documentation regarding their deliberations. AR 20-61. There is only a three-sentence letter to Wright-Smith finding no "justification to overturn the termination of designation," signed by the "Federal Aviation Administration." AR 61.

Nor is there any evidence that the FAA complied with the requirements of Order 8000.95C. That is, the FAA could theoretically have notified Wright-Smith that it deemed her appeal to be a response to a possible termination for cause action, AR 211 (Order FAA Order 8000.95C, Vol. 1, Ch. 9, ¶4(e)), and constituted a "termination for cause review panel" to advise AO Wensel on a final termination decision. *Id.*; AR 211 (Order FAA Order 8000.95C, Vol. 1, Ch. 9, ¶4(f)). For Wright-Smith, that panel would have consisted of AO Wensel, an AFS-600 representative (a Regulatory Support Division member of the Flight Standards Service), and an AFS-800 representative (General Aviation and Commercial Division member of the Flight Standards Service). *Id.*; AR 273 (Order FAA Order 8000.95C, Vol. 3, Ch. 9, ¶5). Nothing in the record shows that this was done, much less that such a panel made a termination recommendation to AO Wensel, based on a substantive review determining whether the underlying investigation was thorough and whether termination was justified. AR 20-61; AR 211-212 (Order FAA Order 8000.95C, Vol. 1, Ch. 9, ¶4(f)).

The FAA's failure to comply with *either* Order's panel review procedures deprived Wright-Smith of additional review by the required FAA officials. *See*

*Bradshaw*, 8 F.4th at 1223 (11th Cir. 2021) (considering whether the FAA complied with its own appeal panel review requirements for pilot examiner designee under prior FAA Order). The prejudice to Wright-Smith from this failure is clear: it eliminated a step at which review and input from officials other than AO Wensel may have altered the termination decision. Such review and input was particularly significant here, where the underlying investigation and termination decision were defective and did not comply with the requirements of either Order 8000.95B or 8000.95C.[20] The FAA is bound by the administrative review provisions that the agency itself has promulgated, and here, such review was the last available procedural protection for Wright-Smith in an already noncompliant and prejudicial termination process. *See Lopez*, 318 F.3d at 248.

## CONCLUSION

For the foregoing reasons, the Court should reverse the FAA's final decision terminating Wright-Smith's designation as a pilot examiner, reinstate her pilot examiner designation, and direct the FAA to proceed in accordance with its own Orders.

---

[20] The FAA's failure to comply with the investigation and termination requirements of Order 8000.95B is outlined above. For the same reason, the FAA also failed to meet the "minimum" investigation requirements that the Managing Specialist is to undertake under Order 8000.95C—such as collection of evidence and "review of the designee's record and relevant background information in the appropriate FAA database." AR 202 (Order 8000.95C, Vol. 1, Ch. 6, §4(c)(2)).

## STATEMENT REGARDING ORAL ARGUMENT

Wright-Smith requests oral argument based on the respectful contention that this case concerns issues of great significance to FAA designees such as Petitioner—issues on which this Circuit lacks well-developed law.

DATED this 9th day of April 2024

Respectfully submitted,

BUTT, THORNTON & BAEHR, P.C.

By: */s/ Sarah L. Shore*
    Sarah L. Shore
    P.O. Box 3170
    Albuquerque, NM  87190-3170
    (505) 884-0777
    sshore@btblaw.com
    *Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of this Opening Brief of Petitioner to be served electronically to the following through the Court's ECF system on this 9th day of April, 2024:

Maxwell A. Baldi
Abby Christine Wright
Civil Division, Room 7513
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C.  20530
(202) 532-0211
maxwell.baldi@usdoj.gov
Abby.Wright@usdoj.gov
*Attorneys for Respondent Federal Aviation Administration*

*/s/ Sarah L. Shore*
Sarah L. Shore



U.S. Department
of Transportation
**Federal Aviation
Administration**

Flight Standards District Office
1601 Randolph Road, S.E., Suite 200N
Albuquerque, New Mexico 87106
(505) 764-1200, FAX (505) 764-1233

October 25, 2023

Elizabeth Wright-Smith
5001 Crownpoint Court, N.W.
Albuquerque, New Mexico 87120

Based on a review of your termination for cause, the appeal panel was unable to find any justification to overturn the termination of your designation. Therefore, the appeal panel has upheld the original decision to terminate your designation.

Please be advised that this decision is final and exhausts all appeal rights associated with the termination of your designation.

Federal Aviation Administration

**AR 61**

**Attachment 1**



Home / All Visitors / Aviation Industry / Designees & Delegations / About the Designee Program



Overview

About the Designee Program

Individual Designees

Aviation Medical Examiner (AME)

Delegated Organizations

Designee Management System (DMS)

Find a Designee

# About the FAA Designee Program

- What is a designee?
- How are we allowed to delegate?
- Why do we need designees?
- Where do we get designees?
- What types of designees are there?
- What do we delegate?

## Learn More About

- Individual Designees
- Delegated Organizations
- History of the FAA Designee Program

**What is a designee?**

A private person or organization designated to act as a representative of the Administrator.

Back to Top

**How are we allowed to delegate?**

Public law allows the FAA to leverage its limited resources through delegation. Title 49 of the United States Code (49 USC) 44702(d),says the FAA may delegate to a qualified private person a matter related to issuing certificates, or related to the examination, testing, and inspection necessary to issue a certificate on behalf of the FAA Administrator as authorized by statute to issue under 49 USC 44702(a).

Back to Top

**Why do we need designees?**

The FAA doesn't have the resources to do all the certification activities necessary to keep up with an expanding aviation industry. Using designees for routine certification tasks allows the FAA to focus its limited resources on safety critical certification issues as well as new and novel technologies.

Back to Top

**Attachment 2**