**[ORAL ARGUMENT NOT REQUESTED]**

**No. 23-9608**

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————

ELIZABETH WRIGHT-SMITH,

Petitioner,

v.

FEDERAL AVIATION ADMINISTRATION,

Respondent.

———————————

On Petition for Review of
an Order of the Federal Aviation Administration

———————————

**BRIEF FOR RESPONDENT**

———————————

BRIAN M. BOYNTON
 *Principal Deputy Assistant*
 *Attorney General*

ABBY C. WRIGHT
MAXWELL A. BALDI
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7513*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 532-0211*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

STATEMENT OF RELATED APPEALS ...................................................................... vi

GLOSSARY ................................................................................................................... vii

STATEMENT OF JURISDICTION ................................................................................ 1

STATEMENT OF THE ISSUE ........................................................................................ 1

PERTINENT STATUTES AND REGULATIONS........................................................... 1

STATEMENT OF THE CASE .......................................................................................... 1

     A.    Statutory and Regulatory Background .......................................................... 1

     B.    Factual Background.......................................................................................... 6

SUMMARY OF ARGUMENT ......................................................................................... 9

STANDARD OF REVIEW.............................................................................................. 10

ARGUMENT .................................................................................................................... 11

WRIGHT-SMITH PROVIDES NO BASIS FOR SETTING ASIDE THE
AGENCY'S REVOCATION DECISION........................................................................ 11

     A.    The FAA substantially complied with all applicable requirements
          to document its revocation of Wright-Smith's designation. .................... 11

     B.    The FAA substantially complied with all procedural requirements
          governing Wright-Smith's administrative appeal...................................... 19

CONCLUSION ................................................................................................................ 21

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** <span style="float:right">**Page(s)**</span>

*American Farm Lines v. Black Ball Freight Serv.*,
397 U.S. 532 (1970) ................................................................. 11

*Barrie v. FAA*,
16 F. App'x 930 (10th Cir. 2001) ....................................... 17

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988) ................................................................. 2

*Bradshaw v. FAA*,
8 F.4th 1215 (11th Cir. 2021) ............................. 10, 11, 12, 13

*Diaz v. Secretary of Health & Human Servs.*,
898 F.2d 774 (10th Cir. 1990) ........................................... 20

*Lopez v. FAA*,
318 F.3d 242 (D.C. Cir. 2003) .................................. 10, 11, 17

*NLRB v. Osborn Transp., Inc.*,
589 F.2d 1275 (5th Cir. 1979) ........................................... 18

*Orlandi v. Nolen*,
No. 22-1269, 2024 WL 244218 (D.C. Cir. Jan. 23, 2024) ...... 18

*San Juan Citizens All. v. Stiles*,
654 F.3d 1038 (10th Cir. 2011) ......................................... 20

*Sheble v. Huerta*,
755 F.3d 954 (D.C. Cir. 2014) .................................... 1, 12, 13

*Shinseki v. Sanders*,
556 U.S. 396 (2009) .............................................................. 10

*Stanko v. Davis*,
617 F.3d 1262 (10th Cir. 2010) ......................................... 20

*Steenholdt v. FAA*,
　314 F.3d 633 (D.C. Cir. 2003) ........................................................................ 11

**Statutes:**

49 U.S.C. § 44702(d)(1)(A) ................................................................................ 2

49 U.S.C. § 44702(d)(2) ...................................................................................... 3

49 U.S.C. § 44703(a) ........................................................................................... 1

49 U.S.C. § 44809(a) ........................................................................................... 2

49 U.S.C. § 46101(a)(1) ................................................................................ 5, 17

49 U.S.C. § 46101(a)(2) ...................................................................................... 5

49 U.S.C. § 46110 ............................................................................................... 1

49 U.S.C. § 46110(a) ........................................................................................... 1

**Regulations:**

14 C.F.R. § 13.2 ............................................................................................. 5, 17

14 C.F.R. § 13.5 .................................................................................................. 5

14 C.F.R. § 61.3 .................................................................................................. 2

14 C.F.R. § 61.5(b)(1)(iv) ................................................................................... 2

14 C.F.R. § 61.63(a) ............................................................................................ 2

14 C.F.R. § 183.15(b)(6) ..................................................................................... 3

14 C.F.R. § 183.23 .............................................................................................. 2

**Other Authorities:**

FAA, Order 8000.72, *FAA Integrated Oversight Policy*, app. A, ¶ 32, at A-4 (June 28,
　2017), https://perma.cc/7BZW-FCQ6 ........................................................ 14–15

FAA, Order 8900.1, vol. 13, ch. 5, § 3, at 5 (change 95, June 7, 2010), https://perma.cc/FA9W-P5SU) ................................................................................... 13

## STATEMENT OF RELATED APPEALS
## PURSUANT TO TENTH CIRCUIT RULE 28.2(C)(3)

Counsel for respondent is not aware of any prior or related appeals or petitions for review.

# GLOSSARY

AR                              Administrative Record

FAA                             Federal Aviation Administration

## STATEMENT OF JURISDICTION

The Federal Aviation Administration (FAA) terminated petitioner's designation as a pilot examiner on September 7, 2023, AR-17, and issued a final decision upholding that termination on October 25, 2023, AR-61. Petitioner timely petitioned for review on December 21, 2023. AR-62; *see* 49 U.S.C. § 46110(a). This Court has jurisdiction to adjudicate petitions for review of final FAA decisions under 49 U.S.C. § 46110.

## STATEMENT OF THE ISSUE

The FAA revoked petitioner's designation as a pilot examiner based on findings that she engaged in misconduct and demonstrated a lack of integrity and an inability to work constructively with the FAA or the public.

The question presented is whether the FAA's revocation should be set aside for failure to substantially comply with governing procedures.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.  Statutory and Regulatory Background

**1.** The Federal Aviation Act authorizes the Administrator of the FAA to issue pilot certificates to qualified individuals, 49 U.S.C. § 44703(a), "akin to a driver's license for pilots," *Sheble v. Huerta*, 755 F.3d 954, 955 (D.C. Cir. 2014). To lawfully operate most aircraft, including lighter-than-air aircraft like balloons, a pilot must

obtain a certificate.  14 C.F.R. §§ 61.3, 61.5(b)(1)(iv), 61.63(a).  *But see, e.g.*, 49 U.S.C. § 44809(a) (excluding certain recreational operations of small, unmanned aircraft from the requirement for pilot certification).

a.  Pursuant to the Act, the FAA may "delegate . . . the examination, testing, and inspection necessary to issue" such certificates to "qualified private person[s]," 49 U.S.C. § 44702(d)(1)(A), called designated pilot examiners, 14 C.F.R. § 183.23.  The FAA's use of the designee system allows the agency to effectively deploy its limited resources.  *See* AR-74–77, FAA Order 8000.95B, vol. 1, ch. 1, § 2 (effective Apr. 12, 2022).  Designations are limited to a renewable one-year term.  AR-83, FAA Order 8000.95B, vol. 1, ch. 4, ¶ 3; *see also* AR-94–95, FAA Order 8000.95B, vol. 1, ch. 8 (renewal procedures).

The policies and procedures for managing designees in effect at the times relevant to this petition for review are contained in the FAA's Designee Management Policy.  *See* AR-66–164, FAA Order 8000.95B.[1]  As the FAA explains, "[d]esignation is a privilege, not a right."  AR-75, FAA Order 8000.95B, vol. 1, ch. 1, § 2, ¶ 3(a).  "At all times, [a] designee . . . must: . . . [h]ave a high degree of integrity, even when not

---

[1] One day after petitioner Elizabeth Wright-Smith filed her administrative appeal in this case, an updated Designee Management Policy took effect. *See* AR-177–275, FAA Order 8000.95C (effective Sept. 21, 2023); *see also* AR-20 (administrative appeal submitted Sept. 20, 2023).  The FAA adjudicated the appeal under the earlier policy (FAA Order 8000.95B) because that policy was in effect when Wright-Smith initiated her appeal.  *Cf. Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208–09 (1988) (laws and regulations are presumed not to have retroactive effect).

exercising their delegated authority; . . . [h]ave a cooperative attitude"; and "[h]ave a

reputation for . . . professionalism."  AR-79, FAA Order 8000.95B, vol. 1, ch. 2,

¶ 3(b)(1)–(2), (5).  A managing specialist interacts with and oversees each designee,

while an appointing official is responsible for issuing and revoking certificates of

designation.  *See* AR-115, FAA Order 8000.95B, vol. 3, ch. 1, § 1, ¶ 1(c), (e).

Designees are managed through the agency's designee management system, "a web-

based tool designed to standardize the management of designees."  AR-72, FAA

Order 8000.95B, vol. 1, ch. 1, § 1, ¶ 1.

 **b.**  In allowing the FAA to use designated pilot examiners, Congress also

provided that "[t]he Administrator may rescind a delegation . . . at any time for any

reason the Administrator considers appropriate."  49 U.S.C. § 44702(d)(2);

*accord* 14 C.F.R. § 183.15(b)(6).  Termination may be for cause or for other reasons

related to the needs of the agency.  AR-97–99, FAA Order 8000.95B, vol. 1, ch. 9,

¶ 4(c).  Reasons for termination for cause include poor performance, "[l]ack of

integrity," "[m]isconduct," "[i]nability to work constructively with the FAA or public,"

and "[a]ny other reason that the . . . Administrator considers appropriate."  AR-98,

FAA Order 8000.95B, vol. 1, ch. 9, ¶ 4(c)(1)(a)–(f).  "Designees who are performing

poorly, who are representing the Administrator in a negative manner, or who require

excessive resources to manage must have their designations terminated to ensure

continued effectiveness of the designee system."  AR-97, FAA Order 8000.95B,

vol. 1, ch. 9, ¶ 4.  A designee terminated for cause may not reapply for designation.
AR-97, FAA Order 8000.95B, vol. 1, ch. 9, ¶ 4(c).

When the FAA believes that termination is warranted, a designee's managing
specialist initiates the termination process in the designee management system.
AR-97, FAA Order 8000.95B, vol. 1, ch. 9, ¶ 4(a)(3).  The designee's appointing
official accepts or rejects the managing specialist's termination recommendation.
AR-97, FAA Order 8000.95B, vol. 1, ch. 9, ¶ 4(b)(1).  "The FAA must document
termination decisions in [the designee management system] and include the specific
reason(s) for the termination."  AR-97, FAA Order 8000.95B, vol. 1, ch. 9, ¶ 4(a)(1).

If the FAA terminates a designation for cause, the designee may
administratively appeal the "termination for cause process."  AR-102, FAA Order
8000.95B, vol. 1, ch. 11, ¶ 2(b).  The designee has the opportunity to submit
additional evidence when she initiates her appeal.  AR-102, FAA Order 8000.95B,
vol. 1, ch. 11, ¶ 2(a).  A panel of three FAA officials who were not involved in the
original decision considers the appeal.  AR-163, FAA Order 8000.95B, vol. 3, ch. 11,
¶ 2(a)(1).  For a pilot examiner, the panel consists of a regulatory-support-division
(AFS-600) representative, a general-aviation-and-commercial-division (AFS-800)
representative, and a flight-standards office manager or front-line manager.  AR-163,
FAA Order 8000.95B, vol. 3, ch. 11, ¶ 2(a)(1).  The panel's duties are to "[r]eview the
appealing designee file stored in [the designee management system]," contact relevant
FAA officials "for additional information or clarification," and "[d]ocument

4

deliberations and outcomes in [the designee management system]." AR-102–03.

FAA Order 8000.95B, vol. 1, ch. 11, ¶ 4(a)–(c); *see also* AR-163, FAA Order 8000.95B,

vol. 3, ch. 11, ¶¶ 2(a)(3)–(4), 5.  The appeal panel may uphold or overturn the

termination designation.  AR-102, FAA Order 8000.95B, vol. 1, ch. 11, ¶ 2(c).  "The

appeal panel's decision is final."  AR-163, FAA Order 8000.95B, vol. 3, ch. 11,

¶ 2(a)(3).

    **2.**  By statute, any person may report violations of certain FAA regulations

(including those governing designees) to the Administrator.  49 U.S.C. § 46101(a)(1).

The Administrator is directed to investigate all complaints that raise "reasonable

ground[s]" for investigation.  *Id.* § 46101(a)(1), (2).  The FAA accepts both informal

reports and formal written complaints.  14 C.F.R. §§ 13.2 (reports), 13.5 (formal

complaints).

    One way the FAA accepts informal reports is through its hotline program.

*See* AR-165–76, FAA Order 1070.1A (effective Aug. 22, 2014).  Members of the

public, persons involved in the aviation industry, and FAA employees may report

violations of FAA rules by phone, email, or postal mail.  AR-172, FAA Order

1070.1A, § 9(a)(1).  Reporting individuals may identify themselves openly, request

confidentiality, or decline to identify themselves.  AR-172, FAA Order 1070.1A,

§ 9(a)(2).

    The hotline policy contemplates that the FAA field office responsible for

investigating a hotline complaint will investigate the allegations, "review[] any

supporting documentation provided by the reporting individual," interview witnesses, and prepare an investigative results report. AR-175, Order 1070.1A, ¶ 9(d)(2)(a). The report consists of a "summary report of the investigation results in memorandum format . . . along with supporting documentation." AR-168, Order 1070.1A, ¶ 6(o). "Supporting documentation may include a grid copy of the memo . . . and details of the investigation (i.e., program tracking and reporting subsystem reports, enforcement information system numbers, emails, reports of investigation, etc.) used in the preparation of the [report]."[2] AR-169, Order 1070.1A, ¶ 6(o).

The policy provides some procedural protections for complainants, including a right to receive the investigative results report and to administratively appeal inadequately addressed concerns. AR-172, 176, FAA Order 1070.1A, § 9(a)(2), (g)(2), (f).

### B. Factual Background

**1.** Petitioner Elizabeth Wright-Smith is a balloon pilot. AR-3. From 2013 to 2023, she served as a designated pilot examiner in Albuquerque, NM. AR-3. In July 2023, the FAA received an anonymous hotline complaint alleging that Wright-Smith threatened an Albuquerque balloon repair station in an effort to convince the station not to repair or inspect the balloons of one of her commercial competitors. AR-1.

---

[2] In FAA parlance, "grid copy" refers to a draft copy of a document with a grid printed along the side to provide space for relevant officials to indicate their approval.

The complaint asserted that Wright-Smith's behavior made the FAA "and the whole balloon world look bad and unsafe." AR-1.

Two aviation-safety inspectors from the FAA's Albuquerque field office, including Wright-Smith's managing specialist, Gary Medina, investigated the allegations. AR-10–12. The investigators interviewed a repairman, Jared Scutt, and one of the owners of the repair station, David Eichhorn. AR-13. Both witnesses reported that Wright-Smith visited the repair station and "made statements as alleged in the Hotline Complaint." AR-11. Eichhorn told the investigators that Wright-Smith made the statements "in front of a group of people." AR-11. The investigators also interviewed Wright-Smith's competitor, who told them that she had spoken to Scutt. AR-12. According to the competitor, Scutt confirmed that Wright-Smith spoke negatively about the competitor at the repair station. AR-12.

The investigators then interviewed Wright-Smith. AR-12. During the interview, Wright-Smith initially "denied the[] allegations and stated that she had never spoken negatively about the [her competitor] with the [r]epair [s]tation or anyone else in the balloon community." AR-12. Wright-Smith, however, also "expressed strong negative sentiments about [her competitor], referring to her as an 'evil bitch, lying, conniving' person 'who did not belong in ballooning.'" AR-12. Wright-Smith admitted that she had a "private conversation" about her competitor at the repair station. AR-12 (emphasis and quotation marks omitted). She denied

making negative remarks about her competitor "elsewhere in the balloon community." AR-12.

The investigators concluded that the "complaint was substantiated." AR-13. The investigators credited consistent verbal statements from all the witnesses they interviewed confirming that Wright-Smith made "inappropriate statements" at the repair station about her competitor, even though some witnesses later provided inconsistent written statements. AR-13. The investigators also relied on Wright-Smith's acknowledgement that she discussed her competitor with Eichhorn and the disparaging statements she made about her competitor during her interview. AR-13. The investigators determined that Wright-Smith's inappropriate behavior constituted an abuse of her authority as an FAA representative and had "the potential to compromise aviation safety and the FAA's overall reputation within in the ballooning community." AR-13.

Based on the investigation, the FAA terminated Wright-Smith's designation. AR-17.

**2.** Wright-Smith administratively appealed her termination. AR-20–60. She contested the factual basis for her termination as well as the procedures the FAA followed. AR-22–37. Wright-Smith submitted her own affidavit, in which she denied making the threat alleged in the hotline complaint but acknowledged speaking to Scutt about her competitor. *See* AR-32–34. She also submitted affidavits from Eichhorn and Scutt, in which they denied that Wright-Smith had "threatened [the repair

station]'s business if [it] continued to do business with [her competitor]." AR-35–36. And Wright-Smith submitted letters of support from others in the ballooning community. AR-38–60.

An appeal panel composed of a regulatory-support-division (AFS-600) representative, a general-aviation-and-commercial-division (AFS-800) representative, and a flight-standards office manager reviewed Wright-Smith's termination-for-cause process. AR-276. The panel reviewed the record and consulted with Wright-Smith's appointing official. AR-276. Upon review, the panel "was unable to find any justification to overturn the termination of [her] designation." AR-61. The appeal panel, therefore, upheld the termination. AR-61. The appeal panel rendered that decision within 45 days of Wright-Smith's appeal and notified Wright-Smith within 15 days of reaching its decision. *See* AR-61; AR-276.

**3.** Wright-Smith timely petitioned for review in this Court. AR-62.

## SUMMARY OF ARGUMENT

To revoke a designation, the FAA must document its decision in its designee management system and must provide a specific reason for the revocation. In revoking Wright-Smith's designation, the FAA followed an agency template and therefore necessarily satisfied its documentation obligation. And the FAA also did more: a thorough memorandum details the FAA's investigation and its conclusions.

In arguing that the FAA's decision should be set aside, Wright-Smith points to documentation guidelines she draws from unrelated FAA policies. Those guidelines,

9

however, are either inapplicable here or are optional. And in any event, Wright-Smith cannot show prejudice from any of the errors she has alleged. Neither the appeal panel nor this court reviews the merits of a termination decision, and Wright-Smith offers no basis for concluding that the FAA would have taken a different path had the FAA followed the policies she contends were required.

Nor were there any deficiencies in the administrative appeal process. The FAA appointed three appropriate officials to review the process of terminating Wright-Smith's designation. The panel appropriately considered the record and documented its decision to uphold the Wright-Smith's termination. This Court should deny the petition for review.

## STANDARD OF REVIEW

Courts may review revocation of an FAA designation only to determine whether the FAA "fell substantially short" of the applicable procedural requirements "resulting in prejudice to [the petitioner]." *Lopez v. FAA*, 318 F.3d 242, 248 (D.C. Cir. 2003) (quotation marks omitted); *see also, e.g.*, *Bradshaw v. FAA*, 8 F.4th 1215, 1223 (11th Cir. 2021). A party alleging that an agency failed to follow its own procedures bears the burden of demonstrating prejudice. *See Shinseki v. Sanders*, 556 U.S. 396, 409–11 (2009).

## ARGUMENT

## WRIGHT-SMITH PROVIDES NO BASIS FOR SETTING ASIDE THE AGENCY'S REVOCATION DECISION.

Deciding whether to revoke a designation is committed to the FAA's "unfettered discretion" by law.  *Steenholdt v. FAA*, 314 F.3d 633, 638–39 (D.C. Cir. 2003); *see also Bradshaw v. FAA*, 8 F.4th 1215, 1222 (11th Cir. 2021) (collecting cases). And a designee does not have a property right or liberty interest in her designation. *See Bradshaw*, 8 F.4th at 1225–27 (collecting cases).  As Wright-Smith appears to recognize, therefore, the only issues before this Court are whether the FAA failed to substantially adhere to binding rules "intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion." *Lopez v. FAA*, 318 F.3d 242, 247–48 (D.C. Cir. 2003) (quoting *American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538 (1970)), and whether any such failure prejudiced Wright-Smith.

In her opening brief, Wright-Smith contends that the FAA did not properly document its investigation and decision to terminate her and did not assemble a proper appeal panel.  Both arguments fail.

### A. The FAA substantially complied with all applicable requirements to document its revocation of Wright-Smith's designation.

**1.**  FAA policy imposes only one procedural requirement for revoking a designation:  the termination must be "formally documented" in the agency's designee

11

management system "include[ing] the specific reason(s) for the termination." AR-97,

FAA Order 8000.95B, vol. 1, ch. 9, ¶ 4(a)(1), (b)(1); *cf.* AR-161, FAA Order 8000.95B,

vol. 3, ch. 9, ¶ 2 (no special procedures for revoking pilot-examiner designations).

Here, the FAA documented the termination decision using a template provided by its

designee management system. *See* AR14–15.

When the FAA follows its own templates to document a process, it

substantially complies with its procedures. *See Sheble v. Huerta*, 755 F.3d 954, 958

(D.C. Cir. 2014); *Bradshaw*, 8 F.4th at 1223. In *Sheble*, a designated pilot examiner

asserted that the FAA failed to adequately explain its decision to terminate his

designation. 755 F.3d at 957. The D.C. Circuit held that because the FAA sent the

petitioner a termination letter that "adhered to [an] FAA-prescribed" template and

that "included at least as much information as is called for by the template," it

"substantially complied with . . . internal procedures." *Id.* at 958. Here, the FAA

documented Wright-Smith's termination in the designee management system by

following the system's template for terminations. *Compare* AR14–15 (completed

template), *with* AR-17 (notice). The template requires that at least one of six

termination-for-cause reasons be selected; Wright Smith's notice indicates three of

those reasons (lack of integrity, misconduct, and inability to work constructively with

the FAA or the public). *Compare* AR-14, *with* AR-17. The template requires that a

justification be given; Wright Smith's notice explains that the FAA comprehensively

investigated the hotline complaint and "substantiated" the allegations against her.

*Compare* AR-15, *with* AR-17.  In adhering to the designee management system template, the FAA substantially complied with its procedures.

Wright-Smith asserts (at 26–27) that the documentation she received was inadequate compared to the documentation in *Sheble* and *Bradshaw*.  But when the FAA terminated those designees, its policy required it to state the reasons for termination "as specifically as possible."  *Sheble*, 755 F.3d at 957 (quoting FAA, Order 8900.1, vol. 13, ch. 5, § 3, at 5 (change 95, June 7, 2010), https://perma.cc/FA9W-P5SU)); *accord Bradshaw*, 8 F.4th at 1219.  As Wright Smith acknowledges (at 26), the FAA has since rescinded that requirement.  Wright-Smith's notice satisfied the standards applicable to her termination.

Indeed, the FAA went beyond what its regulations require here.  Medina, the managing specialist, documented each step that he and the other aviation-safety inspector took in their investigation of the hotline complaint.  *See* AR-10–12.  He noted whom he interviewed and the times of the interviews.[3]  AR-13.  He recounted the statements the witnesses made.  AR-10–12.  When relevant, he described the witnesses' demeanor.  AR-11 ("Initially, [Scutt] was extremely reluctant to discuss the allegations outlined in the [h]otline [c]omplaint."); AR-11 ("Reluctantly, [Eichhorn] admitted that [Wright-Smith] did visit the [r]epair [s]tation and made statements as

---

[3] Wright-Smith asserts (at 21) that "not one person interviewed is actually named" in the memorandum documenting the investigation.  The memorandum in fact contains a "List of Persons Interviewed, Dates and Times."  AR-13.

alleged in the [h]otline [c]omplaint in front of a group of people at the [r]epair

[s]tation."). Medina also explained his bottom-line conclusion—that Wright-Smith

"did, indeed, make inappropriate statements at the [r]epair [s]tation in front of

multiple individuals" and "did explicitly caution [r]epair [s]tation personnel against

servicing any balloons belonging [to] the [competitor] and her associates, insinuating

potential consequences if the [r]epair [s]tation failed to comply." AR-13. This

extensive report more than satisfies FAA procedures.

**2.** Wright-Smith argues that Medina was required to "document [his] oversight

of [her]" and was required to include written statements produced by two witnesses as

"supporting documentation" in his report on the hotline complaint. Petitioner's Br.

20–22 (first citing AR-88, FAA Order 8000.95B, vol. 1, ch. 6, ¶ 3; then citing AR-152,

FAA Order 8000.95B, vol. 3, ch. 6, ¶ 3(d); and then citing AR-168, FAA Order

1070.1A, ¶ 6(o)). None of the policies Wright-Smith cites, which she imports from

unrelated FAA guidance, support that contention.

**a.** Wright-Smith first points to a policy recommending that managing

specialists document "oversight activities." *See* AR-88, FAA Order 8000.95B, vol. 1,

ch. 6, ¶ 3; AR-152, FAA Order 8000.95B, vol. 3, ch. 6, ¶ 3(d). That policy does not

support her argument for three independent reasons.

First, under the relevant FAA order, "oversight activities" refers to a systemic

safety-related review process. *See* AR-86, FAA Order 8000.95B, vol. 1, ch. 6, ¶ 2;

AR-140–43, FAA Order 8000.95B, vol. 3, ch. 6, ¶ 2; *see also* FAA, Order 8000.72,

*FAA Integrated Oversight Policy*, app. A, ¶ 32, at A-4 (June 28, 2017),

https://perma.cc/7BZW-FCQ6 (defining oversight as "[a] function performed by the

FAA . . . that assures that an aviation organization or designee complies with and uses

safety-related standards, requirements, regulations, and associated procedures").

Termination of designation—at least for non-safety-related reasons—is not an

"oversight activity."  FAA policy makes that distinction clear because it explains that

one possible outcome of oversight for designated pilot examiners is initiation of the

designation-revocation process.  AR-152, FAA Order 8000.95B, vol. 3, ch. 6,

¶ 3(d)(1)(d).  By definition, any policy about documenting oversight does not apply to

Wright-Smith's revocation process.

Second, even if the guidelines for oversight activities applied to designation

revocations, the FAA does not require documentation of individual oversight

activities.  FAA policy provides that "[t]he managing specialist *should* record in [the

designee management system] the results of individual oversight activities" and "*must*

record in [the designee management system] a formal evaluation at least once every 36

calendar-months."  AR-141, FAA Order 8000.95B, vol. 3, ch. 6, ¶ 2(c)(2) (emphases

added).  In the designee management policy, the word "should" indicates guidance

rather than a mandatory directive.  *See* AR-73–74, FAA Order 8000.95B, vol. 1, ch. 1,

§ 1, ¶ 9.  If the managing specialist chooses to document the results of an oversight

activity, then she "must use [the designee management system]" to do so.  *See* AR-88,

FAA Order 8000.95B, vol. 1, ch. 6, ¶ 3.  But Wright-Smith can point to no binding rule that required the FAA to further document individual instances of oversight.

Moreover, the policy Wright-Smith points to requires only that the managing specialist fill out a form in the designee management system.  *See* AR-88–89, FAA Order 8000.95B, vol. 1, ch. 6, ¶ 3.  It cannot be stretched to include a requirement to attach written witness statements, as Wright-Smith seeks.  Nor can it be stretched to include a requirement to discuss her track record as a designee, as Wright-Smith contends.  The FAA may terminate a designation for any reason regardless of the designee's past performance, and Wright-Smith may not use guidelines for what is essentially a performance-review process to challenge the merits of that decision.

Third, as noted, Medina extensively documented the investigation of the hotline complaint in his memorandum.  *See* AR-10–12.  Even if the documentation policy imposed a mandatory duty to document the revocation investigation, the memorandum documenting the investigation more than met any duty to "document oversight activities."

**b.**  Wright-Smith also points (at 21–22) to the policy establishing hotline complaints.  *See* AR-168, FAA Order 1070.1A, ¶ 6(o).  Specifically, she notes that the hotline policy defines the investigative results report produced at the end of a hotline investigation as "[a] summary report of the investigation results in memorandum format . . . along with supporting documentation."  *Id.*  Wright-Smith contends that the FAA was required to attach witness statements to the memorandum.

The hotline policy, however, does not create any procedural rights for Wright-Smith. Those procedures are not "aimed at protecting the [designee] from the Administrator's otherwise unlimited discretion." *Lopez*, 318 F.3d at 247–48. The hotline policy implements a statutory obligation to review complaints. *See* 49 U.S.C. § 46101(a)(1); *see also* 14 C.F.R. § 13.2. It is intended to protect individuals who report misconduct—not to protect the subjects of complaints. And the policy reinforces that conclusion by conferring appeal rights only on reporting individuals. *See* AR-176, FAA Order 1070.1A, ¶ 9(f). Because the guidelines do not give rights to the subjects of complaints, Wright-Smith cannot claim their protections. *Cf. Barrie v. FAA*, 16 F. App'x 930, 934 (10th Cir. 2001) (unpublished order) (denying procedural claim brought by an aircraft operator because the procedures he invoked did not "exist to protect the rights of aircraft operators"). Rather, if a hotline complaint leads to discipline, the subject of the complaint may rely only on the procedures governing the resulting discipline.

**c.** Even if the FAA erred in failing to attach certain documents to the report, any error was harmless. The appeal panel reviews the "termination for cause *process*"—not the substantive decision.[4] *See* AR-102, FAA Order 8000.95B, vol. 1,

---

[4] The FAA has since amended its procedures for administrative appeals to require a panel to review whether the investigation was thorough, whether the designee had an opportunity to respond, and whether the revocation was justified. *See* AR-211, FAA Order 8000.95C, vol. 1, ch. 9, ¶ 4(f)(2). This change in the scope of review only underscores how limited review was under the policy in effect when Wright-Smith filed her administrative appeal.

ch. 11, ¶ 2(b) (emphasis added). It does not have jurisdiction to consider either the hotline-complaint process or the appropriateness of the decision to terminate the designation. Thus, even if the witness statements had been appended to the report, their inclusion would not have changed the appeal panel's determination. *Cf. Orlandi v. Nolen*, No. 22-1269, 2024 WL 244218, at *2 (D.C. Cir. Jan. 23, 2024) (per curiam) (because courts cannot consider "the substantive grounds of the FAA's decision" to terminate a designated pilot examiner, any failure to provide a more detailed description of a termination decision is harmless error).

Further, even if the appeals panel should have been presented with the witness statements, failure to include or produce documents is harmless error when the information in the documents is otherwise available to the relevant decisionmakers. *See, e.g.*, *NLRB v. Osborn Transp., Inc.*, 589 F.2d 1275, 1282 (5th Cir. 1979) (failure to include affidavits in the record is not prejudicial because their contents were otherwise available to the agency). Wright-Smith attached affidavits from both witnesses to her administrative appeal. AR-35–36. Under the FAA's appellate procedures, the appeal panel may contact the managing specialist to request more information. AR-103, FAA Order 8000.95B, vol. 1, ch. 11, ¶ 4(b). If the appeal panel believed that seeing the witnesses' prior written statements could have materially altered its decision, it could have asked Medina to produce them. Thus, failing to provide those statements up front could not have prejudiced Wright-Smith.

### B. The FAA substantially complied with all procedural requirements governing Wright-Smith's administrative appeal.

FAA policy imposes a few requirements on the administrative appeal of a for-cause termination. First, the designee is permitted to submit evidence in support of her case to the appeal panel. AR-102, FAA Order 8000.95B, vol. 1, ch. 11, ¶ 2(a). Second, the panel must be composed of three officials who were not involved in the original decision. AR-102, FAA Order 8000.95B, vol. 1, ch. 11, ¶ 2(a). For a pilot examiner, a regulatory-support-division (AFS-600) representative, a general-aviation-and-commercial-division (AFS-800) representative, and a flight-standards office manager or front-line manager comprise the panel. AR-163, FAA Order 8000.95B, vol. 3, ch. 11, ¶ 2(a)(1). Third, the panel's duties are to "[r]eview the appealing designee file stored in [the designee management system]," contact relevant FAA officials "for additional information or clarification," and "[d]ocument deliberations and outcomes in [the designee management system]." AR-102–03, FAA Order 8000.95B, vol. 1, ch. 11, ¶ 4(a)–(c); *see also* AR-163, FAA Order 8000.95B, vol. 3, ch. 11, ¶¶ 2(a)(3)–(4), 5. Fourth, the panel must decide the appeal within 45 days of receiving the appeal request and the appellant must be notified within 15 days of a decision. AR-102, FAA Order 8000.95B, vol. 1, ch. 11, ¶ 2(d)–(e).

The FAA met all these requirements for Wright-Smith's termination. Wright-Smith was able to submit 28 pages of additional evidence, including sworn statements from relevant witnesses and character testimonials. *See* AR-32–60. A panel consisting

of an inspector from the regulatory-support-division (AFS-600), an inspector from the general-aviation-and-commercial-division (AFS-800), and a flight-standards office manager was appointed to consider the appeal. AR-276. The panel reviewed the record, reviewed the reasons and justification for the termination, and contacted Wright-Smith's appointing official for additional information or clarification. AR-276. And the panel reached its decision on October 18, 2023, and notified Wright-Smith on October 25, 2023, well within the applicable deadlines. AR-61, 276; *see* AR-102, FAA Order 8000.95B, vol. 1, ch. 11, ¶ 2(d)–(e). The FAA therefore fully complied with its procedures for the administrative appeal.

Wright-Smith's argument (at 27 n.18) that she would be prejudiced by the supplementation of the record to include the appeal panel results document fails. Wright-Smith bears the burden to show that the FAA deviated from its procedures, *see San Juan Citizens All. v. Stiles*, 654 F.3d 1038, 1045 (10th Cir. 2011), and FAA did not. And, in any event, Wright-Smith may respond to the supplemental record in her reply brief. *See Stanko v. Davis*, 617 F.3d 1262, 1271 (10th Cir. 2010) (delay in providing relevant information is harmless if the party subsequently has a full opportunity to respond); *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) (similar).

Wright-Smith has not shown any error, much less prejudicial error, in the FAA's handling of her administrative appeal.

## CONCLUSION

For the foregoing reasons, the petition for review should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

ABBY C. WRIGHT

*/s/ Maxwell A. Baldi*
MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-0211*
*maxwell.baldi@usdoj.gov*

May 2024

## STATEMENT REGARDING ORAL ARGUMENT

This case presents a straightforward and fact-bound question:  whether the FAA substantially followed its procedures in terminating a pilot-examiner's designation.  The government does not believe that oral argument would materially assist this Court in resolving this petition for review.  If this Court schedules argument, however, the government stands ready to appear.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,705 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Maxwell A. Baldi*
MAXWELL A. BALDI

**ADDENDUM**

## TABLE OF CONTENTS

49 U.S.C. § 44702 ................................................................................................ A1

14 C.F.R. § 183.15 .............................................................................................. A2

**49 U.S.C. § 44702**

**§ 44702. Issuance of certificates**

**(a)** General authority and applications.—

The Administrator of the Federal Aviation Administration may issue airman certificates, design organization certificates, type certificates, production certificates, airworthiness certificates, air carrier operating certificates, airport operating certificates, air agency certificates, and air navigation facility certificates under this chapter. An application for a certificate must—

    **(1)** be under oath when the Administrator requires; and

    **(2)** be in the form, contain information, and be filed and served in the way the Administrator prescribes.

***

**(d)** Delegation.—

    **(1)** Subject to regulations, supervision, and review the Administrator may prescribe, the Administrator may delegate to a qualified private person, or to an employee under the supervision of that person, a matter related to—

        **(A)** the examination, testing, and inspection necessary to issue a certificate under this chapter; and

        **(B)** issuing the certificate.

    **(2)** The Administrator may rescind a delegation under this subsection at any time for any reason the Administrator considers appropriate.

    **(3)** A person affected by an action of a private person under this subsection may apply for reconsideration of the action by the Administrator. On the Administrator's own initiative, the Administrator may reconsider the action of a private person at any time. If the Administrator decides on reconsideration that the action is unreasonable or unwarranted, the Administrator shall change, modify, or reverse the action. If the Administrator decides the action is warranted, the Administrator shall affirm the action.

***

**14 C.F.R. § 183.15**

**§ 183.15. Duration of certificates**

**(a)** Unless sooner terminated under paragraph (b) of this section, a designation as an Aviation Medical Examiner or as a Flight Standards or Aircraft Certification Service Designated Representative as described in §§ 183.21, 183.23, 183.25, 183.27, 183.29, 183.31, or 183.33 is effective until the expiration date shown on the document granting the authorization.

**(b)** A designation made under this subpart terminates:

**(1)** Upon the written request of the representative;

**(2)** Upon the written request of the employer in any case in which the recommendation of the employer is required for the designation;

**(3)** Upon the representative being separated from the employment of the employer who recommended him or her for certification;

**(4)** Upon a finding by the Administrator that the representative has not properly performed his or her duties under the designation;

**(5)** Upon the assistance of the representative being no longer needed by the Administrator; or

**(6)** For any reason the Administrator considers appropriate.