No. 23-9608


IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT


ELIZABETH WRIGHT-SMITH,

   Petitioner,

        vs.

FEDERAL AVIATION ADMINISTRATION,

   Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER OF THE

FEDERAL AVIATION ADMINISTRATION

---

**REPLY BRIEF OF PETITIONER**

---

BUTT THORNTON & BAEHR, P.C.
Sarah L. Shore
P.O. Box 3170
Albuquerque, NM  87190-3170
(505) 884-0777
sshore@btblaw.com

*Attorneys for Petitioner*


**ORAL ARGUMENT REQUESTED**

TABLE OF CONTENTS

*Page*

Table of Authorities ............................................................................................. ii

GLOSSARY ........................................................................................................ iv

INTRODUCTION................................................................................................. 1

REPLY ARGUMENT ......................................................................................... 5

I.   The FAA Was Required To Include Witness Statements And Consideration Of Wright-Smith's Overall Performance As A DPE In The Investigation Of The Complaint, And Its Failure To Do So Was Prejudicial. ................................ 5

   A. The FAA Substantially Failed to Follow Its Policies Regarding Documenting the Outcome of an Oversight Activity such as Investigation Of the Hotline Complaint Against Wright-Smith. ................................. 5

      1. Investigation of the Complaint was an oversight activity. ................ 5

      2. The supplemental DPE Policy does not supersede the Policy governing oversight of all designees. ...................................... 7

      3. Investigations that are also oversight activities must comply with FAA policy. ............................................................................. 8

   B. The FAA's Failure to Follow its Own Investigation/Oversight Policies was Prejudicial to Wright-Smith. ................................................. 10

II.  The FAA Did Not Provide A Specific Reason For Terminating Wright-Smith's Designation On September 7, 2023, To Her Prejudice. ................... 12

CONCLUSION ................................................................................................. 15

Certificate of Service........................................................................................ 16

T<small>ABLE OF</small> A<small>UTHORITIES</small>

*Pages*

## Cases

*Am. Petroleum Inst. v. Cooper,*
   718 F.3d 347 (4th Cir. 2013) ................................................................. 3, 14

*Bradshaw v. Fed. Aviation Admin.,*
   8 F.4th 1215 (11th Cir. 2021) ..................................................................... 14

*Clinton v. City of New York,*
   524 U.S. 417 (1998) ................................................................................ 9, 10

*Kungys v. United States,*
   485 U.S. 759 (1988) ................................................................................ 3, 14

*Lopez v. Fed. Aviation Admin.,*
   318 F.3d 242 (D.C. Cir. 2003) *as amended* (Feb. 11, 2003) ...................... 1,9

*Lowman v. Fed. Aviation Admin.,*
   83 F.4th 1345 (11th Cir. 2023) .................................................................... 21

*Mazaleski v. Treusdell,*
   562 F.2d 701 (D.C. Cir. 1977) ...................................................... 4-5, 14, 15

*Sheble v. Huerta,*
   755 F.3d 954 (D.C. Cir. 2014) ..................................................................... 13

*Vitarelli v. Seaton,*
   359 U.S. 535 (1959) ....................................................................................... 4

## Statutes, Rules, Regulations & Orders

FAA Order 1070.1A (as amended 11/14/2022)
   (AR 165-176) .................................................................................. 2, 7, 8, 9

FAA Order 8000.95B (4/12/2022), Vol. 1
   (AR 66-106) ................................................................. 2-4, 6, 7, 8, 10-13, 15

FAA Order 8000.95B (4/12/2022), Vol. 3
   (AR 107-164) ................................................................................... 2, 6-8

FAA Order 8000.95C (9/21/2023), Vol. 1

(AR 177-217) ................................................................................... 10

## Other Sources

Black's Law Dictionary, "Specific" (11th ed. 2019) ....................................................... 13

# GLOSSARY

| **Term** | **Definition** |
|---|---|
| AFS | Flight Standards Service |
| AFS-660 | Flight Standards Service: Regulatory Support Division |
| AFS-800 | Flight Standards Service: General Aviation and Commercial Division |
| AO | Appointing Official |
| DER | Designated Engineering Representative |
| DMS | Designee Management System |
| DPE | Designated Pilot Examiner |
| FAA | Federal Aviation Administration |
| FLM | Front Line Manager |
| FS | Flight Standards |
| FSDO | Flight Standards District Office |
| IRR | Investigative Results Report |
| POC | Point of Contact |

**INTRODUCTION**

The FAA's[1] Brief does not refute Wright-Smith's showing that the agency failed to substantially comply with its own procedural requirements when it terminated Wright-Smith's designation as a pilot examiner, to her prejudice. The FAA Order establishing the Designee Management Policy should not be interpreted to allow an entirely opaque process: defective investigation of an anonymous complaint not provided to the designee in writing; a termination notice that gives no specific reason for the termination, other than by reference to substantiation of the anonymous complaint not provided to the designee; and an "appellate review" decision containing nothing to show that a panel comprised of the required individuals undertook the required review or even made the decision to affirm termination. AR 17-19, 61. The procedural requirements set forth in the Policy are meaningless if the FAA interprets them in a manner that renders the agency wholly unaccountable. Such an interpretation is also unsustainable where, as here, agency procedural rules are the *only* safeguards that protect the individual designee from otherwise unfettered agency discretion. *Lopez v. Fed. Aviation Admin.*, 318 F.3d 242, 248 (D.C. Cir. 2003) (explaining that such rules must be scrupulously followed). While the FAA has belatedly produced some evidence of appellate panel review by the required individuals, AR 276, its record contains nothing showing that the investigation and termination decision met the FAA's own procedural requirements.

---

[1] Acronyms and abbreviations used in the Reply are identical to those used in the Opening Brief, and FAA-related acronyms/terms are included in the Glossary above (identical to the Glossary in the Opening Brief). The Opening Brief is cited as "OB" and the Respondent's Brief as "RB."

The FAA's arguments concerning the propriety of the investigation and termination decision should also be rejected as plainly incorrect and/or unreasonable. First, the notion that investigation and termination of a designee are not aspects of the oversight and management of a designee is contrary to logic and the structure of the FAA's own Policy. Investigations are specifically listed as an example of an oversight activity, and termination is one of the possible follow-up actions when overseeing a designee. AR 90 (Order 8000.95B, Vol. 1, Ch. 6, ¶2(c)(2)(c), ¶4); AR 146, 152 (Order 8000.95B, Vol. 3, ¶3(b)(1)(b), (d)(1)(d)). Documenting oversight outcomes in the Designee Management System is mandatory and intended to enable the FAA to make "an overall assessment of the designee's performance." AR 88 (Order 8000.95B, Vol. 1, Ch. 6, ¶3). The determination to terminate a designee must also be documented in DMS. AR 152 (Order 8000.95B, Vol. 3, Ch. 6, ¶3(d)(1)(d)).

Relatedly, where the method of oversight is investigation of a Hotline Complaint, and particularly where the FAA has relied *only* on the outcome of such investigation to justify its decision to terminate a designee, the FAA is required follow its own rules concerning the conduct of the investigation—including attaching supporting documents to the Investigation Results Report. AR 168 (Order 1070.1A, ¶6(o)). A holding to the contrary would have the absurd result that, where the FAA uses a method of oversight with distinct procedures (e.g., the FAA's Hotline Complaint Policy procedures), it need not follow those procedures, even where such method may result in termination, as it did here. A designee should not have fewer protections in the context of an investigation than in the context of other oversight

2

activities, particularly because investigations of Hotline Complaints are intended both for the benefit of those who call in complaints *and* to ensure thoroughness and impartiality in the investigation of complaints.

With respect to Wright-Smith's termination, the FAA admits its duty to provide a "specific reason" for her termination, including by filling in the "Justification" box in the termination notification form. RB 14. Nevertheless, the agency apparently takes the position that *any* justification suffices to meet the FAA's burden, even if the justification only references an undisclosed investigation. This interpretation should be rejected as rendering meaningless the word "specific." *See*, *e.g.*, *Kungys v. United States*, 485 U.S. 759, 778 (1988) (it is a "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant"); *Am. Petroleum Inst. v. Cooper*, 718 F.3d 347, 356 (4th Cir. 2013) ("It is axiomatic that when interpreting a statute, this Court should strive to avoid any interpretation that may render statutory terms meaningless.") (quotation, citation omitted). The "specific reason" requirement should be interpreted to require the FAA to provide a meaningful or reasonably particular justification for the termination decision. *See* OB 22-27. The FAA failed to do so here.

The FAA's argument that any deficits in the investigation and termination decision were harmless or not prejudicial is also unavailing. The appeal panel review was not limited to identifying procedural errors in Wright-Smith's termination. AR 102 (FAA Order 8000.95B, Vol. 1, Ch. 11, ¶2(a), (c)) (designee should submit the "evidence to support their case" on appeal, and review panel is empowered to either uphold the original termination decision or overturn it), AR 276 (form indicates that

panel may overturn decision without deliberations). Where the meaningful review to which a petitioner is entitled was "vitiated by [an agency's] failure to notify" the petitioner, "as required, of the specific grounds for …termination," such failure is not a "de minimis or harmless violation of [the agency's] own regulations." *Mazaleski v. Treusdell*, 562 F.2d 701, 718-719 (D.C. Cir. 1977). A petitioner cannot "be expected to prosecute" her case effectively "without knowledge of the precise grounds specified by the [agency]." *Id.* at 719. Here, Wright-Smith could not prosecute her administrative appeal effectively absent an investigation that met basic requirements and absent disclosure of the specific reason for Wright-Smith's termination. Moreover, Wright-Smith's Appointing Official John Wensel had the authority to either accept or reject the termination recommendation initially given by Medina. Had Medina actually included the written witness statements that "did not support what was said in person" by those same witnesses, whose evidence was critical to the outcome of the investigation, AR 13, and an overview of Wright-Smith's outstanding performance as a DPE for ten years, AO Wensel may not have followed Medina's recommendation to terminate Wright-Smith.

In sum, for all the reasons herein, and those outlined in the Opening Brief, Wright-Smith has met her burden to establish that the FAA violated its own Orders in at least one material respect in a manner prejudicial to Wright-Smith. *Mazaleski*, 562 F.2d at 717 n. 38, 719; *see also Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959) (where agency's process of terminating petitioner fell "substantially short of the requirements of the applicable departmental regulations," termination was "illegal and of no effect"). Accordingly, the Court should reverse the final order of the FAA

4

and remand the matter to the agency, to afford Wright-Smith the benefits of the agency's Orders.

## REPLY ARGUMENT

**I.  The FAA Was Required To Include Witness Statements And Consideration Of Wright-Smith's Overall Performance As A DPE In The Investigation Of The Complaint, And Its Failure To Do So Was Prejudicial.**

The FAA claims that its failure to include supporting documentation in the IRR concerning the Complaint against Wright-Smith, or to consider Wright-Smith's overall performance as a DPE, was not a violation of FAA policy because: a) termination of a pilot-examiner designation is not an oversight activity that must be properly documented in DMS; b) even if termination of a designation were an oversight activity, documentation of "individual oversight activities" is merely discretionary; c) the procedures for investigations of Hotline Complaints are not intended to protect designees, and thus the FAA was not required to follow them. The FAA also argues that any failure to follow procedural requirements was not prejudicial to Wright-Smith. All four contentions should be rejected.

**A.  The FAA Substantially Failed to Follow Its Policies Regarding Documenting the Outcome of an Oversight Activity such as Investigation Of the Hotline Complaint Against Wright-Smith.**

**1. Investigation of the Complaint was an oversight activity.**

The FAA argues that oversight activities are a "systemic safety-related review process," that does not include termination of a designation. RB 14-15. But the Opening Brief argued that the FAA was required to document the *outcome of the investigation* of the Hotline Complaint against Wright-Smith as an oversight

activity. "Oversight activities" include investigations of designees. AR 86 (Order 8000.95B, Vol. 1, Ch. 6, ¶2(c)(2)(c) (providing that documenting "the results of investigation or inquiry" is an oversight activity); AR 146 (Order 8000.95B, Vol. 3, ¶3(b)(1)(b)). Additionally, termination of a designation is a possible "follow-up" action based on the outcome of oversight activities, and the determination to take such action must be documented in DMS. AR 90 (Order 8000.95B, Vol. 1, Ch. 6, ¶4) (termination of a designation is a possible "follow-up" action based on the outcome of oversight activities); AR 152 Order 8000.95B, Vol. 3, Ch. 6, ¶3(d)(1)(d) (for *all* oversight activities, the appropriate follow-up action, including termination, "must be determined and recorded in DMS").

Furthermore, the "Oversight Principles" in the Policy state that "[t]he primary responsibility of the FAA is to promote safety through systematic oversight of industry stakeholders, including designees." It is unclear why the FAA believes that this language is somehow limiting. The Policy explains that:

> The objective of an oversight program is to ensure that the designee performs to the standards and expectations set forth by the FAA in its policies and regulations. Oversight is not merely an isolated event or series of activities. Oversight results should be considered in total to provide a high-level perspective of a designee's performance over time.

*Id.* Oversight activities include not only performance evaluations and direct observation of designees, but *any activity* characterized by

(a) A definite beginning and a definite end;

(b) Defined procedures;

(c) Specific objectives; and

(d) A required report of findings.

AR 87 (Order 8000.95B, Vol. 1, Ch. 6, ¶2(c)(1)); *see also* AR 141 (Order 8000.95B, Vol. 3, Ch. 6, ¶2(c)(1) ("Designee oversight includes the managing, monitoring, and tracking of a designee's activities and performance."). An investigation of a Hotline Complaint concerning a designee's performance/activities/conduct certainly meets these criteria. AR 168-169 (Order 1070.1A, ¶6(o)), AR 175 (Order 1070.1A, ¶9(d)(2)). The FAA also explains that the purpose of documenting the outcome of oversight activities in DMS is to enable the FAA to make "an overall assessment of the designee's performance." AR 88 (Order 8000.95B, Vol. 1, Ch. 6, ¶2(c), ¶3. For all these reasons, Medina was required to document the outcome of the investigation of the Complaint against Wright-Smith, including the written statements provided by key witnesses, and, when deciding the recommended follow-up actions from the investigation, to consider Wright-Smith's overall performance as a designee. He did neither.

### 2. The supplemental DPE Policy does not supersede the Policy governing oversight of all designees.

The FAA argues that, because the volume of the Policy with additional information/requirements concerning DPEs (Volume 3) provides that managing specialists "should" record in DMS the results of "individual" oversight activities, documenting the outcome of an investigation/decision to terminate a designee is discretionary, not mandatory. RB at 15. But the DPE-related volume of the Policy

supplements rather than supersedes the volume governing management of all designees—and the volume governing management of all designees (Volume 1) provides that "managing specialists may use DMS to plan but *must* use DMS to document the outcome of oversight activities," without distinguishing between types of oversight activities or outcomes. AR 88 (Order 8000.95B, Vol. 1, Ch. 6, ¶2(c), ¶3 (emphasis added); AR 107 (Order 8000.95B, Vol. 3, Ch. 1, ¶1). Accordingly, the DPE-specific volume does not supersede the Policy's overall requirement that outcomes of oversight activities be documented in DMS.

### 3.  Investigations that are also oversight activities must comply with FAA policy.

Finally, in Wright-Smith's case, the investigation into the Complaint was *both* an oversight activity and an investigation pursuant to the FAA's policy governing Hotline Complaints, which requires that IRRs include any supporting documentation. AR 168-169 (Order 1070.1A, ¶6(o)). It is true that, as the FAA argues, the Hotline Complaint Policy appears to exist in part for the benefit of "those who report misconduct." RP 17. However, its purposes also include ensuring that the FAA properly investigates and resolves/responds to the issues raised by a hotline complaint, regardless of whether the reporting individual discloses their identity, participates in the investigation, or receives a copy of the IRR. AR 167, 175-76 (Order 1070.1A, ¶¶6(d), 9(d), (e)). Furthermore, where the "hotline report includes allegations of wrongdoing by FAA employees, the hotline investigation should be

conducted by individuals who have no direct or indirect involvement in the allegations or issues identified. This includes individuals named or working in the same office identified in the hotline report." AR 175 (Order 1070.1A, ¶9(d)(1)). This provision and others like it indicate that an investigation of a Hotline Complaint should be impartial and thorough, taking into account the subject of the complaint. *See*, *e.g.*, AR 175 (Order 1070.1A, ¶9(d)(2)(a)) (purpose of investigation is to "ensure a complete understanding of the issue(s) being reported"). Ensuring a thorough and impartial investigation of complaints concerning designees protects designees from the Administrator's "otherwise unlimited discretion." *Lopez*, 318 F.3d at 247-48. More fundamentally, the FAA cannot very well argue that the procedural requirements for Hotline Complaint investigations are not for the benefit of designees in this context, when the investigation into the operative Complaint was conducted by Wright-Smith's Managing Specialist and its outcome was the *only* justification offered for Wright-Smith's termination. AR 14-15. Finally, it would be absurd if, where the FAA uses a method of oversight with distinct procedures (e.g., the FAA's Hotline Complaint Policy procedures), it need not follow those procedures, despite the fact that such method may result in a follow-up action of termination, as it did here. *See*, *e.g.*, *Clinton v. City of New York*, 524 U.S. 417, 429 (1998) (laws should not be interpreted in a manner that produces "an absurd and unjust result").

**B. The FAA's Failure to Follow its Own Investigation/Oversight Policies was Prejudicial to Wright-Smith.**

The FAA's failure to follow its policies with respect to investigation of the Complaint against Wright-Smith was substantial and prejudicial—both because it compromised the investigation underlying Wright-Smith's termination, and because it thwarted meaningful administrative review. First, AO Wensel may have reached a different conclusion regarding the propriety of termination, had the FAA followed its policies.[2] Managing Specialist Medina concluded his Memo/IRR by stating that his "in-person" investigation "substantiated" the Complaint against Wright-Smith, but that the written statement(s) of the Repairman/Owner "did not support what was said in person." AR 13. Despite the obvious significance of such statements, Medina did not attach them to his Memo/IRR. AR 9-13. Additionally, the IRR and Termination Recommendation contain no acknowledgment of Wright-Smith's performance: in particular, her ten years as a DPE without a single deficiency. AR 9-15. AO Wensel conducted the initial review of the IRR and termination decision

---

[2] Wright-Smith elected not to raise this specific argument in the Opening Brief in order to focus her arguments on the administrative review process, including the prejudice that could arise under either the old or the new FAA Order and the absence (at the time) of any indication that a panel composed of the required individuals reviewed Wright-Smith's termination. *See* OB 22, 25-30; AR 102 (Order 8000.95B, Vol. 1, Ch. 11); AR 211 (FAA Order 8000.95C, Vol. 1, Ch. 11); AR 273; AR 276 (filed 4/26/2024) (showing, for the first time, that an appeal panel administratively reviewed Wright-Smith's termination). Now that the FAA has supplemented the record, some of these arguments are obsolete, and Wright-Smith wasted her limited briefing pages addressing them. In light of these circumstances, Wright-Smith respectfully requests that the Court consider this argument concerning the prejudice arising from the effect of the defective investigation on AO Wensel's decision to approve the termination recommendation given by Medina.

recommended by Managing Specialist Gary Medina. AR 9-16, 97 (Order 8000.95B, Vol. 1, Ch. 9, ¶4(b)(1)). He had the authority to either accept or reject the termination recommendation given by Medina. AR 97 (Order 8000.95B, Vol. 1, Ch. 9, ¶4(b)(1)). Had Medina actually included the written statements that "did not support what was said in person" by these same witnesses, whose evidence was critical to the outcome of the investigation, AR 13, and/or acknowledged Wright-Smith's outstanding ten-year record as a DPE, AO Wensel may not have followed Medina's recommendation to terminate Wright-Smith.

Additionally, while the FAA argues that the review panel had no jurisdiction to review anything but the "process" of the termination for cause, such that any defects in the investigation were harmless error, the FAA Policy itself undermines that argument. It states that the designee should "provide any *evidence to support their case* at the time the appeal is initiated," AR 102 (FAA Order 8000.95B, Vol. 1, Ch. 11, ¶2(a));[3] the appeal panel review record indicates that it reviewed "the terminate reason … and justification," AR 276; and the appeal panel had the unqualified authority to either uphold the original termination decision or overturn it and reinstate Wright-Smith, without deliberation, AR 102 (FAA Order 8000.95B, Vol. 1, Ch. 11, ¶2(c)); AR 276. Thus, the review panel's authority was not apparently limited to the correction of procedural errors—and interpreting its authority as so limited would defeat the purported right to an administrative appeal, which was the

---

[3] Notably, while the Policy states that "[t]he appeal is intended to be a review of the termination for cause process," it does not preclude review of the termination decision itself, much less does it address the panel's "jurisdiction." AR 102 (FAA Order 8000.95B, Vol. 1, Ch. 11, ¶2(b), (c).

first time Wright-Smith was given the opportunity to submit her own evidence addressing the reason given for her termination (such as it was). Nor was Medina's failure to include key witness statements harmless error because (as the FAA argues) the information in the documents was otherwise available. RB 18. While Wright-Smith submitted affidavits from the same witnesses, no person other than Medina knows the contents of statements given in writing to the FAA—only that they "did not support what was said in person" to "substantiate" the allegations in the anonymous Complaint. AR 13. Accordingly, the failure to include these statements, or to give any consideration to Wright-Smith's overall performance, was prejudicial to Wright-Smith.

## II. The FAA Did Not Provide A Specific Reason For Terminating Wright-Smith's Designation On September 7, 2023, To Her Prejudice.

The FAA acknowledges that it was required to "formally document" the decision to terminate Wright-Smith in DMS, "to include the specific reason(s) for termination." AR 97 (Order 8000.95B, Vol. 1, Ch. 9, ¶4(a), (b)); RB 11-12. Nevertheless, it argues that it "follow[ed] a template to document a process," and therefore complied with its procedures. RB 12. This conclusory argument does not withstand scrutiny, because the "Justification" for the termination decision did not in fact furnish a "specific reason" for the termination, thereby compromising Wright-Smith's ability to present an effective case in her administrative appeal. AR 102 (Order 8000.95B, Vol. 1, Ch. 11, ¶1).

As outlined in the Opening Brief, it is apparent that Managing Specialists utilizing the termination form are to select among the "reasons" listed, and then to

offer a *specific* justification for those selections in the "Justification" section. AR 14-15. The "reasons" boxes alone would render it virtually impossible for a designee to "provide … evidence to support their case" in a subsequent appeal, AR 102 (Order 8000.95B, Vol. 1, Ch. 11, ¶1), since the designee would not be privy to the "case" that supported the FAA's termination decision in the first instance. Additionally, the "reasons" are followed by parenthetical examples (e.g., "Misconduct (for example, purposefully not following prescribed procedures for gain, etc)"). AR 14. The purpose of such examples is to show the sort of "specific" reason which should be included in the "Justification" area of the form. AR 14-15. In short, the "Justification" section is where the FAA must connect the reason for termination to the way(s) the designee in fact engaged in misconduct, showed a lack of integrity, etc. *See also* Black's Law Dictionary (11th ed. 2019) (defining *specific* as "designating a particular or defined thing; explicit").

The FAA admits that the template requires a justification to be given but effectively argues that any justification will suffice—particularly since the FAA has rescinded the former policy requiring that the reasons for termination were to be stated "as specifically as possible." RB 13 (citing, inter alia, *Sheble v. Huerta*, 755 F.3d 954, 957 (D.C. Cir. 2014) (quoting FAA Order 8900.1, Vol. 13, Ch. 5, §3, at 5)). But the requirement to provide "*the specific reason* for termination" appears no less robust than the former requirement to provide the reason(s) "*as specifically as possible*." Indeed, the Courts of Appeal had lamented the difficulty of interpreting the former requirement. *See*, *e.g.*, *Bradshaw v. Fed. Aviation Admin.*, 8 F.4th 1215, 1223 (11th Cir. 2021) ("'[A]s specifically as possible,' is, ironically enough, not

13

very specific."). It seems the FAA sought to clarify the prior standard, not to liberate the FAA from identifying the specific reason for termination in a meaningful manner. Indeed, if the mere reference to the undisclosed results of an investigation suffices to provide the "specific reason" for termination, the requirement of a "specific" reason is rendered meaningless—a result which the Court avoids. *See*, *e.g.*, *Kungys*, 485 U.S. at 778 (it is a "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant"); *Am. Petroleum Inst.*, 718 F.3d at 356 ("It is axiomatic that when interpreting a statute, this Court should strive to avoid any interpretation that may render statutory terms meaningless.") (quotation, citation omitted).  Nor does the IRR meet the FAA's burden of providing a "specific reason" for termination. RB 13-14. The IRR was not included in the termination notification and was not available to Wright-Smith until this appeal. AR 9 (showing that the IRR Memorandum was sent to individuals not including Wright-Smith). Its contents cannot save the FAA's failure to formally document and notify Wright-Smith of the specific reason for her termination.

Courts have held that, where the meaningful administrative review to which a petitioner is entitled was "vitiated by [an agency's] failure to notify" the petitioner, "as required, of the specific grounds for …termination," such failure is not a "de minimis or harmless violation of [the agency's] own regulations." *Mazaleski*, 562 F.2d at 718-719. A petitioner cannot "be expected to prosecute [an administrative] appeal effectively without knowledge of the precise grounds specified by the [agency]." *Id.* at 719. Here, for all the reasons discussed in the Opening Brief, the failure to apprise Wright-Smith of the specific reasons for her termination, as

14

required by FAA Order, prejudiced her by compromising her ability to present an effective case in her administrative appeal. AR 102 (Order 8000.95B, Vol. 1, Ch. 11, ¶1); OB 22-27. Accordingly, Wright-Smith has met her burden of showing that the FAA violated its own Orders in at least one material respect in a manner prejudicial to Wright-Smith. *Mazaleski*, 562 F.2d at 717 n. 38, 719.

## CONCLUSION

For the foregoing reasons, and those set forth in the Opening Brief, the Court should reverse the FAA's final decision terminating Wright-Smith's designation as a pilot examiner, reinstate her pilot examiner designation, and direct the FAA to proceed in accordance with its own Orders.


DATED this 28th day of May 2024

Respectfully submitted,

BUTT, THORNTON & BAEHR, P.C.

By: */s/ Sarah L. Shore*
    Sarah L. Shore
    P.O. Box 3170
    Albuquerque, NM  87190-3170
    (505) 884-0777
    sshore@btblaw.com
    *Attorneys for Petitioner*

**CERTIFICATE OF SERVICE**

I certify that I caused a true and correct copy of this Opening Brief of Petitioner to be served electronically to the following through the Court's ECF system on this 28th day of May 2024:

Maxwell A. Baldi
Abby Christine Wright
Civil Division, Room 7513
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C.  20530
(202) 532-0211
maxwell.baldi@usdoj.gov
Abby.Wright@usdoj.gov
*Attorneys for Respondent Federal Aviation Administration*

*/s/ Sarah L. Shore*
Sarah L. Shore